IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **RLI INSURANCE COMPANY,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| vs. : | C.A. NO. 05-858 JJF |
| : | |
| **INDIAN RIVER SCHOOL DISTRICT,** : | |
| **EDIS COMPANY, AND** : | **JURY TRIAL DEMANDED** |
| **BECKER MORGAN GROUP, INC.,** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFF RLI INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
ANSWER TO DEFENDANTS EDIS COMPANY AND
BECKER MORGAN GROUP, INC.'S
<u>JOINT MOTION TO DISMISS THE COMPLAINT OF PLAINTIFF</u>**

ABER, GOLDLUST, BAKER, & OVER

<u>/s/ Perry F. Goldlust</u>
PERRY F. GOLDLUST (DSB #770)
702 King Street, Suite 600
P. O. Box 1675
Wilmington, DE  19899-1675
(302) 472-4900
pgoldlust@gablawde.com
*Attorneys for Plaintiff, RLI Insurance Company*

DATED:    <u>March 8, 2006</u>

Of Counsel:
HARRY R. BLACKBURN, ESQUIRE
JOHN HILSER, ESQUIRE
HARRY R. BLACKBURN & ASSOCIATES, P.C.
1528 Walnut Street, 9th Floor
Philadelphia, Pa. 19102
(215) 985-0123

**TABLE OF CONTENTS**

|  |  | PAGE |
|---|---|---|
| TABLE OF CASES AND OTHER AUTHORITIES |  | ii |
| I. | PROCEDURAL BACKGROUND | 1 |
| II. | FACTS | 2 |
| III. | LEGAL STANDARD | 2 |
| IV. | SUMMARY OF ARGUMENT | 3 |
| V. | RLI HAS SUFFICIENTLY PLEADED NEGLIGENT MISREPRESENTATION UNDER THE RESTATEMENT OF TORTS § 552 | 3 |
| VI. | RLI'S CLAIMS OF NEGLIGENT MISREPRESENTATION UNDER THE RESTATEMENT OF TORTS § 552 ARE NOT BARRED BY THE ECONOMIC LOSS RULE | 5 |
| VII. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*ALA, Inc. v. CCAIR, Inc.*, 29 F. 3d 855, 859 (3rd Cir. 1994) — 2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) — 3

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991) — 3

*Earwood v. Norfolk Southern Ry. Co.*, 845 F.Supp. 880 (N.D.Ga.1993) — 3

*Fidelity & Deposit Company v. Agnew*, 152 F. 955 (3rd Cir. 1907) — 7, 8

*Groman v. Township of Manalapan*, 47 F. 3d 628, 633 (3rd Cir. 1995) — 2

*Guerin v. Pointe Coupee Parish Nursing Home*, M.D.La. 2003,
    246 F.Supp.2d 488 — 3, 11

*Markowitz v. Northeast Land Co.*, 906 F. 2d 100, 103 (3rd Cir. 1990) — 2

*Prairie State National Bank v. United States*, 164 U.S. 227 (1896) — 7, 8

*Schrob v. Catterson*, 948 F. 2d 1402, 1405 (3rd Cir. 1991) — 2

**STATE CASES**

*Carello v. Price WaterhouseCoopers, LLP*, 2002 WL 1454111
    (Del. Super. 2002) — 2, 5, 9

*Danforth v. Acorn Structures, Inc.*, 608 A. 2d 1194 (Del. Super. 1992) — 6, 9, 10, 11

*Guardian Construction v. Tetra Tech Richardson*,
    583 A.2d 1378 (Del. Super. 1990) — 5, 6, 8, 9, 10

*K & K Developers, Inc. v. McCann, Inc.*, 1996 WL769215 (Del. Super. 1996) — 9

**FEDERAL RULES**

Fed. R. Civ. P. 56(b) — 1, 3, 11

## TABLE OF AUTHORITIES-Continued

|  | PAGE |
|---|---|
| *Fed. R. Civ. P.* 56(c) | 2 |
| *Fed. R. Civ. P.* 56(e) | 2 |
| *Fed. R. Civ. P.* 12(b)(6) | 1, 2, 3 |
| *Fed. R. Civ. P.* 12(b) | 2 |

**TREATISES**

| | |
|---|---|
| *Restatement of Torts 2d*, § 552 | 1, 3, 4, 5, 9, |
| 11 James Wm. Moore et al., *Moore's Federal Practice* (3d ed.2002) | 2 |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **RLI INSURANCE COMPANY,** :<br>:<br>**Plaintiff,** :<br>:<br>vs. :<br>:<br>**INDIAN RIVER SCHOOL DISTRICT,** :<br>**EDIS COMPANY, AND** :<br>**BECKER MORGAN GROUP, INC.,** :<br>:<br>**Defendants.** : | C.A. NO. 05-858 JJF |

**PLAINTIFF RLI INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS ANSWER TO**
**DEFENDANTS EDIS COMPANY AND BECKER MORGAN GROUP, INC.'S**
**JOINT MOTION TO DISMISS THE COMPLAINT OF PLAINTIFF**

Plaintiff, RLI Insurance Company ("RLI" or "the Surety"), by its undersigned attorneys, Harry R. Blackburn & Associates, P.C., hereby answers Defendants, EDiS Company ("EDIS") and Becker Morgan Group, Inc.'s ("BMG") Joint Motion to Dismiss the Complaint, or in the alternative Summary Judgment pursuant to Rules 12(b)(6) and 56(b), and respectfully request that the same be denied for the following reasons.

**I.    PROCEDURAL BACKGROUND**

On December 12, 2005, Plaintiff, RLI Insurance Company filed a Complaint against Indian River School District, BMG and EDIS. In the Complaint, RLI alleged negligent misrepresentation claims pursuant to the Restatement of Torts Section 552 against both BMG and EDIS. On January 27, 2006, BMG and EDIS filed a Joint Motion to Dismiss the Complaint, or in the alternative Summary Judgment pursuant to Rules 12(b)(6) and 56(b), seeking dismissal of Counts IV and V of Plaintiff's Complaint with prejudice. Plaintiff hereby responds to Defendants' Motion seeking denial thereof in its entirety.

1

## II. FACTS

Plaintiff hereby incorporates its Complaint as its statement of facts necessary to be known for this Honorable Court to rule on Defendants' Joint Motion to Dismiss.

## III. LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint's allegations are construed favorably to the pleader, and the court must accept all of the plaintiff's factual allegations and draw therefrom all reasonable inferences. *Schrob v. Catterson*, 948 F. 2d 1402, 1405 (3rd Cir. 1991); *ALA, Inc. v. CCAIR, Inc.* 29 F. 3d 855, 859 (3rd Cir. 1994). Thus, the court will only grant a Rule 12(b)(6) motion if the non-moving party cannot prevail legally under the facts alleged. *Markowitz v. Northeast Land Co.*, 906 F. 2d 100, 103 (3rd Cir. 1990). In the present case, however, Defendants have attached an affidavit to their Joint Motion to Dismiss. Courts will normally treat this type of motion as one for summary judgment. *See*, e.g., *Carello v. Price WaterhouseCoopers, LLP*, 2002 WL 1454111 (Del. Super. 2002) (attached to this Memorandum as Exhibit 1) and Fed. R.Civ. P. 12(b) (providing that a motion to dismiss shall be treated as one for summary judgment if "matters outside the pleadings are presented to and not excluded by the Court").

Summary judgment is granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the facts in a light most favorable to the non-moving party. *Groman v. Township of Manalapan*, 47 F. 3d 628, 633 (3rd Cir. 1995). A court "reviews the summary judgment motion and response papers and seeks to determine whether the record reveals a disputed factual issue material enough to require a trial and fact finder determination…" 11 James Wm. Moore et al., *Moore's Federal Practice* §§ 56.11[5] [a], at 56-108 (3d ed.2002). A "nontrivial factual dispute created by the non-movant will usually bar summary judgment so long as the contested facts are material, even if the non-movant's support is considered weak by the court." *Id.,* §§ 56.11[7][b], at 56-124.

Rule 56(e) further provides that the adverse party in a motion for summary judgment has no burden unless the initial motion for summary judgment is supported pursuant to the Rule. The burden of demonstrating an absence of material fact remains with the moving party *regardless* of which party would have the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Federal Courts have held that if the moving party for summary judgment does not meet its initial burden, the opposing party is not obligated to put forward any additional evidence at all. *Earwood v. Norfolk Southern Ry. Co.*, 845 F.Supp. 880 (N.D.Ga.1993); *See also*, *Guerin v. Pointe Coupee Parish Nursing Home*, M.D.La.2003, 246 F.Supp.2d 488 ("If the moving party fails to meet its initial summary judgment burden, the motion must be denied, regardless of the non-movant's response."); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).

### IV.    SUMMARY OF ARGUMENT

Plaintiff RLI Insurance Company respectfully requests that this Honorable Court deny Moving Defendants' Joint Motion to Dismiss, or in the alternative Summary Judgment for the following reasons, which are well supported by the facts and Delaware state and federal law:

    A.    Defendants have not even met their initial burden under either Fed. R. Civ. P. 12(b)(6) or 56(b).

    B.    Plaintiff has sufficiently pleaded all elements of negligent misrepresentation against Defendants in the Complaint under the Restatement of Torts 2d, § 552 as adopted in Delaware.

    C.    The Economic Loss Doctrine does not apply to the present case under the Negligent Misrepresentation Exception well recognized under Delaware law.

### V.    RLI HAS SUFFICIENTLY PLEADED NEGLIGENT MISREPRESENTATION UNDER THE RESTATEMENT OF TORTS 2d § 552.

Defendants concede that the applicable standard of the tort of negligent misrepresentation in Delaware lies in Section 552 of the Restatement (Second) of Torts. That section, in pertinent part provides that:

> (1) One who, in the course of business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others *** is subject to liability for pecuniary loss caused to [those others] by their justifiable reliance ***
>
> (2) *** the liability is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance [the information supplier] θ·θ·θ· knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [the information supplier] knows that the recipient*** intends [the information to influence]. *Restatement (Second) of Torts §§ 552 (1977).*

In paragraphs 10, 12 and 13 of their Joint Motion, Defendants contend that RLI has not pleaded Defendants' intent to induce the Surety, or RLI's reliance on, or any pecuniary loss as a result of, Defendants' negligent misrepresentations. To the contrary, RLI has sufficiently pleaded reliance (and foreseeability thereof) on defendants' false statements during the *continued performance* of RLI's obligations under the bond irrespective of whether the bond was issued before the Defendants' negligent misrepresentations. RLI relied upon the Owner and its agents to pay its principal, McDaniel only for the value of the work performed and to issue no payments to anyone other than RLI's principal for work performed under the principal's construction contract with the Owner. See, e.g., Plaintiff's Complaint ¶ 19. The Bond issued by RLI incorporated the terms of the principal's contract with the Owner, and the terms of the contract became additional provision of the bond. See, e.g., Plaintiff's Complaint ¶s 10 and 12. Plaintiff RLI has alleged that the Defendants made statements in connection with the principal's work and progress, and that RLI was continuing to perform its duties under the Bond, despite its right to be discharged therefrom under the facts concealed by the Defendants. See, e.g., Plaintiff's Complaint ¶s 20(l), 23, 24, 25, 27, 30 and 31. RLI could have stepped in and protected its rights

4

under the Bond if it knew that its principal was not performing the work properly. RLI relied upon the Defendants' misrepresentations in continuing to perform its obligations of financing its principal. See, e.g., Plaintiff's Complaint ¶s 54 and 58 (RLI "relied on [Defendants] to properly perform [their] contractual obligations and supply accurate information on the project. . ."). RLI similarly relied upon Defendants' payment certifications, and such reliance and resulting pecuniary losses to RLI were foreseeable by the Defendants. See, e.g., Plaintiff's Complaint ¶s 53 and 57 (Defendant[s]. . .supplied false information *for the guidance of* the Surety, RLI. . .") (emphasis supplied).

Defendants further imply that RLI has not pleaded any pecuniary loss as a result of its reliance on Defendants' misrepresentations. To the contrary, RLI has alleged the particular pecuniary loss suffered as a result of Defendants' misrepresentations and during the *continued performance* of RLI's obligations under the bond, irrespective of the date that the bond was issued. *See, e.g.,* Plaintiff's Complaint ¶s 34 (loss of RLI's collateral), 35 (a) through (e) (costs of investigation, inspection, attorneys fees, project management and monies advanced to the principal), 55, and 59 (same). On these bases alone, Defendants' motion must be denied.

## VI. RLI'S CLAIMS OF NEGLIGENT MISREPRESENTATION UNDER THE RESTATEMENT OF TORTS 2d § 552 ARE NOT BARRED BY THE ECONOMIC LOSS RULE.

Under Delaware case law and the Restatement of Torts 2d, § 552, adopted in Delaware, the Economic Loss Doctrine (ELD) does not apply to the present case, which falls under the Negligent Misrepresentation Exception to the ELD. The Delaware courts have specifically recognized the right of a contractor and any other party to bring an action for a negligent misrepresentation action against the owner and/or the owner's agents where the owner's agent knows his failure to provide correct information will be relied upon by others. *See Guardian Construction v. Tetra Tech Richardson*, 583 A.2d 1378 (Del. Super. 1990); *see also*, *Carello v. Price Waterhouse Coopers Ltd.*, 2002 WL 1454111 (Del. Super. 2002) (attached to

5

this Memorandum as Exhibit 1)[1]. In *Guardian*, *supra*, the general contractor had contracted with the Owner, the State of Delaware, Department of Natural Resources and Environmental Control to make certain improvements to the Augustine Breach breakwater structure. After commencing work on the project, the general contractor and the subcontractor discovered that the tidal heights and project benchmark had been miscalculated by the design engineer. The general contractor and subcontractor had relied on the design engineer's plans and specifications to formulate their bids for the project. The general contractor and the subcontractor contended that the miscalculations caused them to incur additional costs for labor and materials and to lose their anticipated profits for the construction project. The general contractor and subcontractor filed an action against the design engineer for negligent misrepresentation, negligence and breach of contract. The design engineer filed a motion for summary judgment. The Superior Court allowed the contractors to sue the design engineer for negligence and negligent misrepresentation but not breach of contract.

The Superior Court in *Guardian* concluded that "privity of contract is not an indispensable prerequisite to the recovery of economic damages in negligence cases with the parameters of Section 552 of the Restatement." The Court further held that if the design engineer negligently obtained and communicated incorrect information which it knew and intended was for the guidance of the contractors, and knew that the contractors would rely on the information in calculating their bids, the design engineer would be liable for foreseeable economic losses as a result of the negligently supplied information. Since the design engineer knew the contractors would rely on the information the design engineer provided, the design engineer had a duty to supply correct information to the contractors, whether or not there was privity of contract between the design engineer and the contractors. *Id.*

---

[1] Contrary to the Defendants' contention in paragraph 7 of their Joint Motion to Dismiss, this well recognized exception to the ELD is not <u>limited</u> to "the surveyor error context." Footnote 1 in *Danforth v. Acorn Structures, Inc.*, 608 A. 2d 1194 (Del. Super. 1992) only recognizes that the facts of *Guardian* case <u>involved a surveyor error</u>. See, Footnote 1, *Danforth*, *supra*, at 1195.

In the present case, the Owner's representatives, Defendants EDIS, as construction manager and co-administrator, and BMG, as architect and co-administrator, provide information to the Owner regarding the status of the project, problems which have been encountered and their perspective on the causes of those problems. Both EDIS and BMG had the best grasp on the status of the project from the Owner's perspective, and were thus best able at providing information on the quality of the principal's work and the latter's ability to complete the project satisfactorily. RLI relied on this information, through the Owner, and such reliance was foreseeable. BMG and EDIS had the contractual responsibility to accurately represent and certify that payments should issue to the principal only if the work was performed according to the contract. RLI's decisions on how to proceed and its ultimate losses depended ultimately on receiving accurate information from these Defendants. Thus, both promptness and quality of the information provided by the Defendants was critical. Additionally, the General Indemnity Agreement provided how RLI's rights would be enforced in the event of the principal's default. Those rights could not be exercised due to the Defendants' lack of disclosure of accurate information regarding RLI's principal, McDaniel. Under the terms of the bond itself, RLI must be afforded an opportunity to step in and perform for its principal, or else it will be relieved of its obligations, as in the present case.

RLI has a complete defense to liability under the bond because the facts which were known to the Defendants and unknown to RLI, which the Defendants had reason to know were not known to RLI, increased RLI's risk and impaired its collateral. See, e.g., *Prairie State National Bank v. United States*, 164 U.S. 227 (1896); *Fidelity & Deposit Company v. Agnew*, 152 F. 955 (3rd Cir. 1907). Moreover, the Defendants could foresee RLI's reliance on their representations and had adequate time over a two year period to disclose those facts but failed to do so. In the present case, both EDIS and BMG had unique access to material information in their control and affirmatively created an erroneous impression for RLI through their certifications for payment.

7

Moreover, EDIS and BMG, both moving Defendants, clearly knew that RLI would rely upon the Owner and its representatives to comply with the terms of the contract. The Owner has a continuing duty under the Bond to protect RLI's collateral. *Prairie State National Bank v. United States*, *supra* (holding that surety has an equitable interest in the collateral held by the owner as security for the principal's obligation; the owner's overpayment of contract funds constitutes a release of that security which impairs the surety's subrogation rights to those funds); *see also Fidelity & Deposit Company v. Agnew*, *supra*, in which the court found that where a building contracts' provision that the contractor should be paid as the work progressed according to the amount of materials furnished or work performed upon estimates made by the architect,

> "whether a percentage is to be retained whether the whole is done or not, redounds to the benefit of a surety or guarantor of the party who is to fulfill the contract; and upon payment being made in disregard of it, there is such a departure from the contract upon which the undertaking of the surety or guarantor is based that he is released. *Id.* at 956.

In *Agnew*, an overpayment was made above the contract price, and the court held that the prejudice to the surety was so manifest that it operated to discharge it as a matter of law. Id. Thus, premature and overpayments made by the Owner based on Defendants EDIS and BMG's negligent misrepresentations regarding the work performed harmed RLI's access to remaining contract funds and jeopardized RLI's rights to look to collateral which would otherwise be available to offset any loss incurred by reason of claims made on the bond. The Owner's obligation to protect RLI's collateral is performed according to the information provided to it through its representatives, EDIS and BMG, and the latter two parties possess a continuing responsibility to provide prompt and accurate information concerning the principal's work and progress. RLI relied on Defendants' misrepresentations and payment certifications, and such reliance and resulting pecuniary losses to RLI were foreseeable.

Applying *Guardian*, *supra,* to the instant case, the Defendants supplied information, which it knew the Owner and RLI would rely upon in performing their obligations under the

8

contract and the bond. RLI relied on this incorrect information and suffered economic losses as a result. Under *Guardian* and the Restatement of Torts 2d, § 552, the ELD does not apply to the present case since it is clear that RLI did rely on the professional competence of the project's manager, EDIS, and design professional, Becker Morgan to provide prompt and accurate information concerning its principal, McDaniel. Both Defendants' negligence led to the loss of collateral of RLI due to improper certifications of pay requests, premature and overpayments.

The holding of Guardian, *supra,* and the Restatement of Torts 2d, § 552 have been followed in a long line of Delaware Superior Court cases. *See, e.g.*, *K & K Developers, Inc. v. McCann, Inc.*, 1996 WL769215 (Del Super. 1996) (attached to this Memorandum as Exhibit 2) ("If the defendants failed to provide reasonable care in supplying the information for the guidance of others, such as Plaintiff, the defendant would be liable for the pecuniary loss proximately caused to Plaintiff by it justifiable reliance upon the information." *Id.* at 2). *See also*, *Carello, supra*, where the defendant's motion for summary judgment was denied and the plaintiffs were permitted to sue a firm for negligent misrepresentation with whom the Plaintiff had no contract, where Plaintiffs had relied upon those statements in determining whether or not to sell their business to the audited company. The Delaware Superior Court in *Carello* followed *Guardian,* and found the Restatement to be a "sensible and modern approach to the potential consequences of imposing unlimited negligence liability on third parties with whom there is no privity of contract and where the only harm alleged is economic in nature." *Id.*

Defendants BMG and EDIS rely solely on *Danforth v. Acorn Structures, Inc.*, 608 A. 2d 1194 (Del. Super. 1992) to support their motion and their contentions that Plaintiff's negligent misrepresentation claims under the Restatement of Torts (Second) Section 552 are barred by the ELR. That case is clearly distinguishable from the present action in many respects. First, the plaintiff in *Danforth* was a *consumer* relying on negligently supplied information regarding house-building kits, seeking replacement costs for parts of a house that began to rot but not claiming damages to person or property. Here, the court held that the plaintiff consumer had adequate products liability theories for purely economic loss, such as express or implied

9

warranty law, and remanded the case for further proceedings. *Danforth v. Acorn Structures, Inc.*, 608 A. 2d 1194, 1195 (Del. Super. 1992). By contrast, the *Guardian* case involved, as here, a construction project wherein the plaintiff contractors sued a design engineer, similar to BMG as the instant project's design architect. The Court denied the defendants' motion for summary judgment, noting that the plaintiff's use of the negligently supplied information was the very aim of the transaction between the parties. In the present case, BMG and EDIS were retained by the Owner specifically to provide it information concerning the progress of the principal and the project, as well as accurate certifications for payment, and not to merely provide equipment or materials for the project. Finally, Plaintiff RLI, like the plaintiff in *Guardian*, has no other viable remedy against the Defendants due to its lack of privity with them. See, *Danforth*, *supra,* cited by the Defendants ("[W]e find that the economic loss doctrine is especially suited to cases where privity of contract *doe*s exist.") *Id.* at 1200. (emphasis supplied). Under *Danforth* itself, therefore, the Defendants fare no better with the Affidavit provided by Theodore Dwyer attached to their Joint Motion (i.e., stating a *lack* of contractual relationship between the Defendants and RLI). Thus, the Defendants' factual allegation of lack of contractual privity, even if undisputed, could not possibly be material so as to warrant summary judgment in their favor.

Moreover, Defendants do not argue anywhere in their Motion that either or both Defendants were not in the business of, or possessed duties regarding supplying information. The Court in *Danforth* specifically noted that the negligent representation exception to the ELD applied in cases involving defendants who were "information" providers. Plaintiff RLI has alleged in its Complaint that it had continuous contact and communications with the Defendants throughout the term of project and that it relied on those communications in executing its continued obligations under the bond. See, e.g., Plaintiff's Complaint ¶ 20 and 27. In this regard, the Defendants possessed a special business relationship with RLI. The Defendants, as co-administrators of the construction project *clearly* provided information concerning the principal's work and progress at the project. Their very role in the project as design professional, manager and administrators necessitates the communication of accurate information to the Owner

concerning the work of its principal, who in turn will use this information to establish payments or declare the principal in default. The Owner further uses this information to discharge its duties to the Surety, RLI, to protect the contract balances held for the latter's benefit. In turn, RLI, as the Surety, invariably relies upon the same information in discharging its obligations to the Owner under the bond. The Defendants, as information suppliers, provided negligent misrepresentations in the form of certification payments which resulted in premature and overpayments to the principal, and thereby caused RLI pecuniary losses. By contrast, the defendants in *Danforth* were merely product suppliers, not information suppliers. Since the Defendants BMG and EDIS have the burden in proceeding under Rule 56(b), Plaintiff RLI must prevail against their motion because Defendants' initial burden has not even been discharged. *See e.g.*, *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488 (M.D.La.2003) ("If the moving party fails to meet its initial summary judgment burden, the motion must be denied, regardless of the non-movant's response."). On this basis alone, Defendants' motion must be denied in its entirety.

**VII.   CONCLUSION**

For all of the foregoing reasons, Plaintiff, RLI Insurance Company respectfully requests that Defendants' Joint Motion to Dismiss, or in the alternative, Motion for Summary Judgment, be denied in its entirety.

                                                ABER, GOLDLUST, BAKER, & OVER

                                                /s/ Perry F. Goldlust
                                                PERRY F. GOLDLUST (DSB #770)
                                                702 King Street, Suite 600
                                                P. O. Box 1675
                                                Wilmington, DE  19899-1675
                                                (302) 472-4900
                                                pgoldlust@gablawde.com
                                                *Attorneys for Plaintiff, RLI Insurance Company*

DATED:        March 8, 2006

Of Counsel:
HARRY R. BLACKBURN, ESQUIRE
JOHN HILSER, ESQUIRE
HARRY R. BLACKBURN & ASSOCIATES, P.C.
1528 Walnut Street, 9th Floor
Philadelphia, Pa. 19102
(215) 985-0123

Client/Blackburn/RLI Insurance/Memo of Law Motion to Dismiss