# EXHIBIT 2

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 769215 (Del.Super.)
**(Cite as: 1996 WL 769215 (Del.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.

Superior Court of Delaware.
Re K & K DEVELOPERS, INC.
v.
MCCANN, INC.
**C.A. No. 92C-04-042.**

Submitted Aug. 15, 1996.
Decided Dec. 24, 1996.

Decision After Trial. Judgment For Defendant on
Plaintiff's Complaint and for Plaintiff on Defendant's
Counterclaim.

Clifford B. Hearn, Jr., Clifford B. Hearn, Jr., P.A.,
Wilmington.

John W. Paradee, Prickett, Jones, Elliott, Kristol &
Schnee, Dover.

RIDGELY, President Judge.

Counsel:

**\*1** This is a civil action brought by K & K Developers,
Inc. ("Plaintiff") against McCann, Inc. ("Defendant")
for damages alleged to have been caused by
Defendant's negligence, breach of implied warranty and
breach of contract in preparing plans for and the
staking of a housing development known as Eagles
Chase in Smyrna, Delaware. Defendant denies liability
and has counterclaimed for fees for survey engineering
services rendered which Plaintiff has admitted but
refused to pay because of its own claims.

After a three-day non-jury trial and post-trial
arguments, this is the Court's decision on the merits.
For the reasons which follow, the Court finds that the
delays and costs claimed by Plaintiff were not

proximately caused by Defendant with one exception
which serves to offset Defendant's counterclaim in full.

I. FACTS
In October of 1989 Defendant contracted with Larry
McAllister to provide surveying engineering services
for a housing development for 107 townhomes to be
known as Eagles Chase on land Mr. McAllister owned
in Smyrna, Delaware. During the course of this design
work Defendant's president and chief operating officer,
Donald McCann, received directions from Mr.
McAllister who consulted with prospective developers
of the project. These prospective developers were
initially George Chabott and Leroy Klein, and
ultimately Harold Kushin and Edward Kanin. Messers.
Kushin and Kanin incorporated the Plaintiff to build
and develop Eagles Chase.

Various conditions for approval of the plans were
imposed by the Town of Smyrna, the Delaware
Department of Transportation ("DELDOT") and other
regulatory agencies. The Town of Smyrna gave final
approval of the plans for Eagles Chase on March 27,
1991. On April 7, 1991 the property was purchased by
Herman Lefko pursuant to his financing arrangement
with Plaintiff. Plaintiff was obligated to pay Mr. Lefko
a sum for the release of each lot plus interest at 13%
per year on the $325,000 mortgage on the property.

To reduce development costs Plaintiff initially chose
not to employ Defendant or any other
surveying-engineering firm for on-site supervision
during the construction. Rather, Plaintiff contracted
with Defendant on April 17, 1991 for limited staking
services on the project.

On May 10, 1991 Plaintiff contracted with Ray Savage
& Company for site contractor services. During the
course of the work Plaintiff became dissatisfied with
Defendant and terminated Defendant's services. Work
was not completed until May 29, 1992. As will be
explained *infra* in the context of each claim, none of
the delay or alleged additional costs with the exception
of the catch basin problem was proximately caused by
Defendant. Although the amount claimed by Defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 2
Not Reported in A.2d, 1996 WL 769215 (Del.Super.)
**(Cite as: 1996 WL 769215 (Del.Super.))**

for surveying fees of $2,638.51 has been admitted by Plaintiff, I find that Plaintiff's proven damages offset this counterclaim. Further facts will be recited in the context of the specific claims which I will discuss.

## II. THE LEGAL STANDARD

 *2 Plaintiff characterizes its claims as a mixture of a tort claim and a contract and warranty breach.

 The parties agree that the absence of privity between Plaintiff and Defendant is not fatal to the Plaintiff's claims of negligence. *Hodges v. Smith*, Del. Super., 517 A.2d 299 (1986); *Guardian Constr. v. Tetra Tech Richardson*, Del. Super., 583 A.2d 1378 (1990). On the facts presented, it is clear that K & K Developers, Inc. was a foreseeable plaintiff. Thus, if Defendant failed to exercise reasonable care in supplying information for the guidance of others, such as Plaintiff, it is subject to liability for pecuniary loss proximately caused to Plaintiff by its justifiable reliance upon that information. *See* Restatement (second) of Torts § 522 (1977).

## III. PLAINTIFF'S CONTENTIONS

 Plaintiff has alleged the following acts of negligence on the part of Defendant:

 (a) The Defendant's plans for street design were improperly prepared and needed to be redesigned with much less thickness causing delay in the project due to the time required for redesign and additional governmental approvals.

 (b) The Defendant's plan for sanitary sewer was improperly prepared at excess depth requiring those plans to be redesigned at a higher depth resulting in a delay of the project due to redesign time and additional governmental approvals.

 (c) The Defendant's plans included an error of 5 feet in the location of a deceleration lane off Glenwood Avenue (Delaware Route 300), which was actually 10 feet but was marked 5 feet on the plans. This resulted in substantial increased costs for the Plaintiffs and in delay of the project due to redesign time, labor and materials, and additional governmental approvals.

 (d) The Defendant's plans provided for a water line under Glenwood Avenue of a type not permitted by the Delaware Department of Transportation whose

requirements are contained within a published and available manual. The negligence of the Defendant resulted in delay of the project due to additional governmental approvals.

 (e) The Defendant's plan provided for a manhole which was approximately five feet in height at an intersection. The negligence of the Defendant resulted in delay of the project due to redesign and costs.

 (f) The Defendant's plan provided for a road, High Street, which was improperly designed and resulted in the necessity of redesigning it in the field and replacing many truckloads of fill. This caused costs of redesign, and time, labor and materials involved in the refilling.

 (g) The Defendant failed to take into consideration an existing storm sewer line which could have been located by reviewing the available county maps. As a result of Defendant's negligence, the Plaintiffs had to place the sewer line for each house above the existing storm sewer line causing each house to be raised, then running two feet or so of more concrete block for many of the units, as well as additional fill and redesign time, delays and redesign costs.

 *3 (h) The Defendant's plan resulted in a sewer lateral station being 15 feet too far to the east of seven housing units. Due to this negligence each sewer line for each house on the north side of High Street had to be redesigned resulting in increased costs due to delay, redesign costs and additional materials and labor.

 (i) The Defendant's plan incorrectly placed a fire plug in the middle of a storm drain, resulting in redesign costs and project delay.

 (j) The Defendant's plan had a street (High Street) which was too high causing Plaintiff to redesign Eagle's Way and a portion of Green Way with redesign costs and delays in the project, and substantial increased need for fill and extra concrete block for each house and full basements in some houses.

 (k) The Defendant's plan placed a catch basin in the wrong place which caused the Plaintiff to redesign and to install a more expensive and larger catch basin.

 As breaches of implied warranty and contract Plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 769215 (Del.Super.)
**(Cite as: 1996 WL 769215 (Del.Super.))**

claims Defendant:
> (1) failed to exercise proper supervision of the project;
> (2) failed to coordinate the work as needed;
> (3) failed to cooperate with the site contractor;
> (4) failed to properly stake in the field and to perform pursuant to its agreement with the Plaintiff;
> (5) failed to recognize the errors and problems in the plans that it had prepared and to make appropriate adjustments, amendments or corrections.

## IV. DISCUSSION

Plaintiff's first claim that attributes delay to Defendant because of redesign of the thickness of the street overlooks the fact that Defendant was expressly directed by the Town Engineer to conform the thickness of the street to certain specifications. After several meetings, the last of which was February 1, 1991 consent was given for a different design for road thickness. No time constraints were placed on this aspect of the design and, even if concessions should have been forthcoming sooner, Plaintiff did not commence development until May 10, 1991. I find no negligence by Defendant which proximately caused damages.

Plaintiff next claims that the sanitary sewer was designed at an excess depth which required the plans to be redesigned with the sewer at a higher level. The original design was made in consultation with the first prospective developers to accommodate an existing force main at a four foot depth. Mr. McAllister later asked Defendant to raise the design of the sewer lines which Defendant advised against because laterals to the townhomes may hit other utilities. Mr. McAllister, after conferring with Mr. Kushin, told Defendant to do it anyway because it was cheaper to adjust the laterals. In any event, the revised plan was completed February 12, 1991 which was before Plaintiff finalized financing or commenced the development of the project. I find no negligence by Defendant which proximately caused damages.

Plaintiff claims these plans included an error of five feet in the location of the deceleration lane off of Glenwood Avenue. However, any additional costs and delays associated with moving utility poles and the construction of the deceleration lane were due to a failure to conform to the plans rather than an error in them. The deceleration lane was designed to be twelve feet. The existing roadway was sixteen feet which allowed Defendant to design based on using four feet of the existing roadway. Only twelve feet of roadway was required by DELDOT. Instead Plaintiff left the sixteen foot roadway as it was and added the twelve foot deceleration lane to the west of it. While the plans contemplated moving the existing utility pole five feet, this change by Plaintiff required a move of nine feet which proximately caused all the additional expenses claimed. I find no negligence by Defendant which proximately caused damages.

*4 Plaintiff claims the Glenwood Avenue water line was of a type not permitted by DELDOT. The plans called for what is known as an "Ogden cut" and the plans required all materials and workmanship meet Division of Highways standards and specifications dated July 1985. While an installation was attempted using another method on the instructions of regulators, ultimately the water line was installed as Defendant designed it and as regulators had earlier approved. I find no negligence by Defendant which proximately caused damages.

Plaintiff's next claim of negligence is that the plans provided for a manhole which was five feet in height at an intersection. It is undisputed that this was an error whereby "27.20" was written instead of "22.20" as a design elevation for the manhole. This error constitutes negligence. However, given the surrounding measurements on the plans this error should have been and was apparent to the site contractor. Thus, justifiable reliance by Plaintiff has not been shown. Moreover, I am not convinced this mistake delayed the completion of the overall project.

Plaintiff's next claim of negligence relates to the cut on 1600 feet of High Street and the placement of 146 truckloads of fill on this road which was more fill than the site contractor anticipated. However, the site itself had more than enough fill which could have been used for this purpose because of the stripping of 2,662 cubic yards of top soil from other areas of the development. Instead of using this topsoil, additional fill was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 769215 (Del.Super.)
**(Cite as: 1996 WL 769215 (Del.Super.))**

purchased. Even assuming negligence, Defendant has shown a failure by Plaintiff to mitigate damages and that defeats this claim.

Plaintiff also claims that Defendant failed to take into consideration the existing storm sewer line and as a result Plaintiff had to place the laterals, which are the sewer lines for each house, above the existing storm sewer line. As a consequence each house had to be raised. The facts are that Defendant originally designed the sewer line at a deeper depth to accommodate the existing storm sewer and changes were made against his advice. Plaintiff assumed that risk of adjusting the laterals when it ignored Defendant's advice on the depth of the sanitary sewer and instructed him, through the owner, to raise the line. I find no negligence by Defendant which proximately caused damages.

Plaintiff next claims negligence due to a sewer lateral station being fifteen feet too far to the east of seven housing units. However, neither the design of this station nor the staking of it were within the scope of the Defendant's responsibilities.

Plaintiff claims the plan incorrectly placed a fire hydrant in the middle of a storm drain and at trial there was testimony that it was incorrectly marked out. I do not find in the plans any such placement as alleged. Further, Defendant was not responsible for the staking of fire hydrants under his contract with Plaintiff.

Plaintiff next claims that redesigns of Eagle's Way and a portion of Green Way caused delays in the project and the need for fill and extra concrete block for each house. I have already found a failure to mitigate damages on the need for fill. Furthermore, the houses were built lower than Defendant had designed and no additional cost for block is attributable to Defendant.

**\*5** The final claim of negligence pertains to the placement of a catch basin which was redesigned to match the placement of storm sewer piping. Whether due to errors in design or staking, Plaintiff has established a failure to meet the standard of care by demonstrating that piping installed pursuant to the plans did not match the location of the catch basin. This proximately caused a redesign, additional materials and

a two week delay. I infer from all of the evidence that these damages equal and offset the amount of Defendant's counterclaim.

I find no basis to award damages for breaches of implied warranty and contract. Plaintiff declined to hire Defendant for on-site supervision. Ironically, this expense saving measure cost more than it saved because with such supervision it appears that most of the additional expenses claimed could have been avoided.

## V. CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendant on Plaintiff's complaint with the exception of the negligence claim pertaining to the catch basin. On that claim judgment is entered in favor of Plaintiff but the amount of that award is offset by Defendant's counterclaim. Accordingly, each party is assessed the costs of their respective complaint and counterclaim.

IT IS SO ORDERED.

Not Reported in A.2d, 1996 WL 769215 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.