# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RLI INSURANCE COMPANY | Civil Action No.: 05-858-JJF |
| Plaintiff, | |
| vs. | |
| INDIAN RIVER SCHOOL, DISTRICT, EDIS COMPANY, AND BECKER MORGAN GROUP, INC. | |
| Defendants. | |

**DEFENDANTS EDIS COMPANY and BECKER MORGAN GROUP, INC.'S
JOINT REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT OF
<u>PLAINTIFF, RLI INSURANCE COMPANY</u>**

| **TIGHE, COTTRELL & LOGAN, P.A.** | **TIGHE, COTTRELL & LOGAN, P.A.** |
|---|---|
| /s/ Paul Cottrell | /s/ Donald L. Logan |
| Paul Cottrell (DE ID No.: 2391) | Donald L. Logan, Esquire DE I.D. # 2604 |
| First Federal Plaza, Suite 500 | First Federal Plaza, Suite 500 |
| P.O. Box 1031 | P.O. Box 1031 |
| Wilmington, DE 19899 | Wilmington, Delaware 19899 |
| (302) 658-6400 | (302) 658-6400 |
| p.cottrell@lawtcl.com | d.logan@lawtcl.com |
| Attorney for Becker Morgan Group, Inc. | Attorney for EDiS Company |
| Dated: May 11, 2006 | Dated: May 11, 2006 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.       INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II       ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.       § 552 AND "PROFESSIONAL NEGLIGENT
               MISREPRESENTATION" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.       WHAT CONSTITUTES BEING IN THE
               "BUSINESS OF SUPPLYING INFORMATION"? . . . . . . . . . . . . . . . . . . . . . . . 5

        C.       DID EDIS OR BMG SUPPLY INFORMATION TO
               RLI FOR USE IN ITS BUSINESS TRANSACTION
               WITH THIRD PARTIES ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        D.       HOLDING THE LINE DIVIDING CONTRACT ALLOCATION
               OF RISK AND LIABILITIES IMPOSED BY TORT LAW . . . . . . . . . . . . . . . 12

III      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

APPENDIX A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

# TABLE OF AUTHORITIES

**CASES**

*2314 Lincoln Park West Condo. Assoc. V. Mann, Gin, Ebel & Frazier, LTD, et al.,*
136 Ill. 2d 302 (Supr. Ct. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8; 12; 13

*Carello v. Pricewaterhouse*, LLP,
2002 Del. Super LEXIS 180 (Del. Super. July 3, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 2; 4

*Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing, Inc.*,
2002 WL 1335360 (Del. Super. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4; 5; 6

*Danforth v. Acorn Structures, Inc.*,
608 A.2d 1194 (Del. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3; 8; 13

*Fidelity & Deposit Company, v. Agnew*,
152 F. 955 (3rd Cir. 1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fireman's Fund Ins. Co. v. SEC Donohue*, 1
76 Ill. 2d 160, at 169 (Supr. Ct. Ill., April 17, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . p.7 fn 5

*Guardian Construction Co. v. Tetra Tech Richardson*,
583 A.2d 1378 (Del. Super 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2; 3; 4

*Hodges v. Smith,,*
517 A.2d 299 (Del. Super. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*K&K Developers, Inc. v. McCann, Inc.,*
1996 WL 769215 (Del. Super. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2; p.4 fn 4

*Outdoor Techs. Inc. v. AllFirst Financial Inc.*, et al.,
2001 Del. Super LEXIS 166 (Del. Super. February 9, 2001) . . . . . . . . . . . . . . . . . . . . . . . 4

*Praire State National Bank v. United States*,
164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rose Heart, Inc. v. Ramesh C. Batta Associates, P.A.*,
1995 WL 562116 (Del. Super. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 4 fn 4

*Ruger v. Funk*,
1996 Del. Super. LEXIS 34 (Del. Super. January 22, 1996) . . . . . . . . . . . . . . . . . . . . . . . 4

*Tolan and Sons Inc. v. KLLM Architects, Inc.*,
308 Ill.App.3d 18, 241; 719 N.E.2d 288 (Ill. App.3d 1999) . . . . . . . . . . . . . . . . . . . . . . . . 5; 6; 8


**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


**UNREPORTED CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix A

I.    **Introduction**

Defendants EDIS Company ("EDIS") and Becker Morgan Group, Inc. ("BMG") filed their Joint Motion to Dismiss or in the Alternative for Summary Judgment on January 19, 2005. The Motion seeks judgment in favor of the EDIS and BMG on the basis that Plaintiff, RLI Insurance Company ("RLI"), is precluded by the Economic Loss Doctrine from maintaining a suit in tort to recover for purely economic losses, and that Sec. 552 of the Restatement (Second) of Torts is inapplicable because Delaware case law has limited the application of the exception to cases where the ultimate purpose of the contract was the supply of the information itself, as opposed to the construction of a tangible item.  Further, RLI has no basis in law to seek a bifurcation of the underlying contracts to sustain a claim based upon representations which are merely ancillary to those contracts.  Finally, should the Court see it necessary to not only expand the limits of Sec. 552, and allow the bifurcation of the underlying contract as well, RLI has not pleaded, nor could it do so, facts which would support a claim for Sec. 552 Negligent Misrepresentation

RLI argues that Sec. 552 is an exception to the application of the Economic Loss Doctrine and that it applies here.  By doing so, RLI requests this Court to overlook the current precedent in Delaware with regards to the narrowness of the exception and remove all limitations to the application of the exception – essentially nullifying the Economic Loss Doctrine.  Further, because RLI understands that it could not have actually relied upon any representation provided by EDIS or BMG when it entered into its Performance Bond Contract with the Contractor, RLI seeks to break new legal ground and requests that the Court bifurcate the underlying construction contracts so that it may claim it relied upon any representations which were ancillary to the

ultimate purpose of those contracts

Because current Delaware law only recognizes the application of §552 in a limited context, and because no sufficient legal basis exists for expanding that exception to include construction managers, architects or other design professionals not in the business of supplying information, this Court should dismiss RLI's Complaint and/or award summary judgment in favor of EDIS and BMG.

**II Argument**

**A.    § 552 and "Professional Negligent Misrepresentation"**

RLI relies upon three cases to assert that § 552 should be applied in this case to allow it to maintain its Negligent Misrepresentation claim against EDIS and BMG.  RLI argues that the Court in *Guardian Construction Co. v. Tetra Tech Richardson*, 583 A.2d 1378 (Del. Super 1990) accepted wholesale the exception to the Economic Loss Doctrine found in § 552 of the Restatement (Second) of Torts and that it held that anyone can sue "the owner and/or the owner's agents, where the owner's agent knows his failure to provide correct information will be relied upon by others." (*RLI's Memorandum of Law in Support of its Answer to Motions for Summary Judgement*, p. 5).  Further, RLI cites to *Carello v. Price Waterhouse Coopers, Ltd.,* 2002 WL 1454111 (Del. Super. 2002) and *K &K Developers, Inc. v. McCann, Inc.*, 1996 WL 769215 (Del. Super. 1996) for the proposition that this expansive reading of *Guardian* has been followed by a long line of Delaware Superior Court cases  (*RLI's Memorandum of Law in Support of its Answer to Motions for Summary Judgement*, p. 5-6; 9).

RLI's contention that *Guardian* shows that the negligent misrepresentation exception is not confined to surveyor errors is simply wrong.

The *Guardian* Court, following the rationale of the Court's earlier decision in *Hodges v. Smith,*, 517 A.2d 299 (Del. Super. 1986),[1] expressly adopted § 552 in order to allow the general contractor to maintain its negligence suit against the surveying engineer.[2] The *Guardian* Court recognized that the *Hodges* Court limited its holding to surveyor errors[3]; and, likewise, the *Guardian* opinion expressly limited its holding to the surveyor error context:

> *While it is not this Court's intention to state a general rule which applies to all professions in all situations*, the Court concludes that privity of contract is not an indispensable prerequisite to the recovery of economic damages in negligence cases such as this which fall within the parameters of § 552 of Restatement (Second) of Torts.(emphasis added)

*Guardian*, 583 A.2d at 1386 (Del. Super. 1990).

Even more convincing of the limited scope of the holding in Guardian is the Supreme Court's own interpretation of the case. In *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992), the Supreme Court stated:

> In *Guardian*, the Superior Court recognized an exception to the economic loss doctrine in the surveyor error context under Restatement (Second) of Torts (1977), § 552 (Information Negligently Supplied for the Guidance of Others) by allowing recovery for purely economic loss even though there was no privity of contract

*Danforth*, 608 A.2d at 1195, n1 (Del. 1992).

---

[1]"In *Hodges*, plaintiff land owners brought a negligence action for economic losses against land surveyors who negligently surveyed land purchased by them years after the survey was performed." *Guardian*, 583 A.2d at 1385 (Del. Super. 1990).

[2]The surveyor in *Guardian* had incorrectly measured the tidal heights and project benchmarks and included the incorrect measurements in plans submitted to DNREC (the "owner"). Those plans were utilized by prospective contractors who subsequently submitted incorrect bids due to the inaccurate survey. The contractor with the winning bid suffered increased costs to complete the project when the error was discovered and he was obligated to correct for the defect.

[3]"Although it appears no Delaware court has yet adopted the reasoning of Restatement (Second) of Torts, § 552 (1977), which would abolish the privity requirement in certain cases of negligent misrepresentation, the Court approves the extension of liability to foreseeable plaintiffs under these allegations of a survey error." *Guardian*, 583 A.2d at 1385, 36; (quoting, *Hodges*, 517 A. 2d at 301).

Since *Guardian,* only three professions other than surveyors have been found to be included within the purview of § 552, all of which are expressly in the business of supplying information. *See*, *Carello v. Pricewaterhouse*, supra, ( RLI conveniently fails to mention when it cites to *Carello v. Pricewaterhouse* that this case applies only to accountants). *See also*, *Outdoor Techs. Inc. v. AllFirst Financial Inc.*, et al., 2001 Del. Super LEXIS 166 (Del. Super. February 9, 2001) (relating to financial advisors). *See* also, *Ruger v. Funk*, 1996 Del. Super. LEXIS 34 (Del. Super. January 22, 1996) (relating to title searches). Within the construction context, as we know, the Courts have affirmatively applied § 552 in cases dealing with surveyor error.[4]

Given the language of the *Guardian* opinion, the Supreme Court's interpretation, and subsequent case law, the only safe assessment of the *Guardian* holding is that the proper application § 552 as an exception to the Economic Loss Doctrine is in part dependant upon the profession at issue, and whether that profession is in the business of supplying information.

In fact, the Delaware Superior Court held in *Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing, Inc.*, 2002 WL 1335360 (Del. Super. 2002) that "Delaware's narrow application and strict construction of § 552, has thus far held that for a plaintiff to invoke a negligent misrepresentation cause of action, two elements are required. First, the plaintiff must show that the defendant supplied information to the plaintiff for use in business transactions with

---

[4]*See*, *K&K Developers, Inc. v. McCann, Inc.* 1996 WL 769215 (Del. Super. 1996) (Defendant erroneously surveyed land pursuant to contract with landowner, which was subsequently relied upon by Plaintiff developers to their detriment. While the Court found § 552 and *Guardian* controlling, the Court granted summary judgment in favor of the engineer for various reasons, including lack of proximate cause, non-reliance, and failure on the part of the plaintiff to mitigate damages). *See also*, *Rose Heart, Inc. v. Ramesh C. Batta Associates, P.A.*,1995 WL 562116 (Del. Super. 1995) (Plaintiff developer brought suit against defendant Arial Data Reduction, Inc. alleging negligent misrepresentation in the defective creation of an aerial topographic manuscript utilized in the construction of a residential community. The court held that § 552 and Guardian applied, however, it granted summary judgment for the survey engineer on the basis that the plaintiff's reliance upon the information provided was unjustified).

third parties."*Christiana Marine Service Corp.,* 2002 WL 1335360 at *23, 24; see Restatement (Second ) of Torts § 552.  Further, the plaintiff "must also show that the defendant is in the business of supplying information." *Id.* at *25.

**B.      What Constitutes Being in the "Business of Supplying Information"?**

The *Christiana* Court discussed at length the importance of the second prong of the two part test enumerated above.  Whether the individual supplying the information is found to be in the business of supplying information is case dispositive.  Fortunately, the facts in *Christiana* clearly indicated that Texaco, a manufacturer and supplier of oil products, was not in the business of providing information.  *Id*. at *7.  However, the Court clearly recognized that there would be certain situations where, although information is supplied by one individual to another in the course of their commercial relationship, such information may be ancillary to the general purpose of that relationship.  In such cases, the represener could not be said to be in the business of supplying information, the exception would not apply and the Economic Loss Doctrine would prevent the plaintiff from maintaining an action in tort for purely economic losses.

The gravamen of the motion *sub judice* is whether the specific conduct undertaken by EDIS and BMG, the certification of payments to the contractor, constitutes conduct undertaken while in the business of supplying information.

The *Christiana Marine Services* Court adopted the rationale of an Illinois case, *Tolan and Sons Inc. v. KLLM Architects, Inc.*, 308 Ill.App.3d 18, 241; 719 N.E.2d 288 (Ill. App.3d 1999) when it decided that Texaco was not in the business of supplying information.  The *Christiana Marine Services* Court quoted *Tolan* noting, "a great many businesses exchange information as well as products, and where the information supplied is merely ancillary to the sale of a product

or service or in connection with the sale, defendant will not be found to be in the business of supplying information for the guidance of others in their business dealings." *Christiana Marine Services, Inc.* 2002 WL 1335360 at *7 (internal quotes omitted). The Court further cites *Tolan* and accepts the rationale that businesses "that supply tangible goods and/or non-informational goods or services . . . may exchange information, [but] the information relates only to the goods or services and, thus, is supplied incidental to the sale of the product." *Id.* at *7 (internal quotes omitted). The *Christiana* Court found the above to be a "fair interpretation of what it means to be in the business of supplying information for the purposes of a negligent misrepresentation claim." *Id.* at *8.

The facts in *Tolan* are almost identical to the case at bar. Tolan was a residential contractor who developed and constructed a townhouse complex. Defendant KLLM was an architecture firm in the business of supplying plans and specifications for residential and commercial projects. Tolan entered into a contract with KLLM for the preparation of plans and designs for the complex. When cracks formed in the foundations of some of the buildings, Tolan sued the Architects and numerous other design engineers claiming negligence in that they supplied allegedly defective plans and specifications. The Court in *Tolan*, in granting summary judgement in favor of the architect and many of the engineers, delineated the rule discussed above, which was accepted by the *Christiana* Court. The rationale being that when the substance of the work performed relates to the production of a tangible product – such as a building, and the supplying of information with regards to that is merely ancillary to the ultimate product, then any alleged defect in the conveyance of that information cannot serve as a basis for finding an

exception to the Economic Loss Doctrine.[5]

As we have seen above, Delaware cases in which the court has applied § 552 as an exception to the Economic Loss Doctrine were clear-cut examples of professions in the business of supplying information – meaning the ultimate product was the information itself. However, information concerning the certification of payment is merely ancillary to the ultimate purpose of the underlying contract, which in this case is not even the information itself but is the completion of a tangible item – the supply of a completely new structure.

RLI does not dispute the end result of the relationship between EDIS, BMG and the Owner was the construction of the Sussex Central High School Building(the "Project"). EDIS was hired to manage the project and BMG was hired to supply certain drawings, plans and specifications for the project. The 'information' supplied by EDIS and BMG to the Owner in this context was ancillary to the ultimate purpose, therefore, they can not be said to have acted while in the "business of supplying information." RLI, of course, concedes that it could not possibly have relied upon this information because information regarding design specifications was transferred prior to its involvement in the Project. However, RLI claims that liability may rest upon the alleged negligent certification of payments to the Contractor. By making this claim, RLI requests the Court to bifurcate the contractual relationship between EDIS, BMG and the Owner and find EDIS and BMG liable for representations they made which were ancillary to the ultimate purpose of the contracts between EDIS, BMG and the Owner, and which were not made with the intent to guide RLI.

---

[5] *See*, *Fireman's Fund Ins. Co. v. SEC Donohue*, 176 Ill. 2d 160, at 169 (Supr. Ct. Ill., April 17, 1997). "The appellate court correctly observed that this court, in determining whether the economic loss doctrine applies to a case of professional malpractice, focuses on the ultimate result of the professional's work."

The Illinois Court in *Tolan* dealt with the issue of bifurcation, and held that bifurcation of the claim was not reasonably justified given that any information imparted by the Architect or Engineers in that case were in furtherance of the ongoing construction project. *Tolan* states, the information was provided "at least in part, for the purpose of modifying, if necessary, the remaining structures to be built. We do not have a situation [...] where [the Architect and Engineer] were hired to evaluate the structures, apply their analytical expertise, and produce a report imparting information that would be used by [the Owner] in its business dealings with others." *Tolan and Sons Inc.*, 308 Ill.App.3d at 31. The Movants submit that the claims and facts alleged by RLI in the instant case mirror those under *Tolan*, and respectfully request this court to adopt the rationale of *Tolan* and refuse to find justification to bifurcate the claims. (Similar facts were also involved in *2314 Lincoln Park West Condo. Assoc. V. Mann, Gin, Ebel & Frazier, LTD, et al.,* 136 Ill. 2d 302 (Supr. Ct. Ill. 1990), a case which the Delaware Supreme Court cites in *Danforth v. Acorn,* 608 A.2d at 1196).

Wherefore, § 552 of the Restatement (Second) of Torts is inapplicable given the facts of this case and the Court should grant the Movant's Motion to Dismiss or in the Alternative for Summary Judgment because the Economic Loss Doctrine bars actions in tort for recovery of purely economic losses.

**C.     Did EDIS or BMG Supply Information to RLI for use in its Business Transactions with Third Parties?**

While RLI paraphrases the language of Sec. 552, it appears that RLI misunderstands the rule and a full recitation would best serve to clarify the Movant's argument for the Court.

-8-

Section 552 states:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Sec. 552 of the Restatement (Second) of Torts (1977).

RLI concedes that EDIS and BMG supplied information to the Owner regarding the quality of work completed by McDaniel Plumbing and Heating, Inc (the "Contractor"). RLI then asserts that this information was relied upon by the Owner to issue payment to the Contractor. RLI finally states that it in turn relied upon these payments made to the Contractor to continue in its belief that the Contractor was satisfactorily performing its obligations under the Construction Contract. It defies logic and understanding to construe the conceded relationship between the parties in an effort to give merit to RLI's claim that it relied upon information supplied by EDIS, BMG or the Owner given that RLI concedes that the full extent of its reliance amounts to continuing to believe, for at least a little while longer, that the Contractor was performing adequately under the Construction Contract.

A fair reading of the Rule's provisions makes it clear why the Rule has been applied in limited cases. In every case in which this rule has been applied by the Delaware Courts the

claimed negligent information was supplied with the specific intent to guide, at most, a limited group's decisions regarding a pending business transaction.[6] However, as Sec. 552 (2)(a) states, the respresenter must *intend or know* that the information being supplied will go to that specific individual or group. Further, the representer must *intend* that the recipients utilize the information in a specific or similar business transaction. Upon reading the Complaint *sub judice* in a light most favorable to RLI, there emerges no rational basis to claim that RLI would be within the limited group that EDIS and BMG's *intended*, or knew, information concerning certification of payment to the Owner would be supplied. Further, RLI must prove that EDIS and BMG *specifically intended* that their certification of payments would be relied upon by RLI. RLI cannot satisfy these requirements because information concerning the certification of payment at best was intended to be supplied solely for the benefit of the Owner, and because RLI concedes that the necessary business transaction, entering into the Performance Bond Contract with the Contractor, occurred prior to the complained of misrepresentations.

      RLI is attempting to muddy the waters, however, by claiming that it could have taken some action against the Contractor had it known earlier that the Contractor was not performing adequately under the terms of the Construction Contract. Further, RLI asserts that EDIS and BMG should have known that if they accurately represented to the Owner that the Contractor was allegedly performing inadequately, then RLI would rely upon that information to take action against the Contractor. This fascinating argument fails because Sec. 552 (2)(b) requires that

---

[6] For example, the surveyor supplies information to the owner so that the owner may pass that information along to prospective bidders. The prospective bidders rely upon the surveying information to define the scope of the project and determine an appropriate bid to submit. If the underlying survey is incorrect, the subsequent bid will be faulty and the bidder, who justifiably relied upon the inaccurate survey because it was intended by both the owner and the surveyor that all bids would incorporate that information, may have a cause of action under Sec. 552.

EDIS and BMG *intended* to supply to RLI information related to the certification of payments with the *intent* that RLI would be guided in its conduct with the Contractor. RLI cannot offer any evidence that EDIS or BMG intended to influence RLI's conduct in anyway.

RLI does, however, go to considerable length to claim that its interests were harmed by the alleged overpayment to the Contractor because such payments supposedly impaired its security interest in collateral held by the Owner, and that because the damage allegedly would have been foreseeable, RLI is entitled to maintain its tort action against EDIS and BMG. RLI cites to *Praire State National Bank v. United States*, 164 U.S. 227 (1896) and *Fidelity & Deposit Company, v. Agnew*, 152 F. 955 (3rd Cir. 1907) for the proposition that it would have a complete defense to liability under the Performance Bond Contract in seemingly any situation where it believes its collateral has been impaired. Unfortunately for RLI, the facts *sub judice* are distinguishable from both *Praire* and *Agnew* in so much as the parties in both cases either purposefully made advance payments to the surety's principal or assigned the right to final payment to a third party. More importantly, as RLI states but fails to emphasize, these cases merely provide RLI with a defense to performance – not a cause of action against either EDIS, BMG or the Owner.

A fair understanding of the contractual relationships between EDIS, BMG, the Owner, the Contractor, and RLI makes it obvious that EDIS and BMG owed no duty to RLI or the Contractor and would not have intended any information they provided to the Owner, which serves as a defense against the non-performance of the Contractor, to be supplied to the Contractor's Surety for its guidance in how to deal with the Contractor. EDIS and BMG would be wholly unconcerned with the contractual relationship between the Contractor and RLI given

the fact that should the contractor be found in default on the Construction contract, a line in the sand would be drawn with EDIS, BMG and the Owner on one side and the Contractor and RLI on the other – as this case presents.

Wherefore, because RLI can not meet the requirements of Sec. 552 as it can not show that EDIS and BMG intended to supply information to it for guidance in its business transactions with the Contractor, RLI has failed to state a claim upon which relief can be granted and its Complaint against EDIS and BMG should be dismissed with prejudice.

**D.     Holding the Line Dividing Contract Allocation of Risk and Liabilities Imposed by Tort Law**

As the Illinois Court in *2314 Lincoln Park West Condo. Assoc. V. Mann, Gin, Ebel & Frazier, LTD, et al.,* 136 Ill. 2d 302 (Supr. Ct. Ill. 1990) points out, "while it may be the case that an architect does in fact supply information relied on by others, we do not believe that the character of that function should be overstated." *Id.* at 313. The *2314 Lincoln Park West* court reasoned that the Architect's duties are defined by contract and, therefore, they should be measured accordingly. *Id.* at 315, 317.  If the law were to hold otherwise then every manufacturer, architect, or engineer would be a guarantor that all of its products, designs, and specifications would continue to function satisfactorily throughout their productive life. Conceivably, there would be no limit to the liability the design professional could suffer if for any reason there arose some dissatisfaction with his design.  Such a holding would eliminate the ability of the contracting parties to negotiate and allocate the risks of innocent failures on the part of any of the parties to the contract.  In so much as the design professional would be concerned,

the potential liability would often dwarf the design professional's ultimate contract price – such is as in the case at bar. As we have already observed, the *Danforth* Court cites *2314 Lincoln Park West* with approval.

RLI misstates the policy considerations behind the Economic Loss Doctrine by assuming the rule only applies so long as the plaintiff has at least one avenue of recovery. The purpose of the Economic Loss Rule is to differentiate between the duties owed by operation of the contract between the parties, as opposed to those which can be derived from the larger social policies embodied in the law of torts. In *Danforth*, 608 A.2d 1200, the Court stated that privity of contract between the parties was immaterial. The Court held that the better approach toward determining the application of the Doctrine was to assess the type of damages being alleged. The Court stated, "Allegations of only economic loss do not implicate tort law concerns with safety, but do implicate commercial law concerns with economic expectations. Accordingly, the latter concerns must govern [...]" *Id.* RLI mistakenly places too much emphasis on the fact that the parties in *Danforth* actually had a contractual agreement which the Court noted would offer the plaintiff a remedy under the commercial code.

The very nature of the complaint against the Architect and the HVAC Design Engineer makes it clear that the duties upon which CMSI bases its claim arise solely from those enumerated in the contract between the Movants and the Owner. Therefore, any alleged failure on the part of the Movants to conform to the contract will be measured by the terms of the contract. It naturally follows then that any alleged damages which may arise therefrom should also be measured in accordance with principles of contract law.

**III     CONCLUSION**

Dismissal or Summary judgment is appropriate because RLI can not prove that the exception to the Economic Loss Doctrine applies, or in the alternative that RLI can meet the requirements of Sec. 552 of the Restatement (Second) of Torts.

WHEREFORE, Defendants, EDiS Company, Inc. and Becker Morgan Group, Inc request this Honorable Court for judgment in their favor and against the Plaintiff.

| | |
|---|---|
| **TIGHE, COTTRELL & LOGAN, P.A.** | **TIGHE, COTTRELL & LOGAN, P.A.** |
| /s/ Paul Cottrell | /s/ Donald L. Logan |
| Paul Cottrell (DE ID No.: 2391) | Donald L. Logan, Esquire DE I.D. # 2604 |
| First Federal Plaza, Suite 500 | First Federal Plaza, Suite 500 |
| P.O. Box 1031 | P.O. Box 1031 |
| Wilmington, DE  19899 | Wilmington, Delaware 19899 |
| (302) 658-6400 | (302) 658-6400 |
| p.cottrell@lawtcl.com | d.logan@lawtcl.com |
| Attorney for Becker Morgan Group, Inc. | Attorney for EDiS Company |

Dated: May 11, 2006                                                    Dated: May 11, 2006