IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| MILLSBORO FIRE COMPANY, a<br>Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CONSTRUCTION MANAGEMENT<br>SERVICE, INC., a Delaware corporation, | ) ) ) | C.A. No. 05C-06-137 MMJ |
| Defendant, Counter-claimant,<br>Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| R. CALVIN CLENDANIEL<br>ASSOCIATES, P.A., MAHAFFY &<br>ASSOCIATES, INC., a Delaware<br>corporation, VOLAIR CONTRACTORS,<br>INC., a Delaware corporation, B.D.<br>ABEL, INC., and PIERCE MORETTA &<br>CO., d/b/a Shure-Line Excavating, | ) ) ) ) ) ) ) | |

Third-Party Defendants.

## MEMORANDUM OPINION

Submitted: April 17, 2006
Decided: June 7, 2006

*Upon Third-Party Defendants R. Calvin Clendaniel Associates, P.A. and
Mahaffy & Associates, Inc.'s Joint Motion for Summary Judgment and
B.D. Abel, Inc.'s Motion for Summary Judgment*

***GRANTED***

Jeffrey M. Weiner, Esquire, Wilmington, Delaware, Attorney for Plaintiff

Paul G. Enterline, Esquire, Georgetown, Delaware, Attorney for Defendant/Third-Party Plaintiff

James S. Green, Esquire, Daniel B. Rath, Esquire, Landis, Rath & Cobb, LLP, Wilmington, Delaware, Attorneys for Third-Party Defendant, B.D. Abel, Inc.

Donald L. Logan, Esquire, Tighe, Cottrell & Logan, P.A., Wilmington, Delaware, Attorney for Third-Party Defendant, Pierce Moretta & Co. D/b/a Shure-Line Excavating

Paul Cottrell, Esquire, Tighe, Cottrell & Logan, P.A., Wilmington, Delaware, Attorney for Third-Party Defendant, Mahaffy & Associates, Inc.

James W. Owen, Esquire, Wilmington, Delaware,    Attorney for Third-Party Defendant, R. Calvin Clendaniel Associates, P.A.


**JOHNSTON, J.**

This case arises from the construction and renovation of improvements to the property of the Millsboro Fire Company ("MFC") in Millsboro, Delaware. MFC filed a complaint against the general contractor on the project, Construction Management Service, Inc. ("CMSI"), alleging numerous design and workmanship defects. CMSI filed an answer, counterclaim and a third-party complaint. The third-party complaint was asserted against two entities involved in the design and management of the project: R. Calvin Clendaniel Associates, P.A., ("Clendaniel") and Mahaffy & Associates, Inc. ("Mahaffy"). The third-party complaint also joined several subcontractors: Volair Contractors, Inc. ("Volair"), B.D. Abel, Inc. ("B.D. Abel") and Pearce & Moretto, Inc. ("Pearce").

Clendaniel and Mahaffy filed a Joint Motion for Summary Judgment on the third-party complaint. B.D. Abel also has moved for summary judgment.

## STATEMENT OF FACTS

For purposes of evaluating the pending motions for summary judgment, the following facts are undisputed.

On May 19, 2001, MFC entered into a contract with CMSI for the construction of renovations and additions to the Fire Hall in Millsboro, Delaware ("Project"). The original contract sum was $ 1,847,541.00. CMSI is a construction management firm. Clendaniel was hired by MFC to provide architectural services, including design and

1

administration of the construction contract. Mahaffy was hired by Clendaniel to assist Clendaniel in designing the heating, ventilation and air conditioning ("HVAC"), as well as the electrical and plumbing systems on the Project.

Construction began on August 17, 2001. Regular meetings were held on the Project site, attended by representatives of CMSI, its subcontractors, the design professionals, and the owners. At these meetings, the parties discussed the status of the Project, identified problems, and worked out solutions. From time to time, CMSI made applications to the owner for payment based upon the percentage of work performed. Clendaniel reviewed and approved such applications. CMSI paid its subcontractors for completed work.

A "punch list" was sent to CMSI by Clendaniel and Mahaffy in October 2002. The Project was substantially completed by October 31, 2002. MFC subsequently complained of defects in the design and workmanship on the Project. The alleged defects primarily concern two areas: HVAC and concrete paving.

The alleged HVAC defects are set forth in a report of Weldon Engineering, dated August 4, 2004. Based on that report, MFC claims damages, for repairs and changes in the design, in excess of $ 500,000. The HVAC systems was designed and specified by Clendaniel and Mahaffy. The HVAC contractor was third-party

2

defendant Volair, Inc. The HVAC testing and balancing sub-contractor was third-party defendant B.D. Abel.

The alleged defects in concrete paving are set forth in the report of IOTT Architect Engineering Inc., dated October 14, 2004. MFC claims damages for repair of the concrete work, in an amount in excess of $388,000. The paving was designed and specified by Clendaniel. Interior paving was performed by CMSI. Exterior paving was performed by Pearce and its subcontractors.

On June 10, 2005, MFC filed a complaint against CMSI seeking damages of $961,153, plus interest, counsel fees and costs. On August 12, 2005, CMSI filed the following third-party claims: against Clendaniel for negligent misrepresentations or non-disclosures to CMSI that the work was approved and acceptable, and for negligent design; against Mahaffy for negligent misrepresentations, non-disclosures and negligent design; against Volair for negligent performance of work and breach of its subcontract; against B.D. Abel for negligent misrepresentations, non-disclosure and breach fo contract; and against Pearce for negligence performance of work and breach of contract.

3

## *STANDARD OF REVIEW*

This Court will grant summary judgment only when no material issues of fact exist. The moving party bears the burden of establishing the non-existence of material issues of fact.[1] Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[2] Where the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.[3] If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of the case, then summary judgment must be granted.[4] A court deciding a summary judgment motion must identify disputed factual issues whose resolution is necessary to decide the case, but the court must not decide those issues.[5] In considering such a motion, the Court must evaluate the facts in the light most favorable to the non-moving

---

[1]*Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).

[2]*Id.* at 681.

[3]Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[4]*Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991), *cert. denied*, 504 U.S. 912 (1992); *Celotex Corp. v. Catrett, supra.*

[5]*Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).

4

party.[6] Summary judgment will not be granted under circumstances where the record reasonably indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.[7]

## ANALYSIS

### Economic Loss Doctrine

Under the Economic Loss Doctrine, a party may recover in tort only if losses are accompanied by bodily harm or property damage.[8] The Restatement (Second) of Torts § 552 provides an exception to the Economic Loss Doctrine's bright-line rule. This Court explicitly adopted this exception in *Guardian Construction Co. v. Tetra Tech Richardson.*[9]

A plaintiff seeking damages for negligent misrepresentation, where the losses are solely economic, must demonstrate two elements. First, "the plaintiff must show that the defendant supplied the information to the plaintiff for use in business

_____

[6]*Id.*

[7]*Ebersole v. Lowengrub,* 180 A.2d 467, 468-69 ( Del. 1962).

[8]*Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing, Inc.*, 2002 WL 1335360, at *22 (Del. Super).

[9]583 A.2d 1378 (Del. Super 1990).

transactions with third parties." Second, the defendant must be in the business of supplying information."[10]

Initially, the Economic Loss Doctrine related to product liability actions. Courts later expanded the doctrine's application beyond its original scope. The doctrine generally must be considered in disputes arising from commercial transactions in which the alleged damages do no harm to a person or to property. Jurisdictions, including Maryland[11] and Connecticut,[12] have taken a more expansive view than Delaware.

For litigants in Delaware, the questions of when a business crosses the line into "supplying information" and whether that requirement is mandated, have not been definitively resolved. In *Danforth v. Acorn Structures, Inc.,*[13] the Delaware Supreme court opined that where privity of contract exists, it is presumed that the parties to the transaction have allocated the risk of product nonperformance through the bargaining process.[14] Allegations of purely economic loss do not implicate tort law concerns

---

[10]*Christiana Marine Services Corp.*, 2002 WL 1335360, at *8 (quoting *Danforth v. Acorn Structures, Inc.*, 1991 WL 269956 (Del. Super.)).

[11]*See Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582 (Md. 2000).

[12]*Jacobson v. Environmental Risk Limited*, 1996 WL 168086, at *3 (Conn. Super.)

[13]608 A.2d 1194 (Del. 1992).

[14]*Id.* at 1200.

6

with safety.    Instead, the issues arise from commercial law and economic expectations.  The *Danforth* Court held the existence of privity of contract is not an exception to the Economic Loss Doctrine's prohibition against recovery in tort in Delaware.[15]

Public policy considerations do not compel this Court to expand the doctrine. In Delaware, only surveyors[16] and those expressly in the business of supplying information such as accountants,[17] financial advisors,[18] and title searchers,[19] can be liable in tort for purely economic losses.  By providing information to MFC for use in transactions with third parties, Clendaniel, Mahaffy, and B.D. Abel did not engage in conduct undertaken while in the business of supplying information.    The information is more aptly categorized as information incidentally supplied to CMSI as part of the construction, renovation and addition to the Fire Hall.  Viewing the facts in the light most favorable to the non-moving parties, the provision of plans and design drawings used to construct the project, do not constitute the business of

---

[15]*Id.*

[16]*Guardian*, 583 A.2d at 1385.

[17]*Carello v. PricewaterhouseCoopers, LLP*, 2002 WL 1454111, at *7 (Del. Super.)

[18]*Outdoor Technologies Inc. v. AllFirst Financial Inc.*, 2000 WL 141275, at *5 (Del. Super.).

[19]*Ruger v. Funk*, 1996 WL 110072, at *10 (Del. Super.).

supplying information. Clendaniel, Mahaffy and B. D. Abel are not businesses falling within Delaware's narrow application and strict construction the Economic Loss Doctrine.

With regard to B. D. Abel, CMSI claims that the defects in design were caused by Mahaffy and approved by the project architect Clendaniel. At the time B.D. Abel became involved in the Project, all the damage, and alleged detrimental reliance, already had occurred. B.D. Abel provided a deficiency report because it was prevented from properly testing, adjusting and balancing the HVAC system due to alleged defects in the system's design and/or installation. No party has alleged reliance on the deficiency report. B.D. Abel was hired to provide the service of testing, adjusting, and balancing an already installed HVAC system. B.D. Abel was not in the business of supplying information.

Third-Party Defendant Volair Contractors, Inc., a business presumed to be insolvent, has not applied to the Court for relief. Therefore, the Court need not determine at this juncture any legal relationships among CMSI, B.D. Abel and Volair. In general, however, a sub-subcontractor stands in the shoes of a defunct sub-contractor. A contractor may join a sub-subcontractor on the basis of the sub-sub's contract with the sub. In this case, B.D. Abel's liability is limited to the four corners

8

of its contract with Volair. Pursuant to the Economic Loss Doctrine, there is not a basis for a cause of action in tort against B.D. Abel by CMSI.

### Detrimental Reliance

To the extent latent defects were design defects, CMSI should not be found liable to MFC for breach of contract. CMSI would not have relied to its detriment on information provided by design professionals. CMSI would have a defense to MFC's breach of contract claims to the extent CMSI built the structure in accordance with the design plans. A contractor is not liable for any damage occasioned by a defect in plans and specifications furnished by the owner if the contractor performs work without neglect and in a workmanlike manner.[20] Even if a contractor were obligated under the contract to produce a structure free from any defects, the owner's instructions to the contractor excuse the contractor from any further liability.[21] Here, the plans and specifications were provided by MFC or at MFC's request, and CMSI will not be held accountable for any defect that resulted from defective plans.

### Unjust Enrichment

CMSI's duties to MFC are those enumerated in the contract between CMSI and MFC. Any alleged failure on the part of the CMSI to conform to the contract will be

---

[20]*Id.*

[21]*Ridley Inv. Co. v. Croll*, 192 A.2d 925, 927 (Del. 1963).

measured by the terms of the contract, in accordance with the principles of contract law.

CMSI had no contractual relationship with either Clendaniel or Mahaffy. Their duties to approve payment requests were undertaken solely for the benefit of MFC. Therefore, the claim that CMSI was an intended third-party beneficiary of Clendaniel's or Mahaffy's contract with MFC is without merit.

Unjust enrichment is the unjust retention of a benefit resulting in a loss to another. A plaintiff's refusal to join a party to a breach of contract suit does not constitute unjust enrichment to the non-party. Further, CMSI retains the defense that it built according to plans and specifications and, therefore, CMSI is not liable for any alleged defects in design.[22]

### *CONCLUSION*

Allocation of liability among design professionals, contractors and sub-contractors, is a problem inherent in complex litigation involving construction. Generally, there is the risk of jury confusion, and the risk of awards of damages against parties which more appropriately should be levied against absent parties. These risks can be alleviated through use of special verdict forms and interrogatories to the jury.

---

[22]*Id.*

10

Clendaniel, Mahaffy and B.D. Abel did not supply information to MFC while they were engaging in the business of supplying information  Any information supplied was incidental to the services provided by Clendaniel, Mahaffy and B.D. Abel as part of the construction and renovation Project.

The contract at issue is between MFC and CMSI.  Clendaniel, Mahaffy and B.D. Abel have no contractual relationship with CMSI.  CMSI is not a third-party beneficiary of any contract entered into by Clendaniel, Mahaffy or B.D. Abel.

**THEREFORE**, the Economic Loss Doctrine prohibits recovery in tort for losses unaccompanied by bodily harm or property damage and Third-Party Defendants have not been unjustly enriched to the detriment of CMSI.  Third-Party Defendants' R. Calvin Clendaniel Associates, P.A., Mahaffy & Associates, Inc. and B.D. Abel, Inc., Motions for Summary Judgment are hereby **GRANTED**.  Third-Party Defendants are hereby **DISMISSED, WITH PREJUDICE**.

**FURTHER**, Defendant Chromalloy American Corporation's unopposed request that it be dismissed with prejudice is hereby **GRANTED**.

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

ORIGINAL: PROTHONOTARY'S OFFICE - CIVIL DIV.

11

TIGHE, COTTRELL
& LOGAN, P.A.
2006 JUN -9  AM 10: 02