# EXHIBIT 2

Bond No.
SSB 365 837

# THE AMERICAN INSTITUTE OF ARCHITECTS



AIA Document A312

# Performance Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
   McDaniel Plumbing & Heating, Inc.
   205 Old Churchmans Road
   New Castle, DE 19720

SURETY (Name and Principal Place of Business):
   RLI Insurance Company
   18100 Jefferson Park Road
   Cleveland, OH 44130

OWNER (Name and Address):
   Indian River School District
   31 Hoosier Street
   Selbyville, Delaware

CONSTRUCTION CONTRACT
   Date:     August 28, 2002
   Amount:  Four Million Three Hundred Thirty Five Thousand Five Hundred and ----00/100
   Description (Name and Location):
     Sussex Central High School, Contract No. SC-B-14 Mechanical, Plumbing & ATC

BOND
   Date (Not earlier than Construction Contract Date):   September 5, 2002
   Amount:   4,335,500.00
   Modifications to this Bond:    ☒ None    ☐ See Page 3

CONTRACTOR AS PRINCIPAL
Company:    (Corporate Seal)
   McDaniel Plumbing & Heating, Inc.
Signature: _____
Name and Title: James Morris, Treasurer
(Any additional signatures appear on page 3)

SURETY
Company:    (Corporate Seal)
   RLI Insurance Company
Signature: _____
Name and Title: Christine M. King
    Atty-in-Fact

(FOR INFORMATION ONLY—Name, Address and Telephone)
AGENT or BROKER:

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   1

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

   3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

   3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

   3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4 When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

   4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

   4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

   4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

   4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

      .1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

      .2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

   6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

   6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

   6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation avail-

Bond No.
SSB 365 837

# THE AMERICAN INSTITUTE OF ARCHITECTS



AIA Document A312

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
McDaniel Plumbing & Heating, Inc.
205 Old Churchmans Road
New Castle, DE 19720

SURETY (Name and Principal Place of Business):
RLI Insurance Company
18100 Jefferson Park Road
Cleveland, OH 44130

OWNER (Name and Address):
Indian River School District
31 Hoosier Street
Selbyville, Delaware

CONSTRUCTION CONTRACT
Date: August 28, 2002
Amount: Four Million Three Hundred Thirty Five Thousand Five Hundred and ----00/100
Description (Name and Location):
Sussex Central High School, Contract No. SC-B-14 Mechanical, Plumbing & ATC

BOND
Date (Not earlier than Construction Contract Date): September 5, 2002
Amount: 4,335,500.00
Modifications to this Bond:   ☒ None   ☐ See Page 6

CONTRACTOR AS PRINCIPAL
Company:                    (Corporate Seal)
McDaniel Plumbing & Heating, Inc.
Signature: _____
Name and Title: James Morris, Treasurer

SURETY
Company:                    (Corporate Seal)
RLI Insurance Company
Signature: _____
Name and Title: Christine M. King
Atty-in-Fact

(Any additional signatures appear on page 6)

(FOR INFORMATION ONLY—Name, Address and Telephone)
AGENT or BROKER:

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

AIA DOCUMENT A312 · PERFORMANCE BOND AND PAYMENT BOND · DECEMBER 1984 ED. · AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING · MARCH 1987

A312-1984  4

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2 Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984    5

Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |

Signature: _____
Name and Title:
Address:

Signature: _____
Name and Title:
Address:



# POWER OF ATTORNEY
## RLI Insurance Company

A Division of RLI Insurance Company
P.O. Box 3967
Peoria, IL 61612-3967

*Know All Men by These Presents:*

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That RLI Insurance Company, an Illinois corporation, does hereby make, constitute and appoint:
___CHRISTINE M. KING, PETER P. KING, JOINTLY OR SEVERALLY___

in the City of ___WILLOW GROVE___, State of ___PENNSYLVANIA___ its true and lawful Agent and Attorney-in-Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, the following described bond.

Any and all bonds, undertakings, and recognizances in an amount not to exceed Ten Million Dollars ($10,000,000) for any single obligation.

The acknowledgment and execution of such bond by the said Attorney-in-Fact shall be as binding upon this Company as if such bond had been executed and acknowledged by the regularly elected officers of this Company.

The **RLI Insurance Company** further certifies that the following is a true and exact copy of the Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the company by the President, Secretary, any Assistant Secretary, Treasurer, Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, and Assistant Secretary, or the Treasurer, may appoint Attorneys-in-Fact or Agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the **RLI Insurance Company** has caused these presents to be executed by its President with its corporate seal affixed this ___7th___ day of ___May___, ___2002___.

State of Illinois  } SS
County of Peoria  }

RLI Insurance Company

By: _____
        President

On this ___7th___ day of ___May___, ___2002___, before me, a Notary Public, personally appeared ___Jonathan E. Michael___, who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the **RLI Insurance Company** and acknowledged said instrument to be the voluntary act and deed of said corporation.

By: _____
        Notary Public

"OFFICIAL SEAL"
CHERIE L. MONTGOMERY
COMMISSION EXPIRES 02/28/04

### CERTIFICATE
I, the undersigned officer of RLI Insurance Company, a stock corporation of the State of Illinois, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the RLI Insurance Company this ___5th___ day of ___September___, ___2002___.

RLI Insurance Company

By: _____
        President



**RLI Surety**
A Division of RLInsurance Company
P.O. Box 3967
Peoria, IL 61612-3967
Phone: 309-692-1000  800-645-2402
Fax:    309-692-8637

## RLI Insurance Company
December 31, 2001

| Admitted Assets | | Liabilities and Surplus | |
|---|---:|---|---:|
| Investments: | | Liabilities: | |
| Fixed Maturities | $ 265,106,596 | Reserve for unpaid losses and loss adjustment expenses | $ 223,758,570 |
| Equity securities | 320,651,355 | Unearned premiums | 141,083,649 |
| Short-term Investments | 49,265,285 | Accrued expenses | 9,359,714 |
| Real estate | 6,019,339 | Federal income taxes payable | 9,355,455 |
| Cash on hand and on deposit | (11,591,483) | Funds held | 1,969,212 |
| Other invested assets | 10,813,732 | Amounts withheld | 11,992,892 |
| Agents' balances | 52,524,898 | Ceded Reinsurance Premium Payable | 23,188,324 |
| Investment income due and accrued | 4,429,352 | Statutory penalties | 274,200 |
| Funds held | 84,477 | Borrowed money and accrued interest | 32,698,061 |
| Reinsurance recoverable on paid losses | 15,739,177 | Drafts outstanding | 382,561 |
| Electronic data processing equipment, net of accumulated depreciation | 3,099,572 | Other Liabilities | 0 |
| Receivable from affiliates | 1,847,740 | | |
| Other admitted assets | 27,962,482 | Total Liabilities | $ 454,062,638 |
| Total Admitted Assets | $ 745,752,522 | Surplus: | |
| | | Common stock | $ 10,000,375 |
| | | Additional paid-in capital | 60,025,474 |
| | | Unassigned surplus | 221,664,035 |
| | | Total Surplus | $ 291,689,884 |
| | | Total Liabilities and Surplus | $ 745,752,522 |

State of Illinois } SS.
County of Peoria }

The undersigned, being duly sworn, says: That he is the President of RLI Insurance Company, that said Company is a corporation duly organized, in the State of Illinois, and licensed and engaged in business in the State of Pennsylvania _____ and has duly complied with all the requirements of the laws of said State applicable of said Company and is duly qualified to act as Surety under such laws; that said Company has also complied with and is duly qualified to act as Surety under the Act of Congress approved July 1947, 6 U.S. C sec. 6-13; and that to the best of his knowledge and belief the above statement is a full, true, and correct statement of the financial condition of the said Company on the 31st day of December 2001.

Attest,

[Corporate Seal Affixed]

_____ President, CEO
Jonathan E. Michael

_____ Secretary
Camille J. Hensey

Sworn to before me this 15th day of February 2002.

["OFFICIAL SEAL" CHERIE L. MONTGOMERY COMMISSION EXPIRES 02/02/04]
{ Notarial Seal Affixed }

_____ Notary Public
Cherie L. Montgomery
My commission Expires February 2, 2004   State of Illinois

MD058202