# EXHIBIT A

# Abbreviated Standard Form of Agreement Between Owner and Architect

### AIA Document B151 - 1997
### 1997 Edition - Electronic Format



This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the American Subcontractors Association and the Associated Specialty Contractors, Inc.

Copyright 1974, 1978, 1987, ©1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

**AGREEMENT** made as of the first day of August   in the year two-thousand
*(In words, indicate day, month and year)*

**BETWEEN** the Architect's client identified as the Owner:
*(Name, address and other information)*
> Indian River School District
> 31 Hoosier Street
> Selbyville, Delaware 19975

and the Architect:
*(Name, address and other information)*
> Becker Morgan Moore Olds & Richter Inc
> 312 West Main Street, Suite 300
> Salisbury, Maryland 21801

For the following Project:
*(Include detailed description of Project, location and address)*
> New Sussex Central High School.
> Project includes construction of a new 187,225 sq.ft. High School and associated site work.
> Final site to be confirmed.  School to be designed in accordance with Department of Education
> criteria for a 1,500 student capacity pursuant to the approved Certificate of Necessity.
> Construction costs excluding land acquisition, A/E fees and Legal/Audit fees are $23,998,502.00

The Owner and Architect agree as follows.

## ARTICLE 1  ARCHITECT'S RESPONSIBILITIES

**1.1** The services performed by the Architect, Architect's employees and Architect's consultants shall be as enumerated in Articles 2, 3 and 12.

**1.2** The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Project. The Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services which may be adjusted as the Project proceeds. This schedule shall include allowances for periods of time required for the Owner's review and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

Electronic Format B151-1997

**1.3** The Architect shall designate a representative authorized to act on behalf of the Architect with respect to the Project.

**1.4** The services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

## ARTICLE 2 SCOPE OF ARCHITECT'S BASIC SERVICES

### 2.1 DEFINITION

The Architect's Basic Services consist of those described in Paragraphs 2.2 through 2.6 and any other services identified in Article 12 as part of Basic Services, and include normal civil, structural, mechanical and electrical engineering services.

Insert A: See Attachment A - Item 2

### 2.2 SCHEMATIC DESIGN PHASE

**2.2.1**    The Architect shall review the program furnished by the Owner to ascertain the requirements of the Project and shall arrive at a mutual understanding of such requirements with the Owner.

**2.2.2**    The Architect shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other, subject to the limitations set forth in Subparagraph 5.2.1.

**2.2.3**    The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**2.2.4**    Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Schematic Design Documents consisting of drawings and other documents illustrating the scale and relationship of Project components.

**2.2.5**    The Architect shall submit to the Owner a preliminary estimate of Construction Cost based on current area, volume or similar conceptual estimating techniques.

### 2.3 DESIGN DEVELOPMENT PHASE

**2.3.1**    Based on the approved Schematic Design Documents and any adjustments authorized by the Owner in the program, schedule or construction budget, the Architect shall prepare, for approval by the Owner, Design Development Documents consisting of drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate.

**2.3.2**    The Architect shall advise the Owner of any adjustments to the preliminary estimate of Construction Cost.

### 2.4 CONSTRUCTION DOCUMENTS PHASE

**2.4.1**    Based on the approved Design Development Documents and any further adjustments in the scope or quality of the Project or in the construction budget authorized by the Owner, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project.

**2.4.2**    The Architect shall assist the Owner in the preparation of the necessary bidding information, bidding forms, the Conditions of the Contract, and the form of Agreement between the Owner and Contractor.

**2.4.3**    ~~The Architect shall advise the Owner of any adjustments to previous preliminary estimates of Construction Cost indicated by changes in requirements or general market conditions.~~

Insert B:        See Attachment A, Item 3.

**2.4.4**    The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

### 2.5 BIDDING OR NEGOTIATION PHASE

The Architect, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction Cost, shall assist the Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## 2.6 CONSTRUCTION PHASED--ADMINISTRATION OF THE CONSTRUCTION CONTRACT

**2.6.1**    The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the initial Contract for Construction and terminates at the earlier  later of the issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work.

Insert C:        See Attachment A, Item 4.

**2.6.2**    The Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement, unless otherwise provided in this Agreement. Modifications made to the General Conditions, when adopted as part of the Contract Documents, shall be enforceable under this Agreement only to the extent that they are consistent with this Agreement or approved in writing by the Architect.

**2.6.3**    Duties, responsibilities and limitations of authority of the Architect under this Paragraph 2.6 shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent will not be unreasonably withheld.

**2.6.4**    The Architect shall be a representative of and shall advise and consult with the Owner during the administration of the Contract for Construction. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement unless otherwise modified by written amendment.

**2.6.5**    The Architect, as a representative of the Owner, shall visit the site at intervals appropriate to the stage of the Contractor's operations, or as otherwise agreed by the Owner and the Architect in Article 12, (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

**2.6.6**    The Architect shall report to the Owner known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor. However, the Architect shall not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or charge of and shall not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons or entities performing portions of the Work.

**2.6.7**    The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.6.8**    Except as otherwise provided in this Agreement or when direct communications have been specially authorized, the Owner shall endeavor to communicate with the Contractor through the Architect about matters arising out of or relating to the Contract Documents. Communications by and with the Architect's consultants shall be through the Architect. The Architect shall prepare and distribute meeting minutes during the design and construction phases of the project.

Insert D:        See Attachment A, Item 5.

### 2.6.9   CERTIFICATES FOR PAYMENT

**2.6.9.1**  The Architect shall review and certify the amounts due the Contractor and shall issue certificates in such amounts.

**2.6.9.2**  The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's evaluation of the Work as provided in Subparagraph 2.6.5 and on the data comprising the Contractor's Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject (1) to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, (2) to results of subsequent tests and inspections, (3) to correction of minor deviations from the Contract Documents prior to completion, and (4) to specific qualifications expressed by the Architect.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

**2.6.9.3**  The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.6.10**  The Architect shall have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect shall have authority to require inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons or entities performing portions of the Work.

**2.6.11**  The Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's Owner's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

Insert E:       Attachment A, Item 6.

**2.6.12**  If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Architect shall specify appropriate performance and design criteria that such services must satisfy. Shop Drawings and other submittals related to the Work designed or certified by the design professional retained by the Contractor shall bear such professional's written approval when submitted to the Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals.

**2.6.13**  The Architect shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if deemed necessary by the Architect as provided in Subparagraphs 3.1.1 and 3.3.3, for the Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are consistent with the intent of the Contract Documents.

**2.6.14**  The Architect shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, shall receive from the Contractor and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract Documents and assembled by the Contractor, and shall issue a final Certificate for Payment based upon a final inspection indicating the Work complies with the requirements of the Contract Documents.

**2.6.15**  The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**2.6.16**  Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

**2.6.17**  The Architect shall render initial decisions on claims, disputes or other matters in question between the Owner and Contractor as provided in the Contract Documents. However, the Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Contract Documents.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**2.6.18** The Architect's decisions on claims, disputes or other matters in question between the Owner and Contractor, except for those relating to aesthetic effect as provided in Subparagraph 2.6.17, shall be subject to mediation ~~and arbitration as provided in this Agreement and in the Contract Documents~~ and other remedies at law or in equity.

Insert F:        See Attachment A, Item 7.

## ARTICLE 3 ADDITIONAL SERVICES
### 3.1 GENERAL
**3.1.1** The services described in this Article 3 are not included in Basic Services unless so identified in Article 12, and they shall be paid for by the Owner as provided in this Agreement, in addition to the compensation for Basic Services. The services described under Paragraphs 3.2 and 3.4 shall only be provided if authorized or confirmed in writing by the Owner. If services described under Contingent Additional Services in Paragraph 3.3 are required due to circumstances beyond the Architect's control, the Architect shall notify the Owner prior to commencing such services. If the Owner deems that such services described under Paragraph 3.3 are not required, the Owner shall give prompt written notice to the Architect. If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Architect shall have no obligation to provide those services.

### 3.2 PROJECT REPRESENTATION BEYOND BASIC SERVICES
**3.2.1** If more extensive representation at the site than is described in Subparagraph 2.6.5 is required, the Architect shall provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities.

**3.2.2** Project Representatives shall be selected, employed and directed by the Architect, and the Architect shall be compensated therefor as agreed by the Owner and Architect. The duties, responsibilities and limitations of authority of Project Representatives shall be as described in the edition of AIA Document B352 current as of the date of this Agreement, unless otherwise agreed.

**3.2.3** Through the presence at the site of such Project Representatives, the Architect shall endeavor to provide further protection for the Owner against defects and deficiencies in the Work, but the furnishing of such project representation shall not modify the rights, responsibilities or obligations of the Architect as described elsewhere in this Agreement.

### 3.3 CONTINGENT ADDITIONAL SERVICES
**3.3.1** Making revisions in drawings, specifications or other documents when such revisions are:

    **.1**   inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by adjustments in the Owner's program or Project budget;

    **.2**   required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents; or

    **.3**   due to changes required as a result of the Owner's failure to render decisions in a timely manner.

**3.3.2** Providing services required because of significant changes in the Project including, but not limited to, size, quality, complexity, the Owner's schedule, or the method of bidding or negotiating and contracting for construction, except for services required under Subparagraph 5.2.5.

**3.3.3** Preparing Drawings, Specifications and other documentation and supporting data, evaluating Contractor's proposals, and providing other services in connection with Change Orders and Construction Change Directives.

**3.3.4** ~~Providing services in connection with evaluating substitutions proposed by the Contractor and making subsequent revisions to Drawings, Specifications and other documentation resulting therefrom~~ See Attachment A, Item 8.

**3.3.5** Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicenced photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

furnishing services required in connection with the replacement of such Work.

**3.3.6**    Providing services made necessary by the default of the Contractor, by major defects or deficiencies in the Work of the Contractor, or by failure of performance of either the Owner or Contractor under the Contract for Construction.

**3.3.7**    Providing services in evaluating an extensive number of claims submitted by the Contractor or others in connection with the Work.

**3.3.8**    Providing services in connection with a public hearing, a dispute resolution proceeding or a legal proceeding except where the Architect is party thereto.

**3.3.9**    Preparing documents for alternate, separate or sequential bids or providing services in connection with bidding, negotiation or construction prior to the completion of the Construction Documents Phase.

## 3.4 OPTIONAL ADDITIONAL SERVICES
**3.4.1**    Providing analyses of the Owner's needs and programming the requirements of the Project.

**3.4.2**    Providing financial feasibility or other special studies.

**3.4.3**    Providing planning surveys, site evaluations or comparative studies of prospective sites.

**3.4.4**    Providing special surveys, environmental studies and submissions required for approvals of governmental authorities or others having jurisdiction over the Project.

**3.4.5**    Providing services relative to future facilities, systems and equipment.

**3.4.6**    Providing services to investigate existing conditions or facilities or to make measured drawings thereof.

**3.4.7**    Providing services to verify the accuracy of drawings or other information furnished by the Owner.

**3.4.8**    Providing coordination of construction performed by separate contractors or by the Owner's own forces and coordination of services required in connection with construction performed and equipment supplied by the Owner.

**3.4.9**    Providing services in connection with the work of a construction manager or separate consultants retained by the Owner.

**3.4.10**    ~~Providing detailed estimates of Construction Cost.~~ See Attachment A, Item 9.

**3.4.11**    Providing detailed quantity surveys or inventories of material, equipment and labor.

**3.4.12**    Providing analyses of owning and operating costs.

**3.4.13**    Providing interior design and other similar services required for or in connection with the selection, procurement or installation of furniture, furnishings and related equipment.

**3.4.14**    Providing services for planning tenant or rental spaces.

**3.4.15**    Making investigations, inventories of materials or equipment, or valuations and detailed appraisals of existing facilities

**3.4.16**    ~~Preparing a set of reproducible record drawings showing significant changes in the Work made during construction based on marked-up prints, drawings and other data furnished by the Contractor to the Architect~~ See Attachment A, Item 10.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**3.4.17** Providing assistance in the utilization of equipment or systems such as testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation.

**3.4.18** Providing services after issuance to the Owner of the final Certificate for Payment, or in the absence of a final Certificate for Payment, more than 60 days after the date of Substantial Completion of the Work.

**3.4.19** Providing services of consultants for other than architectural, civil, structural, mechanical and electrical engineering portions of the Project provided as a part of Basic Services. See Attachment A, Item 11.

**3.4.20** Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted architectural practice.

## ARTICLE 4 OWNER'S RESPONSIBILITIES

**4.1** The Owner shall provide full information in a timely manner regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems and site requirements. The Owner shall furnish to the Architect, within 15 days after receipt of a written request, information necessary and relevant for the Architect to evaluate, give notice of or enforce lien rights.

**4.2** The Owner shall establish and periodically update an overall budget for the Project, including the Construction Cost, the Owner's other costs and reasonable contingencies related to all of these costs.

**4.3** The Owner shall designate a representative authorized to act on the Owner's behalf with respect to the Project. The Owner or such designated representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

**4.4** The Owner shall furnish surveys to describe physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark. Owner may elect to transfer this responsibility to the Architect as an additonal service in Article 3 of this agreement (see Attachment·A, Item 12).

**4.5** The Owner shall furnish the services of geotechnical engineers when such services are requested by the Architect. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate recommendations.

**4.6** The Owner shall furnish the services of consultants other than those designated in Paragraph 4.5 when such services are requested by the Architect and are reasonably required by the scope of the Project.

**4.7** The Owner shall furnish structural, mechanical, and chemical tests; tests for air and water pollution; tests for hazardous materials; and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.8** The Owner shall furnish all legal, accounting and insurance services that may be necessary at any time for the Project to meet the Owner's needs and interests. Such services shall include auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by or on behalf of the Owner.

**4.9** The services, information, surveys and reports required by Paragraphs 4.4 through 4.8 shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format B151-1997

**4.10**   The Owner shall provide prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the Project, including any errors, omissions or inconsistencies in the Architect's Instruments of Service.

## ARTICLE 5 CONSTRUCTION COST
### 5.1 DEFINITION
**5.1.1**    The Construction Cost shall be the total cost or, to the extent the Project is not completed, the estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**5.1.2**    The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, including the costs of management or supervision of construction or installation provided by a separate construction manager or contractor, plus a reasonable allowance for their overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work.

**5.1.3**    Construction Cost does not include the compensation of the Architect and the Architect's consultants, the costs of the land, rights-of-way and financing or other costs that are the responsibility of the Owner as provided in Article 4.

### 5.2 RESPONSIBILITY FOR CONSTRUCTION COST
**5.2.1**    Evaluations of the Owner's Project budget, the preliminary estimate of Construction Cost and detailed estimates of Construction Cost, if any, prepared by the Architect, represent the Architect's judgment as a design professional familiar with the construction industry. It is recognized, however, that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from the Owner's Project budget or from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect.

**5.2.2**    No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless such fixed limit has been agreed upon in writing and signed by the parties hereto. If such a fixed limit has been established, the Architect shall be permitted to include contingencies for design, bidding and price escalation, to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents, to make reasonable adjustments in the scope of the Project and to include in the Contract Documents alternate bids as may be necessary to adjust the Construction Cost to the fixed limit. Fixed limits, if any, shall be increased in the amount of an increase in the Contract Sum occurring after execution of the Contract for Construction.

**5.2.3**    If the Bidding or Negotiation Phase has not commenced within 90 days after the Architect submits the Construction Documents to the Owner, any Project budget or fixed limit of Construction Cost shall be adjusted to reflect changes in the general level of prices in the construction industry.

**5.2.4**    If a fixed limit of Construction Cost (adjusted as provided in Subparagraph 5.2.3) is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:

.1   give written approval of an increase in such fixed limit;

.2   authorize rebidding or renegotiating of the Project within a reasonable time;

.3   terminate in accordance with Paragraph 8.5; or

.4   cooperate in revising the Project scope and quality as required to reduce the Construction Cost.

**5.2.5**    If the Owner chooses to proceed under Clause 5.2.4.4, the Architect, without additional compensation, shall modify the documents for which the Architect is responsible under this Agreement as necessary to comply with the fixed limit, if established as a condition of this Agreement. The modification of such documents without cost to the Owner shall be the limit of the

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

Architect's responsibility under this Subparagraph 5.2.5. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

## ARTICLE 6 USE OF ARCHITECT'S INSTRUMENTS OF SERVICE

~~**6.1** Drawings, specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service for use solely with respect to this Project. The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service and shall retain all common law, statutory and other reserved rights, including copyrights.~~

~~**6.2** Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to reproduce the Architect's Instruments of Service solely for purposes of constructing, using and maintaining the Project, provided that the Owner shall comply with all obligations, including prompt payment of all sums when due, under this Agreement. The Architect shall obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. Any termination of this Agreement prior to completion of the Project shall terminate this license. Upon such termination, the Owner shall refrain from making further reproductions of Instruments of Service and shall return to the Architect within seven days of termination all originals and reproductions in the Owner's possession or control. If and upon the date the Architect is adjudged in default of this Agreement, the foregoing license shall be deemed terminated and replaced by a second, nonexclusive license permitting the Owner to authorize other similarly credentialed design professionals to reproduce and, where permitted by law, to make changes, corrections or additions to the Instruments of Service solely for purposes of completing, using and maintaining the Project.~~

~~**6.3** Except for the licenses granted in Paragraph 6.2, no other license or right shall be deemed granted or implied under this Agreement. The Owner shall not assign, delegate, sublicense, pledge or otherwise transfer any license granted herein to another party without the prior written agreement of the Architect. However, the Owner shall be permitted to authorize the Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers to reproduce applicable portions of the Instruments of Service appropriate to and for use in their execution of the Work by license granted in Paragraph 6.2. Submission or distribution of Instruments of Service to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved rights of the Architect and the Architect's consultants. The Owner shall not use the Instruments of Service for future additions or alterations to this Project or for other projects, unless the Owner obtains the prior written agreement of the Architect and the Architect's consultants. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.~~

~~**6.4** Prior to the Architect providing to the Owner any Instruments of Service in electronic form or the Owner providing to the Architect any electronic data for incorporation into the Instruments of Service, the Owner and the Architect shall by separate written agreement set forth the specific conditions governing the format of such Instruments of Service or electronic data, including any special limitations or licenses not otherwise provided in this Agreement.~~

Insert G:        SEE ATTACHMENT A, ITEM 13.

## ARTICLE 7    DISPUTE RESOLUTION
### 7.1 MEDIATION

**7.1.1**    Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party. If such matter relates to or is the subject of a lien arising out of the Architect's services, the Architect may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by mediation or by arbitration.

**7.1.2**    The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**7.1.3**    The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

## 7.2 ARBITRATION

**7.2.1** ~~Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with Paragraph 7.1.~~

**7.2.2** ~~Claims, disputes and other matters in question between the parties that are not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association.~~

**7.2.3** ~~A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.~~

**7.2.4** ~~No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement and signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.~~

**7.2.5** ~~The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

## 7.3 CLAIMS FOR CONSEQUENTIAL DAMAGES

~~The Architect and Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 8.~~

Insert H:        See Attachment A, Item 15.

## ARTICLE 8 TERMINATION OR SUSPENSION

**8.1** If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, prior to suspension of services, the Architect shall give seven days' written notice to the Owner. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**8.2** If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**8.3** If the Project is suspended or the Architect's services are suspended for more than 90 consecutive days, the Architect may terminate this Agreement by giving not less than seven days' written notice.

**8.4** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**8.5** This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect for the

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Owner's convenience and without cause.

**8.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 8.7.

**8.7** Termination Expenses are in addition to compensation for the services of the Agreement and include expenses directly attributable to termination for which the Architect is not otherwise compensated, ~~plus an amount for the Architect's anticipated profit on the value of the services not performed by the Architect.~~
Insert I: See Attachment A, Item 16.

## ARTICLE 9 MISCELLANEOUS PROVISIONS

**9.1** This Agreement shall be governed by the law of the principal place of business of the Architect, unless otherwise provided in Article 12.

**9.2** Terms in this Agreement shall have the same meaning as those in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**9.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

**9.4** ~~To the extent damages are covered by property insurance during construction, the Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner or the Architect, as appropriate, shall require of the contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.~~

Insert J: See Attachment A, Item 17.

**9.5** The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to an institutional lender providing financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under this Agreement. The Architect shall execute all consents reasonably required to facilitate such assignment.

**9.6** This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**9.7** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**9.8** Unless otherwise provided in this Agreement, the Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials or toxic substances in any form at the Project site.

**9.9** The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect in the Owner's promotional materials for the Project.

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**9.10**    If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall be submitted to the Architect for review at least 14 days prior to the requested dates of execution. The Architect shall not be required to execute certificates that would require knowledge, services or responsibilities beyond the scope of this Agreement.

## ARTICLE 10  PAYMENTS TO THE ARCHITECT
### 10.1    DIRECT PERSONNEL EXPENSE
Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, employee retirement plans and similar contributions.

### 10.2    REIMBURSABLE EXPENSES
**10.2.1**    Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and Architect's employees and consultants directly related to the Project, as identified in the following Clauses:

 **.1**    transportation in connection with the Project, authorized out-of-~~town~~ state travel and subsistence, and electronic communications;

Insert  K: See Attachemt A, Item 18.

 **.2**    fees paid for securing approval of authorities having jurisdiction over the Project;

 **.3**    reproductions, plots, standard form documents, postage, handling and delivery of Instruments of Service;

 **.4**    expense of overtime work requiring higher than regular rates if authorized in advance by the Owner;

 **.5**    renderings, models and mock-ups requested by the Owner;

 **.6**    expense of professional liability insurance dedicated exclusively to this Project or the expense of additional insurance coverage or limits requested by the Owner in excess of that normally carried by the Architect and the Architect's consultants;

 **.7**    reimbursable expenses as designated in Article 12;

 **.8**    other similar direct Project-related expenditures.

### 10.3    PAYMENTS ON ACCOUNT OF BASIC SERVICES
**10.3.1**    An initial payment as set forth in Paragraph 11.1 is the minimum payment under this Agreement.

**10.3.2**    Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service, on the basis set forth in Subparagraph 11.2.2.

**10.3.3**    If and to the extent that the time initially established in Subparagraph 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 11.3.2.

**10.3.4**    When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such portions of the Project.

### 10.4    PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES
Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

presentation of the Architect's statement of services rendered or expenses incurred.

### 10.5    PAYMENTS WITHHELD
No deductions shall be made from the Architect's compensation on account of penalty, liquidated damages or other sums withheld from payments to contractors, or on account of the cost of changes in the Work other than those for which the Architect has been adjudged to be liable.

### 10.6    ARCHITECT'S ACCOUNTING RECORDS
Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of hourly rates or a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

## ARTICLE 11    BASIS OF COMPENSATION
The Owner shall compensate the Architect as follows:

**11.1**    ~~An Initial Payment of Dollars ($ ) shall be made upon execution of this Agreement and credited to the Owner's account at final payment.~~

Insert L: See Attachment A, Item 19

### 11.2    BASIC COMPENSATION
**11.2.1**    For Basic Services, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:
*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*
Basic Services compensation shall be per a percentage of the construction cost as defined in Article 12.17.

**11.2.2**    Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:
*(Insert additional phases as appropriate.)*

| | |
|---|---|
| Schematic Design Phase: | percent ( 15 %) |
| Design Development Phase: | percent ( 25 %) |
| Construction Documents Phase: | percent ( 35 %) |
| Bidding or Negotiation Phase: | percent ( 5 %) |
| Construction Phase: | percent ( 20 %) |
| Total Basic Compensation: | one hundred  percent (100%) |

### 11.3    COMPENSATION FOR ADDITIONAL SERVICES
**11.3.1**    For Project Representation Beyond Basic Services, as described in Paragraph 3.2, compensation shall be computed as follows:
Hourly per BM2OR's Hourly Rate Schedule included in Article 12.

**11.3.2    For Additional Services of the Architect,** as described in Articles 3 and 12, other than (1) Additional Project Representation, as described in Paragraph 3.2, and (2) services included in Article 12 as part of Basic Services, but excluding services of consultants, compensation shall be computed as follows:
*(Insert basis of compensation, including rates and multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*
Hourly per BM2OR's Hourly Rate Schedule included in Article 12.

**11.3.3    For Additional Services of Consultants,** including additional structural, mechanical and electrical engineering services and those provided under Subparagraph 3.4.19 or identified in Article 12 as part of Additional Services, a multiple of  one point ten (1.10 ) times the amounts billed to the Architect for such services.
*(Identify specific types of consultants in Article 12, if required.)*

### 11.4    REIMBURSABLE EXPENSES
For Reimbursable Expenses, as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.    WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

Electronic Format B151-1997

Expenses, a multiple of one point ten ( 1.10 ) times the expenses incurred by the Architect, the Architect's employees and consultants directly related to the Project.

**11.5    ADDITIONAL PROVISIONS**

**11.5.1  If the Basic Services** covered by this Agreement have not been completed within thirty-eight ( 38 ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2.

**11.5.2**  Payments are due and payable within thirty ( 30 ) days after the Owner's receipt of the ~~from the date of the~~ Architect's invoice. Amounts unpaid after thirty ( 30 ) ~~days after the invoice date~~ shall bear interest ~~at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.~~ of one percent per month not to exceed 12% per annum.
*(Insert rate of interest agreed upon.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*
Insert M: See Attachment A, Item 20.

**11.5.3**  The rates and multiples set forth for Additional Services shall be adjusted in accordance with the normal salary review practices of the Architect once per each calendar year..

## ARTICLE 12    OTHER CONDITIONS OR SERVICES

*(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.). .*
Other Conditions are part of this Agreement and are enclosed Attachments 12A through 12I.

It is the intent of the parties that any changes, modification, or revisions contained in Article 12 shall supersede and control in the event of any conflict or interpretation with any language in any other Article of Contract.

Attachments:
  Non-Collusion Statement                         Delaware DAS/DFM Attachment A
  Other Condition, 12A-12G                      BM2OR *Terms and Conditions of Agreement* (1/1/00)


This Agreement entered into as of the day and year first written above.


INDIAN RIVER SCHOOL DISTRICT                     BECKER MORGAN MOORE OLDS & RICHTER INC.

OWNER *(Signature)*                                                      ARCHITECT *(Signature)*

Charles W. Hudson                                              _____
Charles W. Hudson, Ad. Pupil Services              BRAD A. HASTINGS , AIA, PRINCIPAL
*(Printed name and title)*                                              *(Printed name and title)*


AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## NON-COLLUSION STATEMENT

This is to certify that the undersigned bidder has neither directly nor indirectly, entered into any agreement, participated in any collusion or otherwise taken any action in restraint of free competitive bidding in connection with this proposal submitted this date.

All terms and conditions of this Invitation to Bid have been thoroughly examined and are understood.

NAME OF BIDDER:                    Becker Morgan Moore Olds & Richter Inc

AUTHORIZED REPRESENTATIVE
(TYPED):                          Brad A. Hastings, AIA

AUTHORIZED REPRESENTATIVE
(SIGNATURE):

TITLE:                            Vice President

ADDRESS OF BIDDER:               312 West Main Street, Suite 300

                                 Salisbury, Maryland 21801

PHONE NUMBER:                    410.546.9100

Sworn to and Subscribed before me this 14th day of July, 2000.

My Commission expires 9-1-01.        NOTARY PUBLIC

Y0009600aa-con.doc

## ATTACHMENT "A"

Owner and Architect Agreement B151

This attachment amends AIA Document B151-1997 as follows:

1. Section 6904, Chapter 69, Title 29 of the Delaware Code requires a "prohibition against contingent fees" statement. An acceptable statement would be as follows:

   "By signing this Agreement, the Professional swears that he has not employed or retained any company or person, other than a bona fide employee working primarily for the firm offering professional services, to solicit or secure this agreement, and that he has not been paid or agreed to pay any person, company, corporation, individual, or firm, other than a bona fide employee working primarily for the firm offering professional services, any fee, commission, percentage, gift, or any other consideration, contingent upon or resulting from the award or making of this agreement."

2. Amend Article 2.1 to include civil engineering services.

3. Delete Article 2.4.3 in its entirety and replace with the following: "The Architect shall prepare a construction cost estimate using unit in-place methods with breakdowns including costs of labor, material, overhead and profit."

4. Delete Article 2.6.1 in its entirety and replace with the following: "The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the initial Contract for Construction and terminates at the later of the issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work."

5. Add a third sentence to Article 2.6.8 to read as follows: "The Architect shall prepare and distribute meeting minutes during the design and construction phases of the Project."

6. Delete the first sentence of Article 2.6.11 and replace with the following: "The Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples for the purpose of checking for conformance with the Contract Documents."

Delete the second sentence of Article 2.6.11 and replace with the following: "The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate Contractors, while allowing sufficient time in the Owner's professional judgement to permit adequate review."

7.    Delete Article 2.6.18 in its entirety and replace with the following: "The Architect's decisions on claims, disputes or other matters in question between the Owner and Contractor, except for those relating to aesthetic effect as provided in Subparagraph 2.6.17, shall be subject to mediation and other remedies at law or in equity."

8.    Delete Article 3.3.4 in its entirety. These services shall be included as Basic Services.

9.    Delete Article 3.4.10 in its entirety. These services shall be included as Basic Services as noted in Article 2.4.3.

10.   Delete Article 3.4.16 in its entirety. Section 507, Chapter 5, Title 29 of the Delaware Code requires archival quality "as-built" drawings to be deposited in the Hall of Records. Providing such record drawings will be considered a Basic Service of the Architect in all contracts, involving new construction or major renovations.

11.   Delete Article 3.4.19 in its entirety and replace with the following: "Providing services of consultants for other than architectural, civil, structural, mechanical and engineering portions of the Project provided as a part of Basic Services."

12.   Add a 4th sentence to Article 4.4 to read as follows: "The Owner may elect to transfer this responsibility to the Architect as an Additional Service in Article 3 of this Agreement."

13.   Delete Article 6 in its entirety and replace with the following:

"All pre-design studies, drawings, specifications, and other documents, including those in electronic form, prepared by the Architect under this Agreement are, and shall remain the property of the Owner whether the Project for which they are made is executed or not. Such documents may be used by the Owner to construct one or more like projects without the approval of, or additional compensation to, the Architect.   The Contractor, Subcontractors, Sub-subcontractors and Material or Equipment Suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or Material or Equipment Supplier on other Projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

The Architect shall not be liable for injury or damage resulting from the re-use of drawings and specifications if the Architect is not involved in the re-use Project. Prior to re-use of construction documents for a Project in which the Architect is not also involved, the Owner will remove from such documents all identification of the original Architect, including name, address and professional seal or stamp."

14.    Delete Article 7.2 and its sub-sections in its entirety.

15.    Delete Article 7.3 in its entirety.

16.    Delete Article 8.7 in its entirety and replace with the following: "Termination Expenses are in addition to compensation for the services of the Agreement and include expenses directly attributable to termination for which the Architect is not otherwise compensated."

17.    Delete Article 9.4 in its entirety.

18.    In Article 10.2.1 delete "out-of-town" and replace with "out-of-state". Normally the State only reimburses "out-of-state" transportation and living expenses directly related to a project.

19.    Delete Article 11.1 in its entirety.

20.    Amend Article 11.5.2 to read "Payments are due and payable within 30 days after Owner's receipt of the Architect's invoice. Amounts unpaid after 30 days shall bear interest of one percent per month not to exceed twelve percent per annum."

MAD/nac
E:\DFM\FORMS\ATTACHA.DOC
Rev. 8/99

3

ARTICLE 12
OTHER CONDITIONS

12.1    All work shall be done in accordance with the latest edition of the Delaware Department of
Public Instruction's School Construction Technical Assistance Manual requirements and
procedures, January 1999 edition.

12.2    The general program of work for this project is a defined in the Owner's "Indian River School District
Certification of Necessity/Scope of Work, Major Capital Improvement Projects for FY '01, dated
10/6/99.

12.3    Architect will carry a minimum $1,000,000 professional liability insurance policy for the term of this
contract. Architect will notify the Owner of his engineering consultants (structural, mechanical, and
electrical) professional liability limits once consultants are selected. Engineering consultants shall also
carry a minimum $1,000,000 professional liability policy for the term of the contract. Engineering
consultants shall also carry comparable general business insurance coverage as that of the Architect.
Architect and his engineering consultants shall give Owner 15 days notice of any cancellation of their
general business or of their professional liability policies or reduction in the limits of their policies.

12.4    For the purposes of this agreement, the Architect's services for the Contract Administration Phase shall
not exceed twenty-four months. Site visit intervals shall be twice a month. Progress meetings shall be
held twice a month. The site visits and progress meetings may occur on same dates.

12.5    Within the Basic Compensation the Architect will provide colored floor plan and elevation drawings of
the proposed project for Owner's public presentations.

12.6    Architect, through its undersigned representative, hereby swears that it has not employed or retained any
company or person, other than a bona fide employee working primarily for the firm offering professional
services, to solicit or secure this agreement, and that it has not paid or agreed to pay any person,
company, corporation, individual or firm, other than a bona fide employee working primarily for the
firm offering professional services, any fee, commission, percentage, gift of any other consideration,
contingent upon or resulting from the award or making of this Agreement.

12.7    Hourly Rate Schedule

**BM²OR:  Architects and Engineers**
**Architectural/Land Planning/Interior Design**

| | |
|---|---|
| Principal | $125/hr. |
| Associate | $75-90/hr. |
| Architect/Engineer | $70-85/hr. |
| Interior Design | $50-70/hr. |
| Project Manager | $60-75/hr. |
| Designer Technician | $35-65/hr. |
| Administrative/Clerical | $25-50/hr. |
| 2 Man Survey Crew | $100/hr. |
| Licensed Surveyor | $90/hr. |
| Expert Witness | 1.5 billing rates |

**Mechanical and Electrical Engineering Consultants**

| | |
|---|---|
| Principal Engineer | $125/hr. |
| Project Engineer | $100/hr. |
| Design Engineer | $85/hr. |
| Junior Engineer | $45-60/hr. |
| Senior Designer | $50-75/hr. |
| Designer | $35-55/hr. |
| Draftsman/CAD | $25-45/hr. |
| Clerical | $30-45/hr. |

**Structural Engineering Consultants**

| | |
|---|---|
| Principal | $125/hr. |
| Associate | $90/hr. |
| Senior Engineer | $80/hr. |
| Staff Engineer | $65/hr. |
| Engineer | $55/hr. |
| Technician | $50/hr. |
| Secretary | $30/hr. |

Other consultants as required will be billed hourly with similar rates for similar staff levels.

12.8    Design of **off-site utility extensions** to the site are not part of this agreement.

12.9    Architect will allow within it basic fee a maximum of four public meetings before City or County or Governmental approval Boards (not including School Board inspections) to help expedite and present the project for approval.  Other non-public meetings and coordination for approvals are part of basic compensation.

12-C

12.10 **Furniture, Fixture, & Equipment:** Design, specifications, bidding and procurement of school's moveable furniture, instructional fixtures, and instructional equipment are not part of the Architect's design services.

12.11 Architectural, Civil Engineering, Landscape Design, Mechanical, Electrical and Structural Engineering services are a part of the basic compensation.

12.12 **Solicitation of Geotechnical Engineering Services:** The Architect will assist Owner in obtaining geotechnical engineering proposals for the site's soil borings and the geotechnical engineer's recommendations for foundation systems. The contract for the geotechnical engineering and boring services will be between the Indian River School District and their selected Geotechnical Engineering firm.

12.13 **Publicity:** All publicity developed for this project will credit BM²OR as the Architect.

12.14 Basic Services compensation shown in 11.2.1 are as follows:

    1. **Basic Services**
       5.5% x $23,998,502 Construction Budget =          $1,319,918.00

12.15 **Drawings of Record:**

Upon completion of the construction, the Architect shall deposit with the Department of State and provide Owner each with one complete copy of record drawings and specifications, including marked-up final alterations thereto, conforming to information furnished to the Architect by the General Contractor in a form acceptable to the Department of State. The form acceptable to the State at the option of the Architect is either a reproducible mylar showing all contractors reported changes or blueprints with same noted changes.

The Delaware Department of Public Instruction shall also be given updated graphic floor plans for their on-going records of all state schools' floor plans. Updated graphic floor plan shall be in DPI's acceptable computerized format.

For Owner's record drawing purposes, Architect, as part of his Basic Services and printed as a chargeable reproduction to Owner's reimbursable account, will provide the General Contractor with a reproducible set of vellums or mylars for the General Contractor and/or the subcontractors to record all changes from the original contract documents made during the construction. This set of record drawings will be reviewed by Architect at end of project and forward to Owner for his records. If Architect is requested by the Owner to re-draw or re-note in a more legible manor any General Contractor or subcontractor record drawings or notes, such re-draw or re-note services by the Architect shall be billed as additional services.

12-D

12.16 **Affidavits/Certifications**
The Owner shall not require certification that would require knowledge beyond the scope of this agreement.

12.17 **Miscellaneous Provisions**

This Agreement shall be governed by Delaware Law. Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contractor for Construction, current as of the date of this Agreement between Owner and Architect.

12.18 **Hazardous Materials:** The Architect shall not be responsible for any known or unknown hazardous materials on or under the selected site including underground tank identification and removal, or environmentally related deficiencies in the building related to existing excess moisture. If hazardous materials, underground tanks, or environmental deficiencies are encountered, no part of its examination, removal or confinement shall fall within the services of this contract. Owner shall defer to the services of a hazardous materials, underground tanks specialist and/or industrial hygienist if needed.

If Architect knows or learns of hazardous materials, underground tanks, or environmental related deficiencies on-site, he will notify Owner of such materials. Architect to include Owner prepared hazardous material notification procedures in Architect's special or supplemental conditions.

12.19 Architect will advise the Owner of project status at regularly scheduled Board of Education meetings at least every two (2) months, if requested.

12.20 The duly licensed Delaware architects and engineers for this project are:

Architects:
| Thomas M. Becker, AIA | Delaware #5021 |
| W. Ronald Morgan, AIA | Delaware #5758 |
| Ernest W. Olds, AIA | Delaware #5223 |
| Brad A. Hastings, AIA | Delaware #5276 |

Civil Engineers:
| Gregory V. Moore, PE | Delaware #9311 |

Structural Engineers: To be determined
Mechanical/Electrical Engineers: To be determined

12.21 **All alternates** designed by BM²OR shall be add alternates. Architect shall be compensated for alternates at same rate as the Basic Services are calculated and be paid for same through the Bidding phase whether or not accepted as part of the final construction contracts.

12.22    **Reimbursables:** The following table of reimbursable charges will apply to this project for 36 months, subject to re-negotiation after the 36th month.

| | Regular | Color |
|---|---|---|
| Travel | $  .32/mile  (Outside of Delaware) | |
| Copies  8½x11 | $  .15 ea. | $1.00 |
| 8½x14` | $  .20 ea. | $1.50 |
| 11x17 | $  .25 ea. | $2.00 |
| Blueprints | | |
| 18x24 | $ 1.50 ea. | |
| 24x36 | $ 2.50 ea. | |
| 30x42 | $ 3.00 ea. | |
| Sepia Film | | |
| 18x24 | $ 3.00 ea. | |
| 24x36 | $ 5.00 ea. | |
| 30x42 | $ 6.00 ea. | |
| Cad Plots | Regular | Color |
| 18x24 | $5.00 ea. | $10.00 |
| 24x36 | $10.00 | $15.00 |
| 30x42 | $15.00 | $20.00 |
| Stickybacks | | |
| 8½x11 | $1.00 | |
| 11x17 | $2.00 | |

12-F

12.23   **Site work, Civil Engineering** are part of the basic services under this agreement. The services are generally described as follows: $BM^2OR$ will prepare site plans for the school. Services may include parking facilities; re-aligned service road(s); and fire lanes. Co-ordination of on-site utilities and service companies will be provided by $BM^2OR$. The following other plans will be part of the Civil services:

1.   Sediment Erosion Control
2.   Utilities on Site
3.   Site Grading and Stormwater Management Devices Directing to Stormwater Ponds and Outfalls.
4.   Overall Site Construction Plans

**Exclusions:** The following site-related agency approvals and/or preparation of plans to meet Those agency requirements are not anticipated as part of the Civil Engineering services:

1.   Survey
2.   Wetland Delineation
3.   Forest Conservation and Reforestation Review/Plans
4.   Off-site Utilities or Extensions
5.   Environmental Studies
5.   Traffic Impact Studies
6.   Subdivision of Property
7.   Re-Zoning or any Zoning Variances or Modification Requests
8.   Flood Plain agency approvals – site is assumed to be out of flood plain

However, filing of permits if required or applicable which states the above items are not applicable to this project are part of the civil engineering services.

12.24   Concept Furniture, Fixtures and Equipment Layout: Architect's documents, as part of Basic Services will indicate general furniture and equipment layouts. Final FF&E layout specifications, selections and procurement of same are not part of this contract.

12.25   SCHEDULE

Proposed schedule of Design and Construction attached.

y0009600ab-Article12.doc

12-G

**TERMS AND CONDITIONS OF AGREEMENT**
**For Professional Services**

**Scope of Project and Services**
See attached letter.

**Fixed Fee Projects**
Billings are based upon the percentage of completion of each phase of services.

**Hourly Rate Schedule**
Compensation for hourly services:

| | |
|---|---|
| Principal | $125/hr |
| Senior Architect/Engineer | $ 75- 90/hr |
| Project Manager | $ 65- 75/hr |
| Intern Architect/Engineer | $50 – 65/hr |
| Interior Designer | $ 50-70/hr |
| Designer/Technician | $ 35- 65/hr |
| Administrative Support | $ 25- 50/hr |
| 2 man survey crew | $120/hr |
| Licensed Surveyor | $90/hr |
| Expert Witness | 1.5 billing rate |

*Rates subject to change each January.*

Any consultants required and authorized by the Owner will be billed at cost plus ten percent.

**Estimated Fees**
Fee estimates are valid for 60 days. Where an estimated total is given for hourly work, it shall not constitute an upset figure but is provided to assist in project budgeting only.

**Initial Payment**
Services commence when the Owner's authorization is received with the initial payment, which will be applied to the final invoice.

**Invoices**
Invoices are sent every four weeks for services performed during the previous four weeks. Payment is due upon receipt. A late charge will be added 30 days after the invoice date at 2% per month.

**Reproduction Expenses**
In-house reproduction expenses incurred in the interest of the project will be billed as follows:

| CAD Plots | | Regular | Color |
|---|---|---|---|
| | 18x24 | $ 5.00 | $10.00 |
| | 24x36 | $10.00 | $15.00 |
| | 30x42 | $15.00 | $20.00 |
| Photocopies | 8½ x 11 | $ .15 | $ 1.00 |
| | 8½ x 14 | $ .20 | $ 1.50 |
| | 11x17 | $ .25 | $ 2.00 |
| Blueprints | 18x24 | $ 1.50 | |
| | 24x36 | $ 2.50 | |
| | 30x42 | $ 3.00 | |
| Sepia Film | 18x24 | $ 3.00 | |
| | 24x36 | $ 5.00 | |
| | 30x42 | $ 6.00 | |
| Stickybacks | 8½ x 11 | $ 1.00 | |
| | 11x17 | $ 2.00 | |

**Reimbursable Expenses**
Other expenses incurred in the interest of the project (travel, toll communications, postage, delivery, photographs, engineering or other consultants, renderings, models, etc.) will be billed at cost plus ten percent monthly.

**Government Agency Fees**
The owner shall pay directly (outside of BM2OR's fees and reimbursables) for all of the following governmental charges, including but not limited to: application fees, review fees, permit fees, plat recordation, governmental charges, impact fees, front footage assessments, water flow and pressure test, tap-in fees, bonds, transfer taxes, etc. Owner should investigate and budget these items in their total project development soft costs.

**Additional Services**
Services beyond those outlined in the attached Scope of Work, for revisions due to adjustments in the scope, budget or quality of the project, will be billed at hourly rates above.

**Change of Scope**
All fees are subject to renegotiation if the original scope of service is changed or if services are not completed within 12 months.

**Design/Build**
Owner may solicit Design/Build proposals from contractors utilizing preliminary or incomplete documents, understanding that the Owner is responsible for their engineers' computations and certifications, for the code compliance and for the coordination of this preliminary and incomplete work. A/E will review those Design/Build proposals only for consistency with the architectural design concept only if included within the scope of services agreed.

**Design Without Construction Review**
It is agreed that if the professional services of the A/E do not extend to or include the review or site observation of the contractor's work or performance, the Owner will defend, indemnify and hold harmless the A/E from any claim or suit whatsoever. Such claims shall include, but are not limited to payments, expenses or costs involved, arising from or alleged to have arisen from the contractor's performance or the failure of the contractor's work to conform to the design intent and the contract documents. The A/E agrees to be responsible for his own or his employees' negligent acts, errors or omissions, as limited below.

**Ownership of Documents**
All documents (drawings, sketches, reports, etc.) prepared as instruments of service shall remain the copyrighted property of the A/E. Work which is furnished, but not paid for, will be returned to the A/E and shall not be used for any purpose until payment is rendered.

**Insurance**
The A/E is protected by Workmen's Compensation, Professional Liability and Standard Public Liability Insurance. The A/E will not be responsible for any loss, damage or liability arising from Owner's negligent acts, errors or omissions or those by Owner's consultants, contractors, and agents or from those of any person whose conduct is not within the A/E's contractual responsibility.

**Risk Allocation**
Owner and A/E have discussed the risk, rewards and benefits of the project and the A/E's total fee for services. The risks have been allocated such that the Owner agrees that to the fullest extent permitted by law, A/E's total liability to Owner for any and all injuries, claims, losses, expenses, damages or claims expenses arising out of this agreement from any cause or causes, shall not exceed the total fee or $50,000, whichever is greater. Such causes include but are not limited to design professional's negligence, errors, omissions, strict liability, breach of contract or breach of warranty.

**Termination of Agreement**
This Agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination. This Agreement may be terminated by the Owner upon at least seven days' written notice to the A/E in the event that the Project is permanently abandoned. In the event of termination not the fault of the A/E, the A/E shall be compensated for all services performed to termination date, together with Reimbursable Expenses then due.

**Publicity**
All publicity developed for this project will credit Becker Morgan Moore Olds & Richter as the Architects/Engineers.

**Environmental Hazards**
The A/E does not perform services related to the identification, containment or removal of asbestos, hazardous waste, or any other environmental hazards, nor will it assume liability for any damages or costs related to these materials.

**Payment/Work Stoppage**
The A/E reserves the right to stop work on the project upon 10 days written notice to Owner for non-payment. A/Es stoppage of work shall be without liability for consequential or other damages resulting from the stoppage.

**Standard of Care**
The Owner acknowledges the inherent risks associated with construction. In performing professional services, the A/E will use that degree of care and skill ordinarily exercised under similar circumstances by competent licensed architects in Delaware.

**Successors & Assigns**
The Owner and the A/E bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither party shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.

**Affidavits/Certifications**
Any affidavits or certifications required by local municipalities, lenders, or others shall be written to include language acceptable to the A/E's Liability Insurance Carrier-CNA. The Owner shall not require certification that would require knowledge beyond the scope of this agreement.

**Miscellaneous Provisions**
Unless otherwise specified, this Agreement shall be governed by Delaware Law. Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**Collection**
If it is necessary to enforce collection on any amount past due under this agreement, the A/E shall be reimbursed for all legal and other reasonable costs related thereto, including (33%) attorney's fees, court costs, administrative time and other collection costs.

**Certificate of Merit**
The Owner shall make no claim (whether directly or in the form of a third party claim) against the A/E unless the Owner shall have first provided the A/E with a written certification executed by an architect licensed in the State of Delaware, specifying each and every act or omission which the certifier contends constitutes a violation of the standard of care expected of an architect performing professional services under similar circumstances. Such certificate shall be provided to the A/E thirty (30) days prior to the presentation of any such claim.

**Frivolous Suit**
In the event the Owner makes a claim or brings an action against the A/E for any act arising out of the performance of the services hereunder, and the Owner fails to prove such a claim or action, then the Owner shall pay all legal and other costs incurred by the A/E in defense of such claim or action.

**Electronic Media**
Electronic media disks of project files, if requested, are billed outside of fees as a reimbursable at $100.00 per disk plus printing costs per sheet for one record set for Owner and one set for A/E.

**Arbitration**
Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof may if both parties agree at that time in writing be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

January 1, 2000
**Becker Morgan Moore Olds & Richter Inc**

TCA1JAN00 DE.DOC