## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RLI  INSURANCE COMPANY,<br><br>Plaintiff,<br>vs.<br><br>INDIAN RIVER SCHOOL DISTRICT,<br>EDIS COMPANY AND BECKER MORGAN<br>GROUP, INC.,<br>Defendants. | )<br>) Civil Action No.: 05-858-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### APPENDIX IN SUPPORT OF DEFENDANT EDIS COMPANY'S
### OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

LOGAN & ASSOCIATES, LLC

By:_____ /s/ Donald L. Logan_____
Donald L. Logan (Delaware I.D. No. 2604)
Victoria K. Petrone (Delaware I.D. No. 4210)
One Customs House, Suite 100
P.O. Box 89
Wilmington, DE 19899
P:  (302) 655-8000
F:  (302) 655-8005
email: dlogan@loganllc.com
*Attorneys for Defendant EDiS Company*

Dated: September 27, 2007

## TABLE OF CONTENTS

| **Document** | **Page No.** |
|---|---|
| Construction Manager Contract | A-1 |
| Deposition of David S. Berry excerpts (pp. 14, 297, 298, 304, 305) | A-16 |
| Deposition of Gregory C. Weer excerpts (pp.15, 184) | A-22 |
| *Plaintiff RLI Insurance Company's Answers to Defendant EDiS Company's First Set of Interrogatories* | A-25 |

*AIA Document B801/CMa - Electronic Format*

# Standard Form of Agreement Between
# Owner and Construction Manager

*where the Construction Manager is NOT a Constructor*

### 1992 Edition

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is intended to be used in conjunction with the 1992 editions of AIA Documents B141/CMa, A101/CMa and A201/CMa.

Copyright 1973, 1980, © 1992 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C., 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

## AGREEMENT

made as of the <u>Seventh</u> day of <u>January</u> in the year of <u>2002</u>
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name and address)*
<u>Indian River School District</u>
<u>31 Hoosier Street</u>
<u>R.D. #2 Box 156</u>
<u>Selbyville, DE  19975</u>

and the Construction Manager:
*(Name and address)*
<u>EDiS Company</u>
<u>110 S. Poplar Street, Suite 400</u>
<u>Wilmington, DE  19801</u>

for the following Project:
*(Include detailed description of Project, location, address and scope.)*
<u> A new Sussex Central High School of approximately 187,225 square feet located at Ingram Pond on Route 410 West of Millsboro, Delaware.</u>

The Architect is:
*(Name and address)*
<u>Becker Morgan Group</u>
<u>Port Exchange</u>
<u>312 W. Main Street, Suite 300</u>
<u>Salisbury, MD  21801</u>

The Owner and Construction Manager agree as set forth below.

---

## Terms and Conditions of Agreement Between Owner and Construction Manager

---

**ARTICLE 1**
**CONSTRUCTION MANAGER'S**
**RESPONSIBILITIES**

**1.1    CONSTRUCTION MANAGER'S SERVICES**

**1.1.1**    The Construction Manager's services consist of those services performed by the Construction Manager, Construction Manager's employees and Construction Manager's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 14.

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

**1.1.2**    The Construction Manager's services shall be provided in conjunction with the services of an Architect as described in the edition of AIA Document B141/CMa, Standard Form of Agreement Between Owner and Architect, Construction Manager-Adviser Edition, current as of the date of this Agreement.

**1.1.3**    The Construction Manager shall provide sufficient organization, personnel and management to carry out the requirements of this Agreement in an expeditious and economical manner consistent with the interests of the Owner.

**1.1.4**    The services covered by this Agreement are subject to the time limitations contained in Subparagraph 13.5.1.

ARTICLE 2
SCOPE OF CONSTRUCTION MANAGER'S
BASIC SERVICES

**2.1**    DEFINITION

**2.1.1**    The Construction Manager's Basic Services consist of those described in Paragraphs 2.2 and 2.3 and any other services identified in Article 14 as part of Basic Services.

**2.2**    PRE-CONSTRUCTION PHASE

**2.2.1**    The Construction Manager shall review the program furnished by the Owner to ascertain the requirements of the Project and shall arrive at a mutual understanding of such requirements with the Owner.

**2.2.2**    The Construction Manager shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other.

**2.2.3**    ~~Based on early schematic designs and other design criteria prepared by the Architect, the Construction Manager shall prepare preliminary estimates of Construction Cost for program requirements using area, volume or similar conceptual estimating techniques. The Construction Manager shall provide cost evaluations of alternative materials and systems.~~ See Subparagraph 14.2 on attached sheet.

**2.2.4**    The Construction Manager shall expeditiously review design documents ~~during their development~~ and advise on proposed site use and improvements, selection of materials, building systems and equipment, and methods of Project delivery. The Construction Manager shall provide recommendations on relative feasibility of construction methods, availability of materials and labor, time requirements for procurement, installation and construction, and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, and possible economies.

**2.2.5**    The Construction Manager shall prepare and periodically update a Project Schedule for the Architect's review and the Owner's acceptance. The Construction Manager shall

obtain the Architect's approval for the portion of the preliminary project schedule relating to the performance of the Architect's services. In the Project Schedule, the Construction Manager shall coordinate and integrate the Construction Manager's services, the Architect's services and the Owner's responsibilities with anticipated construction schedules, highlighting critical and long-lead-time items.

**2.2.6**    As the Architect progress with the ~~preparation~~revising of the ~~Schematic, Design Development and~~ Construction Documents, the Construction Manager shall prepare and update, at appropriate intervals agreed to by the Owner, Construction Manager and Architect, estimates of Construction Cost of increasing detail and refinement. The estimated cost of each Contract shall be indicated with supporting detail. Such estimates shall be provided for the Architect's review and the Owner's approval. The Construction Manager shall advise the Owner and Architect if it appears that the Construction Cost may exceed the latest approved Project budget and make recommendations for corrective action.

**2.2.7**    The Construction Manager shall consult with the Owner and Architect regarding the Construction Documents and make recommendations whenever design details adversely affect constructibility, cost or schedules.

**2.2.8**    The Construction Manager shall provide recommendations and information to the Owner and Architect regarding the assignment of responsibilities for temporary Project facilities and equipment, materials and services for common use of the Contractors. The Construction Manager shall verify that such requirements and assignment of responsibilities are included in the proposed Contract Documents.

**2.2.9**    The Construction Manager shall provide recommendations and information to the Owner regarding the allocation of responsibilities for safety programs among the Contractors.

**2.2.10**    The Construction Manager shall advise on the division of the Project into individual Contracts for various categories of Work, including the method to be used for selecting Contractors and awarding Contracts. If multiple Contracts are to be awarded, the Construction Manager shall review the Construction Documents and make recommendations as required to provide that (1) the Work of the Contractors is coordinated, (2) all requirements for the Project have been assigned to the appropriate Contract, (3) the likelihood of jurisdictional disputes has been minimized, and (4) proper coordination has been provided for phased construction.

**2.2.11**    The Construction Manager shall prepare a Project construction schedule providing for the components of the Work, including phasing of construction, times of commencement and completion required of each Contractor, ordering and delivery of products requiring long lead time, and the occupancy requirements of the Owner. The Construction Manager shall provide the current Project construction schedule for each set of bidding documents.

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

THE CONSTRUCTION CONTRACT

**2.2.12** The Construction Manager shall expedite and coordinate the ordering and delivery of materials requiring long lead time.

**2.2.13** The Construction Manager shall assist the Owner in selecting, retaining and coordinating the professional services of surveyors, special consultants and testing laboratories required for the Project.

**2.2.14** The Construction Manager shall provide an analysis of the types and quantities of labor required for the Project and review the availability of appropriate categories of labor required for critical phases. The Construction Manager shall make recommendations for actions designed to minimize adverse effects of labor shortages.

**2.2.15** The Construction Manager shall assist the Owner in obtaining information regarding applicable requirements for equal employment opportunity programs for inclusion in the Contract Documents.

**2.2.16** Following the Owner's approval of the Construction Documents, the Construction Manager shall update and submit the latest estimate of Construction Cost and the Project construction schedule for the Architect's review and the Owner's approval.

**2.2.17** The Construction Manager shall submit the list of prospective bidders for the Architect's review and the Owner's approval.

**2.2.18** The Construction Manager shall develop bidders' interest in the Project and establish bidding schedules. The Construction Manager, with the assistance of the Architect, shall issue bidding documents to bidders and conduct prebid conferences with prospective bidders. The Construction Manager shall assist the Architect with regard to questions from bidders and with the issuance of addenda.

**2.2.19** The Construction Manager shall receive bids, prepare bid analyses and make recommendations to the Owner for the Owner's award of Contracts or rejection of bids.

**2.2.20** The Construction Manager shall assist the Owner in preparing Construction Contracts and advise the Owner on the acceptability of Subcontractors and material suppliers proposed by Contractors.

**2.2.21** The Construction Manager shall assist the Owner in obtaining building permits and special permits for permanent improvements, except for permits required to be obtained directly by the various Contractors. The Construction Manager shall verify that the Owner has paid applicable fees and assessments. The Construction Manager shall assist the Owner and Architect in connection with the Owner's responsibility for filing documents required for the approvals of governmental authorities having jurisdiction over the Project.

2.2.22 See Subparagraph 14.3 on attached sheet.

**2.3**    CONSTRUCTION PHASE-ADMINISTRATION OF

**2.3.1** ~~The Construction Phase will commence with the award of the initial Construction Contract or purchase order and, together with the Construction Manager's obligation to provide Basic Services under this Agreement, will end 30 days after final payment to all Contractors is due.~~ See Subparagraph 14.2 on attached sheet.

**2.3.2** The Construction Manager shall provide administration of the Contracts for Construction in cooperation with the Architect as set forth below and in the edition of AIA Document A201/CMa, General Conditions of the Contract for Construction, Construction Manager-Adviser Edition, current as of the date of this Agreement.

**2.3.3** The Construction Manager shall provide administrative, management and related services to coordinate scheduled activities and responsibilities of the Contractors with each other and with those of the Construction Manager, the Owner and the Architect to endeavor to manage the Project in accordance with the latest approved estimate of Construction Cost, the Project Schedule and the Contract Documents.

**2.3.4** The Construction Manager shall schedule and conduct meetings to discuss such matters as procedures, progress and scheduling. The Construction Manager shall prepare and promptly distribute minutes to the Owner, Architect and Contractors.

**2.3.5** Utilizing the Construction Schedules provided by the Contractors, the Construction Manager shall update the Project construction schedule incorporating the activities of the Contractors on the Project, including activity sequences and durations, allocation of labor and materials, processing of Shop Drawings, Product Data and Samples, and delivery of products requiring long lead time and procurement. The Project construction schedule shall include the Owner's occupancy requirements showing portions of the Project having occupancy priority. The Construction Manager shall update and reissue the Project construction schedule as required to show current conditions. If an update indicates that the previously approved Project construction schedule may not be met, the Construction Manager shall recommend corrective action to the Owner and Architect.

**2.3.6** Consistent with the various bidding documents, and utilizing information from the Contractors, the Construction Manager shall coordinate the sequence of construction and assignment of space in areas where the Contractors are performing Work.

**2.3.7** The Construction Manager shall endeavor to obtain satisfactory performance from each of the Contractors. The Construction Manager shall recommend courses of action to the Owner when requirements of a Contract are not being fulfilled.

**2.3.8** The Construction Manager shall monitor the approved estimate of Construction Cost. The Construction Manager shall show actual costs for activities in progress and estimates for uncompleted tasks by way of comparison with

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

such approved estimate.

**2.3.9**  The Construction Manager shall develop cash flow reports and forecasts for the Project and advise the Owner and Architect as to variances between actual and budgeted or estimated costs.

**2.3.10**  The Construction Manager shall maintain accounting records on authorized Work performed under unit costs, additional Work performed on the basis of actual costs of labor and materials, and other Work requiring accounting records.

**2.3.11**  The Construction Manager shall develop and implement procedures for the review and processing of applications by Contractors for progress and final payments.

**2.3.11.1**  Based on the Construction Manager's observations and evaluations of each Contractor's Application for Payment, the Construction Manager shall review and certify the amounts due the respective Contractors.

**2.3.11.2**  The Construction Manager shall prepare a Project Application for Payment based on the Contractors' Certificates for Payment.

**2.3.11.3**  The Construction Manager's certification for payment shall constitute a representation to the Owner, based on the Construction Manager's determinations at the site as provided in Subparagraph 2.3.13 and on the data comprising the Contractors' Applications for Payment, that, to the best of the Construction Manager's knowledge, information and belief, the Work has progressed to the point indicated and the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by the Construction Manager. The issuance of a Certificate for Payment shall further constitute a representation that the Contractor is entitled to payment in the amount certified.

**2.3.11.4**  The issuance of a Certificate for Payment shall not be a representation that the Construction Manager has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences for the Contractor's own Work, or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.3.12**  The Construction Manager shall review the safety programs developed by each of the Contractors for purposes of coordinating the safety programs with those of the other Contractors. The Construction Manager's responsibilities for coordination of safety programs shall not extend to direct control over or charge of the acts or omissions of the Contractors, Subcontractors, agents or employees of the Contractors or Subcontractors, or any other persons

performing portions of the Work and not directly employed by the Construction Manager.

**2.3.13**  The Construction Manager shall determine in general that the Work of each Contractor is being performed in accordance with the requirements of the Contract Documents, endeavoring to guard the Owner against defects and deficiencies in the Work. As appropriate, the Construction Manager shall have authority, upon written authorization from the Owner, to require additional inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. The Construction Manager, in consultation with the Architect, may reject Work which does not conform to the requirements of the Contract Documents.

**2.3.14**  The Construction Manager shall schedule and coordinate the sequence of construction in accordance with the Contract Documents and the latest approved Project construction schedule.

**2.3.15**  With respect to each Contractor's own Work, the Construction Manager shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of each of the Contractors, since these are solely the Contractor's responsibility under the Contract for Construction. The Construction Manager shall not be responsible for a Contractor's failure to carry out the Work in accordance with the respective Contract Documents. The Construction Manager shall not have control over or charge of acts or omissions of the Contractors, Subcontractors, or their agents or employees, or any other persons performing portions of the Work not directly employed by the Construction Manager.

**2.3.16**  The Construction Manager shall transmit to the Architect requests for interpretations of the meaning and intent of the Drawings and Specifications, and assist in the resolution of questions that may arise.

**2.3.17**  The Construction Manager shall review requests for changes, assist in negotiating Contractors' proposals, submit recommendations to the Architect and Owner, and, if they are accepted, prepare Change Orders and Construction Change Directives which incorporate the Architect's modifications to the Documents.

**2.3.18**  The Construction Manager shall assist the Architect in the review, evaluation and documentation of Claims.

**2.3.19**  The Construction Manager shall receive certificates of insurance from the Contractors and forward them to the Owner with a copy to the Architect.

**2.3.20**  In collaboration with the Architect, the Construction Manager shall establish and implement procedures for expediting the processing and approval of Shop Drawings, Product Data, Samples and other submittals. The Construction Manager shall review all Shop Drawings, Product Data, Samples and other submittals from the Contractors. The Construction Manager shall coordinate submittals with information contained in related documents and transmit to

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

Electronic Format  B801/CMa-1992

the Architect those which have been approved by the Construction Manager. The Construction Manager's actions shall be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner or Contractors.

**2.3.21** The Construction Manager shall record the progress of the Project. The Construction Manager shall submit written progress reports to the Owner and Architect including information on each Contractor and each Contractor's Work, as well as the entire Project, showing percentages of completion. The Construction Manager shall keep a daily log containing a record of weather, each Contractor's Work on the site, number of workers, identification of equipment, Work accomplished, problems encountered, and other similar relevant data as the Owner may require.

**2.3.22** The Construction Manager shall maintain at the Project site for the Owner one record copy of all Contracts, Drawings, Specifications, addenda, Change Orders and other Modifications, in good order and marked currently to record changes and selections made during construction, and in addition, approved Shop Drawings, Product Data, Samples and similar required submittals. The Construction Manager shall maintain records, in duplicate, of principal building layout lines, elevations of the bottom of footings, floor levels and key site elevations certified by a qualified surveyor or professional engineer. The Construction Manager shall make all such records available to the Architect and upon completion of the Project shall deliver them to the Owner.

**2.3.23** The Construction Manager shall arrange for the delivery, storage, protection and security of Owner-purchased materials, systems and equipment that are a part of the Project until such items are incorporated into the Project.

**2.3.24** With the Architect and the Owner's maintenance personnel, the Construction Manager shall observe the Contractors' final testing and start-up of utilities, operational systems and equipment.

**2.3.25** When the Construction Manager considers each Contractor's Work or a designated portion thereof substantially complete, the Construction Manager shall, jointly with the Contractor, prepare for the Architect a list of incomplete or unsatisfactory items and a schedule for their completion. The Construction Manager shall assist the Architect in conducting inspections to determine whether the Work or designated portion thereof is substantially complete.

**2.3.26** The Construction Manager shall coordinate the correction and completion of the Work. Following issuance of a Certificate of Substantial Completion of the Work or a designated portion thereof, the Construction Manager shall evaluate the completion of the Work of the Contractors and make recommendations to the Architect when Work is ready for final inspection. The Construction Manager shall assist the Architect in conducting final inspections.

**2.3.27** The Construction Manager shall secure and transmit to the Architect warranties and similar submittals required by the Contract Documents for delivery to the Owner and deliver all keys, manuals, record drawings and maintenance stocks to

the Owner. The Construction Manager shall forward to the Architect a final Project Application for Payment upon compliance with the requirements of the Contract Documents.

**2.3.28** Duties, responsibilities and limitations of authority of the Construction Manager as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Construction Manager, Architect and Contractors. Consent shall not be unreasonably withheld.

**ARTICLE 3**
**ADDITIONAL SERVICES**

**3.1    GENERAL**

**3.1.1**    The services described in this Article 3 are not included in Basic Services unless so identified in Article 14, and they shall be paid for by the Owner as provided in this Agreement, in addition to the compensation for Basic Services. The Optional Additional Services described under Paragraph 3.3 shall only be provided if authorized or confirmed in writing by the Owner. If services described under Contingent Additional Services in Paragraph 3.2 are required due to circumstances beyond the Construction Manager's control, the Construction Manager shall notify the Owner prior to commencing such services. If the Owner deems that such services described under Paragraph 3.2 are not required, the Owner shall give prompt written notice to the Construction Manager. If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Construction Manager shall have no obligation to provide those services.

**3.2    CONTINGENT ADDITIONAL SERVICES**

**3.2.1**    Providing services required because of significant changes in the Project including, but not limited to, changes in size, quality, complexity or the Owner's schedule.

**3.2.2**    Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and furnishing services required in connection with the replacement of such Work.

**3.2.3**    Providing services made necessary by the termination or default of the Architect or a Contractor, by major defects or deficiencies in the Work of a Contractor, or by failure of performance of either the Owner or Contractor under a Contract for Construction.

**3.2.4**    Providing services in evaluating an extensive number of claims submitted by a Contractor or others in connection with the Work.

**3.2.5**    Providing services in connection with a public hearing, arbitration proceeding or legal proceeding except where the Construction Manager is party thereto.

**3.3    OPTIONAL ADDITIONAL SERVICES**

**3.3.1**    Providing services relative to future facilities, systems and equipment.

---

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

**A - 5**

**3.3.2** Providing services to investigate existing conditions or facilities or to provide measured drawings thereof.

**3.3.3** Providing services to verify the accuracy of drawings or other information furnished by the Owner.

**3.3.4** Providing services required for or in connection with the Owner's selection, procurement or installation of furniture, furnishings and related equipment.

**3.3.5** Providing services for tenant improvements.

**3.3.6** Providing any other services not otherwise included in this Agreement.

## ARTICLE 4
## OWNER'S RESPONSIBILITIES

**4.1** The Owner shall provide full information regarding requirements for the Project, including a program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems, and site requirements.

**4.2** The Owner shall establish and update an overall budget for the Project based on consultation with the Construction Manager and Architect, which shall include the Construction Cost, the Owner's other costs and reasonable contingencies related to all of these costs.

**4.3** If requested by the Construction Manager, the Owner shall furnish evidence that financial arrangements have been made to fulfill the Owner's obligations under this Agreement.

**4.4** The Owner shall designate a representative authorized to act on the Owner's behalf with respect to the Project. The Owner, or such authorized representative, shall render decisions in a timely manner pertaining to documents submitted by the Construction Manager in order to avoid unreasonable delay in the orderly and sequential progress of the Construction Manager's services.

**4.5** The Owner shall retain an architect whose services, duties and responsibilities are described in the edition of AIA Document B141/Cma, Standard Form of Agreement Between Owner and Architect, Construction Manager-Adviser Edition, current as of the date of this Agreement. The Terms and Conditions of the Agreement Between the Owner and Architect shall be furnished to the Construction Manager and shall not be modified without written consent of the Construction Manager, which consent shall not be unreasonably withheld. The Construction Manager shall not be responsible for actions taken by the Architect.

**4.6** The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.7** The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time

for the Project, including auditing services the Owner may require to verify the Contractors' Applications for Payment or to ascertain how or for what purposes the Contractors have used the money paid by or on behalf of the Owner.

**4.8** The Owner shall furnish the Construction Manager with a sufficient quantity of Construction Documents.

**4.9** The services, information and reports required by Paragraphs 4.5 through 4.8 shall be furnished at the Owner's expense, and the Construction Manager shall be entitled to rely upon the accuracy and completeness thereof.

**4.10** Prompt written notice shall be given by the Owner to the Construction Manager and Architect if the Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

**4.11** The Owner reserves the right to perform construction and operations related to the Project with the Owner's own forces, and to award contracts in connection with the Project which are not part of the Construction Manager's responsibilities under this Agreement. The Construction Manager shall notify the Owner if any such independent action will interfere with the Construction Manager's ability to perform the Construction Manager's responsibilities under this Agreement. When performing construction or operations related to the Project, the Owner agrees to be subject to the same obligations and to have the same rights as the Contractors.

**4.12** Information or services under the Owner's control shall be furnished by the Owner with reasonable promptness to avoid delay in the orderly progress of the Construction Manager's services and the progress of the Work.

## ARTICLE 5
## CONSTRUCTION COST

**5.1** DEFINITION

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**5.1.2** The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractors' overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction. Except as provided in Subparagraph 5.1.3, Construction Cost shall also include the compensation of the Construction Manager and Construction Manager's consultants.

**5.1.3** Construction Cost does not include the compensation of the Architect and Architect's consultants, costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Article 4. If any portion of the Construction Manager's compensation is based upon a percentage of Construction Cost, then Construction

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

Cost, for the purpose of determining such portion, shall not include the compensation of the Construction Manager or Construction Manager's consultants.

## 5.2    RESPONSIBILITY FOR CONSTRUCTION COST

**5.2.1** Evaluations of the Owner's Project budget, preliminary estimates of Construction Cost and detailed estimates of Construction Cost prepared by the Construction Manager represent the Construction Manager's best judgment as a person or entity familiar with the construction industry. It is recognized, however, that neither the Construction Manager nor the Owner has control over the cost of labor, materials or equipment, over Contractors' methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Construction Manager cannot and does not warrant or represent that bids or negotiated prices will not vary from the Project budget proposed, established or approved by the Owner, or from any cost estimate or evaluation prepared by the Construction Manager.

**5.2.2** No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget unless such fixed limit has been agreed upon in writing and signed by the parties hereto. If such a fixed limit has been established, the Construction Manager shall be permitted to include contingencies for design, bidding and price escalation, and shall consult with the Architect to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents, to suggest reasonable adjustments in the scope of the Project, and to suggest inclusion of alternate bids in the Construction Documents to adjust the Construction Cost to the fixed limit. Fixed limits, if any, shall be increased in the amount of any increase in the Contract Sums occurring after execution of the Contracts for Construction.

**5.2.3** If the Bidding or Negotiation Phase has not commenced within 90 days after submittal of the Construction Documents to the Owner, any Project budget or fixed limit of Construction Cost shall be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which proposals are sought.

**5.2.4** If a fixed limit of Construction Cost (adjusted as provided in Subparagraph 5.2.3) is exceeded by the sum of the lowest bona fide bids or negotiated proposals plus the Construction Manager's estimate of other elements of Construction Cost for the Project, the Owner shall:

.1    give written approval of an increase in such fixed limit;

.2    authorize rebidding or renegotiating of the Project within a reasonable time;

.3    if the Project is abandoned, terminate in accordance with Paragraph 9.3; or

.4    cooperate in revising the Project scope and quality as required to reduce the Construction Cost.

**5.2.5** If the Owner chooses to proceed under Clause 5.2.4.4, the Construction Manager, without additional charge, shall cooperate with the Owner and Architect as necessary to bring the Construction Cost within the fixed limit, if established as a condition of this Agreement.

## ARTICLE 6
## CONSTRUCTION SUPPORT ACTIVITIES

**6.1** Construction support activities, if provided by the Construction Manager, shall be governed by separate contractual agreements unless otherwise provided in Article 14.

**6.2** Reimbursable expenses listed in Article 14 for construction support activities may be subject to trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment which shall accrue to the Owner, and the Construction Manager shall make provisions so that they can be secured.

6.3        See Subparagraph 14.5 on attached sheet.

## ARTICLE 7
## OWNERSHIP AND USE OF
## ARCHITECT'S DRAWINGS, SPECIFICATIONS
## AND OTHER DOCUMENTS

**7.1** The Drawings, Specifications and other documents prepared by the Architect are instruments of the Architect's service through which the Work to be executed by the Contractors is described. The Construction Manager may retain one record set. The Construction Manager shall not own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect, and unless otherwise indicated the Architect shall be deemed the author of them and will retain all common law, statutory and other reserved rights, in addition to the copyright. All copies of them, except the Construction Manager's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Project. The Drawings, Specifications and other documents prepared by the Architect, and copies thereof furnished to the Construction Manager, are for use solely with respect to this Project. They are not to be used by the Construction Manager on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner and Architect. The Construction Manager is granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the performance of the Construction Manager's services under this Agreement.

All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's copyright or other reserved rights.

## ARTICLE 8
## ARBITRATION

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

Electronic Format  B801/CMa-1992

7

**A - 7**

8.1　　Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

8.2　　Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

8.3　　No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Construction Manager, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

8.4　　The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

### ARTICLE 9
### TERMINATION, SUSPENSION OR ABANDONMENT

9.1　　This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

9.2　　If the Project is suspended by the Owner for more than 30 consecutive days, the Construction Manager shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Construction Manager's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Construction Manager's services.

9.3　　This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Construction Manager in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Construction

Manager may terminate this Agreement by giving written notice.

9.4　　Failure of the Owner to make payments to the Construction Manager in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

9.5　　If the Owner fails to make payment when due the Construction Manager for services and expenses, the Construction Manager may, upon seven days' written notice to the Owner, suspend performance of services under this Agreement. Unless payment in full is received by the Construction Manager within seven days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Construction Manager shall have no liability to the Owner for delay or damage caused to the Owner because of such suspension of services.

9.6　　In the event of termination not the fault of the Construction Manager, the Construction Manager shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 9.7.

9.7　　Termination Expenses are those costs directly attributable to termination for which the Construction Manager is not otherwise compensated.

### ARTICLE 10
### MISCELLANEOUS PROVISIONS

10.1　　Unless otherwise provided, this Agreement shall be governed by the law of the place where the Project is located.

10.2　　Terms in this Agreement shall have the same meaning as those in the edition of AIA Document A201/CMa, General Conditions of the Contract for Construction, Construction Manager-Adviser Edition, current as of the date of this Agreement.

10.3　　Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Project Certificate for Payment for acts or failures to act occurring after Substantial Completion.

10.4　　**Waivers of Subrogation.** The Owner and Construction Manager waive all rights against each other and against the Contractors, Architect, consultants, agents and employees of any of them, for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201/CMa, General Conditions of the Contract for Construction, Construction Manager-Adviser Edition, current as of the date of this Agreement. The Owner and Construction Manager each shall require similar waivers from their Contractors, Architect,

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

Electronic Format B801/CMa-1992
8

consultants, agents, and persons or entities awarded separate contracts administered under the Owner's own forces.

**10.5**    The Owner and Construction Manager, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Construction Manager shall assign this Agreement without the written consent of the other.

**10.6**    This Agreement represents the entire and integrated agreement between the Owner and Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Construction Manager.

**10.7**    Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Construction Manager.

**10.8**    Unless otherwise provided in this Agreement, the Construction Manager and the Construction Manager's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.

### ARTICLE 11
### INSURANCE

**11.1    CONSTRUCTION MANAGER'S LIABILITY INSURANCE**

**11.1.1**    The Construction Manager shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Construction Manager from claims set forth below which may arise out of or result from the Construction Manager's operations under this Agreement and for which the Construction Manager may be legally liable.

   .1    claims under workers compensation, disability benefit and other similar employee benefit acts which are applicable to the operations to be performed;

   .2    claims for damages because of bodily injury, occupational sickness or disease, or death of the Construction Manager's employees;

   .3    claims for damages because of bodily injury, sickness or disease, or death of any person other than the Construction Manager's employees;

   .4    claims for damages insured by usual personal injury liability coverage which are sustained (1) by a person as a result of an offense directly or indirectly related to employment of such person by the Construction Manager, or (2) by another person;

   .5    claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

   .6    claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle.

**11.1.2**    The insurance required by Subparagraph 11.1.1 shall be written for not less than limits of liability specified in Article 14 or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of operations under this Agreement until date of final payment and termination of any coverage required to be maintained after final payment.

### ARTICLE 12
### PAYMENTS TO THE CONSTRUCTION MANAGER

**12.1    DIRECT PERSONNEL EXPENSE**

**12.1.1**    Direct Personnel Expense is defined as the direct salaries of the Construction Manager's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

**12.2    REIMBURSABLE EXPENSES**

**12.2.1**    Reimbursable Expense are in addition to compensation for Basic and Additional Services and include expenses incurred by the Construction Manager and Construction Manager's employees and consultants in the interest of the Project, as identified in the following Clauses.

**12.2.1.1** Expense of transportation in connection with the Project, expenses in connection with authorized out-of-town travel; long-distance communications; and fees paid for securing approval of authorities having jurisdiction over the Project.

**12.2.1.2** Expense of reproductions, postage, express deliveries, electronic facsimile transmissions and handling of Drawings, Specifications and other documents.

**12.2.1.3** If authorized in advance by the Owner, expense of overtime work requiring higher than regular rates.

**12.2.1.4** Expense of additional insurance coverage or limits requested by the Owner in excess of that normally carried by the Construction Manager.

**12.3    PAYMENTS ON ACCOUNT OF BASIC SERVICES**

**12.3.1**    An initial payment as set forth in Paragraph 13.1 is the minimum payment under this Agreement.

**12.3.2**    Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

services performed within each phase of service, on the basis set forth in Subparagraph 13.2.1.

**12.3.3** If and to the extent that the time initially established in Subparagraph 13.5.1 of this Agreement is exceeded or extended through no fault of the Construction Manager, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 13.3.1.

**12.3.4** When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with Subparagraph 13.2.1, based on (1) the lowest bona fide bids or negotiated proposals, or (2) if no such bids or proposals are received, the latest approved estimate of such portions of the Project.

**12.4    PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES AND REIMBURSABLE EXPENSES**

**12.4.1** Payments on account of the Construction Manager's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Construction Manager's statement of services rendered or expenses incurred.

**12.5    PAYMENTS WITHHELD**

**12.5.1** No deductions shall be made from the Construction Manager's compensation on account of penalty, liquidated damages or other sums withheld from payments to Contractors, or on account of the cost of changes in Work other than those for which the Construction Manager has been found to be liable.

**12.6    CONSTRUCTION MANAGER'S ACCOUNTING RECORDS**

**12.6.1** Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

## ARTICLE 13
## BASIS OF COMPENSATION

The Owner shall compensate the Construction Manager as follows:

**13.1**    AN INITIAL PAYMENT of <u>zero</u> Dollars (s <u>0</u> ) shall be made upon execution of this Agreement and credited to the owner's account at final payment.

**13.2    BASIC COMPENSATION**

**13.2.1**    FOR BASIC SERVICES, as described in Article 2, and any other services included in Article 14 as part of Basic Services, Basic Compensation shall be computed as follows:

~~For Pre-Construction Phase Services:~~
*(Insert basis of compensation, including stipulated sums, multiples or percentages.)*
<u>For Pre-Construction and Construction Phase Services the Basic Compensation shall be fixed at One Million One Hundred Ninety Two Thousand dollars and zero cents ($1,192,000). The Basic Compensation shall be billed in 32 monthly installments of $36,120 starting in January 2002 with one final payment of $36,160.</u>

~~For Construction Phase Services:~~
*(Insert basis of compensation, including stipulated sums, multiples or percentages.)*

**13.3    COMPENSATION FOR ADDITIONAL SERVICES**

**13.3.1**    FOR ADDITIONAL SERVICES OF THE CONSTRUCTION MANAGER, as described in Article 3, and any other services included in Article 14 as Additional Services, compensation shall be computed as follows:
*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*
<u>Compensation for additional services shall be calculated by multiplying the hours expended by the Construction Manager's personnel involved in the additional services times their DPE time 2.0. The DPE in effect at the time the additional services are provided.</u>

**13.4    REIMBURSABLE EXPENSES**

**13.4.1**    FOR REIMBURSABLE EXPENSES, as described in Paragraph 12.2, and any other items included in Article 14 as Reimbursable Expenses, a multiple of <u>one</u> ( <u>1.0</u> ) times the expenses incurred by the Construction Manager and the Construction Manager's employees and consultants in the interest of the Project.

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

Electronic Format B801/CMa-1992
10

**13.5    ADDITIONAL PROVISIONS**

**13.5.1**  ~~IF THE BASIC SERVICES covered by this Agreement have not been completed within ( ) months of the date hereof, through no fault of the Construction Manager, extension of the Construction Manager's services beyond that time shall be compensated as provided in Subparagraphs 12.3.3 and 13.3.1.~~ See Subparagraph 14.6 on attached sheet.

**13.5.2**  Payments are due and payable Thirty ( 30 ) days from the date of the Construction Manager's invoice. Amounts unpaid Sixty ( 60 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Construction Manager.
*(Insert rate of interest agreed upon.)*`

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Construction Manager's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**13.5.3**  The rates and multiples set forth for Additional Services shall be annually adjusted in accordance with normal salary review practices of the Construction Manager.

**ARTICLE 14**
**OTHER CONDITIONS OR SERVICES**

*(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.)*

**14.1    LIMITS ON INSURANCE**

The insurance required by Article 11 shall be written for not less than the following limits, or greater if required by law:
*(Insert the specific dollar amounts for the appropriate insurance limits of liability.)*

| | |
|---|---|
| Worker's Compensation | Statutory |
| General Liability | $1,000,000 each occurrence |
| | $2,000,000 aggregate |
| Automobile | $1,000,000 CSL |

Attached hereto are Sections 14.2, 14.3, 14.4, 14.5 and 14.6, and Exhibits A and B which are incorporated by reference.

This Agreement entered into as of the day and year first written above.

OWNER

_____
Charles M. Bireley, President
Board of Education
Indian River School District

_____
Lois M. Hobbs, Superintendent
Indian River School District

CONSTRUCTION MANAGER

_____
*(Signature)*

Theodore H. Dwyer, Jr.        President
*(Printed name and title)*

© 1992 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT B801/CMa - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1992 EDITION - AIA® - WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: b801cma-sussex central high school.aia -- 2/15/2002. AIA License Number 1003994, which expires on 7/31/2002.

Electronic Format  B801/CMa-1992
11

**A - 11**

**Standard Form of Agreement Between Owner and Construction Manager**
**Indian River School District**
**Sussex Central High School**
**Dated 7 January 2002**
**Additional Subparagraphs to Article 14**

**14.2    Pre-Construction Phase Design Review:** Replace existing subparagraph 2.2.3 with: "The Construction Manager understands that the Project has been bid out and is over the Owner's budget. The Construction Manager will work with the Owner and the Architect to reduce the cost of the Project so that it may be constructed within the Owner's budget, but still maintain the Owner's program and quality objectives as much as possible. During the course of the design review the Construction Manager will be analyzing all aspects of the design and documentation of the Project. The Construction Manager will make periodic reports to the Owner and the Architect regarding the Construction Manager's findings and recommendations. At the end of the design review the Construction Manager will make written recommendations to the Owner and Architect as to what course of action the Owner must take in order to reduce the project cost to within the Owner's budget.

**14.3    Pre-Construction Phase Duration:** Add new subparagraph 2.2.22. "The Pre-construction Phase will begin as of the date of this Agreement and, together with the Construction Manager's responsibility to provide Pre-construction Phase Services, will end by 1 September 2002 for work through the award of Bid Package B and 1 September 2003 for work through the award of Bid Package C. The Pre-construction Phase services will be performed in accordance with the schedule as shown in Exhibit A of this Agreement.

**14.4    Construction Phase Duration:** Add new subparagraph 2.3.1. "The Construction Phase will begin as of 15 July 2002 and, together with the Construction Manager's responsibility to provide Construction Phase Services, will end by 1 September 2004.

**14.5    Construction Support Activities:** Add new subparagraph 6.3 "The Construction Manager will provide Construction Support Activities in accordance with the breakdown attached as Exhibit B to this Agreement. The Reimbursable Expenses listed in Paragraph 12.2 are included in the Construction Support Activities."

**14.6    Additional Provisions:** Add new subparagraph 13.5.1 "The Construction Manager's services are schedule sensitive and have been calculated based on the schedule included in Exhibit A of this Agreement. If the Construction Manager's services cannot be completed in accordance with Exhibit A, through no fault of the Construction Manager, and that change in services results in additional costs to the Construction Manager, the Construction Manager shall be entitled to additional compensation in accordance with Subparagraphs 12.3.3 and 13.3.1."

EDiS Master Schedule
Indian River School District
Exhibit A to Contract
7 January 2002

| ACTIVITIES | Start Date | Finish Date |
|---|---|---|
| **Pre-construction Phase** | | |
| Compose Season | | |
| EDiS Present Cost Information and Modification Recommendations | 1/7/02 | 3/26/02 |
| EDiS Complete Cost Information | 1/7/02 | 3/26/02 |
| Indian River Reviews Recommendations, Modification Recommendations | 3/26/02 | 4/9/02 |
| Indian River Authorizes Team to Proceed with Modifications to the Documents | 4/9/02 | |
| Building and Grounds Meetings | | |
| School Board Meetings | 2/26/02 3/19/02 4/9/02 5/14/02 6/11/02 7/9/02 | 2/26/02 3/26/02 4/9/02 4/23/02 5/28/02 6/25/02 6/19/02 |
| **Sussex Central** | | |
| Becker/Morgan Develops BPA – Sussex Central (Sitework, Concrete, Structure) | 4/9/02 | 5/20/02 |
| Becker/Morgan Develops BPB – Sussex Central (Envelope and MEP) | 4/9/02 | 6/17/02 |
| Becker/Morgan Develops BPC – Sussex Central (Building Finishes) | 4/9/02 | 7/22/02 |
| **Indian River** | | |
| Becker/Morgan Develops BPA – Indian River (Sitework, Concrete, Structure) | 4/9/02 | 5/20/02 |
| Becker/Morgan Develops BPB – Indian River (Envelope and MEP) | 4/9/02 | 6/17/02 |
| Becker/Morgan Develops BPC – Indian River (Building Finishes) | 4/9/02 | 7/22/02 |
| **Bid and Award Phase** | | |
| **Sussex Central** | | |
| Bid/Award BPA – Sussex Central | 5/20/02 | 7/1/02 |
| Bid/Award BPB – Sussex Central | 6/17/02 | 8/12/02 |
| Bid/Award BPC – Sussex Central | 7/22/02 | 8/28/02 |
| **Indian River** | | |
| Bid/Award BPA – Indian River | 6/17/02 | 7/22/02 |
| Bid/Award BPB – Indian River | 7/22/02 | 8/16/02 |
| Bid/Award BPC – Indian River | 8/20/02 | 8/28/03 |
| **Construction Phase** | | |
| **Sussex Central** | | |
| Mobilize for BPA Construction - Sussex Central | 7/1/02 | 7/15/02 |
| Start Construction - Sussex Central | 7/15/02 | |
| Construct Building - Sussex Central | 7/15/02 | 5/31/04 |
| Substantial Completion - Sussex Central | 5/31/04 | |
| Final Completion - Sussex Central | 8/20/04 | |
| **Indian River** | | |
| Mobilize for BPA Construction - Indian River | 7/28/02 | 8/12/02 |
| Start Construction - Indian River | 8/12/02 | |
| Construct Building - Indian River | 8/12/02 | 5/31/04 |
| Substantial Completion - Indian River | 5/31/04 | |
| Final Completion - Indian River | 8/2/04 | |
| Finish Punch List Work - Indian River | 5/31/04 | 8/2/04 |
| Final Completion - Indian River | 8/2/04 | |

**EDiS General Conditions Estimate**
**Indian River School District**
**Sussex Central High School**
**Exhibit B to Contract**
**7 January 2002**

| CODE | DESCRIPTION | QTY | UNIT | TOTAL | COMMENTS |
|------|-------------|-----|------|-------|----------|
| | JOB SITE PERSONNEL | | | | |
| | GENERAL SUPERINTENDENT | 25 MO | $9,169 | $229,225 | |
| | ASSIST. SUPERINTENDENT | 13 MO | $8,650 | $112,450 | |
| | | | | | |
| | JOB SITE OFFICE EXPENSES | | | | |
| 115 | EXPRESS MAIL/MESSENGER | 25 MO | $300 | $7,500 | |
| 126 | CONSTRUCTION STORAGE | 25 MO | $150 | $3,750 | |
| 127 | CONSTRUCTION OFFICE RENTAL | 25 MO | $963 | $24,075 | |
| 127 | CONSTRUCTION OFFICE SET-UP | 1 LS | $9,417 | $9,417 | |
| 160 | SITE OFFICE - SUPPLIES & EXPENSES | 25 MO | $300 | $7,500 | |
| 182 | SITE OFFICE FURN/EQUIP | 1 LS | $4,000 | $4,000 | |
| 151 | TELEPHONE | 25 MO | $500 | $12,500 | |
| | | | | | |
| | FEES, PERMITS AND INSURANCE | | | | |
| 102 | CONSTRUCTION PERMIT | 1 EA | $0 | $0 | N/A |
| 102 | FIRE MARSHALL PERMIT | 1 EA | $0 | $0 | N/A |
| 102 | IMPACT FEE | 1 EA | $65,504 | $65,504 | |
| 103 | CONTRACTOR'S BOND | 0 EA | $0 | $0 | By Trade Contractors |
| | BUILDER'S RISK INSURANCE | 1 EA | $35,700 | $35,700 | |
| | | | | | |
| | TEMPORARY FACILITIES & SERVICES | | | | |
| 104 | SURVEY/LAYOUT OF PROPERTY | 0 | $0 | $0 | By Owner |
| 111 | LAYOUT OF BUILDING | 10 DY | $1,360 | $13,600 | |
| 113 | LAYOUT OF INTERIOR | 20 DY | $1,360 | $27,200 | |
| 106 | MOCK UPS OF BUILDING | 1 LS | $20,000 | $20,000 | |
| 107 | INSPECT/TEST & CONSULTANTS | 185,000 SF | $0.50 | $92,500 | |
| 108 | EQUIPMENT RENTAL | 1 LS | $5,000 | $5,000 | |
| 118 | VEHICLES - RENTAL | 25 MO | $400 | $10,000 | |
| 119 | VEHICLES - OPERATING EXPENSES | 25 MO | $200 | $5,000 | |
| 116 | REPRODUCE SHOP DRAWINGS | 12 MO | $2,000 | $24,000 | |
| 116 | REPRODUCE BID DOCUMENTS | 1 LS | $87,500 | $87,500 | |
| 140 | CLEANING BUILDINGS | 52 WK | $1,200 | $62,400 | |
| 142 | CLEANING ROADS & WALKS | 1 LS | $15,000 | $15,000 | |
| 178 | FINAL CLEANING | 185,000 SF | $0.20 | $37,000 | |
| 141 | CLEANING WINDOWS | 1 LS | $0 | $0 | In Final Cleaning |
| 125 | DUMPSTER RENTAL | 130 LD | $650 | $84,435 | |
| 125 | TRASH CHUTE | 0 MO | $1,000 | $0 | N/A |
| 132 | HAULING/MATERIAL HANDLING | 1 LS | $0 | $0 | By Trade Contractors |
| 112 | WATCHMAN/JOB SECURITY | 0 MO | $4,440 | $0 | By Owner |
| 134 | SIGNS | 1 LS | $5,000 | $5,000 | |
| 135 | BARRICADES | 1 LS | $20,000 | $20,000 | |
| 136 | ROADS/PARKING BARRICADES | 1 LS | $0 | $0 | N/A |
| 137 | PARKING | 26 WK | $0 | $0 | N/A |
| 138 | FENCING | 0 LF | $15 | $0 | N/A |
| 145 | TEMPORARY WEATHER PROTECTION | 1 LS | $25,000 | $25,000 | |
| 146 | TEMPORARY TOILETS/SANITATION | 25 MO | $200 | $5,000 | |
| 147 | TEMPORARY ELECTRIC SERVICE | 1 LS | $10,000 | $10,000 | |
| | TEMPORARY ELECTRIC USAGE | 25 MO | $1,500 | $37,500 | |
| 148 | TEMPORARY WATER SERVICE | 1 LS | $3,000 | $3,000 | |
| | TEMPORARY WATER | 1 LS | $1,000 | $1,000 | |
| 149 | TEMPORARY HEAT | 4 MO | $6,000 | $24,000 | |
| 153 | TEMP INSTALLATIONS | 1 LS | $0 | $0 | N/A |

**A - 14**

**EDiS General Conditions Estimate**
**Indian River School District**
**Sussex Central High School**
**Exhibit B to Contract**
**7 January 2002**

| 124 | SCAFFOLDING | 1 LS | $0 | $0 | By Trade Contractors |
|---|---|---|---|---|---|
| 152 | DUST & EROSION CONTROL | 0 | $0 | $0 | N/A |
| 155 | DEWATERING | 0 WK | $0 | $0 | N/A |
| 161 | HOISTING/ELEVATORS/CRANES | 0 MO | $0 | $0 | N/A |
| 156 | FIRE & PERSONNEL PROTECTION | 25 MO | $200 | $5,000 | |
| 158 | JOB SAFETY - OSHA REQUIREMENTS | 104 WK | $300 | $31,176 | |
| 143 | SMALL TOOLS | 1 LS | $1,000 | $1,000 | |
| 157 | STRUCTURE PREPARATION | 0 | $0 | $0 | N/A |
| 130 | PHOTOGRAPHS | 25 MO | $500 | $12,500 | |
| 179 | TRAVEL | 0 EA | $640 | $0 | N/A |
| 180 | SPECIAL-PROJECTS/REQUESTS | 1 LS | $15,000 | $15,000 | |

**Total General Conditions Estimate** | $1,190,432 |

```
 1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE
 2
 3
 4
 5   RLI INSURANCE COMPANY,
               Plaintiff,
 6      V.
 7   INDIAN RIVER SCHOOL DISTRICT,
     EDIS COMPANY, and
 8   BECKER MORGAN GROUP, INC.
               Defendants.
 9                       C.A. No. 05-858
10
11
12          Oral deposition of DAVID S.
13   BERRY, held in the law offices of
14   Venzie, Phillips & Warshawer, 2032
15   Chancellor Street, Philadelphia,
16   Pennsylvania, held on Thursday, March
17   8, 2007, commencing at 10:18 a.m.,
18   before Kathleen McHugh, a Registered
19   Professional Reporter and Notary
20   Public.
21
22
23
24                  A - 16
```

Page 14

```
 1    to the form are reserved until trial.
 2              MR. BLACKBURN:   Thanks.
 3    Sorry.
 4              MR. AMADIO:   That's okay.
 5    BY MR. AMADIO:
 6       Q.   Mr. Berry, the question I
 7    was asking you was about your
 8    business address.
 9       A.   9025 North Lindbergh Drive,
10    Peoria, Illinois, 61615.
11       Q.   And how long have you been
12    at that location?
13       A.   Since January 2003.
14       Q.   And how old are you, sir?
15       A.   37.
16       Q.   And by whom are you
17    currently employed?
18       A.   RLI Insurance Company.
19       Q.   And what is your position
20    with RLI?
21       A.   My title is senior bond
22    claims analyst.
23       Q.   And how long have you been
24    senior bond claims analyst?
```

```
 1      A.   Well, I'm sure that they
 2   were the construction manager and I
 3   understood that to mean that they
 4   supervised McDaniel's work as well as
 5   work of other contractors.
 6           They helped coordinate the
 7   work.  They inspected the work and
 8   recommended payment -- recommended
 9   payment to the owner.
10      Q.   Would you agree that EDiS
11   Company was hired to construct this
12   project?
13           MR. BLACKBURN:  I'll object
14   to the form of the question.  If you
15   understand what she means by
16   construct.
17           THE WITNESS:  What do you
18   mean by construct?
19   BY MS. PETRONE:
20      Q.   Well, ultimately the end
21   result, the goal of hiring EDiS
22   Company as the construction manager
23   was for them to get the project
24   constructed; would you agree with
```

**A - 18**

Page 298

1    that?

2        A.    Yes.

3        Q.    Did you ever have any

4    conversations with anyone from EDiS

5    Company?

6        A.    Yes.

7        Q.    Who?

8        A.    Chris McCone and Ted Dwyer.

9        Q.    Do you remember any of

10   those conversations specifically?

11       A.    Well, from some of the

12   exhibits that Mr. Amadio showed me.

13   I know on a couple of occasions they

14   expressed the need to get some

15   subcontractors paid on a particular

16   work item to be completed.

17       Q.    Did you speak with anyone

18   other than Chris McCone and Ted Dwyer

19   from EDiS Company?

20       A.    I don't believe I did.

21       Q.    Are you generally familiar

22   with the contract that McDaniel

23   entered into with Indian River School

24   District for this project?

DEPOSITION OF DAVID S. BERRY, 3/8/07

Page 304

```
 1              You had said that an owner
 2     would engage an architect originally
 3     to, I guess, produce a design, a
 4     design for a structure, and then with
 5     that they would then offer those
 6     designs out to contractors for bids.
 7              Once the owner has to
 8     decided to move forward and build the
 9     project that has been designed, would
10     you agree that the goal then from
11     that point forward was to build the
12     structure and produce the building as
13     designed?
14              MR. BLACKBURN:  Whose goal?
15     BY MR. McGRORY:
16        Q.   The goal of the owner.
17        A.   I would assume that was the
18     goal.
19              MR. McGRORY:  I don't have
20     any more questions.
21                      EXAMINATION
22     BY MS. PETRONE:
23        Q.   Would you agree that EDiS
24     Company did not do any design work
```

**A - 20**

DEPOSITION OF DAVID S. BERRY, 3/8/07

Page 305

1    for this job, to your understanding?

2        A.    To my understanding, they

3    did not.

4        Q.    And we were talking about

5    claims that you reviewed, performance

6    bond claims that you reviewed while

7    working at RLI, and we got to an 80

8    percent number of claims that you

9    said you approved.

10            Do you know the dollar

11    value of the performance bond claims

12    approved by RLI?

13       A.    They -- really varies from,

14   you know, 20,000 to 2, 3 million.

15       Q.    So what would the largest

16   payment bond claim that you approved

17   have been?

18            MR. BLACKBURN:    Let me just

19   object to the form of the question

20   and let me clarify what it is that I

21   think you're getting at is, when you

22   say approved, do you mean paid out or

23   just -- what do you mean?

24   BY MS. PETRONE:

**A - 21**

1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
2                       - - -
3    RLI INSURANCE COMPANY, : CIVIL ACTION
4          Plaintiff
                        :
5
         vs.
6                       :
     INDIAN RIVER SCHOOL
7    DISTRICT and EDiS
     COMPANY and BECKER      :
8    MORGAN GROUP, INC.,
9          Defendants    : NO. 05-858
10
                      - - -
11
              Oral deposition of GREGORY C. WEER,
12
     taken at the law offices of Seitz, Van Ogtrop
13
     & Green, P.A., 222 Delware Avenue, Suite
14
     1500, Wilmington, Delaware, on Tuesday, March
15
     20, 2007, at 10:15 a.m., before Karyn M.
16
     Geftman, a Registered Professional Reporter,
17
     an Approved Reporter of the United States
18
     District Court, pursuant to notice.
19
20
21
              KARYN M. GEFTMAN & ASSOCIATES
22       Registered Professional Reporters
              Certified Court Reporters (NJ)
23            837 Margo Lane
          Penn Valley, Pennsylvania  19072
24       610-608-1040   610-747-0412 fax
              karynrpr@comcast.net

Gregory C. Weer, 03/20/07

Page 15

1      A.   In Lewes, Delaware.

2      Q.   Could you give us your address,

3  please.

4      A.   31395 Coventry Drive.

5      Q.   And by whom are you currently

6  employed?

7      A.   Indian River School District.

8      Q.   What is your current job title or

9  capacity?

10      A.   Supervisor of Buildings and Grounds.

11      Q.   And how long have you held that

12  post?

13      A.   Since December of 1998.

14      Q.   When did you begin your employment

15  in any capacity with Indian River School

16  District?

17      A.   In September of 1972.

18      Q.   Have you been employed by Indian

19  River uninterrupted since 1972?

20      A.   No.

21      Q.   Why don't you give me -- well, how

22  long was your first period of employment?

23  When you started in '72, how long did you

24  continue working for the school district?

A - 23

Page 184

1      A.   Correct.

2      Q.   And as construction manager, would

3    you agree that EDiS's ultimate goal as

4    construction manager was to get the Sussex

5    Central High School constructed?

6              MR. SHIELDS:  Objection to the

7    form.

8      A.   Yes.

9    BY MS. PETRONE:

10     Q.   Would you agree that EDiS did not

11   perform any design work for the Sussex

12   Central High School project?

13     A.   Yes.

14     Q.   Would you agree that EDiS did not

15   create any design drawings for the Sussex

16   Central High School project?

17     A.   Yes.

18     Q.   If you would take a look again at

19   what's already been marked as Exhibit Weer-18

20   and specifically the first paragraph of text

21   starting with "as you are."

22              And I'm also going to show you

23   a document dated September 8th, 2004 written

24   to Joseph M. Zimmer from yourself.

A - 24

FP 8760

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RLI INSURANCE COMPANY<br>9025 N. LINDBERGH DRIVE<br>PEORIA, IL 61615-1431 | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : <br> : |
| vs. | :    CIVIL ACTION<br> : |
| INDIAN RIVER SCHOOL DISTRICT<br>31 HOOSIER STREET<br>SELBYVILLE, DE 19975 | : <br> : <br> : <br> : |
| and | : <br> : |
| EDIS COMPANY<br>110 S. POPLAR STREET<br>WILMINGTON, DE 19805 | : <br> :    NO. 05 858<br> : |
| and | : <br> : |
| BECKER MORGAN GROUP, INC.<br>309 SOUTH GOVERNORS AVENUE<br>DOVER, DE 19904 | :    JURY TRIAL DEMAND<br> : <br> : |
| Defendants. | : <br> : |

## PLAINTIFF RLI INSURANCE COMPANY'S ANSWERS TO
## DEFENDANT EDIS COMPANY'S
## FIRST SET OF INTERROGATORIES

Plaintiff RLI Insurance Company ("Plaintiff" or "RLI"), by and through its attorneys,

Harry R. Blackburn & Associates, P.C., provides the following Objections and Answers to

Defendant EDiS Company's ("Defendant" or "EDiS") Interrogatories.

## I.    GENERAL OBJECTIONS

1.    Plaintiff RLI objects to Defendant's Interrogatories to the extent Defendant seeks information protected from disclosure by the attorney-client, work product or any other privilege or immunity.

2.    Plaintiff RLI objects to Defendant's Interrogatories to the extent Defendant seeks information pertaining to information obtained or materials prepared in anticipation of litigation which are protected from disclosure.

3.    Plaintiff RLI objects to Defendant's Interrogatories to the extent they are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

4.    All objections and responses are made by Plaintiff without in any way waiving or intending to waive the right to object to other discovery practices and procedures involving or relating to the subject of Defendant's Interrogatories.

5.    Plaintiff's investigation is continuing and, therefore, Plaintiff expressly reserves its right to supplement its responses and assert additional objections.

## II.    SPECIFIC ANSWERS AND/OR OBJECTIONS

**Interrogatories:**

1.    Identify each person supplying information used to prepare the answers to these interrogatories, and as to each person so identified, indicate the number of the interrogatory, or part thereof, as to which person supplied information.

2

**A - 26**

**ANSWER 1**

      Michael J. Acosta, Esquire and Timothy E. Winship, Esquire provided all relevant information in answering interrogatories.

    2.    Identify each person who has or claims to have relevant knowledge of the facts or circumstances of this case.

**ANSWER 2**

      Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Notwithstanding and without waiving this specific objection and the general objections set forth above:

1.    Timothy E. Winship, Esquire is an agent of Plaintiff and may be contacted through undersigned counsel;
Director – Surety Claims
**RLI Surety**
9025 N. Lindbergh Drive
Peoria, IL 61615

2.    Gregory C. Weer, Construction Project Manager from IRSD;
Supervisor of Building & Grounds
31 Hoosier Street
R.D.2, Box 156
Selbyville, DE 19975

3.    Brad A. Hastings, AIA, Becker Morgan Group, Inc.;
312 West Main Street, Suite 300
Salisbury, MD 21801

4.    Christian J. McCone, Project Manager from EDiS Company;
110 S. Popular Street, Suite 400
P.O. Box 2697
Wilmington, DE 19805

5.    Joseph M. Zimmer, Inc., contractors;
Joseph M. Zimmer, Jr.
2225 Northwood Dr.
Salisbury, MD 21801

3

**A - 27**

6.    Mr. Louis M. Baldassarre
      Senior Project Manager
      **Cashin Spinelli & Ferretti, LLC**
      1515 DeKalb Pike
      Blue Bell, PA  19422

7.    David S. Berry, Esquire
      Sr. Bond Claims Analyst
      **RLI Surety**
      9025 N. Lindbergh Drive
      Peoria, IL  61615

8.    William H. McDaniel
      205 Old Churchmans Road
      New Castle, DE 19720

9.    Defendants

      By way of further response, discovery is ongoing and not yet completed.
Plaintiff reserves the right to supplement this answer pursuant to the applicable
Rules of Civil Procedure.

3.    Identify each and every witness you intend to call at any hearing or at trial.

**ANSWER 3**

      Objection.  Plaintiff objects to this Interrogatory as it seeks to obtain
information which is protected by the attorney-client privilege, the attorney work
product doctrine, and seeks information which was prepared in anticipation of
litigation and/or are protected by other applicable privileges.  Notwithstanding and
without waiving this specific objection and the general objections set forth above,
Plaintiff has not determined who it intends to call as a  witness in this matter.  If
Plaintiff does make such determination, any discoverable information will be
provided pursuant to the applicable Rules of Civil Procedure.  As discovery is
ongoing and not yet completed, Plaintiff reserves the right to supplement this
answer pursuant to the applicable Rules of Civil Procedure.

4.    Identify any written statement received from each person claiming to have

knowledge of facts or circumstances relevant to this case.

4

**A - 28**

**ANSWER 4**

Objection. RLI objects to this Interrogatory as overbroad and unduly burdensome as it seeks "any written statement" received by RLI without reference to any specific issues that are the subject of this litigation. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI is not aware of any such statements, except as may be noted in its files which will be made available for inspection and copying by EDiS at a mutually convenient time and place.

5.    Identify each person who has been retained or specifically employed by you for trial as an expert, even though such person is not expected to be called as a witness at trial, indicating the profession, occupation, employer, and field of expertise.

**ANSWER 5**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Notwithstanding and without waiving this specific objection and the general objections set forth above, Plaintiff has not yet retained an expert witness in this matter. If Plaintiff does retain an expert witness, any discoverable information will be provided pursuant to the applicable Rules of Civil Procedure. As discovery is ongoing and not yet completed, Plaintiff reserves the right to supplement this answer pursuant to the applicable Rules of Civil Procedure.

6.    Set forth substance of the facts and opinions as to which each alleged expert is expected to testify and a summary for the grounds for each opinion. In lieu of such a statement, you may attach reports of persons listed above as experts which contain the information sought by this written request.

**ANSWER 6**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Notwithstanding and

5

**A - 29**

without waiving this specific objection and the general objections set forth above, Plaintiff has not yet retained an expert witness in this matter. If Plaintiff does retain an expert witness, any discoverable information will be provided pursuant to the applicable Rules of Civil Procedure. As discovery is ongoing and not yet completed, Plaintiff reserves the right to supplement this answer pursuant to the applicable Rules of Civil Procedure.

7.    Identify all communications, correspondence, contracts or agreements, payment applications, payment information or other documentation exchanged between you and EDiS, or between you and any other person or entity concerning EDiS.

**ANSWER 7**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

8.    Identify in detail what you contend is the reasonable value of the work, services and materials furnished by McDaniel Plumbing in connection with the Project.

**ANSWER 8**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. The approximate value of the work provided by McDaniel was $3,899,491.00. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

9.    Identify the date which you contend you and McDaniel were provided notice of

IRSD's intent to terminate McDaniel's contract, and the date which you contend the contract was

terminated.

**ANSWER 9**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain
information which is protected by the attorney-client privilege, the attorney work
product doctrine, and seeks information which was prepared in anticipation of
litigation and/or are protected by other applicable privileges. Notwithstanding and
without waiving this specific objection and the general objections set forth above,
on October 11, 2004 RLI was informed of the intent and actual termination of
McDaniel. As discovery is ongoing and not yet completed, Plaintiff reserves the
right to supplement this answer pursuant to the applicable Rules of Civil
Procedure.

10.    Identify all statements made by EDiS which you contend were false.

**ANSWER 10**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain
information which is protected by the attorney-client privilege, the attorney work
product doctrine, and seeks information which was prepared in anticipation of
litigation and/or are protected by other applicable privileges. Without waiving
these specific objections and the General Objections set forth above, and in a good
faith attempt to comply with this discovery request, RLI files will be made
available for inspection and copying by EDiS at a mutually convenient time and
place.

11.    Identify in detail all information provided by EDiS upon which you relied.

7

**ANSWER 11**

     Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

     12.    Identify all payment certifications by EDiS which you contend were false,

providing detail regarding work which you contend was falsely certified and the certification

amount you contend would have been accurate.

**ANSWER 12**

     Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

     13.    Identify all obligations, duties and responsibilities which you contend were owed

by EDiS to you.

**ANSWER 13**

     Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

14.    Identify all responsibilities under the contract documents which you contend EDiS failed to perform.

**ANSWER 14**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

15.    Identify all information upon which you relied in "deciding to issue the bond to McDaniel for the project and in deciding to finance McDaniel in completing the project" as alleged in Para. 54 of your Complaint.

**ANSWER 15**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

16.    Identify every misrepresentation which you contend was made by EDiS, and for each such misrepresentation, identify the person making the misrepresentation, to whom the misrepresentation was made, and all documents which evidence, refer or relate to the misrepresentation.

**ANSWER 16**

9

**A - 33**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

17.    Identify all costs expended by you to investigate, supervise, manage, complete or finance the Project.

**ANSWER 17**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Notwithstanding and without waiving this specific objection and the general objections set forth above, RLI by way of further answer sets forth the following:

Damages

| | |
|---|---|
| Paid Completion Costs | $ 147,042.00 |
| Investigation Costs | $  76,138.32 |
| Overpayment | $ 366,049.00 |
| Contract Balance | $ 308,608.00 |
| TOTAL DAMAGES CLAIMED | $ 897,837.32 |

As discovery is ongoing and not yet completed, Plaintiff reserves the right to supplement this answer pursuant to the applicable Rules of Civil Procedure.

18.    Identify the total amount of damages sought by you in this action and the damages you seek to recover from EDiS. Your answer should provide a detailed accounting of how the

10

**A - 34**

damages sought have been calculated and identify with particularity the details of every cost item.

**ANSWER 18**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Notwithstanding and without waiving this specific objection and the general objections set forth above, RLI by way of further answer sets forth the following:

Damages

| | |
|---|---|
| Paid Completion Costs | $ 147,042.00 |
| Investigation Costs | $ 76,138.32 |
| Overpayment | $ 366,049.00 |
| Contract Balance | $ 308,608.00 |
| TOTAL DAMAGES CLAIMED | $ 897,837.32 |

Plaintiff seeks $897,837.32 plus interest and costs from all Defendants jointly and severally. As discovery is ongoing and not yet completed, Plaintiff reserves the right to supplement this answer pursuant to the applicable Rules of Civil Procedure.

19. Identify all efforts made by you to mitigate your damages.

**ANSWER 19**

Objection. Plaintiff objects to this Interrogatory as it seeks to obtain information which is protected by the attorney-client privilege, the attorney work product doctrine, and seeks information which was prepared in anticipation of litigation and/or are protected by other applicable privileges. Without waiving these specific objections and the General Objections set forth above, and in a good faith attempt to comply with this discovery request, RLI files will be made available for inspection and copying by EDiS at a mutually convenient time and place.

11

HARRY R. BLACKBURN & ASSOCIATES, P.C.

_____

HARRY R. BLACKBURN, ESQUIRE
JOHN E. HILSER, ESQUIRE
1528 Walnut Street, 9th Floor
Philadelphia, PA 19102
(215) 985-0123
Attorneys for Plaintiff RLI Insurance Company

Dated: 01 - 03 - 07

Local Counsel:
PERRY F. GOLDLUST
ABER, GOLDLUST, BAKER & OVER
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900

Q:\RLI Smrty.729\McDaniel.004\Indian River\Discovery\Answers to EDiS Interrogatories.wpd

12

**A - 36**

## VERIFICATION

I, e.b. Williams, Jr., hereby verify that I am authorized to make this verification on behalf of Plaintiff RLI Insurance Company.   I verify under penalty of perjury that Plaintiff RLI's Answers to Defendant EDiS Company's First Set of Interrogatories are true and correct.  This verification is made pursuant to 28 U.S.C.§ 1746 relating to unsworn declarations under penalty of perjury.

Executed on date:  1 - 3 - 0 7              E.B. WILLIAMS, JR.

A - 37