# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | C.A. No. 05-858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| INDIAN RIVER SCHOOL DISTRICT, | ) | |
| EDIS COMPANY, and | ) | |
| BECKER MORGAN GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S
## BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**SEITZ, VAN OGTROP & GREEN, P.A.**

**/s/ James S. Green**
**JAMES S. GREEN, ESQ. (DE0481)**
**jgreen@svglaw.com**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

**TABLE OF CONTENTS**                                                    **PAGE**

I.      NATURE AND STAGE OF PROCEEDINGS                                    1

II.     SUMMARY OF ARGUMENT                                                2

III.    CONCISE STATEMENT OF FACTS                                         4

IV.     ARGUMENT                                                           6

        A.      STANDARD FOR GRANTING SUMMARY JUDGMENT                     6

        B.      PARTIAL SUMMARY JUDGMENT ON COUNT I:                       7

                1.      RLI, as surety, is not excused, as a matter of law,
                        by virtue of IRSD'S alleged overpayments to McDaniel.   7

                2.      Provisions of the bond form are in contravention of
                        Delaware's State Procurement Act and the surety's
                        defenses based thereon must be stricken             15

                3.      The contract documents, as modified, do not require
                        the owner to provide the surety with seven days
                        notice prior to termination of the contractor's
                        employment                                          18

        C.      SUMMARY JUDGMENT ON COUNT II:
                RLI'S NEGLIGENT MISREPRESENTATION AGAINST
                IRSD IS BARRED BY THE ECONOMIC LOSS RULE                    20

        D.      SUMMARY JUDGMENT ON COUNT III: THE SURETY'S
                BREACH OF FIDUCIARY DUTY CLAIM AGAINST
                THE DISTRICT FAILS UNDER DELAWARE LAW                       24

        V.      CONCLUSION                                                  28

**TABLE OF AUTHORITIES**

<u>CASES</u>                                                                 <u>PAGE</u>

American Fidelity Insurance Co. v. Pavia-Byrne Engineering,
393 So.2d 830 (La.App. 1981).                                              12-13

Argonaut Insurance Co v. Town of Cloverdale,
699 F.2d 417 (7th Cir. 1983).                                           12-13

Balboa Insurance Company v. Fulton County,
148 Ga.App. 328, 251 S.E.2d 123 (1978).                                   11-12

Certain-Teed Products v. United Pacific Ins. Co.,
389 A.2d 777 (Del.Super. 1978).                                           17

Christiana Marine Service Corp. v. Texaco Fuel
and Marine Marketing, 2002 WL 1335360 (Del.Super.).                       21-22

Christopher v. Planet Insurance Co.,
321 A.2d 128 (Del.Super. 1974).                                           17

Continental Realty Corp. v. Andrew J. Crevolin Co.,
380 F.Supp. 246 (D. WV 1974).                                             12

Corrado Bros. v. Twin City Fire Ins. Co., 562 A.2d 1188 (De. 1989).       25

Couden v. Duffey, 446 F.3d 483 (3rd Cir. 2006).                         6

Crosse v. BCBSD, Inc., 836 A.2d 492 (De. 2003).                           25

Danforth v. Acorn Structures, Inc. 608 A.2d 1194 (De. 1992).              20

Dodge v. Fidelity and Deposit Company of Maryland,
778 P.2d 1240, 161 Ariz. 344 ( Az. 1989).                                 25

Guardian Construction Co. v. Tetra Tech Richardson, Inc.,
583 A.2d 1378 (Del.Super. 1990).                                          21-22

International Fidelity Insurance Company v. Delmarva Systems, Inc.,
2001 WL 541469 (Del.Super.).                                              24-25

Lovejoy Electronics, Inc. v. O'Berto, 616 .Supp 1464 (D.C. Il. 1985).     6

Millsboro Fire Co. v. Construction Management Services, Inc.,

2006 WL 1867705 (Del.Super.).                                           22

National American Bank of New Orleans v.
 Southcoast Contractors, Inc., 276 So.2d 777 (La.App. 1973).            12, 13

Phillips v. American Liability & Surety Co.,
309 Pa. 1, 162 A. 435 (Pa. 1932).                                      12

Ruckman and Hansen, Inc. v. Contracting & Material Co.,
328 F.2d 744 (7th Cir. 1964).                                        12, 14

Savery and Cooke, Inc. v. Fidelity and Deposit
Company of Maryland, 194 A.2d 858 (De. 1963).                          17

Transamerica Premier Insurance Co. v. Brighton School District,
904 P.2d 348 (Co. 1997).                                               26

Watkinson v. Great Atlantic & Pacific Tea Co.,
585 F.Supp. 879 (D.C. Pa. 1984).                                       6

**STATE STATUES**                                                      **PAGE**

29 Del. C., 6927(d)(9)(e)                                              9, 16, 18, 27

29 Del. C., 6927(d)(9)(f)                                              9, 16, 18

**FEDERAL RULES**                                                      **PAGE**

Civil Rule 56                                                          6

Defendant Indian River School District moves, pursuant to Civil Rule 56, for summary judgment upon the facts, law and argument, as follows::

## I.    NATURE AND STAGE OF PROCEEDINGS

This action arises out of a school district's performance bond claim against the surety for a prime contractor terminated for default during the construction of the new Sussex Central public high school in Georgetown, Delaware.  In December, 2005, RLI Insurance Company ("RLI"), the performance bond surety for the terminated contractor, McDaniel Plumbing and Heating, Inc. ("McDaniel"), commenced this action against Indian River School District ("IRSD"), the owner of the school, and two professionals hired by the owner:  the construction manager, EDIS Company ("EDIS" or "Construction Manager"), and the architect, Becker Morgan Group, Inc. ("Becker Morgan" or "Architect").  RLI's complaint sought a declaration from the Court that it was discharged from fulfilling its obligations under the performance bond (Count I) and asserting claims against IRSD for negligent misrepresentation (Count II) and breach of fiduciary duty (Count III).  The complaint also included tort claims against EDIS and Becker Morgan.  IRSD filed a counterclaim for RLI's failure to complete the work after the default of McDaniel, in violation of the terms of the performance bond.  IRSD's claim against RLI is for over two million dollars, together with interest and litigation costs.

The litigation has proceeded in accordance with the Court's case management order, which the Court extended twice at the parties' request.  Fact discovery was completed June 6, 2007, and the parties have prepared and exchanged expert reports.  The case is set for a pretrial conference on December 6, 2007.  The timing of this motion comports with the Court's case management order that requires the filing of dispositive motions by September 28, 2007.

1

## II.    SUMMARY OF ARGUMENT

IRSD is entitled to judgment as a matter of law on certain defenses and claims raised by
RLI based upon the undisputed facts, the contract documents, and applicable law.  Specifically,
three defenses raised by RLI in its request for declaratory judgment in Count I of the complaint –
overpayment, failure to arrange a pre-default conference, and failure to provide seven days'
notice of default – should be stricken as incompatible with the contract terms and governing law.
In addition, counts II and III of the complaint, which assert claims against IRSD for negligent
misrepresentation and breach of fiduciary duty, are contrary to applicable law as pleaded and
should be dismissed.  A summary of the argument on each point follows:

*As to IRSD's request to strike three defenses in its complaint for declaratory relief:*

A.    RLI, as surety, claims that it is discharged from its obligations under the
performance bond by virtue of IRSD's allegedly improper payments to McDaniel for work not
performed and/or performed in a deficient manner. Under the terms of the performance bond and
contract, the Architect and the Construction Manager evaluated the progress and quality of
McDaniel's work and certified the amounts to be paid on monthly payment applications.  IRSD
was required to make payments to McDaniel in the amounts certified by the Architect and the
Construction Manager, and did so.  All defenses or claims asserted by RLI based on any
allegedly improper payment should be stricken.

B.    RLI has asserted defenses based upon failure to give notice required by the terms
of the bond, failure to timely advise it of project problems and overpayment to McDaniel. These
defenses, however, are unenforceable under Delaware law.  A surety on a public works
performance bond may not assert a defense based on a limitation in the bond not itself set forth

2

in the Delaware pubic bidding laws.  Since these laws do not authorize such a provision, these defenses must be stricken.

      C.     RLI has asserted a defense that IRSD failed to comply with a condition of the contract documents that required a seven day notice prior to terminating McDaniel for default. The contract documents, however, do not require any such notice and consequently this defense should be stricken.

### *As to IRSD's request to dismiss RLI's misrepresentation claim in its complaint:*

      D.     RLI has asserted a claim against IRSD for negligent misrepresentation, seeking compensation for economic losses.  Under Delaware law, negligence claims seeking only economic damages are barred by the Economic Loss Rule.  RLI has not pled, nor can it satisfy, the requirements for the exception to this doctrine under section 552 of the Restatement of Torts, as it did not rely upon the misrepresentation for a business transaction with a third party and because IRSD is not in the business of providing information.  Therefore, RLI cannot prevail on this claim and summary judgment should be granted in IRSD's favor thereon.

### *As to IRSD's request to dismiss RLI's fiduciary duty claim in its complaint:*

      E.     RLI has asserted a claim against IRSD for breach of fiduciary duty, claiming that an obligee under a performance bond has a fiduciary duty to the surety.  Under Delaware law, the relationship between a surety and an obligee is not a fiduciary relationship.  Therefore, RLI cannot prevail on this claim and summary judgment should be granted in IRSD's favor thereon.

### III.    CONCISE STATEMENT OF FACTS

IRSD is a public school district and agency of the State of Delaware.  Declaration of Patrick C. Miller (hereinafter "Miller Declaration"), ¶2.  On or about August 28, 2002, IRSD entered into a construction contract with McDaniel Plumbing and Heating, Inc. ("McDaniel") for mechanical, plumbing and ATC construction on a project known as New Sussex Central High School in Georgetown, Delaware ("Project").  D.I. 1, Complaint, ¶ 7.  EDIS acted as IRSD's construction manager ("EDIS" or the "Construction Manager") and Becker Morgan was IRSD's architect ("Becker Morgan" or the "Architect") for the Project.  Id. at ¶ 8.  On or about September 5, 2002, RLI, as surety ("RLI"), and McDaniel as principal, delivered a performance bond to IRSD for McDaniel's faithful performance of its work on the Project.  Id. at ¶ 12.  Around August 28, 2002, McDaniel proceeded with its work.  Id. at ¶11. During the course of its work, IRSD made periodic progress payments to McDaniel, based upon the certifications of the Architect and Construction Manager.  Declaration of Patrick C. Miller ("Miller Declaration"), ¶5.  On or about October 11, 2004, IRSD terminated McDaniel's employment under the contract.  D.I. 1, at ¶14.  IRSD thereafter made a demand upon RLI as surety to complete and correct McDaniel's remaining work but RLI denied liability therefore.

The contract documents that determine, with governing law, the rights and duties of the parties are not in dispute.  Copies of the contract, the general conditions and supplementary conditions to the contract, and performance bond are attached to the Miller Declaration as exhibits "A," "B," "C" and "D," respectively.

Nor is there any dispute that pursuant to the contract, IRSD paid McDaniel (either by check, direct deposit, or joint check with its subcontractors and suppliers) out of monies appropriated from the State of Delaware, the sum of $4,041,863.  Miller Declaration, ¶4.  Each

4

of these payments was made upon monthly applications for payment submitted by McDaniel. The amounts paid were the amounts certified as due by the Architect, Becker Morgan, and the Construction Manager, EDIS, on a Certificate for Payment form.[1]  Miller Declaration, ¶5. Copies of the cover pages of each application for payment, which contained the certificates for payment signed by the Architect and Construction Manager, are attached to the Miller Declaration as exhibit "E."

---

[1]  The total of the Certificates for Payment is $4,052,263.  On application for payment 24, the amount certified for payment by the Architect and Construction Manager was $106,400.  Of this amount, IRSD paid $96,000; the remaining $10,400 was held while it was determined to whom to make payment, McDaniel or its surety.   Before the determination was made, the default termination occurred.

## IV.    ARGUMENT

### A.    STANDARD FOR GRANTING SUMMARY JUDGMENT

By this motion, IRSD seeks partial summary judgment on three key issues raised in Count I of the complaint and dismissal by summary judgment of Counts II and III of the complaint..

A district court, when considering summary judgment, shall draw all reasonable inferences in favor of the non-moving party and shall grant summary judgment only after finding that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Couden v. Duffey, 446 F.3d 483, 491 (3rd Cir. 2006). Once the moving party has met its burden, the burden shift to the party opposing summary judgment, who may not rest upon the mere allegations of his pleadings; but must come forth with specific facts showing that there is a genuine issue for trial. Watkinson v. Great Atlantic & Pacific Tea Co., 585 F.Supp. 879, 881-882 (D.C. Pa. 1984). If the opposing party fails to come forth with such evidence, the granting of summary judgment against him is appropriate. Id.

Rule 56(d) provides for the granting of partial summary judgment.  Partial summary judgment is a pre-trial adjudication specifying that certain issues are deemed established for trial. Lovejoy Electronics, Inc. v. O'Berto, 616 .Supp 1464, 1473 (D.C. Il. 1985).   Its purpose is to narrow the issues to be tried, if the court finds that such an exercise would be helpful to the progress of the litigation.  Id.

**B.    PARTIAL SUMMARY JUDGMENT ON COUNT I:**

    **1.    RLI, as surety, is not excused, as a matter of law,
        by virtue of IRSD'S alleged overpayments to McDaniel.**

The most important issue in this action is RLI's claim that it is discharged from its

obligations under the performance bond by virtue of IRSD's payments to McDaniel for work not

performed and/or performed in a deficient manner. D.I.1, Complaint, Count I. Specifically, RLI

claims that IRSD:

- failed to properly review McDaniel's applications for payment (Complaint, ¶20(e))

- failed to evaluate McDaniel's work in connection with McDaniel's payment applications (Complaint, ¶20(f))

- made premature payments for work not performed by McDaniel (Complaint, ¶20(g) and ¶37(g))

- made overpayments to McDaniel for more than the value of work performed (Complaint, ¶20(h) and ¶37(g))

- impaired RLI's collateral [e.g., the contract funds] (Complaint, ¶20(m) and ¶37(j))

- issued payments for more than $340,000 in excess of the value of the work performed by McDaniel (Complaint, ¶21)

- issued payments for work not performed (Complaint, ¶22)

- made premature payments and overpayments without RLI's consent (Complaint, ¶26)

- materially altered the contract terms for payment to McDaniel (Complaint, ¶37(a))

None of these allegations (which, for simplicity's sake, we will hereinafter refer to as "alleged overpayments") squares with the undisputed facts[2], contract documents and applicable law. IRSD seeks an order from the court finding that, as a matter of law, RLI as the surety is not excused from performing under the terms of the bond on the basis of the alleged overpayments.

This conclusion results from these truths: (1) as surety, RLI was bound by the terms of the construction contract; (2) any payment By IRSD that comports with the construction contract cannot violate the performance bond; (3) under the terms of the construction contract, the Architect and the Construction Manager evaluated the progress and quality of McDaniel's work and certified the amounts to be paid on monthly payment applications; (4) IRSD was required to make payments to McDaniel in the amounts certified by the Architect and the Construction Manager, and did so; and (6) by agreeing to bond this contract, RLI assumed all risk arising from the contract terms which clearly expressed that work was neither accepted nor necessarily acceptable just because payment for it was made.

The scope of RLI's obligations as surety under the performance bond originate and are defined by the requirements of the governing statute, Delaware's State Procurement Act, and by the terms of the bond itself. These two sources bind RLI, unequivocally, to the terms of McDaniel's construction contract with IRSD. The State Procurement Act requires that all successful bidders for public works projects supply a performance bond, which must be "conditioned upon the faithful compliance and performance by the successful bidder of **each and**

---

[2] The parties do disagree factually about whether, and to what extent (if any), payments were made for work not performed or in excess of the value of work performed. However, even assuming, for the purposes of this motion, that such "premature payments" or "overpayments" occurred, the applicable law and contract afford RLI as surety no defense to RLI's performance bond claim.

8

**every term and condition of the contract**," and "contain the successful bidder's guarantee to indemnify and save harmless the State and the Agency from all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract **in accordance with the contract**." 29 Del. C., 6927(d)(9)(e)(emphasis added). The performance bond likewise expresses the surety's undertaking to be bound to the owner for the performance of the contract, which is expressly incorporated by reference in the bond. Paragraph 1 of the performance bond states:

> "The Contractor and the Surety, jointly and severally, bind themselves ... to the Owner for the performance of the Construction Contract, which is incorporated by reference."

As surety, then, RLI is bound by the terms of the construction contract between McDaniel and IRSD. Any action by IRSD that comports with the terms of the construction contract cannot, therefore, excuse RLI from its obligations as surety.

The construction contract required IRSD to make payment to McDaniel upon certifications by the Architect and Construction Manager. Paragraph 9.4.1 of the General Conditions of the Contract provides:

> The Construction Manager will assemble a Project Application for Payment by combining the Contractor's applications with similar applications for progress payments from other Contractors and, after certifying the amounts due on such applications, forward them to the Architect within seven days.

Paragraph 9.4.1 of the General Conditions of the Contract provides:

> Within seven days after the Architect's receipt of the Project Application for Payment, the Construction Manager and Architect will either issue to the Owner a Project Certificate for Payment, with a copy to the Contractor, for such amount as the Construction Manager and Architect determine is properly due, or notify the Contractor and Owner in writing of the Construction Manager's and Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1. Such notification will be forwarded to the Contractor by the Construction Manager.

Paragraph 9.6.1 of the General Conditions of the Contract provides:

> After the Construction Manager and Architect have issued a Project Certificate for Payment, the Owner ___shall___ make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Construction Manager and Architect. (emphasis added)

In accordance with these contract terms, McDaniel submitted 24 monthly applications for payment. Each of these was evaluated and reviewed by the Architect and Construction Manager. For each application, the construction manager and architect issued a Certificate of Payment to IRSD. Each Certificate of Payment was in the form of the following example:

## CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Construction Manager and Architect certify to the Owner that to the best of their knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED                      $ 106,400.00

*(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that changed to conform to the amount certified)*

CONSTRUCTION MANAGER:
By: _____      Date: 9/13/04
ARCHITECT:
By: _____      Date: 9.15.04

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

See exhibit "E" to the Miller Declaration (the example is found on the past page). Based upon these Certificates for Payment, IRSD made payment to McDaniel of the amount certified. See Miller Declaration, ¶¶ 4-5.

It is important to note that in certifying these payments, the Architect and Construction Manager were not making any final determination of the acceptability of McDaniel's work. The construction contract makes it clear that neither the Certificate for Payment nor the payment

10

itself constitutes an acceptance of work not in accordance with the contract.[3]  In issuing the

Certificates for Payment, the Architect and the Construction Manager were simply expressing

their judgment as of the date of the certification about the progress and quality of the work.  As

the contract states, the issuance of a Certificate for Payment:

> constitute representations made separately by the Construction Manager and
> Architect to the Owner, based on their individual observations at the site and the
> data comprising the Application for Payment submitted by the Contractor, that the
> Work has progressed to the point indicated and that, to the best of the
> Construction Manager's and Architect's knowledge, information and belief,
> quality of the Work is in accordance with the Contract Documents.

General Conditions paragraph 9.4.3 (set forth in Miller Declaration exhibit "B").  The

representations made to the owner in the Certificate for Payment are, among other things,

"subject to an evaluation of the Work for conformance with the Contract Documents upon

Substantial Completion."  Id.  Both the Architect and the Construction Manager retained the

right to reject work not in conformance with the contract, whether that work is in progress or

already completed.  See General Conditions paragraph 4.6.10 (set forth in Miller Declaration

exhibit "B").  In undertaking to become surety under these contract documents, RLI assumed the

risk inherent in this contractual payment process; namely, that work was neither accepted nor

necessarily acceptable just because payment for it was made.

   Other courts have addressed the issue presented by this motion and concluded that if an

owner is required, pursuant to the terms of its contract, to make payment to the contractor based

upon certifications by the project architect or some other third party, the owner's overpayments

to the contractor, based upon the certifications, do not excuse the surety from its obligations

under the performance bond upon the contractor's default.  See Balboa Insurance Company v.

---

[3] General Conditions paragraph 9.6.6 states that: "A Certificate for Payment, a progress payment, or partial or entire
use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the
Contract Documents."  See exhibit "B" to the Miller Declaration.

11

Fulton County, 148 Ga.App. 328, 251 S.E.2d 123 (1978); Phillips v. American Liability &

Surety Co., 309 Pa. 1, 162 A.435 (1932); American Fidelity Insurance Co. v. Pavia-Byrne

Engineering, 393 So.2d 830 (La.App. 1981); National American Bank of New Orleans v.

Southcoast Contractors, Inc., 276 So.2d 777 (La.App. 1973); Continental Realty Corp. v.

Andrew J. Crevolin Co., 380 F.Supp. 246 (D. WV 1974); Argonaut Insurance Co v. Town of

Cloverdale, 699 F.2d 417 (7th Cir. 1983); Ruckman and Hansen, Inc. v. Contracting & Material

Co., 328 F.2d 744 (7th Cir. 1964).[4]

In a case with remarkably similar facts, the Georgia Court of Appeals upheld the trial

court's grant of summary judgment finding the surety liable to a public owner under a

performance bond although the surety denied liability on the basis of the owner's overpayments

to the defaulted contractor. Balboa Insurance Co. v. Fulton County, 148 Ga.App. 328, 251

S.E.2d 123 (1978). In Balboa, the construction contract between the owner and the contractor

required the owner to make payments to the contractor, based upon certifications issued by the

architect. The owner did make the payments as certified by the architect. Prior to completion of

the project, the contractor's employment was terminated and the owner made demand upon the

surety under the performance bond.  The surety refused to perform and the owner commenced an

action against the surety.  The surety alleged, in response to the owner's action, that it was

discharged because the owner had paid the contractor in excess of the value of the work actually

completed.  The court assumed for purposes of the motion that the owner had in fact overpaid the

contractor.  Nonetheless, the surety was not excused from performing, as a matter of law,

because the owner had merely complied with its contractual duties in making the payments at

issue to the contractor. The court noted, relying upon Phillips supra, the Pennsylvania Supreme

---

[4] IRSD has located no relevant Delaware authority for this point and offers the law of other jurisdictions as
persuasive authority.

court case, that the owner merely made the payments at issue as it was obligated to do under the terms of its contract. Had it refused to do so, the surety "with some propriety" may have complained that it was prejudiced by such actions.

In American Fidelity, *supra*, the owner, in reliance upon the engineer's certifications, made payment to the contractor in excess of the value of the work performed. Because the owner paid in excess of the value of the work actually completed, it did not retain from the progress payments the percentage required by the contract, which funds the surety sought to indemnify it from claims it paid under the labor and material payment bond. The court denied the surety's claim to recover the overpayments from the owner, on the basis that the owner was required, by the contract, to make payment to the contractor once the amount was certified by the engineer. In National American Bank, the contractor defaulted prior to completing the work and the surety refused to complete, on the basis of the owner's overpayment to the contractor. The court considered the general rule that premature payments by the owner operate to release the surety pro tanto, but because the owner's overpayments in that case were based on the architect's certifications as required by the contract, and the owner was simply fulfilling its obligations to the contractor and the surety was not discharged.

In Argonaut, *supra*, the owner made payment to the contractor, based on the engineer's certification, for materials not actually delivered to or incorporated into the project. The surety, completing the work on behalf of the defaulted contractor, sued the owner for the value of the overpayment. The court considered the general rule that the surety is discharged by reason of advanced payments but found that, based on the interpretation of the terms of the contract, the owner was simply complying with its contractual duties by making payment. In addition, the court pointed out that the contract provided that "no payment...final or otherwise, shall operate

13

to release the contractor or his surety from any obligations upon or under this contract or the Contractor's Bond"... and "all progress payments being made merely upon approximate estimates shall be subject to correction in the final estimate." Id. at 420. The court held that where estimation of the work completed is allowed by contract, payment based on the overestimate is not a contract breach or alteration of which a surety may complain. Id. The court went on to note that the owner (the Town of Cloverdale):

> Is not in the construction business and there was no reason for it to think it ought to verify the engineering firm's estimates. But Argonaut [the surety] is in the business of insuring construction contracts and if it was unhappy with the town's choice of engineers, or with the delegation to the engineering firm of responsibility for calculating the progress payments that were due, it did not have to agree to insure the contract.

Id.

Ruckman and Hansen, supra, also held, on the surety's claim that it was discharged from obligations under the performance bond by virtue of overpayments, that overpayment on progress payments which were subject to correction and adjustment by the terms of the contract did not release the surety. Id. at 746-747. Since, according to the contract, the progress payments were not final and expressly subject to adjustment, the owner did not depart from the contract terms, terms which the surety accepted when issuing the bond. Id.

These cases, and the bond and contract terms, support but one conclusion: assuming, for purposes of this motion only, that IRSD paid McDaniel, based on the Construction Manager's and Architect's certifications, for work not performed or in excess of the value of work performed, no defense to RLI would arise. The overpayments were made in the course of IRSD complying with its payment obligations under the contract. Had it not made payment of the amounts certified by the Architect and Construction Manager, it would have materially breached the terms of the contract. Because IRSD was fulfilling its contractual obligations to McDaniel

14

when it made the overpayments, RLI, as a matter of law, is not discharged from its performance

bond obligations on that basis.   Accordingly, IRSD asks that the paragraphs of RLI's complaint

alleging the overpayment defense be stricken, and that it be prohibited from offering any

evidence in support of any such claim or defense at trial.

> **2.      Provisions of the bond form are in contravention of Delaware's State Procurement Act and the surety's defenses based thereon must be stricken**

RLI asserts that it is discharged from all obligations under the bond based on IRSD's

alleged failure to comply with the notice provisions of the bond and IRSD's overpayment to

McDaniel. (D.I. 1, Compliant, Count I, ¶¶16, 20(e), 20(f), 20(g), 20(h), 20(m), 21, 22, 26, 30,

37(a), 37(d), 37(g) 37(j)).   In addition, it claims that it is discharged because IRSD failed to

"timely advise RLI of problems with the project which deprived RLI of its ability to exercise its

rights under the bond." Id. at ¶ 37(c).

Paragraph 3 of the form of the bond issued by RLI for the Project (a copy of which is

attached to the Miller Declaration as Exhibit "D") provides that:

> If there is no Owner Default, the Surety's obligations under the bond shall arise after:

>> 3.1      The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract.  If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

RLI alleges that IRSD failed to hold the conference required by paragraph 3.1 prior to

declaring McDaniel in default and terminating its employment.  With respect to the issue of

overpayment, RLI's position is that its obligations under the bond never arose because IRSD was

in default.  Paragraph 12.4 of the bond defines "Owner Default" as: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with other terms thereof.  RLI's position is that IRSD overpaid McDaniel and therefore it did not pay the contractor *as required by the Construction Contract*.  As a result, RLI claims, there was an "Owner Default" and its obligations under the bond never arose.

RLI's position cannot be sustained because the provisions of the bond that it relies upon are in contravention of Delaware's State Procurement Act.  Section 6927(d)(9)(e) of the Act sets forth the scope of protection of a performance bond given pursuant to a public works construction contract. 29 Del. C., 6927(d)(9)(e).[5] The section provides:

> The bond shall be conditioned upon the faithful compliance and performance by the successful bidder of each and every term and condition of the contract and the proposal, plans, and specifications thereof.  Each term and condition shall be met at the time and in the manner prescribed by the contract, and the specifications, including payment in full, to every person furnishing material or performing labor in the performance of a contract, of all sums of money due him for such labor and material.  The bond shall also contain the successful bidder's **guarantee to indemnify and save harmless the State and the Agency from all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract.** (emphasis added)

Subsection (d)(9)(f) provides;

> …No person or surety, in any action brought under this Section, or on the bond required by this Section, ***shall assert as a defense*** to such action the claim that the bond given pursuant to this Section contained a limitation or restriction not provided for by this section. (Emphasis added.)

29 Del. C., 6927(d)(9)(f).  According to subsection (d)(9)(f), RLI's defenses to IRSD's bond claim are limited to those set forth in section 6927 of the Act.

---

[5] Since the execution and delivery of the bond at issue herein, section 6927(d)(9)(e) has been amended to provide the form of bond that must be used when issuing a bond under this section.

16

It is well settled in Delaware's common law that provisions in a bond that are inconsistent with the language or purpose of a governing statute are void. <u>Savery and Cooke, Inc. v. Fidelity and Deposit Company of Maryland</u>, 194 A.2d 858, 862 (De. 1963). In <u>Savery and Cooke</u>, the Court struck a notice provision in a labor and material payment bond, as no similar provision was contained in the governing statute. Where a bond is supplied pursuant to the Procurement Act, provisions of the bond which are more restrictive than required by the statute are void and the bond must be held to cover the full liability set forth in the Act. <u>Christopher v. Planet Insurance Co.</u>, 321 A.2d 128, 135 (Del.Super. 1974). Any bond executed pursuant to the Act will be construed to provide at least the minimum coverage afforded by the statute. <u>Certain-Teed Products v. United Pacific Ins. Co.</u>, 389 A.2d 777, 779 (Del.Super. 1978).[6]

The bond at issue in this case is a standard form, drafted by the American Institute of Architects, which forms are regularly employed in the construction industry. Recognizing that the standard form language will not always comply with statutory requirements, the bond form includes a paragraph providing that the inconsistent provisions will yield to the statutory provisions. Paragraph 11 of the bond provides:

> When this bond has been furnished to comply with statutory or other legal requirements in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirements shall be deemed incorporated herein, The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

Therefore, even in the absence of the common law which holds that bond provisions inconsistent with the Procurement Act are void, the bond form itself provides that the provisions of that statute, rather than the bond, govern the surety's duties to the obligee.

---

[6] In <u>Christopher</u> and <u>Certain-Teed</u> the controlling bond statute was 29 <u>Del. C.</u> § 6910 and the provisions thereof are substantial similar to 29 <u>Del. C.</u>, 6927(d)(9)(e), the section at issue in this case.

In this case, section 6927(d)(9)(e) contains no provision requiring IRSD to arrange a meeting with RLI and McDaniel prior to finding McDaniel in default and terminating its employment or to "timely advise RLI of problems with the project" (which is not even a requirement of the bond itself). Pursuant to subsection (d)(9)(f), RLI may not assert such defenses to IRSD's claim. Further, Delaware's common law will find such requirements void, as they restrict the protections offered by section 6927 (d)(9)(e), and would restrict the surety's unconditional indemnity guarantee required by the statute. In addition, paragraph 11 of the bond provides that the provisions of the Procurement Act govern and the inconsistent bond provisions will be deleted from the bond. All of the same results are true for RLI's defense that IRSD overpaid McDaniel. Further, as is fully set forth in section B. 1 hereof, IRSD's payment to McDaniel was made in accordance with the certifications of the Architect and Construction Manager and IRSD was merely fulfilling its contractual obligations under paragraph 9.6.1 of the General Conditions of the Contract. As a consequence, there was no "Owner Default" under paragraph 3 of the bond and RLI's obligations did arise upon McDaniel's default.

Therefore, RLI's defenses based upon failure to give notice required by the terms of the bond, failure to timely advise it of project problems and overpayment to McDaniel must be stricken pursuant to 29 Del. C., 6927(d)(9)(f). Further, the following language of paragraph 3.1 of the bond must be stricken as void, as it limits the protection afforded by 29 Del. C., 6927(d)(9)(e):

> The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract.

**3.    The contract documents, as modified, do not require the owner to provide the surety with seven days notice prior to termination of the contractor's employment**

In paragraphs 14-18 and 30 of the Complaint (D.I. 1, ¶¶ 14-18, 30), RLI alleges that

IRSD failed to give it seven days written notice prior to terminating McDaniel's employment.

Therefore, according to RLI, the termination is wrongful and, as set forth in Count I of the

complaint (Id. at ¶ 37(d)), it is discharged from its obligations under the bond.  RLI bases its

allegations on paragraphs 14.2.1 and 14.2.2 of the General Conditions of the Contract (a copy of

which is attached to the Miller Declaration as Exhibit "B") which provide:

> **14.2.1** The Owner may terminate the Contract if the Contractor:
> .1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
> .2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
> .3 persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or
> .4 otherwise is guilty of substantial breach of a provision of the Contract Documents.

> **14.2.2** When any of the above reasons exist, the Owner, after consultation with the Construction Manager, and upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:
> .1 take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
> .2 accept assignment of subcontracts pursuant to Section 5.4; and
> .3 finish the Work by whatever reasonable method the Owner may deem expedient

RLI is not discharged from its obligations by virtue of the seven day notice requirement

in paragraph 14.2.2, as that paragraph of the standard form was modified, deleting the seven day

notice provision.  Article 9 of the contract between IRSD and McDaniel (A copy of which is

attached to the Miller Declaration as Exhibit "A") enumerate the documents forming the

agreement to include the general conditions and the supplementary conditions (a copy of which

is attached to the Miller Declaration as Exhibit "C") of the contract. The supplementary conditions modify, change, delete or add terms to the general conditions of the contract. The original 14.2.2 was modified in the supplementary conditions to delete any notice requirement to the surety of the contractor's default. 14.2.2, as modified, provides:

> **14.2.2** When any of the above reasons exist, the Owner, after consultation with the Construction Manager, and upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner terminate employment of the Contractor and may:
> .1 take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
> .2 accept assignment of subcontracts pursuant to Section 5.4; and
> .3 finish the Work by whatever reasonable method the Owner may deem expedient.

Because paragraph 14.2.2, as modified, contains no notice requirement to RLI prior to termination of McDaniel's employment, IRSD's failure to give RLI seven days written notice is not a failure to comply with the contract documents. Therefore, as a matter of law, RLI is not discharged under the bond for IRSD's failure to provide it with seven days written notice of McDaniel's termination.

### C.    SUMMARY JUDGMENT ON COUNT II:
RLI'S NEGLIGENT MISREPRESENTATION AGAINST IRSD IS BARRED BY THE ECONOMIC LOSS RULE

RLI alleges under Count III of the Complaint (D.I. 1) that IRSD made numerous misrepresentations to it regarding McDaniel's work and payment therefor and that it sustained monetary damages as a result thereof. Even assuming, for purposes of this motion only, that all allegations made by RLI are true, the claim for negligent misrepresentation against IRSD must fail as a matter of law.

Under Delaware law, negligence claims, which seek damages that are only economic in nature are barred by the Economic Loss Rule, even when the parties are in privity of contract.

Danforth v. Acorn Structures, Inc. 608 A.2d 1194 (Del. 1992). Under the Economic Loss Rule, a party may recover in tort only if losses are accompanied by bodily harm or property damages but damages that are solely economic in nature are not recoverable. Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing, 2002 WL 1335360 (Del.Super.). Initially the doctrine related to products liability actions, but the courts have expanded its applicability to any kind of commercial transaction where the damages are solely economic in nature. Id.

There is no dispute in the instant case that RLI's damages are solely economic in nature. Based on the above cited Delaware law, RLI's tort claim, which seeks purely economic losses is barred, as a matter of law.

Exception to The Economic Loss Rule
Under Section 552 of the Restatement of Torts

While RLI has not asserted any exception to the Economic Loss Rule, had it done so such a claim would also fail as a matter of law.[7]  A negligent misrepresentation claim, based on section 552 of the Restatement of Torts, is an exception to the Economic Loss Rule. Guardian Construction Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378, 1386 (Del.Super. 1990).

Delaware's narrow application and strict construction of claims under section 552 require a plaintiff to prove two elements: (1) that defendant supplied information to plaintiff for a business transaction *with a third party*; and (2) that defendant is in the business of supplying information. Christiana Marine Service Corp., 2002 WL 1335360. The first element is relatively self-explanatory. Parties to a contract cannot state a claim against each other for negligent misrepresentation of information which is to be used in performance of the contract duties between them. The misrepresentation must be used by the plaintiff in a transaction with a

---

[7] RLI's Counts against the Architect and Construction Manager specifically allege negligent misrepresentation under section 552 of the Restatement of Torts. RLI does not cite the exception in its negligent misrepresentation claim against IRSD. Since it specifically pled the exception against the other Defendants, IRSD assumes that it did not intend to assert section 552 against it, as the exception relates to those in the business of supplying information.

21

third party. In <u>Christiana</u>, defendant Texaco represented to plaintiff that if it had the necessary equipment, it could transport a specified monthly volume of fuel for Texaco. In reliance upon this anticipated volume of business, plaintiff sought credit from a third party lender to acquire the equipment. Texaco thereafter failed to provide plaintiff with the volume of business it previously represented, which formed the basis for plaintiff's lawsuit against Texaco. In response to Texaco's Motion for Summary Judgment, based on the Economic Loss Rule, the court held that plaintiff Christiana had met the first element required under the 552 exception, as it had relied upon the representations made by Texaco in obtaining credit from a third party lender.

The second element focuses on whether the supplying of information is at the heart of the transaction or whether the supplying of information is merely incidental or ancillary to the provided service or transaction. <u>Id</u>. In <u>Christiana</u>, the court found that Texaco was not in the business of supplying information and therefore Christiana's claim under section 552 must fail. The court found that Texaco supplied the information to Christiana, regarding the expected volume of monthly business, for the ultimate service of fuel transportation and that such information was merely incidental to the primary transaction. Conversely, in the case of an architect, the supplying of the design information is the primary transaction. <u>Guardian Construction Co.</u>, 583 A.2d at 1386.

In <u>Millsboro Fire Co. v. Construction Management Services, Inc.</u>, 2006 WL 1867705 (Del.Super.) the court analyzed a negligent misrepresentation claim with facts very similar to those of the case at bar. The construction manager claimed that the design professionals made negligent misrepresentations in approving the work performed by subcontractors. The court held, on the design professionals' motion for summary judgment, that the construction manager's claim did not fall within the exception to section 552 because, with respect to the information

22

regarding approval of the work, the design professionals were not in the business of supplying information. The court found that the information at issue was more "aptly categorized as information incidentally supplied to [the construction manager]" as part of the project.

RLI Fails to Satisfy Either Requirement of the Exception

The allegations of RLI's complaint, which IRSD admits as true for purposes of this motion only, exclude it from the exception under section 552. RLI alleges that it issued a performance bond for the benefit of IRSD. D.I. 1, ¶ 12. It further alleges that IRSD made numerous misrepresentations to it regarding the work and payment therefore. Id., ¶¶ 24-25, 32, 47-48. RLI claims that IRSD knew it was making the misrepresentations for the benefit and guidance *of RLI*, (Id., ¶47) and that it relied upon these representations in assessing *its* performance options under the bond. Id., ¶. 48. Based on these facts, RLI fails to satisfy the first element of the section 552. Since IRSD supplied the information to RLI for the transaction between IRSD and RLI, and not for RLI's transaction with a third party, the surety has not satisfied the first elements of the exception.

RLI also fails to satisfy the second element of the 552 exception, that IRSD is in the business of supplying information. There is no material issue of fact concerning the business of IRSD. It is a school district in the business of public education, not the business of providing information to contractors or sureties regarding construction. As noted by this Court when previously addressing this issue on the Motion to Dismiss filed by EDIS and Becker Morgan, Delaware has only applied this narrow exception to the Economic Loss Rule to those strictly in the business of supplying information. D. I. 22, 2006 WL 1749069. Because the Motion to Dismiss stage was too early in the case to sufficiently define the scope of the Architect's and Construction Manager's roles with respect to the Project, the court held it was not the appropriate

23

time to determine whether or not they were in the business of supplying information, since it did

not know to what extent design information was involved. Id. In IRSD's case, there is no

dispute that it is not in the business of supplying information. In addition, all of RLI's

allegations regarding the misrepresentations pertain to the contract administration phase of the

Project and not to the design phase. The Millsboro court held that alleged misrepresentations

regarding approval and acceptance of work (non-design information) were incidental to the

primary purpose of the transaction, which was construction, as is the case here. The inspection of

McDaniel's work, and the information provide to RLI in that regard, was not the primary

transaction at issue. The transaction was construction of the school and the information

regarding McDaniel's performance of that construction was merely incidental.

There are no material issues of fact surrounding RLI's negligent misrepresentation claim

against IRSD. IRSD is entitled to judgment as a matter of law, as RLI cannot meet the elements

of the exception to the Economic Loss Rule.

> **D. SUMMARY JUDGMENT ON COUNT III:**
> **RLI'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE**
> **DISTRICT FAILS UNDER DELAWARE LAW**

RLI asserted a breach of fiduciary duty claim against IRSD in Count II of the Complaint.

(D. I. 1). The surety alleges that a fiduciary relationship arose between it and IRSD by virtue of

the fact that the school district is the obligee on the performance bond. Under Delaware law, the

relationship between a surety and an obligee is not a fiduciary relationship. As a result, the

District is entitled to summary judgment in its favor on this claim.

Under Delaware Law, the relationship between a surety and an obligee is the same as the

relationship between an insurer and an insured. International Fidelity Insurance Company v.

Delmarva Systems, Inc., 2001 WL 541469 (Del.Super.) *appeal denied by 782 A.2d 264*, holding

that a surety is subject to a common law bad faith claim as if it were an insurer. Delaware's Supreme Court has held that the relationship between an insurer and an insured is *not* a fiduciary relationship. <u>Crosse v. BCBSD, Inc.</u>, 836 A.2d 492 (De. 2003).

In <u>Crosse</u>, the court found that the insured's breach of fiduciary duty claim against the insurer failed to state a claim. It then set forth the test for determining when a fiduciary relationship arises in a contract context. The court, quoting from one of its previous decisions on the issue (<u>Corrado Bros. v. Twin City Fire Ins. Co.</u>, 562 A.2d 1188 (De. 1989)) stated "the concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal in which the fiduciary is required to pursue solely the interests of the beneficiary in the property." <u>Crosse</u> at 495. The court went on to define the test as whether there was a sufficient "clash of interests" between the insurer and the insured that the legal relationship is purely contractual rather than fiduciary. <u>Id</u>.

In <u>Crosse</u>, the court found some alignment of interests, in that the health insurer was responsible for negotiations with physicians to obtain the best health care packages for the insured at the most affordable prices. However, the fact that the insurer had the ultimate decision in satisfying or denying a claim resulted in a clash of interest between the insurer and the insured, since the insurer was not acting solely in the insured's interests.

In <u>International Fidelity</u>, *supra*, the court discussed the purpose of the surety bond, which, according to it, is not for commercial advantage but to protect the obligee from calamity that may result if the principal defaults in the contract (citing <u>Dodge v. Fidelity and Deposit Company of Maryland</u>, 778 P.2d 1240, 161 Ariz. 344 (1989)). The performance bond allows the obligee to respond quickly to the contractor's non-performance and to avoid delays and

25

additional cost to the overall project. In essence, the obligee requires insurance that the project can be completed. Also citing from <u>Transamerica Premier Insurance Co. v. Brighton School District</u>, 904 P.2d 348 (CO. 1997), [8] the court noted that the surety has an advantage over the obligee, as the surety controls the ultimate decision as to timing and whether it will make payment of a claim. "Those decisions will often be critical to the ability of the project to proceed forward." <u>International Fidelity</u> at 9.

In this case, Delaware law holds that the surety obligee relationship is that of an insurer / insured relationship. Delaware's Supreme Court has set forth the bright line rule that no fiduciary relationship exists between an insurer and an insured. As a result, no fiduciary relationship exists between RLI and IRSD.

Further, applying the alignment/clash of interest analysis set forth by Delaware's Supreme Court will demonstrate that no fiduciary relationship exists between RLI and IRSD. First, unlike the facts of <u>Crosse</u> where there was one aspect of the relationship where the parties' interests were aligned (the insurer's negotiation with physicians of the health care packages), there is no alignment of any interests between RLI and IRSD. The procurement of and claim upon the performance bond is nothing more than an arms length transaction, where RLI agreed, for commercial advantage, to "insure" IRSD from any loss resulting from the contractor's default. RLI has not asserted nor was IRSD performing any functions on RLI's behalf by virtue of being an obligee on a performance bond for the Project. Under such circumstances, the IRSD's and RLI's interest did not incline toward a common goal in which the fiduciary (the District) was required to pursue solely the interests of the beneficiary (the Surety).

As set forth in <u>Crosse</u>, because RLI has the ultimate decision as to whether to act in response to IRSD's claim, which it in fact refused to do in this case, a sufficient enough "clash of

---

[8] Both <u>Transamerica</u> and <u>Dodge</u> addressed whether a surety was liable for bad faith as an insurer.

interests" exists that the relationship does not rise to the level of a fiduciary relationship. Therefore, since the question of the existence of a fiduciary duty is a purely legal question, which Delaware holds does not exist in these circumstances, IRSD is entitled to judgment on Count II as a matter of law.[9]

Moreover, the conclusion that IRSD has no fiduciary duty to RLI is further demonstrated by the fact that RLI is not just a surety, it is also an indemnitor. Pursuant to Delaware's State Procurement Act, RLI's duty under the performance bond was to" indemnify and save harmless the State and the Agency from all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract." 29 Del. C., 6927(d)(9)(e). An indemnitee, such as IRSD, certainly assumes no fiduciary duty to the party that must indemnify it, here RLI.

---

[9] Moreover, the conclusion that IRSD has no fiduciary duty to RLI is further demonstrated by the fact that RLI is not just a surety, it is also an indemnitor. Pursuant to Delaware's State Procurement Act, RLI's duty under the performance bond was to" indemnify and save harmless the State and the Agency from all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract." 29 Del. C., 6927(d)(9)(e). An indemnitee, such as IRSD, certainly assumes no fiduciary duty to the party that must indemnify it, here RLI.

## V.    CONCLUSION

For the reasons set forth in this Brief, IRSD asks for summary judgment in its favor and against RLI in accordance with the accompanying proposed form of Order. Specifically, IRSD asks that the Court enter judgment:

(1) striking the allegations of Count I to the extent in that count RLI Insurance Company claims that it is discharged from its obligations under the performance bond by reason of IRSD's allegedly improper payments to McDaniel for work not performed and/or performed in a deficient manner. IRSD asks that the Court find that under the terms of the performance bond and contract, the Architect and the Construction Manager evaluated the progress and quality of McDaniel's work and certified the amounts to be paid on monthly payment applications, that IRSD was required to make payments to McDaniel in the amounts certified by the Architect and the Construction Manager, and that IRSD did so. IRSD asks that the Court strike all defenses or claims asserted by RLI based on alleged improper payments, including paragraphs 20(e), 20(f), 20(g), 20(h), 20(m), 21, 22, 26 and 37(a), 37(g) and 37(j) and prohibit RLI from offering any evidence at trial in support of any such claim or defense;

(2) striking the allegations of Count I to the extent in that count that RLI claims that it is discharged from its obligations under the performance bond by reason of any failure by IRSD to provide a pre-termination notice of default to McDaniel, to notify RLI about the status of McDaniel's work, or to arrange a conference with RLI and McDaniel prior to making demand under the performance bond. IRSD asks that the Court strike all defenses or claims asserted by RLI based on these allegations, including paragraphs 16,

28

20(e), 20(f), 20(g), 20(h), 20(m), 21, 22, 26, 30, 37(a), 37(d), 37(g) 37(j) and prohibit RLI

from offering any evidence at trial in support of any such claim or defense; and

(3)  entering judgment is entered in favor of IRSD and against RLI on counts II and III of

RLI's complaint.


Respectfully Submitted,

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)
jgreen@svglaw.com
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District


Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322


29