IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RLI INSURANCE COMPANY | ) Civil Action No.: 05-858-JJF |
| Plaintiff, | ) |
| vs. | ) |
| INDIAN RIVER SCHOOL, DISTRICT, EDIS COMPANY, AND BECKER MORGAN GROUP, INC. | ) |
| Defendants. | ) |

**DEFENDANT BECKER MORGAN GROUP, INC.'S
OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AGAINST
PLAINTIFF, RLI INSURANCE COMPANY**

TIGHE & COTTRELL, P.A.

By: /s/ Patrick McGrory
Paul Cottrell, Esquire (DE # 2391)
Patrick McGrory, Esq. (DE # 4943)
One Customs House, Suite 500
P.O. Box 1031
Wilmington, Delaware 19899
(302) 658-6400
p.mcgrory@tighecottrell.com

Dated: September 28, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I. INTRODUCTION ..................................................................................................... 1

II. FACTS ...................................................................................................................... 2

III. ARGUMENT ............................................................................................................ 3

    A. § 552 AND "PROFESSIONAL NEGLIGENT MISREPRESENTATION" ............................................................................ 3

    B. MAY RLI JUSTIFIABLY RELY UPON INFORMATION SUPPLIED BY BMG TO IRSD? ............................................................ 7

IV. CONCLUSION ......................................................................................................... 9

APPENDIX A ....................................................................................................................... A

# TABLE OF AUTHORITIES

**CASES**

*Danforth v. Acorn Structures, Inc.*,
608 A.2d 1194 (Del. 1992) .................................................................................. 3

*Guardian Construction Co. v. Tetra Tech Richardson*,
583 A.2d 1378 (Del. Super 1990) ....................................................................... 4

*Rose Heart, Inc. v. Ramesh C. Batta Associates, P.A.*,
1995 WL 562116 (Del. Super. 1995) .................................................................. 4


**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552 ............................................................. *passim*


**UNREPORTED CASES** ............................................................................. Appendix A

*Delaware Art Museum v. Ann Beha Architects, et al.*,
C.A. No. 06-481 GMS, 2007 WL 2601472 (Dist. Del. Sept. 11, 2007) .......... 5,6

*Millsboro Fire Co. v. Constr. Mgmt Serv.*,
C.A. No. 05C-06-137 MMJ, 2006 WL 1867705, (Del. Super. June 7, 2006) ...... 5,6,8

## I. INTRODUCTION

Defendants Becker Morgan Group, Inc. ("BMG") filed their Joint Motion to Dismiss or in the Alternative for Summary Judgment on January 19, 2005. The Motion sought judgment in favor of the EDIS and BMG on the basis that Plaintiff, RLI Insurance Company ("RLI"), was precluded by the Economic Loss Doctrine from maintaining a suit in tort to recover for purely economic losses, and that Sec. 552 of the Restatement (Second) of Torts is inapplicable because Delaware case law has limited the application of the exception to cases where the ultimate purpose of the contract was the supply of the information itself, as opposed to the construction of a tangible item. Further, BMG argued in its Motion to Dismiss that RLI has no basis in law to seek a bifurcation of the underlying contracts to sustain a claim based upon representations which are merely ancillary to those contracts.

RLI argued that Sec. 552 is an exception to the application of the Economic Loss Doctrine and that it applies here.

In an Memorandum Opinion dated June 20, 2006, the Court denied BMG and EDiS' Joint Motion to Dismiss, on the basis that the Plaintiff "sufficiently alleged for the purposes of a motion to dismiss that [BMG and EDiS] were in the business of supplying information." (*See*, D.I.# 21, p. 8).

Since that decision, the parties have engaged in lengthy discovery. Such discovery concludes that BMG was engaged by the Indian River School District for the purpose of designing and constructing the new Sussex Central High School with an expected capacity of 1,500 students.

Because current Delaware law only recognizes the application of §552 in a limited

-1-

context, and because no fact exists which would support a conclusion that BMG is in the business of supplying information, this Court should grant summary judgment in favor of BMG.

## II.   FACTS

BMG contracted with the IRSD for the design of a new Sussex Central High School with an expected capacity of 1,500 students (the "Project"). (*See*, Contract attached hereto as **Exhibit "A"**). Utilizing a modified Abbreviated Standard Form of Agreement Between Owner and Architect, AIA Document B151 - 1997 Edition, BMG was obligated to provide IRSD with schematic design documents, design development documents, construction documents, as well as bidding phase and construction administration phase services. (See, **Exhibit "A"**, Article 2). In a nutshell, BMG was engaged by IRSD to design "renovations to a number of schools as well as design for the two new high schools." (See, Dep. of Brad Hastings, AIA, p. 21, ¶ 3-24, attached hereto as **Exhibit "B"**).

BMG's contract with IRSD also specifically states in paragraph 9.7, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against the Owner or Architect."

IRSD contracted separately with each of the prime trade contractors. (*See*, Dep. of Theodore Dwyer, p. 48. ¶ 8-12, attached hereto as **Exhibit "C"**). One such trade contractor was McDaniel Plumbing and Heating, Inc ("MPH"). (*See*, **Exhibit "C"** pp. 49-50, ¶¶ 18-24; 1-4). The Plaintiff, RLI Insurance Company, issued the Performance and Payment Bonds for MPH's work on the Project as required by state law for such public projects. (*See*, Complaint, D.I. #1, ¶ 12). MPH was to perform mechanical, plumbing and temperature control work at Sussex Central High School. (*See*, Complaint, D.I. #1, ¶ 7)

Performance problems on the part of MPH arose, however, in the spring and summer of 2004. MPH was terminated on October 11, 2004, for failure to perform and to pay its subcontractors and suppliers.

However, RLI refused to honor its obligations under the performance bond claim made by IRSD and filed the instant suit claiming that BMG, EDiS and IRSD impaired its collateral in the MPH contract funds. RLI seeks a declaratory judgment alleviating it from any further obligations with respect to the Performance Bond along with the recovery of alleged damages from the Defendants.

RLI filed its complaint on December 21, 2005, pleading the sole claim of negligent misrepresentation under the Restatement (Second) of Torts, Sec 552, ("Professional Negligence") separately against BMG (Count V). RLI alleged that BMG failed to perform its obligations under BMG's contract with IRSD in that BMG falsely certified applications for payment for work which was either incomplete or not completed in accordance with the contract documents. (D.I. # 1, ¶ 57). RLI further alleged that it "relied upon [BMG] to properly perform its contractual obligations." (*Id.* at ¶ 58).

## III. ARGUMENT

### A. § 552 and "Professional Negligent Misrepresentation"

The Economic Loss Rule bars RLI from bringing any claim based in tort against BMG. According to this doctrine, a plaintiff who has suffered only economic loss cannot sue in tort but must sue in contract. *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992).

The Court stated in its Memorandum Opinion denying EDiS and BMG's Motion

to Dismiss, that the Court would grant the moving Defendant's Motion unless the claim fell within the negligent misrepresentation exception to the Economic Loss Rule. (D.I. # 21, p. 4).

Section 552 of the Restatement (Second) of Torts is such an exception which has been recognized in Delaware. *Guardian Construction Co. v. Tetra Tech Richardson*, 583 A.2d 1378 (Del. Super 1990). Section 552 states:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Sec. 552 of the Restatement (Second) of Torts (1977).

Interpreting this section, this Court held in its Memorandum Opinion that "[i]n order to sustain a claim under Section 552, Plaintiff must show: (1) the defendant gave false information to the plaintiff for use in business transactions with third parties; (2) the plaintiff justifiably relied upon the false information; (3) the defendant failed to exercise reasonable care in obtaining or relaying the information; and (4) the defendant intended that the plaintiff rely upon the information." (D.I. # 21, at pp. 4-5) (*Citing, Rose Heart, Inc. v. Ramesh C. Batta Assocs., P.A.*, C.A. No. 92C-10-138, 1995 Del. Super. LEXIS 370, at *9 (Del. Super Aug. 15,

1995).

The Honorable Gregory M. Sleet also most recently held in *Delaware Art Museum v. Ann Beha Architects, et al.*, C.A. No. 06-481 GMS, 2007 WL 2601472, * 4 (Dist. Del. Sept. 11, 2007) that "for a plaintiff to maintain a claim under § 552 in Delaware, two elements must be present: (1) the defendant supplied the information to the plaintiff for use in business transactions with third parties and that (2) the defendant is in the business of supplying information." (internal quotations omitted). Recognizing the second requirement, this Court held in its Memorandum Opinion that a finding that the individual supplying the information is not in "the business of supplying information" is case dispositive.

This Court further recognized, in accord with *Millsboro Fire Co. v. Constr. Mgmt Serv.*, C.A. No. 05C-06-137 MMJ, 2006 WL 1867705, at *2 (Del. Super. June 7, 2006), that "Delaware Courts have found potential liability under Section 552 only where the defendant is a <u>pure</u> information provider." (D.I. # 21, at p. 6)(emphasis added). In *Delaware Art Museum*, the Court held, "Where the information supplied is merely ancillary to the sale of a product or service in connection with the sale, however, the defendant will not be considered to be an information provider." *Delaware Art Museum*, 2007 WL 2601472, * 4 (internal quotes omitted)(quoting, D.I. #21, at p. 3).

Thus, the gravamen of the motion *sub judice* is whether the specific conduct undertaken by BMG, that is supplying the plans and design drawings which were to be used to construct the Project, constitutes conduct undertaken while in "the business of supplying information."

This question, however, has been definitively answered in *Millsboro* and

*Delaware Art Museum*. In *Millsboro*, the Delaware Superior Ct. held that even by providing information to the General Contractor incidentally to the construction of an addition to an existing building, the Architect was still not in the business of supplying information. *Millsboro*, 2006 WL 1867705, at *7. In *Delaware Art Museum*, Judge Sleet held with respect to the structural and mechanical designer that "[t]he provision of plans and design drawings used to construct the project do not constitute the business of supplying information." *Delaware Art Museum*, 2007 WL 2601472, * 5.

RLI does not dispute the end result of the relationship between EDIS, BMG and the Owner was the construction of the Sussex Central High School Building(the "Project"). EDIS was hired to manage the project and BMG was hired to supply certain drawings, plans and specifications for the Project. The 'information' supplied by EDIS and BMG to the Owner in this context was ancillary to the ultimate purpose, therefore, they can not be said to have acted while in the "business of supplying information."

With respect to the allegation that BMG falsely certified pay application requests from MPH, the Court in *Millsboro* dealt with this same argument and found that information supplied which related to certifications on pay applications is merely ancillary to the ultimate goal of the engagement. While the Contractor/Plaintiff in *Millsboro* argued that information supplied with respect to design documents is separate and apart from certifications and that certifications were "pure information", the Court refused to bifurcate the claims and held that such information remains ancillary to the ultimate purpose of the engagement, which is the construction of a tangible building.

Therefore, the incontrovertible fact that BMG was engaged by the Indian River

School District to provide plans and design drawings which were used to construct the new Sussex Central High School building entitles BMG to judgment as a matter of law. As stated above, this fact is case dispositive and the other four elements of the negligent misrepresentation claim made by RLI are of no real issue.

### B.  May RLI Justifiably Rely Upon any Information Supplied by BMG to IRSD?

RLI asserts that it relied upon information supplied by BMG to the Owner regarding the quality of work completed by MPH to its detriment (i.e. the certifications of payment applications). However, as we have seen above this type of "information" is merely ancillary to the ultimate prupose of the engagement and will not suffice to impose liability on BMG with respect to RLI's alleged damages.

Further, however, Sect 552 requires that the claimed negligent information was supplied with the specific intent to guide, at most, a limited group's decisions regarding a pending business transaction. The representer must *intend* that the recipients will utilize the information in a specific or similar business transaction. Given the express language of the contract between IRSD and BMG with respect to third-party claims, there emerges no rational basis to claim that BMG *intended* RLI to rely upon information it delivered to IRSD concerning certifications of payment applications.

A fair understanding of the contractual relationships between EDIS, BMG, the Owner, the Contractor, and RLI makes it obvious that EDIS and BMG owed no duty to RLI, or MPH for that matter, and did not intend any information they provided to IRSD to be supplied to

-7-

the Contractor's Surety for its guidance in how to deal with the Contractor. Section 9.7 states, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against the Owner or Architect." In spite of this language, RLI alleged that it relied upon BMG performing its contractual obligations in deciding to finance [MPH] to complete the project.

In fact, the *Millsboro* case dealt with a contractor bringing a third-party action against the Architect under this same allegation of negligently certifying pay applications and the Court refused to find that the architect owed any duty to even the contractor in this situation. The Court stated, "The [Architect's] duties to approve payment requests were undertaken solely for the benefit of the [the owner]." *Millsboro*, 2006 WL 1867705, at *10. Continuing, the Court held that the claim that the contractor was an intended beneficiary of the contract between the architect and the owner was without merit. *Id.* RLI is even further removed in that any information it received concerning the project was information that it obtained from the MPH, not BMG. Given BMG owed no duty in this circumstance to MPH, it cannot reasonably be argued that BMG owed a duty then to parties to which MPH supplied that information.

As EDiS correctly argues in its recently filed Motion for Summary Judgment, it would be antithetical for RLI to claim damages due to its reliance upon BMG's proper performance under a contract which expressly disclaims any cause of action for that very reliance. Yet, while relying upon the duties outlined in the balance of the agreement, it appears that RLI would have the Court disregard that portion of the BMG/IRSD agreement which makes RLI's reliance unjustified and place itself in a better position with respect to BMG then its principal, MPH.

## IV. CONCLUSION

Summary judgment is appropriate because RLI can not prove that the exception to the Economic Loss Doctrine applies. The uncontroverted fact that BMG was engaged to supply certain drawings, plans and specifications for the construction of the new Sussex Central High School warrants that summary judgment be granted in favor of BMG. Further, RLI can meet the requirements of Sec. 552 of the Restatement (Second) of Torts in that it cannot be said to have justifiably relied upon any information it obtained from MPH given the contractual relationship between IRSD and BMG and the fact that the law would not allow MPH, its principal, to be justified in relying upon that same information.

WHEREFORE, Defendant, Becker Morgan Group, Inc request this Honorable Court for judgment in its favor and against the Plaintiff

**TIGHE & COTTRELL, P.A.**

By: ___/s/ Patrick McGrory___
Paul Cottrell, Esquire (DE # 2391)
Patrick McGrory, Esq. (DE # 4943)
One Customs House, Suite 500
P.O. Box 1031
Wilmington, Delaware 19899
(302) 658-6400
p.mcgrory@tighecottrell.com

Dated: September 28, 2007