**9.10** If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall be submitted to the Architect for review at least 14 days prior to the requested dates of execution. The Architect shall not be required to execute certificates that would require knowledge, services or responsibilities beyond the scope of this Agreement.

## ARTICLE 10  PAYMENTS TO THE ARCHITECT
### 10.1  DIRECT PERSONNEL EXPENSE

Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, employee retirement plans and similar contributions

### 10.2  REIMBURSABLE EXPENSES

**10.2.1** Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and Architect's employees and consultants directly related to the Project, as identified in the following Clauses:

   .1  transportation in connection with the Project, authorized out-of-~~town~~ state travel and subsistence, and electronic communications;

Insert K: See Attachemt A, Item 18

   .2  fees paid for securing approval of authorities having jurisdiction over the Project;

   .3  reproductions, plots, standard form documents, postage, handling and delivery of Instruments of Service;

   .4  expense of overtime work requiring higher than regular rates if authorized in advance by the Owner;

   .5  renderings, models and mock-ups requested by the Owner;

   .6  expense of professional liability insurance dedicated exclusively to this Project or the expense of additional insurance coverage or limits requested by the Owner in excess of that normally carried by the Architect and the Architect's consultants;

   .7  reimbursable expenses as designated in Article 12;

   .8  other similar direct Project-related expenditures.

### 10.3  PAYMENTS ON ACCOUNT OF BASIC SERVICES

**10.3.1** An initial payment as set forth in Paragraph 11.1 is the minimum payment under this Agreement

**10.3.2** Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service, on the basis set forth in Subparagraph 11.2.2.

**10.3.3** If and to the extent that the time initially established in Subparagraph 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 11 3 2.

**10.3.4** When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such portions of the Project.

### 10.4  PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES

Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N W, WASHINGTON, D.C. 20006-5292   WARNING: Unlicensed photocopying violates U S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below

Electronic Format B151-1997
User Document: 200009600CONTRACT DOC -- 7/13/2000  AIA License Number 114836, which expires on 9/30/2000 -- Page #12

presentation of the Architect's statement of services rendered or expenses incurred

### 10.5 PAYMENTS WITHHELD
No deductions shall be made from the Architect's compensation on account of penalty, liquidated damages or other sums withheld from payments to contractors, or on account of the cost of changes in the Work other than those for which the Architect has been adjudged to be liable.

### 10.6 ARCHITECT'S ACCOUNTING RECORDS
Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of hourly rates or a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

## ARTICLE 11    BASIS OF COMPENSATION
The Owner shall compensate the Architect as follows:

**11.1** ~~An Initial Payment of Dollars ($   ) shall be made upon execution of this Agreement and credited to the Owner's account at final payment.~~
Insert L: See Attachment A, Item 19

### 11.2 BASIC COMPENSATION
**11.2.1** For Basic Services, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:
*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*
Basic Services compensation shall be per a percentage of the construction cost as defined in Article 12.17.

**11.2.2** Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:
*(Insert additional phases as appropriate.)*

| | |
|---|---|
| Schematic Design Phase: | percent ( 15 %) |
| Design Development Phase: | percent ( 25 %) |
| Construction Documents Phase: | percent ( 35 %) |
| Bidding or Negotiation Phase: | percent ( 5 %) |
| Construction Phase: | percent ( 20 %) |
| Total Basic Compensation: | one hundred percent (100%) |

### 11.3 COMPENSATION FOR ADDITIONAL SERVICES
**11.3.1** For Project Representation Beyond Basic Services, as described in Paragraph 3.2, compensation shall be computed as follows:
Hourly per BM2OR's Hourly Rate Schedule included in Article 12.

**11.3.2** For Additional Services of the Architect, as described in Articles 3 and 12, other than (1) Additional Project Representation, as described in Paragraph 3.2, and (2) services included in Article 12 as part of Basic Services, but excluding services of consultants, compensation shall be computed as follows:
*(Insert basis of compensation, including rates and multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*
Hourly per BM2OR's Hourly Rate Schedule included in Article 12.

**11.3.3** For Additional Services of Consultants, including additional structural, mechanical and electrical engineering services and those provided under Subparagraph 3.4.19 or identified in Article 12 as part of Additional Services, a multiple of one point ten (1.10) times the amounts billed to the Architect for such services
*(Identify specific types of consultants in Article 12, if required.)*

### 11.4 REIMBURSABLE EXPENSES
For Reimbursable Expenses, as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S copyright laws and will subject the violator to legal prosecution This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.
Electronic Format B151-1997
User Document: 200009600CONTRACT.DOC -- 7/13/2000 AIA License Number 114836, which expires on 9/30/2000 -- Page #13

Expenses, a multiple of one point ten ( 1.10 ) times the expenses incurred by the Architect, the Architect's employees and consultants directly related to the Project

## 11.5 ADDITIONAL PROVISIONS

**11.5.1** If the Basic Services covered by this Agreement have not been completed within thirty-eight ( 38) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2

**11.5.2** Payments are due and payable within thirty ( 30 ) days after the Owner's receipt of the ~~from the date of the~~ Architect's invoice. Amounts unpaid after thirty ( 30 ) ~~days after the invoice date~~ shall bear interest ~~at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.~~ of one percent per month not to exceed 12% per annum.
*(Insert rate of interest agreed upon)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*
Insert M. See Attachment A, Item 20.

**11.5.3** The rates and multiples set forth for Additional Services shall be adjusted in accordance with the normal salary review practices of the Architect once per each calendar year.

## ARTICLE 12    OTHER CONDITIONS OR SERVICES
*(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.)* .
Other Conditions are part of this Agreement and are enclosed Attachments 12A through 12I

It is the intent of the parties that any changes, modification, or revisions contained in Article 12 shall supersede and control in the event of any conflict or interpretation with any language in any other Article of Contract.

Attachments:
Non-Collusion Statement                         Delaware DAS/DFM Attachment A
Other Condition, 12A-12G                       BM2OR *Terms and Conditions of Agreement* (1/1/00)

This Agreement entered into as of the day and year first written above.

INDIAN RIVER SCHOOL DISTRICT                              BECKER MORGAN MOORE OLDS & RICHTER INC.

OWNER *(Signature)*                                                           ARCHITECT *(Signature)*
*Charles W. Hudson*                                                          *[signature]*
Charles W. Hudson, Ad. Pupil Services                     BRAD A. HASTINGS, AIA, PRINCIPAL
*(Printed name and title)*                                              *(Printed name and title)*

AIA DOCUMENT B151-ABBREVIATED OWNER-ARCHITECT AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below

Electronic Format B151-1997
User Document: 200009600CONTRACT.DOC -- 7/13/2000. AIA License Number 114836, which expires on 9/30/2000 -- Page #14

## NON-COLLUSION STATEMENT

This is to certify that the undersigned bidder has neither directly nor indirectly, entered into any agreement, participated in any collusion or otherwise taken any action in restraint of free competitive bidding in connection with this proposal submitted this date.

All terms and conditions of this Invitation to Bid have been thoroughly examined and are understood.

NAME OF BIDDER: Becker Morgan Moore Olds & Richter Inc

AUTHORIZED REPRESENTATIVE
(TYPED): Brad A. Hastings, AIA

AUTHORIZED REPRESENTATIVE
(SIGNATURE): _[signature]_

TITLE: Vice President

ADDRESS OF BIDDER: 312 West Main Street, Suite 300

Salisbury, Maryland 21801

PHONE NUMBER: 410.546.9100

Sworn to and Subscribed before me this 14th day of July, 2000.

My Commission expires 9-1-01    NOTARY PUBLIC _[signature]_

Y0009600aa-con.doc

Jan 14 80 01:37p        B     R, Inc                    302-734-7955

## ATTACHMENT "A"

Owner and Architect Agreement B151

This attachment amends AIA Document B151-1997 as follows:

1. Section 6904, Chapter 69, Title 29 of the Delaware Code requires a "prohibition against contingent fees" statement. An acceptable statement would be as follows:

   "By signing this Agreement, the Professional swears that he has not employed or retained any company or person, other than a bona fide employee working primarily for the firm offering professional services, to solicit or secure this agreement, and that he has not been paid or agreed to pay any person, company, corporation, individual, or firm, other than a bona fide employee working primarily for the firm offering professional services, any fee, commission, percentage, gift, or any other consideration, contingent upon or resulting from the award or making of this agreement."

2. Amend Article 2.1 to include civil engineering services.

3. Delete Article 2.4.3 in its entirety and replace with the following: "The Architect shall prepare a construction cost estimate using unit in-place methods with breakdowns including costs of labor, material, overhead and profit."

4. Delete Article 2.6.1 in its entirety and replace with the following: "The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the initial Contract for Construction and terminates at the later of the issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work."

5. Add a third sentence to Article 2.6.8 to read as follows: "The Architect shall prepare and distribute meeting minutes during the design and construction phases of the Project."

6. Delete the first sentence of Article 2.6.11 and replace with the following: "The Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples for the purpose of checking for conformance with the Contract Documents."

Delete the second sentence of Article 2.6.11 and replace with the following: "The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate Contractors, while allowing sufficient time in the Owner's professional judgement to permit adequate review."

7. Delete Article 2.6.18 in its entirety and replace with the following: "The Architect's decisions on claims, disputes or other matters in question between the Owner and Contractor, except for those relating to aesthetic effect as provided in Subparagraph 2.6.17, shall be subject to mediation and other remedies at law or in equity."

8. Delete Article 3.3.4 in its entirety. These services shall be included as Basic Services.

9. Delete Article 3.4.10 in its entirety. These services shall be included as Basic Services as noted in Article 2.4.3.

10. Delete Article 3.4.16 in its entirety. Section 507, Chapter 5, Title 29 of the <u>Delaware Code</u> requires archival quality "as-built" drawings to be deposited in the Hall of Records. Providing such record drawings will be considered a Basic Service of the Architect in all contracts, involving new construction or major renovations.

11. Delete Article 3.4.19 in its entirety and replace with the following: "Providing services of consultants for other than architectural, civil, structural, mechanical and engineering portions of the Project provided as a part of Basic Services."

12. Add a 4th sentence to Article 4.4 to read as follows: "The Owner may elect to transfer this responsibility to the Architect as an Additional Service in Article 3 of this Agreement."

13. Delete Article 6 in its entirety and replace with the following:

"All pre-design studies, drawings, specifications, and other documents, including those in electronic form, prepared by the Architect under this Agreement are, and shall remain the property of the Owner whether the Project for which they are made is executed or not. Such documents may be used by the Owner to construct one or more like projects without the approval of, or additional compensation to, the Architect. The Contractor, Subcontractors, Sub-subcontractors and Material or Equipment Suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or Material or Equipment Supplier on other Projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

2

The Architect shall not be liable for injury or damage resulting from the re-use of drawings and specifications if the Architect is not involved in the re-use Project. Prior to re-use of construction documents for a Project in which the Architect is not also involved, the Owner will remove from such documents all identification of the original Architect, including name, address and professional seal or stamp."

14. Delete Article 7.2 and its sub-sections in its entirety.

15. Delete Article 7.3 in its entirety.

16. Delete Article 8.7 in its entirety and replace with the following: "Termination Expenses are in addition to compensation for the services of the Agreement and include expenses directly attributable to termination for which the Architect is not otherwise compensated."

17. Delete Article 9.4 in its entirety.

18. In Article 10.2.1 delete "out-of-town" and replace with "out-of-state". Normally the State only reimburses "out-of-state" transportation and living expenses directly related to a project.

19. Delete Article 11.1 in its entirety.

20. Amend Article 11.5.2 to read "Payments are due and payable within 30 days after Owner's receipt of the Architect's invoice. Amounts unpaid after 30 days shall bear interest of one percent per month not to exceed twelve percent per annum."

MAD/nac
E:\DFM\FORMS\ATTACHA.DOC
Rev. 8/99

3

ARTICLE 12
OTHER CONDITIONS

12.1   All work shall be done in accordance with the latest edition of the Delaware Department of Public Instruction's School Construction Technical Assistance Manual requirements and procedures, January 1999 edition.

12.2   The general program of work for this project is a defined in the Owner's "Indian River School District Certification of Necessity/Scope of Work, Major Capital Improvement Projects for FY '01, dated 10/6/99.

12.3   Architect will carry a minimum $1,000,000 professional liability insurance policy for the term of this contract. Architect will notify the Owner of his engineering consultants (structural, mechanical, and electrical) professional liability limits once consultants are selected. Engineering consultants shall also carry a minimum $1,000,000 professional liability policy for the term of the contract. Engineering consultants shall also carry comparable general business insurance coverage as that of the Architect. Architect and his engineering consultants shall give Owner 15 days notice of any cancellation of their general business or of their professional liability policies or reduction in the limits of their policies.

12.4   For the purposes of this agreement, the Architect's services for the Contract Administration Phase shall not exceed twenty-four months. Site visit intervals shall be twice a month. Progress meetings shall be held twice a month. The site visits and progress meetings may occur on same dates.

12.5   Within the Basic Compensation the Architect will provide colored floor plan and elevation drawings of the proposed project for Owner's public presentations.

12.6   Architect, through its undersigned representative, hereby swears that it has not employed or retained any company or person, other than a bona fide employee working primarily for the firm offering professional services, to solicit or secure this agreement, and that it has not paid or agreed to pay any person, company, corporation, individual or firm, other than a bona fide employee working primarily for the firm offering professional services, any fee, commission, percentage, gift of any other consideration, contingent upon or resulting from the award or making of this Agreement.

12.7    Hourly Rate Schedule

**BM²OR: Architects and Engineers**
**Architectural/Land Planning/Interior Design**

| | |
|---|---|
| Principal | $125/hr. |
| Associate | $75-90/hr. |
| Architect/Engineer | $70-85/hr. |
| Interior Design | $50-70/hr. |
| Project Manager | $60-75/hr. |
| Designer Technician | $35-65/hr. |
| Administrative/Clerical | $25-50/hr. |
| 2 Man Survey Crew | $100/hr. |
| Licensed Surveyor | $90/hr. |
| Expert Witness | 1.5 billing rates |

**Mechanical and Electrical Engineering Consultants**

| | |
|---|---|
| Principal Engineer | $125/hr. |
| Project Engineer | $100/hr |
| Design Engineer | $85/hr. |
| Junior Engineer | $45-60/hr. |
| Senior Designer | $50-75/hr. |
| Designer | $35-55/hr. |
| Draftsman/CAD | $25-45/hr. |
| Clerical | $30-45/hr. |

**Structural Engineering Consultants**

| | |
|---|---|
| Principal | $125/hr |
| Associate | $90/hr. |
| Senior Engineer | $80/hr. |
| Staff Engineer | $65/hr. |
| Engineer | $55/hr. |
| Technician | $50/hr. |
| Secretary | $30/hr. |

Other consultants as required will be billed hourly with similar rates for similar staff levels.

12.8    Design of **off-site utility extensions** to the site are not part of this agreement.

12.9    Architect will allow within it basic fee a maximum of four public meetings before City or County or Governmental approval Boards (not including School Board inspections) to help expedite and present the project for approval. Other non-public meetings and coordination for approvals are part of basic compensation

12.10   **Furniture, Fixture, & Equipment:** Design, specifications, bidding and procurement of school's moveable furniture, instructional fixtures, and instructional equipment are not part of the Architect's design services

12.11   Architectural, Civil Engineering, Landscape Design, Mechanical, Electrical and Structural Engineering services are a part of the basic compensation.

12.12   **Solicitation of Geotechnical Engineering Services:** The Architect will assist Owner in obtaining geotechnical engineering proposals for the site's soil borings and the geotechnical engineer's recommendations for foundation systems. The contract for the geotechnical engineering and boring services will be between the Indian River School District and their selected Geotechnical Engineering firm.

12.13   **Publicity:** All publicity developed for this project will credit BM²OR as the Architect.

12.14   Basic Services compensation shown in 11.2.1 are as follows:

   1. **Basic Services**
      5.5% x $23,998,502 Construction Budget =                $1,319,918.00

12.15   **Drawings of Record:**

   Upon completion of the construction, the Architect shall deposit with the Department of State and provide Owner each with one complete copy of record drawings and specifications, including marked-up final alterations thereto, conforming to information furnished to the Architect by the General Contractor in a form acceptable to the Department of State. The form acceptable to the State at the option of the Architect is either a reproducible mylar showing all contractors reported changes or blueprints with same noted changes.

   The Delaware Department of Public Instruction shall also be given updated graphic floor plans for their on-going records of all state schools' floor plans. Updated graphic floor plan shall be in DPI's acceptable computerized format.

   For Owner's record drawing purposes, Architect, as part of his Basic Services and printed as a chargeable reproduction to Owner's reimbursable account, will provide the General Contractor with a reproducible set of vellums or mylars for the General Contractor and/or the subcontractors to record all changes from the original contract documents made during the construction. This set of record drawings will be reviewed by Architect at end of project and forward to Owner for his records. If Architect is requested by the Owner to re-draw or re-note in a more legible manor any General Contractor or subcontractor record drawings or notes, such re-draw or re-note services by the Architect shall be billed as additional services

12-D

12.16 **Affidavits/Certifications**
The Owner shall not require certification that would require knowledge beyond the scope of this agreement.

12.17 **Miscellaneous Provisions**

This Agreement shall be governed by Delaware Law. Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contractor for Construction, current as of the date of this Agreement between Owner and Architect

12.18 **Hazardous Materials:** The Architect shall not be responsible for any known or unknown hazardous materials on or under the selected site including underground tank identification and removal, or environmentally related deficiencies in the building related to existing excess moisture. If hazardous materials, underground tanks, or environmental deficiencies are encountered, no part of its examination, removal or confinement shall fall within the services of this contract. Owner shall defer to the services of a hazardous materials, underground tanks specialist and/or industrial hygienist if needed.

If Architect knows or learns of hazardous materials, underground tanks, or environmental related deficiencies on-site, he will notify Owner of such materials. Architect to include Owner prepared hazardous material notification procedures in Architect's special or supplemental conditions.

12.19 Architect will advise the Owner of project status at regularly scheduled Board of Education meetings at least every two (2) months, if requested.

12.20 The duly licensed Delaware architects and engineers for this project are:

Architects:
| | |
|---|---|
| Thomas M. Becker, AIA | Delaware #5021 |
| W. Ronald Morgan, AIA | Delaware #5758 |
| Ernest W. Olds, AIA | Delaware #5223 |
| Brad A. Hastings, AIA | Delaware #5276 |

Civil Engineers:
| | |
|---|---|
| Gregory V. Moore, PE | Delaware #9311 |

Structural Engineers: To be determined
Mechanical/Electrical Engineers: To be determined

12.21 **All alternates** designed by BM²OR shall be add alternates. Architect shall be compensated for alternates at same rate as the Basic Services are calculated and be paid for same through the Bidding phase whether or not accepted as part of the final construction contracts.

12-E

12.22  **Reimbursables:** The following table of reimbursable charges will apply to this project for 36 months, subject to re-negotiation after the 36th month.

| | | Regular | Color |
|---|---|---|---|
| Travel | | $ .32/mile (Outside of Delaware) | |
| Copies | 8½x11 | $ .15 ea. | $1.00 |
| | 8½x14 | $ .20 ea. | $1.50 |
| | 11x17 | $ .25 ea | $2.00 |
| Blueprints | 18x24 | $ 1.50 ea. | |
| | 24x36 | $ 2.50 ea. | |
| | 30x42 | $ 3.00 ea. | |
| Sepia Film | 18x24 | $ 3.00 ea. | |
| | 24x36 | $ 5.00 ea. | |
| | 30x42 | $ 6.00 ea | |
| Cad Plots | | Regular | Color |
| | 18x24 | $5.00 ea. | $10.00 |
| | 24x36 | $10.00 | $15.00 |
| | 30x42 | $15.00 | $20.00 |
| Stickybacks | 8½x11 | $1.00 | |
| | 11x17 | $2.00 | |

12-F

12.23  **Site work, Civil Engineering** are part of the basic services under this agreement. The services are generally described as follows: BM²OR will prepare site plans for the school. Services may include parking facilities; re-aligned service road(s); and fire lanes. Co-ordination of on-site utilities and service companies will be provided by BM²OR. The following other plans will be part of the Civil services:

   1.  Sediment Erosion Control
   2.  Utilities on Site
   3.  Site Grading and Stormwater Management Devices Directing to Stormwater Ponds and Outfalls
   4.  Overall Site Construction Plans

   **Exclusions:** The following site-related agency approvals and/or preparation of plans to meet Those agency requirements are not anticipated as part of the Civil Engineering services:

   1.  Survey
   2.  Wetland Delineation
   3.  Forest Conservation and Reforestation Review/Plans
   4.  Off-site Utilities or Extensions
   5.  Environmental Studies
   5.  Traffic Impact Studies
   6.  Subdivision of Property
   7.  Re-Zoning or any Zoning Variances or Modification Requests
   8.  Flood Plain agency approvals -- site is assumed to be out of flood plain

   However, filing of permits if required or applicable which states the above items are not applicable to this project are part of the civil engineering services.

12.24  Concept Furniture, Fixtures and Equipment Layout: Architect's documents, as part of Basic Services will indicate general furniture and equipment layouts. Final FF&E layout specifications, selections and procurement of same are not part of this contract.

12.25  SCHEDULE

   Proposed schedule of Design and Construction attached.

y0009600ab-Article12.doc

12-G

TERMS AND CONDITIONS OF AGREEMENT
For Professional Services

**Scope of Project and Services**
See attached letter

**Fixed Fee Projects**
Billings are based upon the percentage of completion of each phase of services

**Hourly Rate Schedule**
Compensation for hourly services:

| | |
|---|---|
| Principal | $125/hr |
| Senior Architect/Engineer | $ 75 - 90/hr |
| Project Manager | $ 65 - 75/hr |
| Intern Architect/Engineer | $50 -- 65/hr |
| Interior Designer | $ 50 - 70/hr |
| Designer/Technician | $ 35 - 65/hr |
| Administrative Support | $ 25 - 50/hr |
| 2 man survey crew | $120/hr |
| Licensed Surveyor | $90/hr |
| Expert Witness | 1 5 billing rate |

*Rates subject to change each January.*

Any consultants required and authorized by the Owner will be billed at cost plus ten percent

**Estimated Fees**
Fee estimates are valid for 60 days. Where an estimated total is given for hourly work, it shall not constitute an upset figure but is provided to assist in project budgeting only.

**Initial Payment**
Services commence when the Owner's authorization is received with the initial payment which will be applied to the final invoice.

**Invoices**
Invoices are sent every four weeks for services performed during the previous four weeks Payment is due upon receipt A late charge will be added 30 days after the invoice date at 2% per month

**Reproduction Expenses**
In-house reproduction expenses incurred in the interest of the project will be billed as follows:

| CAD Plots | | Regular | Color |
|---|---|---|---|
| | 18x24 | $ 5.00 | $10 00 |
| | 24x36 | $10.00 | $15.00 |
| | 30x42 | $15.00 | $20.00 |
| Photocopies | 8½ x 11 | $ 15 | $ 1 00 |
| | 8½ x 14 | $ 20 | $ 1 50 |
| | 11x17 | $ .25 | $ 2 00 |
| Blueprints | 18x24 | $ 1.50 | |
| | 24x36 | $ 2 50 | |
| | 30x42 | $ 3 00 | |
| Sepia Film | 18x24 | $ 3 00 | |
| | 24x36 | $ 5 00 | |
| | 30x42 | $ 6 00 | |
| Stickybacks | 8½ x 11 | $ 1.00 | |
| | 11x17 | $ 2.00 | |

**Reimbursable Expenses**
Other expenses incurred in the interest of the project (travel, toll communications, postage, delivery, photographs, engineering or other consultants, renderings, models, etc ) will be billed at cost plus ten percent monthly

**Government Agency Fees**
The owner shall pay directly (outside of BM2OR's fees and reimbursables) for all of the following governmental charges, including but not limited to: application fees, review fees, permit fees, plat recordation, governmental charges, impact fees, front footage assessments, water flow and pressure test, tap-in fees, bonds, transfer taxes, etc Owner should investigate and budget these items in their total project development soft costs

**Additional Services**
Services beyond those outlined in the attached Scope of Work, for revisions due to adjustments in the scope, budget or quality of the project, will be billed at hourly rates above

**Change of Scope**
All fees are subject to renegotiation if the original scope of service is changed or if services are not completed within 12 months.

**Design/Build**
Owner may solicit Design/Build proposals from contractors utilizing preliminary or incomplete documents, understanding that the Owner is responsible for their engineers' computations and certifications, for the code compliance and for the coordination of this preliminary and incomplete work A/E will review those Design/Build proposals only for consistency with the architectural design concept only if included within the scope of services agreed

**Design Without Construction Review**
It is agreed that if the professional services of the A/E do not extend to or include the review or site observation of the contractor's work or performance, the Owner will defend, indemnify and hold harmless the A/E from any claim or suit whatsoever Such claims shall include, but are not limited to payments, expenses or costs involved, arising from or alleged to have arisen from the contractor's performance or the failure of the contractor's work to conform to the design intent and the contract documents. The A/E agrees to be responsible for his own or his employees' negligent acts, errors or omissions, as limited below

**Ownership of Documents**
All documents (drawings, sketches, reports, etc.) prepared as instruments of service shall remain the copyrighted property of the A/E Work which is furnished, but not paid for, will be returned to the A/E and will not be used for any purpose until payment is rendered

**Insurance**
The A/E is protected by Workmen's Compensation, Professional Liability and Standard Public Liability Insurance. The A/E will not be responsible for any loss, damage or liability arising from Owner's negligent acts, errors or omissions or those by Owner's consultants, contractors, and agents or from those of any person whose conduct is not within the A/E's contractual responsibility

**Risk Allocation**
Owner and A/E have discussed the risk, rewards and benefits of the project and the A/E's total fee for services. The risks have been allocated such that the Owner agrees that to the fullest extent permitted by law A/E's total liability to Owner for any and all injuries, claims, losses, expenses, damages or claims expenses arising out of this agreement from any cause or causes, shall not exceed the total fee or $50,000, whichever is greater. Such causes include but are not limited to design professional's negligence, errors, omissions, strict liability, breach of contract or breach of warranty

**Termination of Agreement**
This Agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination This Agreement may be terminated by the Owner upon at least seven days' written notice to the A/E in the event that the Project is permanently abandoned. In the event of termination not the fault of the A/E, the A/E shall be compensated for all services performed to termination date, together with Reimbursable Expenses then due.

**Publicity**
All publicity developed for this project will credit Becker Morgan Moore Olds & Richter as the Architects/Engineers

**Environmental Hazards**
The A/E does not perform services related to the identification, containment or removal of asbestos, hazardous waste, or any other environmental hazards, nor will it assume liability for any damages or costs related to these materials

**Payment/Work Stoppage**
The A/E reserves the right to stop work on the project upon 10 days written notice to Owner for non-payment. A/Es stoppage of work shall be without liability for consequential or other damages resulting from the stoppage

**Standard of Care**
The Owner acknowledges the inherent risks associated with construction. In performing professional services, the A/E will use that degree of care and skill ordinarily exercised under similar circumstances by competent licensed architects in Delaware.

**Successors & Assigns**
The Owner and the A/E bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither party shall assign, sublet or transfer any interest in this Agreement without the written consent of the other

**Affidavits/Certifications**
Any affidavits or certifications required by local municipalities, lenders, or others shall be written to include language acceptable to the A/E's Liability Insurance Carrier-CNA The Owner shall not require certification that would require knowledge beyond the scope of this agreement

**Miscellaneous Provisions**
Unless otherwise specified, this Agreement shall be governed by Delaware Law. Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**Collection**
If it is necessary to enforce collection on any amount past due under this agreement, the A/E shall be reimbursed for all legal and other reasonable costs related thereto, including (33%) attorney's fees, court costs, administrative time and other collection costs

**Certificate of Merit**
The Owner shall make no claim (whether directly or in the form of a third party claim) against the A/E unless the Owner shall have first provided the A/E with a written certification executed by an architect licensed in the State of Delaware, specifying each and every act or omission which the certifier contends constitutes a violation of the standard of care expected of an architect performing professional services under similar circumstances Such certificate shall be provided to the A/E thirty (30) days prior to the presentation of any such claim.

**Frivolous Suit**
In the event the Owner makes a claim or brings an action against the A/E for any act arising out of the performance of the services hereunder, and the Owner fails to prove such a claim or action, then the Owner shall pay all legal and other costs incurred by the A/E in defense of such claim or action

**Electronic Media**
Electronic media disks of project files, if requested, are billed outside of fees as a reimbursable at $100.00 per disk plus printing costs per sheet for one record set for Owner and one set for A/E.

**Arbitration**
Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof may if both parties agree at that time in writing be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

January 1, 2000
Becker Morgan Moore Olds & Richter Inc

TCA1JAN00 DE DOC