# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY,** | ) | |
| | ) | C.A. No. 05-858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **INDIAN RIVER SCHOOL DISTRICT,** | ) | |
| **EDIS COMPANY, and** | ) | |
| **BECKER MORGAN GROUP, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S
## BRIEF IN SUPPORT OF MOTION IN LIMINE
## TO STRIKE PLAINTIFF'S EXPERT REPORT AND EXCLUDE TESTIMONY

SEITZ, VAN OGTROP & GREEN, P.A.

<u>/s/ James S. Green</u>
**JAMES S. GREEN, ESQ. (DE0481**)
**jgreen@svglaw.com**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

# TABLE OF CONTENTS

                                                              **PAGE**

I.     NATURE AND STAGE OF PROCEEDINGS     1

II.    SUMMARY OF ARGUMENTS     2

III.   CONCISE STATEMENT OF FACTS     2

IV.   ARGUMENT     3

     A.    RLI's unexcused and prejudicial failure to comply with Rule 26(a)(2) mandates exclusion of the expert report     3

     B.  The PCM Report will not assist the Trier of Fact because it presents a claim not at issue in this litigation     5

     C.    The PCM Report is not based upon a reliable methodology for a Critical Path Analysis     7

V.    CONCLUSION     14

# TABLE OF AUTHORITIES

**CASES**                      **PAGE**

Aronow Roofing Co. v. Gilbane Bldg. Co., 902 F.2d 1127 (3d Cir. 1990)    6

ABB Air Preheater, Inc. v. Regenerative Environmental Eq. Co.,
     167 F.R.D. 668 (D. NJ 1996).    3

Belt Con Construction, Inc. v. Metric Construction Co, Inc.,
     2007 WL 1302606 (D.N.M.).    9, 10

Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579,
     13 S. Ct. 2786 (1993).    4, 5-6, 7

Fortec Constructors v. U.S., 8 Cl. Ct. 490 (1985).    10

Haney v. U.S., 676 F.2d 584 (Ct. Cl. 1982).    8, 10, 11

Hoffman Construction Company v. U.S.,
     40 Fed. Cl. 184 (1998).    8

In Re Paoli Railroad Litigation, 35 F.3d 717 (3rd Cir. 1994).    5, 7

Mega Construction Co. v. U.S., 29 Fed. L. 396, 424 (1993).    9, 10, 11

Pell v. E.I. Dupont De Nemours & Co.,
     231 F.R.D. 186 (D. DE 2005).    4-5

Praxair, Inc. v. ATMI, Inc. 231 F.R.D. 457 (D. DE. 2005).    5

Southern Comfort Builders, Inc. v. U.S., 67 Fed. Cl. 124 (2005).    9, 10

Titan Mountain States Construction Corp., 1985 WL 17659.    10, 11

Tolerico v. Home Depot, 205 F.R.D. 169 (M.D. PA 2002).    4

U.S. v. Dentsply International, Inc., 2000 WL 654378 (D. DE).    3

Weaver-Bailey Contractors, Inc. v. U.S., 19 Cl. Ct. 474 (1990).    8, 10-11

Wilner v. U.S., 26 Cl. Ct. 260 (1992).    9, 13

| **FEDERAL RULES** | **PAGE** |
|---|---|
| Fed. R. Civ. P. 26(a)(2) | 3-5 |
| Fed. R. Civ. P. 37(c) | 3 |
| Fed. R. Ev. 104(a) | 7 |
| Fed. R. Ev. 702 | 5 |

**STATUTES**

| | |
|---|---|
| 10 Del. C. § 8106 | 6 |

Case 1:05-cv-00858-JJF   Document 93   Filed 10/15/2007   Page 4 of 18

I.   **NATURE AND STAGE OF PROCEEDINGS**

This action arises out of a school district's performance bond claim against the surety for a prime contractor terminated for default during the construction of the new Sussex Central public high school in Georgetown, Delaware. In December, 2005, RLI Insurance Company ("RLI"), the performance bond surety for the terminated contractor, McDaniel Plumbing and Heating, Inc. ("McDaniel"), commenced this action against Indian River School District ("IRSD"), the owner of the school, and two professionals hired by the owner: the construction manager, EDIS Company ("EDIS" or "Construction Manager"), and the architect, Becker Morgan Group, Inc. ("Becker Morgan" or "Architect"), seeking, among other things, a declaration from the Court that it was discharged from its obligations under the performance bond (Count I). IRSD filed a counterclaim for RLI's failure to complete the work after the default of McDaniel, in violation of the terms of the performance bond. IRSD's claim against RLI is for over two million dollars, together with interest and litigation costs.

The litigation has proceeded in accordance with the Court's case management order, which the Court extended twice at the parties' request. Fact discovery was completed June 6, 2007, and the parties have prepared and exchanged expert reports. All three defendants filed motions for summary judgment on September 28, 2007. The case is set for a pretrial conference on December 6, 2007.

RLI served an expert report on July 31, 2007 prepared by Progressive Construction Management, Inc. titled "Analysis of Impacts to the Performance of McDaniel Plumbing & Heating, Inc. on Construction of the Sussex Central High School" ("PCM Report"). A true and correct copy of the PCM Report is attached to the Motion as Exhibit "A." IRSD moves in limine

1

to strike the PCM Report and exclude the expert from testifying at trial for the reasons set forth herein.

## II.   SUMMARY OF ARGUMENTS

    A.    The PCM Report fails to include the information required by Civil Rule 26(a)(2), which is a condition precedent to the use of expert testimony at trial. RLI cannot excuse its failure to comply with the Rule, and the other parties have suffered prejudice, thus requiring the Report to be stricken..

    B.    The PCM Report presents a damage claim by McDaniel against IRSD. McDaniel, however, is not a party to the case and has never asserted this claim, nor has RLI, in its pleadings, asserted this claim.  The PCM report would not, therefore, assist the trier of fact in determining any issue in the case and must be excluded under Rule 702.

    C.    The PCM Report fails to meet the requirements of Rule of Evidence 702 and the standards enunciated in <u>Daubert v. Merell Dow Pharmaceuticals</u> with respect to application of methodology.  The federal courts have accepted the critical path method as the area of specialized knowledge necessary to prove and recover for a construction delay.  In accepting that method, the courts have enunciated methodology which must be employed in the critical path analysis.  The report fails to apply numerous components of that methodology.

## III.   CONCISE STATEMENT OF FACTS

As and for its Concise Statement of Facts, IRSD relies upon and incorporates the paragraphs of its Motion.

IV.     **ARGUMENT**

    A.     **RLI's unexcused and prejudicial failure to comply with Rule 26(a)(2) mandates exclusion of the expert report**

As the Motion sets forth in paragraphs 1-8, the PCM Report omits key elements required by Federal Rule of Civil Procedure 26(a)(2). Specifically, the PCM Report does not identify a witness who will testify at trial. It is not signed by any witness. The report fails to (1) identify the data or information considered by the expert in forming his opinions; (2) contain any exhibits; (3) identify the qualifications of the witness; (4) identify publications authored by the witness in the last ten years; (5) disclose the compensation paid for the study and testimony; (6) identify other cases in which the witness has testified within the preceding four years.

Compliance with Rule 26(a)(2) is a condition precedent to the use of expert testimony at trial. ABB Air Preheater, Inc. v. Regenerative Environmental Eq. Co., 167 F.R.D. 668, 671 (D. NJ 1996). Except in limited circumstances, a party who fails to make the required disclosures under Rule 26(a) loses the right to introduce the evidence at issue. U.S. v. Dentsply International, Inc., 2000 WL 654378 at *4 (D. DE). Rule 37(c) provides for mandatory sanctions for a party's failure to comply with the self disclosing provisions of Rule 26(a). Id. Rule 37(c) provides:

> (1) A party that without substantial justification fails to disclose information required by Rule 26(a)…is not, unless such failure is harmless, permitted to use as evidence at a trial, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions…

F.R.C.P. 37(c)(1). If the required disclosures are not made, the rule provides for preclusion of the evidence unless the non-producing party can show (1) substantial justification for the non-

3

disclosure and (2) that the failure was harmless. The non-producing party bears the burden of proving substantial justification and harmlessness. Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. PA 2002).

RLI cannot show that it was substantially justified in failing to comply with Rule 26(a)(2). The Rule specifically identifies the items that must be disclosed with the report. Since there is an enumeration of the items, there is no reasonable misunderstanding or dispute as to whether these items were required to be disclosed.

RLI cannot show that its failure to comply with Rule 26(a)(2) was harmless. RLI has been materially prejudiced IRSD in presenting opposing expert testimony. IRSD's expert, engaged to analyze the PCM Report, did not have the information relied upon by RLI's expert in conducting his analysis. The Court-ordered deadline for submission of IRSD's expert report passed and IRSD was forced to submit its report without having the benefit of knowing what information RLI's expert has relied upon. IRSD's expert's analysis and conclusions may well have been different if it were aware of information considered or not considered by RLI in its analysis.

This Court recently ruled on a motion to exclude expert testimony based upon the failure of the expert report to comply with the disclosure requirements of Rule 26(a)(2). Pell v. E.I. Dupont De Nemours & Co., 231 F.R.D. 186 (D. DE 2005). Judge Jordan found that the report failed "to even come close to satisfying the requirements for expert reports under…Rule 26(a)(2)(b)." Id. at 193. Because the report did not disclose the qualifications of the expert witness the court stated that it was unable to determine if the proposed expert was even qualified to render the opinion proposed in the report. Id. at 194. As such, the report failed to satisfy the standards enunciated in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S. Ct. 2786

4

(1993). Id. In Pell, the court resolved the matter by granting the plaintiff a three week period to correct the deficiencies with the report or it would be stricken and the expert's testimony excluded. Id. The court also granted the defendant an opportunity to redepose the expert to determine if his report complied with Rule 26 and Daubert. Id. The court further ordered that the plaintiff would pay defendant's attorney's fees for this exercise as well as all fees incurred if a second motion to strike was necessary. In Pell, the issue of further delaying the progress of the case did not appear to be an issue, unlike this court's decision in Praxair, Inc. v. ATMI, Inc. 231 F.R.D. 457 (D. DE. 2005) wherein the expert's supplemental report was stricken for failure to comply with scheduling order, as summary judgment deadline and trial were impending.

The reasoning of Pell applies here. Because the PCM Report does not comply with Rule 26(a)(2), and that failure was not justified and prejudiced the other parties, the PCM Report should be stricken and the expert precluded from testifying.

### B. The PCM Report will not assist the Trier of Fact because it presents a claim not at issue in this litigation

Admissibility of expert opinion in federal court is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 has two requirements. One, that the expert testify to scientific, technical or other specialized knowledge that will assist the trier of fact. In Re Paoli Railroad Litigation, 35 F.3d 717, 742 (3rd Cir. 1994). Two, that the witness be an expert. Id at 741. The Supreme Court has interpreted the first requirement to establish a "standard of evidentiary reliability." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993). To assure

reliability, the courts serve a gate keeping function with respect to admission of expert testimony. Pursuant to Rule of Evidence 104(a), the trial court must determine whether the expert is proposing to testify to information (1) that will assist the trier of fact and (2) is scientific or other specialized knowledge. <u>Daubert</u> at 591.

In this case, the PCM Report contains no information that will assist the trier of fact in understanding or determining any issue in this case. The report is simply irrelevant to any allegations made by RLI. The report never once mentions RLI or how the report is at all linked to its involvement in the Project or the case. The content of the PCM Report is solely about delays to the work of the Project and how those delays affected McDaniel, who is not a party to this case. The report is titled "Analysis of Impacts to the Performance of *McDaniel Plumbing & Heating, Incorporated* on the Construction of the Sussex Central High School." It concludes with the opinion that McDaniel was entitled to an extension of time to complete its work and monetary damages as a result of the denial of a time extension.

Again, McDaniel is not a party to this case. RLI has not asserted a claim for nor sought monetary damages for any damages sustained by McDaniel. See paragraphs 14 and 15 of the Motion, and Exhibit "F" thereto. McDaniel never asserted this claim and its right to do so is barred by the contractual limitations set forth in the contract and by the applicable three year statute of limitations.[1] See paragraphs 11-13 of the Motion, and Exhibits "B," "C," "D," and "E" thereto. Therefore, the opinion in the PCM Report is irrelevant to any claim asserted by RLI. As a result, the report is simply irrelevant to any issue in this case and should be stricken.

---

[1] 10 Del. C. § 8106. This three year limitations period applies to construction contract claims, see, e.g., <u>Aronow Roofing Co. v. Gilbane Bldg. Co.</u>, 902 F.2d 1127 (3d Cir. 1990)

6

### C. The PCM Report is not based upon a reliable methodology for a Critical Path Analysis

The Court's gate keeping role under Rule of Evidence 104(a) entails a preliminary assessment of whether the reasoning or methodology underlying the expert's testimony is scientifically valid and whether that reasoning or methodology can properly be applied to the facts at issue. Daubert at 591. In order for expert testimony to be admissible, the conclusion of the court's assessment must be that the expert's testimony rests on a reliable foundation and is relevant to resolution of the facts or claims. Id. "Pertinent evidence based on scientifically valid principles will satisfy those demands." Id. at 597. The inquiry as to whether a particular scientific technique or method is reliable is a flexible one. Paoli Railroad at 742.

Nonetheless, a party proposing to introduce expert testimony must make more than a prima facia showing that the technique at issue is reliable. Id. at 743. Some degree of evidentiary screening, or fact finding, is required. Id. The proponent of the expert opinion must establish, by a preponderance of the evidence, that the opinion is reliable (not that the opinion is correct.) Id. The focus is solely on the principles and methodology, not on the conclusions they generate. Id. at 744.

The conclusion of the PCM Report is that McDaniel is entitled to an extension of time to complete the work and monetary damages arising from IRSD's alleged active interference. A substantial body of case law exists in the federal courts regarding what a contractor must prove to satisfy the burden of establishing entitlement to a time extension or compensation for delay damages caused by an owner.[2] When seeking a time extension or delay damages resulting from a delay for which the owner is responsible, a contractor must prove (1) the extent of the delay (2)

---

[2] IRSD denies that the information contained in the PCM Report is relevant to any issue in this case. However, should the court find it necessary to further consider the admissibility of the report, the methodology of the schedule analysis must be considered.

7

that the delay was proximately caused by the owner and (3) that the delay harmed the contractor. Hoffman Construction Company v. U.S., 40 Fed. Cl. 184, 197 (1998).  In order to prove a compensable delay, the contractor must prove that the critical path was delayed.

The courts have consistently defined the critical path method as

> an efficient way of organizing and scheduling a complex project which consists of numerous interrelated separate small projects. Each subproject is identified and classified as to the duration and precedence of the work. (e.g., one could not carpet an area until the flooring is down and the flooring cannot be completed until the underlying electrical and telephone conduits are installed.)  The data is then analyzed usually by computer, to determine the most efficient schedule for the entire project.  Many subprojects may be performed at any time within a given period without any effect on completion of the entire project.  However, some items of work are given no leeway and must be performed on schedule; otherwise, the entire project will be delayed.  These latter items of work are on the "critical path."  A delay, or acceleration, of work along the critical path will affect the entire project.

Haney v. U.S., 676 F.2d 584, 595 (Ct. Cl. 1982).

> A critical path activity is one, which if allowed to grow in duration at all will cause the overall time to complete the project to increase.  An activity not on the critical path, or one with float time, may grow in duration up to a certain point without an adverse impact on the time required to complete the project.

Weaver-Bailey Contractors, Inc. v. U.S., 19 Cl. Ct. 474, 481 (1990).

> When the contractor utilizes CPM scheduling, the contractor must prove that the critical path of the work was prolonged in order to prove a delay in project completion.  The reason that the determination of the critical path is crucial to the calculation of delay damages is that only construction work on the critical path had an impact on the time in which the project was completed.  If work on the critical path was delayed, then the eventual completion date of the project was delayed.  Delay involving work not on the critical path generally has no impact on the eventual completion date of the project.

Hoffman at 198.  Analysis of the critical path of a project is regarded as a specialized field of knowledge.

It is not enough that a work activity is delayed.  There must be a delay of work on the critical path in order for a delay to be compensable.  An interruption in one aspect of the work

8

does not always result in an increase in time for total performance. Mega Construction Co. v. U.S., 29 Fed. L. 396, 424 (1993). The critical path analysis must show the critical path of the work prior to the time delays were experienced to show when the contractor intended to perform each phase of work. Mega at 426-427. Merely identifying potential causes of delay and extended performance time does not establish that the former caused the latter. Hoffman at 199. Without an identification of the critical path of the work, the court cannot exclude the possibility that the contractor caused concurrent delays on the project, in which case the owner would not be liable. Wilner v. U.S., 26 Cl. Ct. 260, 274 (1992).

The courts have identified several items a critical path analysis must contain in order to be reliable under Rule of Evidence 702:

- The analysis must demonstrate the interdependence or relationship between preceding and succeeding construction activities. In the absence thereof, sufficient evidence of the critical path has not been presented. Wilner at 264. Bar charts and other similar charts depicting only delay to construction activities for which it seeks compensation based on delay, without showing the interdependence of those items in the critical path context, will not be sufficient evidence. Wilner at 264; Mega at 428. Part of understanding that an activity belongs on the critical path is an understanding of how that activity affects other activities. Southern Comfort Builders, Inc. v. U.S., 67 Fed. Cl. 124, 144 (2005).
- The schedule analysis and critical path must be based on schedules and updates that were kept current at the time of the project in order to reflect delays and the evolution of the critical path. Wilner at 263. Belt Con Construction, Inc. v. Metric Construction Co, Inc., 2007 WL 1302606 (D.N.M.). A critical path delay cannot be shown by some

hypothetical, after the fact projection. Southern Comfort at 144. See also Fortec Constructors v. U.S., 8 Cl. Ct. 490 (1985).

- A schedule analysis must consider actual performance, including acknowledgment of concurrent delays and other events not the fault of the owner (or in other words, apportion delay). Belt Con at p. 8. See also Haney at 595, finding the analysis reliable because it did include these factors.

- An analysis must show a causal link between a critical path delay and the modifications to the work resulting there from. In short, the analysis must demonstrate why a particular impact occurred. While most experts can identify critical path delays, it is a more difficult task to demonstrate why there was an impact. The failure to develop a factual understanding of the project so as to understand the reason for the delays, will render the analysis unreliable. Titan Mountain States Construction Corp., 1985 WL 17659. The mere fact that preceding work was not completed on time does not automatically result in the owner being responsible to the contractor whose work is affected by the prior delay. This factor requires the expert to elicit information from all pertinent witnesses with first hand knowledge (including opposing parties) and to consider the entire project record, not simply the documentation supporting its position.

- The analysis must be based upon sound data. A party must proffer proof that the documentation underlying the analysis is factually correct. Mega at 427. One court noted the concept of garbage in, garbage out, by stating "while the court appreciates the value of computers in making complex tasks simpler, it must be remembered that a computer-generated analysis is no better than the data which is entered into the computer. Weaver-Bailey at 480. The information upon which the analysis is based must come

10

from witnesses with first hand knowledge. Weaver-Bailey at 479-480. (In Haney, the analysis was accepted as the expert was assisted by the contractor's employees who were familiar with the project and assisted in the preparation of the project schedule.) The ASBCA rejected an analysis since those who prepared it had no knowledge of how the work was performed or how the job progressed, other than from questionable computer updates generated by others. Titan Mountain States Construction, 1985 WL 17659. Sound data does not include correspondence or documents that are self serving, prepared for litigation long after the events occurred, or are summaries of other documents which are not in evidence. See Mega at 425-427 and Weaver-Bailey at 480-481. Other defects include not consistently using calendar days versus working days in an analysis (Mega at 432), misinterpretation of information in underlying documents and no independent verification of information in documents relied upon. Weaver Bailey at 480. Bias in performing the analysis also renders it unreliable. An expert has a duty to the court to be objective, so as to help the court understand the facts and issues. Mega at 434. A scheduling expert should not just rely on the rendition of facts provided to it by the party by whom he is engaged, but should solicit information from the owner and its representatives and objectively consider their positions so that the analysis is not biased. Mega at 433-434. In addition, underlying information obtained from construction logs of the party offering the analysis is highly suspect, due to bias. Mega at 433. Generalities, inferences and self serving statements are insufficient to prove delay. Hoffman at 198. The PCM Report does not follow this required methodology, as explained below.

The necessary foundation for a schedule analysis, the critical path at the time of the first delay, has not been reliably identified in the PCM Report. Therefore, any opinion or conclusion

11

based thereon would also be unreliable. The author of the report bases his baseline schedule (the initial project schedule, containing the project activities on which the computer program will determine the critical path – i.e., which activities must be performed in order for dependent activities to precede) on the "milestone schedule" contained in the project specification, a schedule which contained only 17 work activities. PCM Report at p. 3. Because there are so few activities on the milestone schedule, it (1) does not provide an accurate indication of how the project will be constructed and (2) has activities with extremely long durations, both of which prevent an accurate identification of the critical path.[3] A schedule from which the critical path could have been accurately identified on a project of this size would contain hundreds of separate activities. The foundation of PCM's critical path, the baseline schedule, lacks sufficient data to properly define the critical path.

In addition, the author of the PCM Report admits that he/she has not fully identified the critical path. On page 19 of the report, the author states that at the relevant time, either concrete **_or_** steel was the critical path activity. There can only be one activity on the critical path. Mega at 427. Since the PCM Report cannot determine which activity is on the critical path at that time, it has failed to establish the critical path and its analysis is therefore unreliable.

Secondly, the milestone schedule did not contain sufficient logic for it to constitute a complete CPM schedule. Logic is a term for describing the interdependence of activities or the relationship between preceding and succeeding construction activities. In the absence thereof, sufficient evidence of the critical path has not been presented, according to the decisions of the

---

[3] This milestone schedule was prepared by IRSD's representatives and contained in the specifications at the time of bid. The purpose of the milestone schedule was to provide the bidding contractors with a timeline of start and finish of the work and a general sense of expected progress, which bears on when different trades would be able to perform their work. It certainly was not intended nor actually used by the Construction Manager, IRSD, or the contractors as the baseline Project schedule. The milestone schedule provided just that - completion dates for milestone activities that IRSD expected the contractors to meet.

federal courts. To overcome this inability to define the critical path, due to lack of logic, RLI's expert added logic to the milestone schedule after the fact. In addition, to the extent the milestone schedule did contain logic, RLI's expert changed that logic. This point is easily summed up by noting that RLI's proposed critical path of the work does not even start until February 23, 2003, *seven months after construction has begun*. Notwithstanding, the PCM Report complains of delay to "critical" activities and milestones which will delay the completion date of the Project as early as September 17 and October 23, 2003. PCM Report at p. 7 and 8. The inconsistencies in this position lead to the conclusion that the PCM analysis does not rest on a reliable foundation. The critical path analysis must show the critical path of the work prior to the time delays were experienced to show when the contractor intended to perform each phase of work. As the courts have noted, an after the fact hypothetical will not meet the required schedule analysis methodology.

Third, the PCM Report contains no apportionment of owner caused delay versus other concurrent delays (delays caused by more than one event. If there are two or more events delaying the work at the same time, if the owner would not be liable for any one of them then the Owner is not liable for the delay it caused, unless the contractor can establish to what extent the owner's actions alone impacted the work. Wilner at 263.) The PCM Report cites numerous factors which allegedly delayed McDaniel's work for which IRSD is not responsible, including delays by other contractors and weather. PCM Report, i.e., p. 16-18, 68-69 and 75. RLI's analysis contains neither acknowledgement of nor apportionment for these delays.

The PCM Report does not contain any identification of the information the expert relied upon in performing the analysis. As such, neither the Court nor the defendants can determine if it is based upon sound data.

Without a reliable identification of the critical path any opinion that is based thereon would also be unreliable. RLI's expert failed to follow steps in applying the methodology that the federal courts require to make such an analysis reliable. Since the report is not reliable, it must be stricken and the expert precluded from testifying.

## V. CONCLUSION

The PCM Report should be stricken, and the witness barred from testifying, for the reasons set forth in the Motion and this Brief.

                Respectfully Submitted,

                SEITZ, VAN OGTROP & GREEN, P.A.

                **/s/ James S. Green**
                **JAMES S. GREEN, ESQ. (DE0481)**
                **jgreen@svglaw.com**
                222 Delaware Avenue, Suite 1500
                P. O. Box 68
                Wilmington, DE  19899
                (302) 888-0600
                Attorneys for Defendant
                Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322