## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | |
| | : | |
| **Plaintiff** | : | |
| vs. | : | **CIVIL ACTION** |
| | : | |
| **INDIAN RIVER SCHOOL DISTRICT** | : | **NO. : 05-858** |
| *et al.* | : | |
| **Defendants** | : | |

## ORDER

**AND NOW,** this _____ day of _____, 2007, upon consideration of the Motion for Summary Judgement of Indian River School District and Plaintiff's Response thereto, it is hereby **ORDERED** that:

1.  Partial Summary Judgment on Count I of RLI's Complaint is **DENIED** and the allegations set forth by RLI against Indian River School District in Count I may be pursued at trial;

2.  Summary Judgment on Counts II and III of RLI's Complaint is **GRANTED** and judgment is entered in favor of Indian River School District and against RLI.

_____

J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | |
| | : | |
| **Plaintiff** | : | |
| **vs.** | : | **CIVIL ACTION** |
| | : | |
| **INDIAN RIVER SCHOOL DISTRICT** | : | **NO. : 05-858** |
| *et al.* | : | |
| **Defendants** | : | |

## PLAINTIFF RLI INSURANCE COMPANY'S
## REPLY BRIEF IN RESPONSE TO DEFENDANT,
## INDIAN RIVER SCHOOL DISTRICT'S,
## MOTION SUMMARY JUDGMENT

### <u>FILING DUE DATE:</u>  OCTOBER 18, 2007

**BY:**   Perry F. Goldlust, Esquire
Aber, Goldlust, Baker & Over
702 King Street, P.O. Box 1675
Wilmington, DE 19899
1-866-826-4950
***Attorneys for Plaintiff,***
***RLI Insurance Company***

**DATED: OCTOBER 18, 2007**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................... ii

I.      PROCEDURAL BACKGROUND ...................................... 1

II.     FACTS ...................................................... 2

III.    LEGAL STANDARD ............................................. 7

IV.     SUMMARY OF ARGUMENT ....................................... 8

V.      LEGAL ARGUMENT

        1.      RLI IS ENTITLED TO A RECOVERY OF THE OVERPAYMENTS MADE
                BY INDIAN RIVER SCHOOL DISTRICT TO MCDANIEL AS A MATTER
                OF LAW ................................................. 9

        2.      THE PROVISIONS OF THE DELAWARE STATE PROCUREMENT
                ACT, 29 DEL.C. §6927, DO NOT PROHIBIT RLI'S CLAIMS OR
                DEFENSES AGAINST IRSD AND, THEREFORE, SHOULD NOT BE
                STRICKEN BY THE COURT ................................. 16

VI.     CONCLUSION ................................................ 20

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . 6, 7

Aniero Concrete Co. v. General Accident Ins. Co., Civ. A. Nos. 94-9111,
    95-3506, 1998 WL 148324,12 (S.D.N.Y. March 30, 1998) . . . . . . . . . . . . . 14

Argonaut Ins. Co. v. Town of Cloverdale, 699 F.2d 417 (1983) . . . . . . . . . . 11, 13-15

Brewer v. Ouaker State Oil Refining Co., 72 F.3d 326, 331 (3d Cir.1995) . . . . . . . . 6

Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

Continental Ins. Co. v. City of Virginia Beach, 908 F.Supp. 341,
    348 (E.D.Va.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Continental Realty Corp. V. Andrew J. Crevolin Co.,
    380 F.Supp. 246 (D.C.W.Va. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mergentime Corp. v. Washington Metropolitan Area
    Transit Auth., 775 F.Supp. 14, 19 (D.D.C.1991) . . . . . . . . . . . . . . . . . . . . . 14

National Sur. Corp. v. United States, 118 F.3d 1542, 1548 (Fed.Cir.1997) . . . . . . . . 15

National Union Indemnity Co. v. G.E. Bass and Co.,
    369 F.2d 75, 77 (5 Cir.1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

North American Specialty Ins. Co. v. Chichester School District,
    2000 WL 1052055 (E.D.Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ramada Development Co. v. United States Fidelity & Guaranty Co.,
    626 F.2d 517, 521 (6 Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir.1987) . . . . . . . . . . . . . . 7

Rosenthalis v. Doctors for Emergency Servs., P.A.,
    2004 WL 692686, at *3 (Del.Super.Ct. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 17

Ruckman and Hansen, Inc. V. Contracting & Material Co.,
    328 F.2d 744 (7th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987) . . . . . . . . . . . . . 7

Transamerica Ins. Co. v. City of Kennewick, 785 F.2d 660, 662 (9 Cir.1986) . . . . . . 14

United States v. Continental Cas. Co., 512 F.2d 475, 477 (5th Cir.1975) . . . . . . . . . 13

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Reliance Ins. Co., 799 F.2d 1382, 1385 (9th Cir.1986) . . . . . . . . . . 14

Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir.1989) . . . . . . . 6


## STATE CASES

American Fidelity Ins. Co. V. Pavia-Byrne Engineering,
        393 So.2d 830 (La.App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Balboa Ins. Co. V. Fulton County, 148 Ga.App. 328, 251 S.E.2d 123 (1978) . . . . . . 10

Barton v. Title Guaranty & Surety Co.,
        192 Mo. App. 561, 567, 183 S.W. 694, 696 (1916) . . . . . . . . . . . . . . . . . . 10

Cantinca v. Fontana, 884 A.2d 468, 471 (Del.2005) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Eliason v. Englehart, 733 A.2d 944, 946 (Del.1999) . . . . . . . . . . . . . . . . . . . . . . . . . 18

National Bank of New Orleans v. Southcoast Contractors, Inc.,
        276 So.2d 777 (La.App.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Newtowne Vill. Servs. Corp. v. Newtowne Rd., 772 A.2d 172, 176 (Del.2001) . . . . 18

Phillips v American Liability and Surety Co., 309 Pa. 1, 162 A. 435 (1932) . . . . . . . 11


## STATE STATUTES

29 Del.C. §6927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

29 Del.C. §6927(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL RULES**

Federal Rule of Civil Procedure 56(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | |
| | : | |
| **Plaintiff** | : | |
| **vs.** | : | **CIVIL ACTION** |
| | : | |
| **INDIAN RIVER SCHOOL DISTRICT** | : | **NO. : 05-858** |
| *et al.* | : | |
| **Defendants** | : | |

**PLAINTIFF RLI INSURANCE COMPANY'S**
**REPLY BRIEF IN RESPONSE TO DEFENDANT,**
**INDIAN RIVER SCHOOL DISTRICT'S,**
**MOTION SUMMARY JUDGMENT**

Plaintiff, RLI Insurance Company ("RLI" or "the Surety"), by its undersigned attorney, Perry F. Goldlust, Esquire, hereby answers Defendant, Indian River School District's ("IRSD") Motion for Summary Judgment pursuant to Rule 56(b), and respectfully requests that the same be denied, in part, for the reasons set forth hereinafter.

I.     **PROCEDURAL BACKGROUND**

On December 12, 2005, Plaintiff, RLI Insurance Company filed a Complaint against Indian River School District, BMG and EDIS. In the Complaint, RLI sought declaratory relief against IRSD (Count I) and alleged Breach of Fiduciary Duty by IRSD (Count II) and negligent misrepresentation (Count III) claims against IRSD. On September 28, 2007, IRSD filed a Motion for Summary Judgment under Rule 56, seeking partial dismissal of Count I of Plaintiff's Complaint and dismissal of Counts II and III of Plaintiff's Complaint in their

entirety and with prejudice. Plaintiff hereby responds to Defendants' Motion seeking denial of the first aspect of the IRSD Motion in its entirety. Plaintiff does not oppose the entry of judgment in IRSD's favor in regard to Counts II and III of RLI's Complaint.

## II.    **FACTS**

On or about August 28, 2002, IRSD entered into a written contract with McDaniel Plumbing & Heating, Inc. (hereinafter referred to as "McDaniel") for the performance of mechanical, plumbing and automatic temperature control work at Sussex Central High School.

The contract designated IRSD's representatives, EDiS, to serve as construction manager, and Becker Morgan to serve as architect, and both EDiS and Becker Morgan ("BMG") were designated as co-administrators of the contract.

On or about August 28, 2002, McDaniel was given a Notice to Proceed with the project by EDiS. On or about September 5, 2002, Plaintiff, RLI, as surety, issued performance and payment bonds for the project to principal, McDaniel, for the benefit of IRSD as the obligee/owner.

In regard to how payments were to be made to subcontractors, such as McDaniel, EDIS and BMG were required to follow the following procedure as detailed in the contract as follows:

> 4.6.8. The Construction Manager will review and certify all Applications for Payment by the Contractor, including final payment. The Construction Manager will assemble each of the Contractor's Applications for Payment. After reviewing and certifying the amounts due to the Contractors, the Construction Manager will submit the Project Application and Project Certificate for Payment, along with the applicable

Contractors' Applications and Project Certificates for Payment to the Architect.

4.6.9. Based upon the Architect's observations and evaluations of Contractors' Applications for Payment, and the certifications of the Construction of the Construction Manager, the Architect will review and certify the amounts due the Contractors and will issue a Project Certificate for Payment.

4.6.10. The architect will have the authority to reject Work which does not conform to the Contract Documents, and to require additional inspection and testing ***.   Subject to review by the Architect, the Construction Manager will have the authority to reject Work that does not conform to the Contract Documents.  ***

Article 9

9.2.1. Before the first Application for Payment, the Contractor shall submit to the Architect, through the Construction Manager, a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Construction Manager and Architect may require.

9.4.1. The Construction Manager will assemble a Project Application for Payment by combining the Contractor's application with similar applications for progress payments from other Contractors, and after certifying the amounts due on such applications, forward them to the Architect within seven days.

9.4.2. Within seven days after the Architect's receipt of the Application for Payment, the Construction Manager and Architect will either issue to the Owner a Project Certificate for Payment, with a copy to the Contractor, for such amount as the Construction Manager and Architect determine is properly due, or notify the Contractor and Owner in writing of the Construction Manager's and Architect's reasons for withholding certification in whole or in part ***.

3

> 9.4.3. The issuance of a separate Certificate for Payment or Project Certificate for Payment will constitute representations made separately by the Construction Manager and Architect to the Owner, based on their individual observations at the site and the date comprising the Application for Payment submitted by the Contractor, that the Work has progressed to the point indicated and that to the best of the knowledge, information and belief, quality of the Work is in accordance with the Contract Documents. ***

See contract between McDaniel and IRSD attached as **_Exhibit "A"_**.

During the course of the Project, McDaniel fell behind on the work, supplied materials and workmanship inferior to those required under the contract documents and specifications, and overall, failed to fulfill its contractual obligations. Despite this, EDiS and BMG, continued to approve the McDaniel pay applications and IRSD continued to issue payments to McDaniel. Furthermore, these pay applications approved payments to be made by IRSD to McDaniel for work that had not yet been performed with the thought that the advanced payment approval would assist McDaniel in complying with its contract obligations. At some point, IRSD became aware that the payments being issued to McDaniel were advanced payments, which contradicted the IRSD payment policies. Despite this, IRSD continued to make these payments to McDaniel, under the apparent belief that these overpayments were necessary to keep McDaniel progressing in its work and to pay its suppliers and subcontractors.

Unfortunately, this did not occur, as McDaniel never caught up to the work schedule and never completed its work in accordance with the contract specifications. Given these failures, on October 11, 2004, BMG alleged and certified that IRSD had sufficient cause to terminate McDaniel. Relying upon BMG's certification, IRSD terminated McDaniel.

Therefore, these advanced payments were never recouped by IRSD for work performed by McDaniel, all to the financial detriment of the surety, RLI, who was required to abide by the terms and conditions of the bond issued to McDaniel for the IRSD project. As a result of the overpayments by IRSD, RLI has incurred substantial loses under the bond, thereby prejudicing its financial interests in fulfilling the bond obligations.

By failing to comply with payment provisions of the contract as set forth above, IRSD, in conjunction with the acts of EDiS and BMG, RLI incurred damages including, but not limited to, being deprived of its rights under the performance bond by impairing its collateral by knowingly and voluntarily making advanced payments to McDaniel. Such actions by IRSD prejudiced RLI, as RLI relied upon the good faith expectation that IRSD would perform its obligations under the contract documents in deciding to issue the bonds for the project.

By its failure to comply with its own contractual obligations, IRSD issued payments to McDaniel for more than $340,000.00 in excess of the value of the work performed by McDaniel (overpayments) or for work that was never performed (premature payments). IRSD also issued payment out of the contract funds for the project which were earmarked for McDaniel and its surety, RLI, to other contractors, in particular, Joseph M. Zimmer, Inc., who worked at the Sussex Central High School completing or performing work that was to be done by McDaniel. Zimmer's hiring to do the work violated the bond's provisions as hereinafter described.

None of the overpayments to McDaniel in excess of the value of the work performed and/or to McDaniel for work never performed was done with the knowledge and/or consent of RLI. Since IRSD misused the contract funds and impaired RLI's rights in the collateral,

5

RLI was deprived of its collateral and its right to use the contract balances, and therefore, RLI is entitled to be discharged of all or certain obligations to perform under the bond. Hence, RLI's request for declaratory relief.  The extent of relief to which RLI is entitled is a question of fact for the jury to determine based upon the testimony of the parties hereto and the degree of credibility assessed to each witness.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c); see also *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 463-464 (3d Cir.1989).  A factual dispute is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For there to be a "genuine" issue, a reasonable finder of fact must be able to return a verdict (or render a decision) in favor of the nonmoving party. *Id*.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative.  *Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 331 (3d Cir.1995).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987).  If a conflict arises between the evidence presented by both

sides, the court must accept as true the allegations of the non-moving party.  *See Anderson*, 477 U.S. at 255.

Under Rule 56(e), the burden shifts to the nonmoving party as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-moving party must present evidence establishing that there is a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury *might* return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). [Emphasis added.]  If the non-moving party does so, then there exists a genuine issue of fact that requires a trial.

In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 255; *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987).  However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative."  *Anderson*, 477 U.S. at 249-50.

Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id*. at 248.  Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which

(1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element. *Celotex*, 477 U.S. at 323.

For the reasons set forth below, sufficient evidence exists to deny IRSD's Motion for Summary Judgment in regard to Count I as there exists genuine issues of material fact regarding IRSD's knowledge of overpayments and/or advance payments made to McDaniel by IRSD in contradiction to the contract documents and in violation of the bond's provisions. These overpayments and/or advanced payments were issued on Pay Applications prepared and/or approved by EDiS and BMG, knowingly containing inaccurate information. Deposition testimony has revealed that IRSD representatives knew that the Pay Application contained request for payments to McDaniel for work that had not been completed. See pertinent portions of the deposition testimony of Theodore H. Dwyer, Jr., and Brad A. Hastings, attached as *Exhibits "B" and "C"*, respectively.

At what point in time IRSD became aware of this information is in conflict, as Gregory C. Weer, IRSD's Supervisor of Buildings and Grounds, stated in his deposition that in "hindsight" he knew many things were not done by McDaniel. See excerpted deposition testimony of Gregory C. Weer, attached as *Exhibit "D"*.

As supported by the sworn testimony of Messrs. Dwyer and Hastings, RLI contends that the advanced payments were done with the consent of IRSD at the time the decision was made to make the advanced payments to McDaniel. For that reason, partial summary judgment on Count I of RLI's Complaint must be denied as the timing of the knowledge is a genuine issue of material fact that is to be determined by the fact finder. If a jury concludes that Messrs. Dwyer's and Hasting's are credible, then they could conclude that IRSD knew at the time. If the factfinder determines Mr. Weer more credible, then his

"hindsight" claim may absolve IRSD. Whatever the outcome, such a determination is not an issue to be decided at the summary judgment stage.

As previously stated, RLI does not object to the granting of summary judgment in favor of IRSD in regard to Counts II and III of RLI's Complaint.


IV.   **SUMMARY OF ARGUMENT**

Plaintiff, RLI Insurance Company, respectfully requests that this Honorable Court deny Indian River School District's Motion for Partial Summary Judgment on Count I of RLI's Complaint for the following reasons, which are well supported by the facts and state and federal law. IRSD is not entitled to the entry of judgment in its favor, as it took direct action in the decision making process to make overpayments and advanced payments to McDaniel, despite knowing the work had not been completed. In making these payments to McDaniel, IRSD did not act on mistakes or misrepresentations by EDiS or BMG alone. To the contrary, IRSD actively participated in the decisions to make the payments to McDaniel. Therefore, RLI is entitled to set off of these overpayments and advanced payments under the bond. IRSD seeks to be rewarded for acts and omissions for which it is responsible by having RLI reimburse IRSD for losses which IRSD itself is accountable solely or in conjunction with the acts or its own agents, EDiS and BMG. Clearly, the relief sought by IRSD would severely prejudice RLI, in that, IRSD has, in its counterclaims against RLI, sought to be compensated for these same payments. Such an outcome cannot be permitted by the Court.

Plaintiff concedes to the entry of judgment in Indian River School Districts favor in regard to the dismissal of Counts II and III of Plaintiff's complaint, as discovery has not been

produced which supports the viability of those theories of liability against Indian River School District.

V.    **LEGAL ARGUMENT**

1.    **RLI IS ENTITLED TO A RECOVERY OF THE OVERPAYMENTS MADE BY INDIAN RIVER SCHOOL DISTRICT TO MCDANIEL AS A MATTER OF LAW**

Plaintiff, RLI, admits that the caselaw cited by IRSD accurately sets forth the holdings of those cases, however, it should be pointed out that each and every case relied upon by IRSD in support of its position that it is entitled to partial summary judgment on Count I of RLI's complaint can be easily distinguished from the case at bar.  IRSD's reliance upon the following cases is misplaced as in each case, the owner of the project, made the payments in good faith reliance upon submissions by its agents.  In this case, there is clearly collusion between the IRSD, EDiS and BMG, for which none of them should be immune from liability to RLI.  *Barton v. Title Guaranty & Surety Co.*, 192 Mo. App. 561, 567, 183 S.W. 694, 696 (1916).

In *Balboa Ins. Co. V. Fulton County*, 148 Ga.App. 328, 251 S.E.2d 123 (1978), a case relied upon by IRSD,  the Court held that the owner, who acted in *good faith*, was not liable to the surety for the architect's erroneous pay certificates causing the owner to make payments that exceeded the value of the work and materials incorporated in the project.

In another case relied upon by IRSD, *Argonaut Ins. Co. V. Town of Cloverdale*, 699 F.2d 417 (1983), the court held that a surety is not discharged from performance under the bond where the owner relies upon its engineer's estimates resulting in overpayment to

10

contractor.  In *Argonaut*, the town acted in <u>sole reliance</u> upon its engineer's submission in issuing payment.

The same holds true for the remaining cases relied upon by IRSD.  In each of these cases, the owners acted solely upon the information it received from those responsible for supplying information as a condition precedent to the owner issuing payment.  *See Phillips v American Liability and Surety Co.*, 309 Pa. 1, 162 A. 435 (1932) (Owner made overpayment based upon vouchers approved by its inspector); *American Fidelity Ins. Co. V. Pavia-Byrne Engineering*, 393 So.2d 830 (La.App. 1981) (Owner who in good faith makes disbursements to contractor based upon certificates of the engineer has no liability to the surety.)  *National Bank of New Orleans v. Southcoast Contractors, Inc.*, 276 So.2d 777 (La.App.1973) (Construction contractor's surety could not claim that alleged acts of architect in furnishing faulty certificates.); *Continental Realty Corp. V. Andrew J. Crevolin Co.*, 380 F.Supp. 246 (D.C.W.Va. 1974) (Owner did nothing more nor less than its contractual obligation to contractor called for and in no event did anything to the detriment of contractor's surety.); **Ruckman and Hansen, Inc. V. Contracting & Material Co.**, 328 F.2d 744 (7th Cir. 1964) (errors in progress estimates later determined to be excessive do not release the surety.)

Although there exists no Delaware case addressing this specific issue, i.e., the affirmative acts of the owner which have a prejudicial effect on the surety, a similar situation has been addressed in the Eastern Disctrict of Pennsylvania in the matter of *North American Specialty Ins. Co. v. Chichester School District*, 2000 WL 1052055 (E.D.Pa. 2000).

In *North American*, litigation arose out of Chichester School District's efforts to construct the Linwood Elementary School.  The School District entered into a construction

11

contract with Craft-Century Construction, Inc., for the general construction work on the school. In connection with that agreement, North American Speciality Insurance Company (NAS), as surety for Craft-Century, issued both performance and payment bonds in favor of the School District.   Following several notices by the School District to both NAS and Craft-Century regarding Craft-Century's default under the contract, the School District ultimately terminated the contract.  NAS retained York Hunter, Inc. to complete the work under the contract.

Issues arose between the School District and NAS with respect to certain claimed "overpayments" by the School District to Craft-Century. By way of Applications for Payment,  Craft-Century, prior to its discharge, sought and was approved for payment in the total amount of $323,814.29, paid through two checks given to Craft-Century. Subsequently, the School District, believing that the checks had not cleared, performed a wire transfer of $323,814.29 into Craft-Century's account.  After the wire transfer occurred, the checks did in fact clear, thereby resulting in Craft-Century being paid twice on the same Applications for Payment.

When the School District sought the return of the overpayment of $323,814.29, Craft-Century returned only $148,325.35, maintaining that it was entitled to the remaining $175,488.94 due to a more recent Pay Application that was pending approval for payment.

After Craft-Century's termination, numerous conditions were discovered that were attributable to Craft-Century's work or damage that it had caused.  Significant sums were paid to remedy these conditions.

Thereafter, NAS instituted suit against the school district alleging, *inter alia*, that it was entitled to a return of the overpayments made by the School District to Craft-Century.

12

The Court, on NAS' motion for summary judgment, in discussing NAS' numerous requests for relief, addressed this specific issue:

"Whether NAS is entitled to summary judgment in the amount of $175,488.94, the overpayment, made by the School District to Craft-Century, by reason of the School District's alleged material alteration of the contract in making the overpayment, thereby discharging NAS from its obligations under the performance bond."

*North American* provides an extensive analysis in regard to the above issue.  In reaching its conclusion that the actions by the school district did not prejudice the surety, the Court stated:

Although the law in Pennsylvania on this issue is somewhat sparse, the Court finds persuasive guidance from courts in other districts.  Older jurisprudence granted sureties a total discharge from their obligations in the event of overpayment.  The advent of compensated suretyship, however, altered the treatment of such cases.  See *Argonaut Ins. Co. v. Town of Cloverdale*, 699 F.2d 417, 419 (7th Cir.1983).  The "modern rule", as regards premature or unauthorized payments under contractor's bonds, holds that "[w]here there has been a material departure from contractual provisions relating to payments and the security of retained funds, a compensated surety is discharged from its obligations on the performance bond to the extent that such unauthorized payments result in prejudice or injury"- i.e. the *pro tanto* rule. *United States v. Continental Cas. Co.*, 512 F.2d 475, 477 (5th Cir.1975); *National Union Indemnity Co. v. G.E. Bass and Co.*, 369 F.2d 75, 77 (5  Cir.1966); *see also Argonaut Ins. Co.*, 699 F.2d at 419 (modern rule is that a discharge because of unauthorized payments to the principal operates only to the extent of the unauthorized payments); *Aniero Concrete Co. v. General Accident Ins. Co.*, Civ. A. Nos. 94-9111,  95-3506, 1998 WL 148324,12 (S.D.N.Y. March 30, 1998) ("[a]ccording to the weight of authority in American jurisdictions, ... a material departure by the owner, without the consent of the surety, from the express requirements of a construction contract with regard to the times or amounts of payments made to the contractor ... operates to release or discharge the surety on the contractor's bond from liability to the owner, at least to the extent that such unauthorized payments result in injury or prejudice to the surety.") (internal quotations omitted). Underlying the pro tanto release rule is the notion that "the material departure from the terms of the contract deprives the surety of the inducement to perform which the contractor would otherwise have, and destroys, diminishes, or impairs the value of the securities taken." *National Union Indemnity*, 369 F.2d at 77.

In order to establish a pro tanto discharge for a compensated surety, however, the evidence must establish two separate factors: (1) proof of material modification

to the underlying contract and (2) injury or prejudice to the surety.  *See **United States v. Reliance Ins. Co.***, 799 F.2d 1382, 1385 (9th Cir.1986); ***Ramada Development Co. v. United States Fidelity & Guaranty Co.***, 626 F.2d 517, 521 (6  Cir.1980); ***Mergentime Corp. v. Washington Metropolitan Area Transit Auth.***, 775 F.Supp. 14, 19 (D.D.C.1991).  With regards to the first requirement, mere immaterial or technical departures from the contract, not resulting in any damage to the surety, will not release the surety. It is widely recognized, however, that payment of substantial sums before they are due is a material alteration that will discharge a surety to the extent of the prejudice. ***Continental Ins. Co. v. City of Virginia Beach***, 908 F.Supp. 341, 348 (E.D.Va.1995) (citing ***Southwood Builders, Inc. v. Peerless Ins. Co.***, 366 S.E.2d 104 (Va.1988)).  The reasoning is that unauthorized advances reduce the principal's incentive to complete the contract, which increases the surety's risk, as well as the cost of the surety's substitute performance. ***Argonaut Ins. Co.***, 699 F.2d at 419.  Even if the prepayment or overpayment resulted from mere negligence, such negligence exonerates the surety's duty to the extent of the prejudice caused by the payment. *See*, e.g., ***Transamerica Ins. Co. v. City of Kennewick***, 785 F.2d 660, 662 (9 Cir.1986) (city was not entitled to good-faith defense against sewer construction contractor's surety as to city's payment to contractor for pipe that was never installed, where city relied on certifications negligently made by its own employee); ***Continental Ins. Co.***, 908 F.Supp. at 348 (failure of owner to properly inspect resulting in overpayment to contractor was material deviation from contract); compare ***Argonaut Ins. Co.***, 699 F.2d at 420 (where town made overpayments to contractor in good faith reliance on independent engineer's estimates and surety had agreed to reliance on that engineer, the unauthorized payments did not release surety).

With respect to the second requirement of prejudice, many courts have demanded some showing that the surety was prejudiced in fact by the overpayment.  When determining the extent of prejudice, several considerations remain crucial.  As noted above, the concept behind discharge of a surety for overpayments or advanced payments by the owner is that the unauthorized payments increase the surety's risk. As such, the court must take account of the effects of the overpayment, such as whether the unauthorized release reduced the contractor's incentive to complete the contract, thereby increasing the risk to the surety ***National Sur. Corp. v. United States***, 118 F.3d 1542, 1548 (Fed.Cir.1997).  If unauthorized sums were ultimately expended for purposes of the contract, though, the amount at risk to the surety might be unaffected or even reduced. ***Id***.; see also ***Argonaut Ins. Co.***, 699 F.2d at 420-421 (overpayments made by town to contractor hired to build sewer did not release surety of its obligation under performance bond where materials for which contractor received unauthorized advances not only were delivered and stored on site, but were used in completing project after contractor defaulted); ***Ramada Development Co.***, 626 F.2d at 522 (the surety was not released to the extent of the improperly paid retainage because the contractor applied the released funds to progress on the contract).

14

RLI's position in this case satisfies the criteria set forth in ***North American***. First, IRSD's advance payments and overpayments are a departure from the terms and conditions of the Contract, as payments to a contractor are to be made for the period prior to payment being made. See ***Exhibit "A"***, Sections 5.1 to 5.6.4. There are no provisions for making advanced payments to a contractor in the contract, nor is there discretion vested with IRSD, EDiS and/or BMG, to knowingly issue overpayments to a contractor for any reason. Clearly, such act by IRSD in issuing such payments to or on behalf of McDaniel are a departure from the terms and conditions of the contract documents.

RLI also satisfies the second prong of this test, in that, it has been prejudiced in two aspects as a result of IRSD's failure to abide by the contract terms, the first being the overpayment of $340,000.00 to McDaniel prior to his termination. By advancing McDaniel these funds, IRSD impaired RLI's collateral, i.e., the Balance of the Contract Price, as there was now $340,000.00 less to be paid to RLI under the original contract amount.

Section 12.1 of the Performance Bond states:

Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, *reduced by all valid and proper payments* made to or on behalf of the Contractor under the Construction Contract. [Emphasis added.]

See RLI's Performance Bond issued to McDaniel, attached as ***Exhibit "E"***.

The overpayments knowingly made to McDaniel by IRSD were not valid and proper payments, as said payments are not permitted under the contract documents. For IRSD to be of the position that it is entitled to recoup those sums from RLI defies logic, as IRSD is simply asking this Court to award it a substantial sum of money for losses it incurred as a

15

result of its decision to advance funds for work not performed by a contractor with a bad history of job performance on the project. Such a result cannot be permitted under the law, as it is apparent that IRSD's own actions contributed to this situation and to RLI's detriment, resulting in prejudice to RLI by the impairment of its collateral under the bond.

Secondly, RLI was also prejudiced by IRSD actions by preventing RLI from exercising its rights under the bond, in that, RLI was deprived of its right under the bond to remedy the situation prior to McDaniel's termination. Instead of allowing RLI to right McDaniel's wrongs while McDaniel was still onsite, IRSD simply entered into a labor and material agreement with Joseph Zimmer, Inc. Zimmer's work was not bid upon and basically, as a labor & material agreement was an open checkbook to correct McDaniel's errors. See pertinent portions of the deposition testimony of Joseph Zimmer, attached as ***Exhibit "F"***.

IRSD's authorization of Zimmer to begin work deprived RLI from performing the work through independent contractor (Section 4.2 of the Bond) or obtain bids or negotiated proposals from qualified contractors acceptable to the IRSD (Section 4.3 of the Bond). By IRSD'a deprivation of RLI's right to act under the bond in order to reduce its potential financial exposure, IRSD failed to allow RLI to mitigate any exposure it may have had due to the acts and omissions of its principal. IRSD's denial of such rights to RLI clearly violated the bond terms and conditions, all to its financial detriment. IRSD's actions resulted in substantial prejudice to RLI and, therefore, RLI requests that the Court deny IRSD's Motion for Summary Judgment on Count I of Plaintiff's Complaint, as there exists genuine issues of material fact to be decided by the fact finder upon weighing all of the evidence in this case.

2.    **THE PROVISIONS OF THE DELAWARE STATE PROCUREMENT ACT, 29 DEL.C. §6927, DO NOT PROHIBIT RLI'S CLAIMS OR DEFENSES AGAINST IRSD AND, THEREFORE, SHOULD NOT BE STRICKEN BY THE COURT**

Further, IRSD's argument that "RLI's position cannot be sustained because the provisions of the bond that it relies upon are in contravention of Delaware's State Procurement Act", 29 Del.C. §6927 is incorrect.  Nowhere in the Act does it prohibit, exclude or extinguish any rights that RLI has asserted in Count I of the Complaint.

"Statutes must be read as a whole and all the words must be given effect" before a court can determine whether to engage in statutory construction. *Rosenthalis v. Doctors for Emergency Servs., P.A.*, 2004 WL 692686, at *3 (Del.Super.Ct. 2004)  "Only where a statute is ambiguous and its meaning cannot be clearly ascertained does a court engage in the process of statutory construction and interpretation."  *Newtowne Vill. Servs. Corp. v. Newtowne Rd.*, 772 A.2d 172, 176 (Del.2001)  If, however, "a statute is unambiguous, there is no need for judicial interpretation, and the plain meaning of the statutory language controls." *Eliason v. Englehart*, 733 A.2d 944, 946 (Del.1999).

Each of the pertinent and applicable portions of §6927 are as follows:

> (d) Performance Bonds.--Simultaneous with the execution of the formal contract where required by §§ 6923(k)(1) and 6924(j)(1) of this title, the procuring agency may require the successful bidder to execute a good and sufficient bond to the State for the benefit of the agency. Such performance bonds shall:
>
> (1) Be with a corporate surety authorized to do business in this State;
> (2) Be in a sum equal to 100% of the contract award, except as otherwise provided in this subsection; and
> (3) **Be in the standard form issued by the Office of Management and Budget for this purpose and shall be included in the projects' bid documents.**

For this Project, the standard form bond that was approved for use on this project was the one issued to IRSD by RLI. It is a standard form bond drafted by the American Institute of Architects and sets forth the rights and obligations of RLI as the surety, McDaniel as the principal and IRSD as the obligee. This statute section grants no greater rights to IRSD than those set forth in the bond. Further, it limits no defenses which may be raised by the surety. To the contrary, §6927 does not define the claims or defenses of the parties, therefore, the Court must look to the provisions of the bond itself that was approved by the Office of Management and Budget to determine any limitations on claims or defenses. In this case, the bond's language does not limit, restrict or extinguish RLI's claims.

Such an interpretation can be derived from a plain reading of 29 Del.C. §6927(e), which states:

> Contents of performance bonds.--The bond shall be conditioned upon the faithful compliance and performance by the successful bidder of each and every term and condition of the contract and the proposal, plans and specifications thereof. Each term and condition shall be met at the time and in the manner prescribed by the contract and the specifications, *including the payment in full to every person furnishing materiel or performing labor in the performance of the contract, of all sums of money due the person for such labor and materiel.* The bond shall also contain the successful bidder's guarantee to indemnify and save harmless the State and the agency from all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract. [Emphasis added.]

The first sentence of this section specifically addresses the obligations of the 'successful bidder', in this case, McDaniel. The second sentence is not so limiting as it does not limit its application, therefore, it can be concluded that it applies to all entities listed on the bond, including the entity responsible for making the payment for furnishing material and labor, in this case, IRSD. This section does not limit the claims or defenses that may be

18

raised against IRSD, but simply preserves the public entity's right to indemnity from the successful bidder in the event it is held accountable under the bond for damages caused by the successful bidder's (McDaniel) failure to comply and perform the work in accordance with the contract. The damages sought by RLI in its claims against IRSD specifically arise from McDaniel's failure to perform under the contract.

Had the legislature intended to insulate IRSD from being held accountable under this statute, a specific exclusion would have been set forth in this section. Instead, the statute preserves the guarantee of indemnity and hold harmless by IRSD against McDaniel for its losses, thereby implying that claims are permitted against the public entity. *Cantinca v. Fontana*, 884 A.2d 468, 471 (Del.2005) ("This Court has held that in construing a statute, the plain meaning of the statutory language controls."). A plain meaning reading of §6927 can provide no other reasonable interpretation as the language is unambiguous.

This reasoning is a logical conclusion, especially in light of the language of §6927(f), which states:

> No person or surety, in any action brought under this section or on the bond required in this section shall assert as a defense to such action the claim that the bond given pursuant to this section contained a limitation or restriction not provided for by this section.

The claims and defenses raised by RLI in regard to IRSD are not limited or restricted by this section since the bond itself does not contain such restrictions or limitations. IRSD is simply attempting to invoke §6729 solely as a shield, however, a plain reading indicates that this statutory section may be equally used as a sword by RLI.

In light of the foregoing, RLI respectfully requests that IRSD's attempt to avoid liability under the Delaware State Procurement Act, 29 Del.C.§6927 be denied.

19

VI.    **CONCLUSION**

For all of the foregoing reasons, Plaintiff, RLI Insurance Company respectfully requests that Defendant, Indian River School District's, Motion for Partial Summary Judgment on Count I of Plaintiff's Complaint be denied as genuine issues of material fact exist in regard to IRSD's actions in relation to issuing advanced payments and/or overpayments to McDaniel were made knowingly and in opposition to the requirements of the contract, thereby resulting in prejudice to RLI.

Plaintiff consents to the entry of judgment in moving defendant's favor in regard to Counts II and III of Plaintiff's Complaint.


**ABER, GOLDLUST, BAKER & OVER**
**702 King Street, P.O. Box 1675**
**Wilmington, Delaware 19899**
**(302) 472-4900**
**pgoldlust@baglawde.com**


**BY:**_____
**PERRY F. GOLDLUST, ESQUIRE**
**Attorneys for Plaintiff,**
**RLI Insurance Company**

**Dated: October 18, 2007**


**OF COUNSEL:**
**HARRY R. BLACKBURN, ESQUIRE**
**JOHN E. SHIELDS, JR., ESQUIRE**
**HARRY R. BLACKBURN & ASSOCIATES, P.C.**
**1528 Walnut Street, 9th Floor**
**Philadelphia, Pa 19102**
**(215) 985 0123, ext. 105**
**hblackburn@hrblackburn.com**

20

Q:\RLI Surety.729\McDaniel.004\Indian River\Pleadings\Summary Judgment\Response to IRSD\Brief.wpd

22