## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **vs.** | : | **NO. 05-858** |
| | : | |
| **INDIAN RIVER SCHOOL DISTRICT,** | : | |
| **EDiS COMPANY and** | : | **JURY TRIAL DEMAND** |
| **BECKER MORGAN GROUP, INC.** | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF RLI INSURANCE COMPANY'S
### COMBINED ANSWERING BRIEF IN OPPOSITION TO
### THE MOTIONS FOR SUMMARY JUDGMENT OF
### DEFENDANTS EDiS COMPANY AND BECKER MORGAN GROUP, INC.

**ABER, GOLDLUST, BAKER & OVER**

/s/   Perry F. Goldlust
PERRY F. GOLDLUST (DSB #770)
702 King Street, P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900
pgoldlust@gablawde.com
*Attorneys for Plaintiff RLI Insurance Company*

DATE:  October 18, 2007

## TABLE OF CONTENTS

TABLE OF CITATIONS............................................................................................iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS......................................1

SUMMARY OF ARGUMENT................................................................................2

STATEMENT OF FACTS....................................................................................3

LEGAL ARGUMENT.......................................................................................5

      A.    LEGAL STANDARD................................................................................5

      B.    RLI'S CLAIMS THAT BECKER MORGAN AND EDIS
           ARE LIABLE TO IT FOR NEGLIGENT MISREPRESENTATION
           UNDER THE RESTATEMENT (2ND) OF TORTS SECTION
           552 IS NOT BARRED BY THE ECONOMIC LOSS DOCTRINE......................7

      C.    RLI'S CLAIMS ARE NOT BARRED BY THE TERMS OF EDIS
           OR BECKER MORGAN'S CONTRACTS IN THAT RLI'S CLAIMS
           ARE NOT BASED ON PRIVITY OF CONTRACT, BUT RATHER
           ARE BASED UPON THE EXCEPTION CONTAINED IN DELAWARE
           LAW SET FORTH IN RESTATEMENT (2ND) OF TORTS SECTION
552........14

CONCLUSION....................................................................................................17

## TABLE OF EXHIBITS

Exhibit A -    Standard Form of Agreement Between Owner and Contractor
           and General Conditions for McDaniel Plumbing & Heating
           Scope of Work

Exhibit B -    Letter from Christian McCone, Project Manager for EDiS,
           dated April 30, 2004

Exhibit C -    Letter from David Berry, Senior Bond Claims Analyst for RLI

Exhibit D -    Deposition Transcript of Patrick Miller

Exhibit E   -   Payment Application No. 24

Exhibit F   -   Deposition Transcript of Theodore Dwyer

Exhibit G   -   Deposition Transcript of Brad Hastings

## TABLE OF CITATIONS

Page

**FEDERAL CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Brewer v. Quaker State Oil Refining Co., 72 F.3d 326, 331 (3d Cir.1995) . . . . . . . . . . . . . 6

Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir.1987) . . . . . . . . . . . . . . . . . . . . . 6

Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987) . . . . . . . . . . . . . . . . . . 6

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VP Buildings, Inc. v. Norco Construction, Inc., 2005 WL 2037548 . . . . . . . . . . . . . . . . . . . 15

Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir.1989) . . . . . . . . . . . 5

**STATE CASES**

Badiee v. Brighton Area Schools, 695 NW.2d 521 (Mich.App. 2005) . . . . . . . . . . . . . . . . . 15

Carello v. PricewaterhouseCoopers, LLP, 2002 WL 145111 (Del.Super.) . . . . . . . . . . . . . . 13

Christiana Marine Service Corp. v. Texaco Fuel Marine Marketing,
    WL 1335363 (Del. Super. 2002 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Council of Dorset Condominium Apartments v. Dorset Apartments,
1992 WL 240444 (Del.Super.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del. 1992) . . . . . . . . . . . . . . . . . . . . 10, 12

Guardian Construction Company v. Tetra Tech Richardson, Inc.,
583 A.2d 1378, 1386 (Del. Super. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 13, 15

Insituform of North America Inc. v. Chandler, 534 A.2d 257 (Del.Ch. 1987) . . . . . . . . . . . 15

Millsboro Fire Company v. Construction Management Service, Inc.,
2006 WL 1867705 (Del.Super.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

Outdoor Technologies, Inc. v. AllFirst Financial, Inc., 2000 WL 141275 (Del.Super.) . . 12, 13

Ruger v. Funk, 1996 WL 110072 (Del.Super.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Standard Electric Service Corp. v. Gahanna-Jefferson Public Schools,
    1998 WL 542696 (Ohio App. 10 Dist.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tolan and Son, Inc. v. KLLM Architects, Inc., 719 NE2d 288, 296 (Ill. App. 3rd 1999) . . . 11

Treeline Garden Plaza LLC v. Berkley-Arm Inc., 2006 WL 1982532 (N.Y.Supp.) . . . . . . . 15

**FEDERAL RULES**

Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    S̲T̲A̲T̲E̲M̲E̲N̲T̲ O̲F̲ T̲H̲E̲ N̲A̲T̲U̲R̲E̲ A̲N̲D̲ S̲T̲A̲G̲E̲ O̲F̲ P̲R̲O̲C̲E̲E̲D̲I̲N̲G̲S̲

Plaintiff RLI Insurance Company (hereinafter "RLI") filed a Complaint on December 12, 2005 against Defendants Indian River School District (hereinafter "IRSD"), EDiS Company (hereinafter "EDiS"), and Becker Morgan Group, Inc. (hereinafter "Becker Morgan") as a result of bond claims which had arisen from the construction of the new Sussex Central High School for Defendant IRSD.  RLI, a Surety, issued payment and performance bonds for McDaniel Plumbing & Heating, Inc. (hereinafter "McDaniel") with IRSD as obligee.  All Defendants filed answers to RLI's Complaint, and IRSD also filed a counterclaim against RLI.

Defendants EDiS and Becker Morgan filed a Joint Motion to Dismiss RLI's Complaint, alleging that same was barred by the economic loss doctrine.  RLI filed an Answering Brief in Opposition to the Joint Motion, and the Court denied Defendants' Joint Motion to Dismiss on June 20, 2006.

Discovery proceeded in accordance with the Court's Scheduling Order, and fact discovery is largely complete with the exception of the deposition of Christian McCone, an employee of EDiS, who is currently serving in the United States Army stationed in Kuwait, and who the parties have agreed will be deposed by videoconferencing on a date yet to be scheduled.

Also, on August 3, 2007, RLI filed a Motion to compel Defendants' compliance with the U.S. District Court's default standard for discovery of electronic discovery.  Answering briefs in opposition to the aforesaid Motion were filed on August 20, 2007 by all Defendants.  That Motion remains pending.

1

On September 27, 2007, EDiS filed its Motion for Summary Judgment. Additional Motions for Summary Judgment were filed on September 28, 2007 by IRSD and Becker Morgan.

RLI now files its Brief in Opposition to the Motion for Summary Judgment of IRSD, and a combined Brief in Opposition to the Motions for Summary Judgment of EDiS and Becker Morgan as the latter Motions are based on the same legal arguments.

## II.   SUMMARY OF ARGUMENT

1.    RLI's claims that Becker Morgan and EDiS are liable to it for negligent misrepresentation under the Restatement (2nd) of Torts Section 552 are not barred by the economic loss doctrine as claimed by Defendants in their Motions, as RLI's claims are based directly on one specific aspect of the responsibilities of EDiS and Becker Morgan, that being to provide information by certifying the payment applications of RLI's principal, McDaniel.

2.    RLI's Claims as set forth above are also not barred by the terms of EDiS or Becker Morgan's contracts despite those Defendants' assertions to the contrary, in that RLI's claims are not based on privity of contract, but rather the exception contained in Delaware law set forth in Restatement (2nd) of Torts Section 552 in that EDiS and Becker Morgan provided information in the Certifications of Payment which was false and upon which RLI justifiably relied in its business dealings with IRSD and McDaniel.

III.   **STATEMENT OF FACTS**

Becker Morgan was hired by IRSD as the Project Architect for the construction of a new high school known as Sussex Central High School in Georgetown, Delaware (hereinafter the "Project").  EDiS was hired by IRSD as construction manager for the Project.

Plaintiff RLI, a Surety, issued payment and performance bonds for the Project to its principal, McDaniel, the plumbing and heating contractor engaged by IRSD for the Project.

A copy of the Standard Form of Agreement Between Owner and Contractor and General Conditions thereto for McDaniel's scope of work is attached to this Brief as Plaintiff's Exhibit "A." This Agreement delineates the respective roles and duties of IRSD, McDaniel, Becker Morgan, and EDiS.

Among EDiS' and Becker Morgan's duties on the Project included the obligation to provide information concerning the progress of the work and the entitlement of McDaniel to payments by reviewing the contractors' applications for payment and issuing a Certificate for Payment to the owner, signed by an authorized representative of each.

The Contract Documents provided with regard to the Certificate of Payment as follows:

> "The issuance of a separate Certificate for Payment or Project Certificate for Payment will constitute representations made separately by the Construction Manager and Architect to the Owner, based on their individual observations at the site and the date comprising the Application for Payment submitted by the Contractor, that the Work has progressed to the point indicated and that to the best of their knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents."

*See* General Conditions of the Contract for Construction, Article 9.4.3, Exhibit "A."

3

Over the course of the Project, particularly during the spring and summer of 2004, McDaniel began to fall behind on its scope of work. EDiS notified RLI of this, beginning in April, 2004. *See* Letter from Christian McCone, Project Manager for EDiS, dated April 30, 2004, attached hereto as Exhibit "B." Becker Morgan was copied on this letter, as well as others that followed. As a result of its investigation, RLI wrote to Mr. McCone on July 27, 2004 and instructed EDiS not to issue any further payments to McDaniel without the Surety's consent. *See* Letter from David Berry, Senior Bond Claims Analyst of RLI, attached hereto as Exhibit "C." This letter was copied to IRSD.

Patrick Miller, Director of Business for IRSD, was not told of this letter, and would not have authorized any further payments to McDaniel had he known. *See* Deposition Transcript of Patrick Miller attached hereto as Exhibit "D" at pp. 76, 173-174. However, EDiS and Becker Morgan authorized additional payments after the date of that letter, even though both knew McDaniel had not reached the completion levels stated in the Applications for Payment. *See* Payment Application No. 24 attached hereto as Exhibit "E."

On October 11, 2004, IRSD terminated the McDaniel contract.

Prior to McDaniel's termination, EDiS and Becker Morgan provided incorrect information on the Certificates of Payment concerning the extent and quality of the work performed by McDaniel, resulting in overpayments to McDaniel that were not authorized under the terms of the contract.

Theodore Dwyer, the President of EDiS Company, testified that McDaniel's 24th Application for Payment overstated the extent of the progress of the work, and that this was known to him, but that the payment was certified nonetheless. *See* Deposition Transcript of Theodore Dwyer attached hereto as Exhibit "F" at pp. 188-192.

4

Brad Hastings, a principal at Becker Morgan, testified that he also knew that the extent of progress of McDaniel's work claimed in Payment Application No. 24 was less than stated, but that he certified this Payment Application anyway.  He further testified that this was done in order to make funds available to pay some of McDaniel's suppliers, and that he or another architect from his firm, together with Messrs. McCone and Greg Weer, the Building and Grounds Superintendent for IRSD, discussed and agreed to this procedure.  *See* Deposition Transcript of Brad Hastings attached hereto as Exhibit "G" at pp. 117-129.

Subsequent to the termination of McDaniel, IRSD brought a performance bond claim against RLI.  Various subcontractors filed payment bond claims as well.  RLI has suffered pecuniary losses as a result thereof.

RLI's claims against EDiS and Becker Morgan involve only the provision of the false information contained on the Certificates of Payment, and therefore, RLI's claim falls within the recognized exception to the economic loss doctrine contained within the Restatement (2nd) of Torts Section 552.

IV.   LEGAL ARGUMENT

A.    Legal Standard

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c); see also ***Celotex Corp v. Catrett***, 477 U.S. 317, 322 (1986); ***Williams v. Borough of West Chester***, 891 F.2d 458, 463-464

5

(3d Cir.1989). A factual dispute is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For there to be a "genuine" issue, a reasonable finder of fact must be able to return a verdict (or render a decision) in favor of the nonmoving party. *Id*.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative. *Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 331 (3d Cir.1995). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *See Anderson*, 477 U.S. at 255.

Under Rule 56(e), the burden shifts to the nonmoving party as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255; *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249-50.

6

Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id*. at 248. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element. ***Celotex***, 477 U.S. at 323.

For the reasons set forth below, sufficient cause exists to deny the Motions of EDiS and Becker Morgan as a genuine issue of material fact exists as to whether EDiS and Becker Morgan were information providers in carrying out their contractual responsibilities to review and certify McDaniel's Payment Applications to insure that the Applications accurately reflected the progress and quality of the work, and as to whether EDiS and Becker Morgan negligently or knowingly provided false information knowing it would be relied upon by RLI.

**B.      RLI's Claims that Becker Morgan and EDiS are liable to it for negligent misrepresentation under the Restatement (2nd) of Torts Section 552 are not barred by the economic loss doctrine.**

EDiS and Becker Morgan contend that they are entitled to summary judgment because they are not information providers and, therefore, under Delaware law, not liable for negligent misrepresentation under Restatement (2nd) of Torts Section 552. This position reflects an incorrectly narrow reading both of Section 552 and Delaware law.

RLI does not dispute that its claims as to Defendants EDiS and Becker Morgan are for purely economic losses. However, a claim for purely economic losses can be maintained, even in the absence of contractual privity, where the facts of the case bring it within the purview of Restatement

(2nd) of Torts Section 552.  That Section, entitled "Information Negligently Supplied For The Guidance Of Others," provides in pertinent part as follows:

> "(1)    One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2)    Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered
>
>> (a)    by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows the recipient intends to supply it; and
>>
>> (b)    through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The courts in the State of Delaware have specifically adopted Section 552 with regard to Delaware Civil Practice.  ***Guardian Construction Company v. Tetra Tech Richardson, Inc.***, 583 A.2d 1378, 1386 (Del. Super. 1990).

Since that decision, a number of Delaware courts have construed the applicability of Section 552.  It is submitted that a review of the relevant case law indicates that the narrow construction urged by EDiS and Becker Morgan is not required or warranted.

In the unpublished case of the ***Council of Dorset Condominium Apartments v. Dorset Apartments***, 1992 WL 240444 (Del. Super.), plaintiff sued to recover the increased cost of repair of an apartment building which was to be converted to condominiums.  Moving defendants Diamond

8

McClune, Inc. and William J. Orr, both engineering concerns, had inspected the building and issued reports which seriously underestimated the cost of certain repairs to the property. In its decision, the court noted that liability for negligently supplying information required proof of two (2) elements. "The first is that the information supplied must be supplied to others in their business relations with third parties. The second is that the defendant must be in the business of supplying information." *Id.* at 2. Importantly, the court in ***Council of Dorset Condominium Apartments*** took note of the frequent situation where a business is engaged to provide multiple services, <u>including</u> the provision of information. In turning back the engineer-defendants' motion for summary judgment, the court stated: "Admittedly, the line can be fine, but engineers's business has dual purposes, one of which may shield them from liability, the other of which may expose them to liability. <u>This is no indication that the shield acts as a complete bar to all types of transactions.</u> *Id*. at 3 (emphasis added).

Both EDiS and Becker Morgan, in their Motions for Summary Judgment, would have the Court hold that because they were not engaged by IRSD solely to provide information, they can have no liability to RLI for negligent misrepresentation. Such a broad proposition is not supported by Delaware's case law.

It is respectfully submitted that where, as here, Defendants have been engaged to provide a number of services, at least one of which is purely the provision of information, and where the cause of action presented against those Defendants deals solely and exclusively with that information provider role, then Section 552 applies and the economic loss doctrine does not act as a bar. With respect to EDiS and Becker Morgan, Plaintiff's Complaint is based entirely on the false information in the Certificates of Payment resulting in overpayment to McDaniel. Principals of both EDiS and

Becker Morgan have admitted knowingly providing false information concerning the completeness and quality of McDaniel's work on some of the Certificates of Payment issued prior to the termination. *See* Deposition Transcript of Brad Hastings attached hereto as Exhibit "G" at pp. 117-128; Deposition Transcript of Theodore Dwyer attached hereto as Exhibit "F" at pp. 188-190.

It is noteworthy that EDiS cites the Delaware Supreme Court's decision in ***Danforth v. Acorn Structures, Inc.***, 608 A.2d 1194 (Del. 1992) in support of its arguments. Of particular interest is the fact that while the lower court in ***Danforth***, citing Illinois precedent, implied that a plaintiff proceeding under Section 552 would have to show that the defendant was "in the business of supplying information", s*ee **Danforth v. Acorn Structures, Inc.***, 1991 WL 215658 (Del.Super.) at 6, the Delaware Supreme Court, on plaintiff's motion for reargument, limited its holding to instances of "purely economic loss caused by a qualitatively defective product." ***Danforth***, 608 A.2d at 1201. Further, in a footnote the Court stated the following: "This decision is not intended to address, and does not extend to, the question whether the economic loss doctrine bars recovery of economic loss caused by professional malpractice in tort." *Id.* at Footnote 5.

More recently, in ***Christiana Marine Service Corp. v. Texaco Fuel Marine Marketing***, WL 1335363 (Del. Super. 2002 ), the Superior Court noted that the Delaware courts had thus far adopted a "narrow application and strict construction" of the Restatement (2nd) of Torts Section 552. Notably, the Court went on to question the continued vitality of that approach, particularly in light of evolving precedent from Illinois, whose caselaw previous Delaware courts had looked to for guidance on this issue. "A great many businesses exchange information as well as products and where the information supplied is merely ancillary to the sale of the product of service or in connection with the sale, defendant will not be found to be in the business of supplying information

10

for the guidance of others in their business dealings." ***Christiana Marine*** at 7, *citing **Tolan and Son, Inc. v. KLLM Architects, Inc.***, 719 NE2d 288, 296 (Ill. App. 3rd 1999).  The ***Christiana Marine*** Court found this to be "a fair interpretation of what it means to be in the business of supplying information for the purposes of a negligent misrepresentation claim." ***Christiana Marine*** at 7.  (Internal quotation marks omitted.)

However, in so doing, the court expressed doubt about the continued viability of the Delaware interpretation of Section 552, and made its reservations clear, stating the following:

> "While this Court has followed the earlier decisions of the Court that have addressed this issue, other jurisdictions have taken a more expansive view of Section 552, and clearly an argument can be made that the decisions from Illinois followed by Delaware are too limiting and fail to give full effect to the negligent misrepresentation exception.  <u>The question of when does a business cross the line into the world of "supplying information" or whether that requirement is mandated is anything but clear</u>.  If this matter reaches the Supreme Court, it is suggested that they address these questions and provide clear direction to litigants and the Court to what is now murky waters."

***Christiana Marine*** at 7.  (Emphasis added)

The ***Christiana Marine*** case did not reach the Delaware Supreme Court, and to date, the Delaware Supreme Court has not squarely addressed this issue.

Defendants in their Motions for Summary Judgment, as well as in their prior Joint Motion to Dismiss, have not only sought to have the Court continue this narrow construction of the negligent misrepresentation exception but ask the Court to narrow it further.

Defendants both point to the Superior Court's opinion in ***Millsboro Fire Company v. Construction Management Service, Inc.***, 2006 WL 1867705 (Del. Super.) in support of their

11

position.  The **Millsboro Fire Company** opinion highlights the unnecessarily narrow reading of earlier decisions that have been urged upon this Court by the defendants.  In that case, the Millsboro Fire Company filed a complaint against a general contractor which it had hired to make improvements on its property, alleging design and workmanship defects.  The contractor filed an Answer, Counterclaim and a Third-Party Complaint against, among others, entities involved in the design and construction management of the Project.  The architect and construction manager filed a Joint Motion for Summary Judgment on the Third-Party Complaint.  In its initial review of the status of the law, the Court noted that "for litigants in Delaware, the questions of when a business crosses the line into "supplying information" <u>and whether that requirement is mandated</u>, have not been definitely resolved."  **Millsboro Fire Company**, at 3, *citing* **Danforth v. Acorn Structures, Inc.**, *supra*.  (Emphasis added)  In so stating, the Court acknowledged the "murky waters" referred to four years earlier by the Superior Court in the **Christiana Marine** case.  Oddly, however, in light of this acknowledgment that the "information supplier" requirement might not even be mandated in Delaware, the **Millsboro Fire Company** Court in the very next paragraph stated "in Delaware, only surveyors and those expressly in the business of supplying information such as accountants, financial advisors and title searchers, can be liable in tort for purely economic losses."  *See* **Millsboro Fire Company**, at 3, *citing* **Guardian**, *supra.* at 1385; **Carello v. PricewaterhouseCoopers, LLP**, 2002 WL 145111, at 7 (Del. Super.); **Outdoor Technologies, Inc. v. AllFirst Financial, Inc.**, 2000 WL 141275 at 5 (Del. Super.); and **Ruger v. Funk**, 1996 WL 110072 at 10 (Del. Super.), respectively.

It is respectfully submitted that in this ruling the **Millsboro Fire Company** Court construed the Restatement exception to the economic loss doctrine in an unnecessarily narrow fashion.  As

noted above, the **Guardian** Court explicitly adopted Restatement (2nd) of Torts Section 552 while specifically noting that it was not stating a general rule which applied to all professions and all situations. **Guardian**, *supra* at 1386. Indeed, the **Carello, Outdoor Technologies** , and **Ruger** cases each cite the **Guardian** Court and note its adoption of Restatement (2nd) of Torts Section 552. *See* **Carello** at 4; **Outdoor Technologies** at 5; and **Ruger** at 10. None of these cases can be reasonably read to endorse the narrow limitation on Delaware's application of Section 552 urged by EDiS and Becker Morgan. Each is specifically limited to the particular facts before the Court.

In light of the foregoing, it is respectfully submitted that it is not necessary that a defendant be exclusively an information supplier under Delaware law, where, as here, the claim against it arises solely from that aspect of its work which is limited to producing information. As noted above, Defendants were each responsible for a number of tasks on the Project, but the Complaint of RLI against each is limited to its role in the certification of Payment Applications of McDaniel. No other aspect of these Defendants' work is challenged as a basis of liability by RLI, and as such, while Defendants' overall role on the Project may not have been purely the supplying of information, it is only that aspect of their responsibilities that forms the basis of RLI's Complaint. It is therefore respectfully submitted that the actions of EDiS and Becker Morgan in negligently certifying payment applications reflecting far greater work progress than had actually occurred and resulting in overpayment to the contractor prior to termination falls within the exception to the economic loss doctrine contained in Restatement (2nd) of Torts Section 552, and it is requested that the Court so rule.

13

**C.    RLI's Claims are not barred by the terms of EDiS or Becker Morgan's contracts in that RLI's claims are not based on privity of contract, but rather are based upon the exception contained in Delaware law set forth in Restatement (2nd) of Torts Section 552.**

In their Motions for Summary Judgment, EDiS and Becker Morgan both additionally claim that RLI's Complaint against them should be dismissed because their respective contracts with IRSD contain identical provisions disavowing the creation of third-party beneficiary status.   These arguments are without merit.   RLI is not claiming third-party beneficiary status under either agreement.   Counts IV and V of RLI's Complaint against EDiS and Becker Morgan, respectively, assert solely negligent misrepresentation under Restatement (2nd) of Torts Section 552.   Thus, the cases cited by EDiS and Becker Morgan, to the extent that they deal with contract claims, are irrelevant to this case.

RLI's recitation in its Complaint of the responsibilities of EDiS and Becker Morgan to inspect the work performed by McDaniel and provide information in the form of Certificates of Payment is essentially a statement of the standard of care in carrying out the particular information-providing function that both EDiS and Becker Morgan negligently breached.   As a result, the finding by the court in ***Millsboro Fire Company***, *supra*., that the contractor in that case was not an intended third party beneficiary of the architect or construction manager's contracts with the owner has no bearing on the Court's determination in this case, as no such third party beneficiary status is claimed here.   As such, RLI's claims are unlike the situation in ***Millsboro Fire Company***, where the defendant-contractor claimed third party beneficiary status under the design professional's agreement with the owner.   ***Millsboro Fire Company***, 2006 WL 1867705 at 4.

14

Similarly, EDiS' reliance in its brief on **Guardian Construction Company**, *supra*., is likewise misplaced. "Privity of contract is not an indispensable prerequisite to the recovery of economic damages in negligence cases such as this which falls within the parameters of Section 552 of Restatement (2nd) of Torts." **Guardian Construction Company v. Tetra Tech Richards, Inc.**, 583 A.2d 1378, 1386 (Del. Super. 1990).

The remaining cases cited by EDiS in its brief at page 8 are equally unavailing, as all dealt with contract or third party beneficiary claims and none implicate the exception contained within Restatement (2nd) of Torts Section 552. *See* **Treeline Garden Plaza LLC v. Berkley-Arm Inc.**, 2006 WL 1982532 (N.Y.Supp.); **Standard Electric Service Corp. v. Gahanna-Jefferson Public Schools**, 1998 WL 542696 (OhioApp. 10 Dist.); **Badiee v. Brighton Area Schools**, 695 NW.2d 521 (Mich.App. 2005); **VP Buildings, Inc. v. Norco Construction, Inc.**, 2005 WL 2037548 (Ed.La.); and **Insituform of North America Inc. v. Chandler**, 534 A.2d 257 (Del.Ch. 1987).

In addition, EDiS mischaracterizes Section 552 with regard to the elements of RLI's negligent misrepresentation claim. EDiS contends that RLI must show that EDiS specifically intended for RLI to rely upon the Certificates of Payment. *See* EDiS' Opening Brief at page 9. This argument misstates the limit of liability contained within Subsection 2 of Restatement (2nd) of Torts Section 552. Subsection 2 provides in pertinent part that "liability ... is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information <u>or knows the recipient intends to supply it</u>; and (b) through reliance upon it in a transaction that he intends the information to influence <u>or knows the recipient so intends</u> or in a substantially similar transaction."

15

Here, as noted above, EDiS and Becker Morgan, having been involved in the Project from its inception, knew that McDaniel was required to provide payment and performance bonds. The facts adduced in this case demonstrate conclusively that EDiS and Becker Morgan supplied incorrect information in certifying the extent of progress and quality of McDaniel's work on the Project for the claimed purpose of making additional monies available for subcontractors and suppliers of McDaniel. *See* Deposition Transcript of Brad Hastings attached hereto as Exhibit "G" at pp. 117-129. These actions continued after EDiS put RLI on notice of problems with McDaniel's performance of its scope of work, and continued even after RLI issued written direction to EDiS not to make further payments to McDaniel in July, 2004. *See* Exhibits "B" and "C." At the very least, a question of material fact exists as to whether EDiS and Becker Morgan knew that IRSD would supply RLI with their Certificates of Payment as part of its performance bond claim. EDiS and Becker Morgan can hardly claim ignorance that the information contained in their Certificates of Payment would become part of RLI's bond claim when they knowingly overstated the progress of McDaniel's work at the same time that they regularly informed, among others, IRSD and RLI of claimed deficiencies in that same work. Therefore, it is respectfully submitted that the Court should deny EDiS and Becker Morgan's Motions for Summary Judgment on this basis as well.

## V.    CONCLUSION

As set forth above, genuine issues of material fact exist with regard to the roles of EDiS and Becker Morgan in the provision of information on this Project in the form of Certificates of Payment for the contractor, McDaniel, and whether EDiS and Becker Morgan are suppliers of information for the guidance of others in the course of their business and professional employment as set forth

in Restatement (2nd) of Torts Section 552.  Therefore, the economic loss doctrine does not apply in this situation.

WHEREFORE, Plaintiff RLI Insurance Company, Inc. respectfully requests that this Honorable Court deny the Motions for Summary Judgment of Defendants EDiS Company and Becker Morgan Group, Inc.

**ABER, GOLDLUST, BAKER & OVER**

/s/   Perry F. Goldlust
PERRY F. GOLDLUST (DSB #770)
702 King Street, P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900
pgoldlust@gablawde.com
*Attorneys for Plaintiff RLI Insurance Company*

DATE:  October 18, 2007

**Of Counsel**:
HARRY R. BLACKBURN, ESQUIRE
JOHN E. SHIELDS, JR., ESQUIRE
THOMAS P. MULDOON, JR., ESQUIRE
HARRY R. BLACKBURN & ASSOCIATES, P.C.
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 985-0123

17