IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | C.A. No. 05-858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| INDIAN RIVER SCHOOL DISTRICT, | ) | |
| EDIS COMPANY, and | ) | |
| BECKER MORGAN GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S**
**REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)
jgreen@svglaw.com
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

**TABLE OF CONTENTS**      **PAGE**

| | | Page |
|---|---|---|
| I. | ARGUMENT IN REPLY | 1 |
| | A. No genuine issue of material fact exists | 1 |
| |    1. RLI nowhere contests the facts upon which IRSD bases its motion | 1 |
| |    2. RLI has the burden to present evidence, not just rhetoric, and has failed to do | 2 |
| |    3. RLI's deposition testimony creates no genuine issue of material fact | 3 |
| | B. RLI has failed to produce evidence sufficient to overcome its burden of proof on the issue of collusion and bad faith | 4 |
| | C. RLI's case citations do not fit the facts presented | 11 |
| | D. Any restriction express or implied in the bond that limits the broad indemnity for any damages arising from McDaniel's failure to comply with the contract is prohibited by Delaware's Procurement Code | 11 |
| | E. RLI Offers No Opposition to Striking its Defense that the Construction Contract Required Seven Days' Notice to McDaniel Before Termination | 14 |
| | F. RLI Consents to Judgment in Favor of IRSD on Counts II and II | 14 |
| II. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

### CASES          PAGE

*Am-Pro Protective Agency, Inc. v. U.S.*, 281 F.3d 1234 (C.A. Fed. 2002)    9-10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257,
106 S.Ct. 2505, 91 L.Ed 2d 202 (1986).    2, 9

*Henderson v. Clark*, 40 Del. 441, 13 A.2d 445, 447 (Del. Super 1940)    9

*Hudak v. Procek*, 806 A.2d 140, 147 (Del.Super. 2002)    9

*Jones v. McCarnan*, 1993 WL 19675 ((Del.Super.)    8

*North American Spec. Ins. Co. v. Chichester School District*,
2000 WL 1052055 (E.D. Pa.)    4

*Phillips v. Board of Education of the Smyrna School District*,
330 A.2d 151 ((Del.Super.1974)    8

*Ramada Dev. Co. v. U.S. Fidelity & Guaranty Co.*,
626 F.2d 517, 522 (6th Cir. 1980)    5

*Swinger v. Board of Education of Sussex County Vocational-
Technical School District*, 1999 WL 167777 (Del.Super.)    9

### STATE STATUES      PAGE

29 Del. C. § 6962(d)(9)(e)    11

29 Del. C. § 6927(f)    7, 11

29 Del. C. § 6962(d)(9)(b)    12

29 Del. C. § 6927(e)    12

29 Del. C. § 6927(d)    13

73 Delaware Laws 2002, chapter 428, § § 1, 2    13

75 Delaware Laws 2005, chapter 88, § 16    13

| **FEDERAL RULES** | **PAGE** |
|---|---|
| Federal Rule of Civil Procedure 56(e) | 2 |

[rest of page blank]

In further support of its motion for summary judgment, defendant Indian River School District offers this argument in reply:

## I. ARGUMENT IN REPLY

### A. No genuine issue of material fact exists

#### 1. RLI nowhere contests the facts upon which IRSD bases its motion

The factual basis for IRSD's motion for partial summary judgment on Count I is simply this:

- under the terms of the performance bond and contract, the Architect and the Construction Manager evaluated the progress and quality of McDaniel's work and certified the amounts to be paid on monthly payment applications

- IRSD was required to make payments to McDaniel in the amounts certified by the Architect and the Construction Manager, and

- IRSD made payments in the amounts certified, as required by the contract and bond.

Nowhere in its opposition does RLI dispute any of these simple, straight-forward facts.[1] Instead, RLI argues that IRSD acted in bad faith and colluded with the other defendants by *knowingly* making payments for work that was not completed or not properly completed and that such payments prejudiced the surety. RLI has failed, however, to present any **facts** from which a reasonable jury could conclude that any such bad faith, collusion or knowingly improper payments occurred, or that RLI suffered any prejudice

---

[1] RLI did not file a Counter-Statement certifying that genuine issues of material fact exist and setting forth the material facts that the party contends are disputed, as contemplated by Your Honor's standard Memorandum Order on summary judgment procedures. Your Honor did not issue that Memorandum Order in this case, but it is identified and available on the Court's website as one of Your Honor's standard case orders.

from such payments. No genuine issue of fact exists, and summary judgment must be granted as requested.

### 2. RLI has the burden to present evidence, not just rhetoric, and has failed to do so

RLI itself notes that, as the non-moving party, RLI is required by Rule 56(e) to come forward with evidence sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed 2d 202 (1986). RLI correctly observes: "an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" *See RLI Brief, p. 7, citing Anderson*, 477 U.S. at 249-50.

While correctly stating the standard, RLI fails to meet it. One would expect to find the factual support for a party's position in its Statement of Facts, but that section of RLI's Brief fails to cite any evidence in the record other than the contract documents. Elsewhere in its Brief, RLI's only evidentiary offering to stave off judgment consists of four excerpts from deposition testimony. Yet RLI's Brief fails to cite to any single line of testimony from any of these excerpts, and relies instead on broad and inaccurate generalizations about what the witnesses said, without any page or line references, or even providing the context for the testimony or the exhibits being discussed. Unsupported statements in a Brief are not evidence; nor are excerpts from testimony that lack any context from which the testimony may be correctly understood. RLI evidently expects the Court to sift through the excerpted testimony to glean some understandable testimony that might support RLI's factual allegations. RLI has wholly failed to meet its burden of establishing and presenting any genuine issue of fact.

### 3. RLI's deposition testimony creates no genuine issue of material fact

When one undertakes the task of reviewing the excerpted testimony to determine whether it supports RLI's broad statements of what it hopes to prove, one comes away with the realization that RLI's claims are wholly unsupported. In context, the excerpted deposition testimony in no way creates a genuine issue of material fact.

RLI's exhibits B and C excerpt the deposition testimony of Theodore Dwyer, the president of the construction manager, EDIS, and Brad Hastings, the principal-in-charge for the architect, Becker Morgan Group, respectively. RLI offers these excerpts to show that the architect and construction manager knowingly approved overpayments or advance payments to McDaniel. The excerpts submitted by RLI do not show the context for the testimony or the exhibit being discussed. However, the preceding pages of testimony make it clear that both deponents were discussing deposition exhibits Weer 11 and 11A, which comprise McDaniel's application for payment no. 24. Copies of the preceding testimony identifying the exhibits are attached as Exhibits "1" (the Dwyer transcript, see page 182, lines 21 and 22) and exhibit "2" (the Hastings transcript, see page 107, lines 3-4). A copy of Weer 11 and 11A is attached as Exhibit "3." As shown on exhibit "3", the construction manager and the architect certified a payment of $106,400 on this payment application in mid-September 2004.

Even assuming, for argument's sake, that EDIS and Becker Morgan knew that the percentages of completion shown on this application for payment were inaccurate, the excerpted testimony does not establish any genuine issue of fact for trial, for several reasons:

3

- The excerpted testimony concerns only one payment, and one certificate for payment of one payment application, made at one specific time (September 2004). None of the other twenty-three payments to McDaniel are in any way addressed in the excerpted testimony. No testimony is offered to prove that any of the other payment applications were improperly certified, much less knowingly so.

- The Dwyer excerpt reveals that this 24th payment was made by joint check to McDaniel and one of its unpaid suppliers, Baltimore Air Coil, who refused to ship an ice storage system to the jobsite unless and until they were paid. ***See Dwyer excerpt, Exhibit B to RLI Brief, at p. 187, lines 10-24.*** As RLI itself acknowledges, establishing entitlement to a *pro tanto* discharge of its obligations under the performance bond requires not only proof of a material departure from the contract's payment terms, but also proof that the surety suffered prejudice as a result of an improper payment. ***See RLI Brief, pp. 13-14.*** A payment such as this one, that goes to a supplier actually furnishing equipment needed to complete the bonded contract, in no way prejudiced RLI. ***See North American Spec. Ins. Co. v. Chichester School District,*** 2000 WL 1052055 (E.D. Pa.), p.13, ***quoted in RLI's Brief, p. 14.*** By paying a supplier for equipment necessary to complete the contract, this payment furthered the surety's interest in two ways: (1) it furthered the surety's interest in getting the contract completed, which is its obligation under the performance bond; and (2) it furthered the surety's interest in paying suppliers who furnish labor or material used to further the contract's completion, which is its obligation under its labor and material payment bond. Payments like

4

this one that further the surety's interests benefit, rather than prejudice, the surety. *See Ramada Dev. Co. v. U.S. Fidelity & Guaranty Co.*, 626 F.2d 517, 522 (6th Cir. 1980), *cited in RLI's Brief, p. 14.*

- Prior to this payment, RLI expressly consented to IRSD making such a joint payment to unpaid McDaniel suppliers. On August 17, 2004, RLI's attorney wrote to counsel for EDIS that such joint payments were acceptable to RLI, stating that "notwithstanding my client's previous directive to hold distribution of any funds, we agree with the issuance of the joint checks at this point and authorize their release." A copy of this letter, along with pages 137-138 of the deposition testimony of David Berry, RLI's senior bond claim analyst, in which he acknowledges that the attorney was authorized to make that statement on RLI's behalf (page 138, lines 16-19), is attached hereto as Exhibit "4." On September 9, 2004, RLI confirmed by letter to EDIS its understanding that a payment would be made by joint check to Baltimore Air Coil. A copy of this letter, from RLI's consultant, Louis Baldassare of Cashin, Spinelli & Ferretti, along with pages 150-151 of his deposition testimony, in which he acknowledges the joint check payment (page 151, lines 6-18), is attached hereto as Exhibit "5."$^2$ Thus, in addition to suffering no prejudice because the payment went to an unpaid supplier for needed equipment, RLI cannot complain about this payment because RLI knew it was being made and consented to it.

---

$^2$ As Mr. Baldassare notes (page 151, lines 19-23), only part of the amount certified went to Baltimore Air Coil. After paying the joint check amount, there was a balance of $10,400 that was never paid to anyone. See footnote 1 to paragraph 5 of the Miller Declaration.

5

RLI's exhibit "D" excerpts the deposition testimony of Greg Weer, the supervisor of buildings and grounds for IRSD.[3] RLI acknowledges that this testimony shows only that "in 'hindsight' he knew many things were not done by McDaniel." *See RLI Brief, p. 8*. The excerpted testimony is irrelevant to this motion because there is nothing offered that correlates Mr. Weer's knowledge of "things not done by McDaniel" with the appropriateness of the payments made to McDaniel. For example, the excerpt from pages 68 to 70 of the transcript shows that in the first half of 2004, McDaniel sometimes worked out of sequence and sometimes did not pay suppliers on time. Nothing is offered, however, to show that the payments to McDaniel were inappropriate based upon this knowledge. The only testimony about payments to McDaniel appears on the last five pages of exhibit "D," which are pages 178 to 183 of the deposition transcript. This testimony concerns **only** McDaniel payment application no. 24, the same one discussed in the Dwyer and Hastings excerpts. Mr. Weer makes it clear that his state of mind back at the time of that payment was only that the percentage of work that McDaniel had completed was "less than 100%." *See page 179, lines 13-15 of RLI's Exhibit "D."* Mr. Weer further testified that today, "knowing what I know since August 31st of 2004, there was definitely less than 80% done." *See pages 179 lines 21-24 and page 180, lines 1-2 of RLI's Exhibit "D."* Neither of these statements establish in ay way that IRSD knowingly consented to overpayments to McDaniel. What Mr. Weer knows today is not probative of what he knew then. Moreover, regardless of what Mr. Weer knew when this 24th payment application was processed, this 24th payment (as discussed above) went to

---

[3] In fairness to Mr. Weer, it should be noted that he reserved his right to read and correct his transcript, and in doing so made some corrections to the transcript, including some that correct the excerpted transcript included in RLI's exhibit "D." RLI should have presented the corrected testimony. Mr. Weer's corrections are attached as Exhibit "6" to this Brief.

6

one of McDaniel's unpaid suppliers to obtain needed equipment, with RLI's consent, and in no way prejudiced RLI.

RLI's exhibit "F" excerpts the deposition testimony of Joseph Zimmer, Jr., the President of the contracting firm of Joseph M. Zimmer, Inc. IRSD hired his firm to complete certain portions of McDaniel' work. This testimony has no bearing on IRSD's motion because:

- RLI contends that the testimony shows that IRSD violated the bond in the time and manner it hired Zimmer. RLI claims that under the terms of the bond, it had the right to determine the process for selecting the completion contractor. ***See RLI Brief, p. 16.*** Even if the bond contains such a limitation or restriction, no such limitation or restriction is found in section 6927 of Delaware's State Procurement Law. As discussed in IRSD's opening brief and in section I. D of this Brief, this section requires the surety to broadly indemnify the school district from all costs incurred due to the contractor's failure to comply with the terms of the construction contract and voids limitations restrictions not contained therein. Accordingly, the defense has no legal merit.

- The action IRSD took with respect to Mr. Zimmer's firm was well founded under the terms of the construction contract. On August 27, 2004, EDIS notified McDaniel and RLI that pursuant to paragraph 2.4.1 of the general conditions and paragraph 2.4 of the supplementary general conditions, IRSD would be supplementing McDaniel's work force in certain areas of the building due to McDaniel's failure to timely complete certain work in those areas. A copy of this letter is attached hereto as Exhibit "7." As the letter states: "[t]his is not a

7

termination of your contract. You are required to diligently pursue the completion of work in other areas of the building and pump house." Thus, RLI's supposed defense has no basis in law or fact.

- The Zimmer excerpted testimony is irrelevant to main issue before the Court: whether IRSD is entitled to judgment on RLI's defense that IRSD's payments to McDaniel were improper because such payments were made, as required by the contract's terms, in the amounts certified by the architect and construction manager. The manner of hiring Zimmer, and the extent of any payments to Zimmer, are simply immaterial to the propriety, under the terms of the contract, of IRSD's payments to McDaniel.

As the foregoing demonstrates, RLI has not come forward with any evidence to show any genuine issue of material fact. IRSD is entitled to the summary judgment it has requested.

### B. RLI has failed to produce evidence sufficient to overcome its burden of proof on the issue of collusion and bad faith

IRSD is a public school district and agency of the State of Delaware. There is a legal presumption under Delaware law that public entities and officials perform their duties in good faith. *Jones v. McCarnan,* 1993 WL 19675 ((Del.Super.) (employee's failed to come forward with sufficient evidence to defeat summary judgment in favor of local police department and numerous county officers and entities on employee's claim of conspiracy, in light of presumption of good faith in favor of public entities); *Phillips v. Board of Education of the Smyrna School District,* 330 A.2d 151 ((Del.Super.1974) (insufficient evidence to overcome presumption of good faith on claim that school refused to provide former employee with an unbiased and truly impartial due process

8

hearing prior to termination); see also *Henderson v. Clark*, 40 Del. 441, 13 A.2d 445, 447 (Del. Super 1940); *Swinger v. Board of Education of Sussex County Vocational-Technical School District*, 1999 WL 167777 (Del.Super.).

Under Delaware law, the burden of proof required to defeat a legal presumption is clear and convincing evidence. *Hudak v. Procek*, 806 A.2d 140, 147 (Del.Super. 2002). Delaware holds that the clear and convincing standard means "to prove something that is highly probable, reasonably certain, and free from serious doubt." Id. Federal substantive law also recognizes the presumption that public officials perform their duties in good faith. *Am-Pro Protective Agency, Inc. v. U.S.*, 281 F.3d 1234 (C.A. Fed. 2002). Under federal law, an opponent of the presumption who alleges fraud or other quasi-criminal conduct on the part of the official, and therefore that the official failed to act in good faith, is required to overcome the presumption by clear and convincing evidence.[4]

When ruling on a motion for summary judgment, the court must view the evidence opposing summary judgment through the applicable evidentiary burden. *Anderson, supra,* at 252-255.

The necessity for clear and convincing evidence on particular claims elevates the burden a party must meet in opposition to a motion for summary judgment. *Id.*; *Am-Pro* at 1241. In order to raise a material issue of fact sufficient to overcome the presumption in the summary judgment context, the court must find that the opponent's evidence would convince a reasonable fact finder, by clear and convincing evidence, that the government failed to act in good faith. *Am-Pro* at 1241.

---

[4] IRSD did not locate any Delaware state law which made a distinction between general allegations that a public official or entity failed to act in good faith in the performance of its duties, as distinguished from allegations of fraud or other quasi-criminal conduct in performance of the duties. However, IRSD believes that the federal standard, which is less stringent than Delaware law, is appropriate in this instance.

*Am-Pro* also discussed what evidence is necessary to meet the clear and convincing standard of the government's failure to act in good faith. In order to prove bad faith on the part of the government, a plaintiff must show evidence of some specific intent to injure him, that the government's actions were motivated alone by malice, part of a proven conspiracy to get rid of plaintiff or designedly oppressive. *Am-Pro* at 1240-1242. The absence of clear and convincing evidence of bad faith will fail to raise a genuine issue of material fact sufficient to defeat summary judgment. *Am-Pro* at 1243.

In the instant case, RLI alleges, in opposition to IRSD's motion for summary judgment to strike RLI's defense based on overpayment to McDaniel, that "there is clearly *collusion* between IRSD, EDIS [the Construction Manager] and BMG [the Architect]"; and that IRSD is not entitled to rely on the principle of law that when an owner makes an overpayment to a contractor, based on an architect's certification, the surety is not excused upon the contractor's default because IRSD's reliance on the certifications was *not in good faith. See RLI's Brief, P. 10* (emphasis added). As RLI has alleged collusion, quasi-criminal conduct, and failure of IRSD to exercise good faith in performing its duties, in contravention of the presumption of good faith, RLI must come forward with clear and convincing evidence of the collusion and bad faith.

In its response to IRSD's motion, RLI cites nothing to support the alleged "clear" collusion and bad faith. The allegation that IRSD knew it was making payment for work not completed is devoid of any citation to evidence to support it. While RLI does attach portions of the deposition transcripts of three witnesses, it fails to cite where in the testimony these witnesses allegedly testified that IRSD knew it was paying for work not performed. An examination of the testimony does not make any clearer what portions

thereof RLI relies upon. RLI has failed to offer any evidence, let alone clear and convincing evidence, that IRSD colluded with the Architect and Construction Manager or acted in bad faith with respect to payment to McDaniel. In addition, RLI has failed to allege or offer any support indicating that it is more probable than not that IRSD had a specific intent to injure RLI, or that its actions were motivated alone by malice, part of a proven conspiracy to get rid of RLI or were designedly oppressive.

### C. RLI's case citations do not fit the facts presented

The cases cited by RLI in section V.1 of its Brief are inapplicable to this case because RLI has not presented any evidence of bad faith, collusion or bad faith in connection with IRSD's payments to McDaniel that operated to prejudice the surety. IRSD was required to make payments based upon the certificates for payment issued by the construction manager and the architect, and it did so. Had IRSD failed to make the payments in the amount certified, it would have been in breach of contract and RLI would, no doubt, now be claiming that IRSD's failure to make the payments in the amounts certified had discharged its obligations under the bond.

### D. Any restriction express or implied in the bond that limits the broad indemnity for any damages arising from McDaniel's failure to comply with the contract is prohibited by Delaware's Procurement Code

RLI's argues that Delaware's State Procurement Act nowhere prohibits any defenses that RLI has asserted in Count I of the Complaint. *See **RLI Brief, p. 17.*** RLI's argument is ill-founded. To the contrary, the State Procurement Law, in 29 Del. C. § 6962(d)(9)(e)[5] and 29 Del. C. § 6927(f), specifically prohibits a surety asserting as a defense that the performance bond contains a "limitation or restriction" not provided for

---

[5] Section 6927(f) and section 6962(d)(9)(e) contain identical provisions on the cited point. IRSD incorrectly cites this section in its opening brief. We cited it as 6927(d)(9)(f).

11

in these sections of the Code. Neither section names any specific "limitations or restrictions" that a surety may include in the bond, other than limitations on the time to sue. Section 6962(d)(9)(b)[6] and section 6927(e) both require the surety to indemnify the school district from "all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract." RLI's arguments that this indemnity provision somehow protects the surety, instead of the government, is completely strained and out of keeping with the clear language and obvious intention of the statute. The fair reading of the statute is that since the applicable sections makes the surety's liability co-extensive with that of the contractor under the construction contract, the surety may assert defenses that arise from the terms of the construction contract. Any provision of the performance bond that would "limit or restrict" that liability is prohibited.

The summary judgment motion targets three specific categories of allegations that RLI includes in Count I: (1) that IRSD had a duty to arrange a pre-default conference with RLI and McDaniel; (2) that IRSD had a duty to notify RLI about problems with McDaniel's performance of the work; and (3) that IRSD had a duty to withhold payments that might impair RLI's "collateral" even when such payments were certified as due under the terms of the construction contract. The first allegation category arises from paragraph 3.1 of the performance bond, which expressly requires IRSD, as obligee, to "attempt to arrange" such a conference. Since the applicable statutory sections nowhere provide for such a requirement, the surety may not assert a defense based upon this restriction. The other two allegation categories are based upon supposed duties – the

---

[6] Section 6927(e) and section 6962(d)(9)(b) contain identical provisions on the cited point. IRSD incorrectly cites this section in its opening brief. We cited it as 6927(d)(9)(e).

12

duty to notify the surety of problems and to withhold payments – that are not expressly found in the performance bond terms. If they were, they would be equally prohibited with the pre-default conference because the applicable statutory sections do not provide for them. If these alleged duties are "implied" in the performance bond, then they should be prohibited by statute to the same extent as if they were express "limitations or restrictions." It would be a strange statutory construction, indeed, that would permit an "implied" restriction when an "express" restriction would be prohibited. If the duties are neither express nor implied in the performance bond, then they have no basis at all since there is no other contract between the parties.

RLI claims that, since IRSD selected the bond form, IRSD cannot complain that the bond does not comply with the statute. In support of this argument, RLI cites a provision of 29 Del. C. § 6927(d) that does not apply because **it did not exist in August, 2002 when this project was bid.** Section 6927(d)(3), which provided for a standard bond form designated by a Delaware state department, was added in 2002 by Senate Bill 416 (*see* 73 Delaware Laws 2002, chapter 428, §§ 1, 2) and became effective on October 1, 2002.[7] Senate Bill 416 is attached as Exhibit "8." A copy of the letter dated September 27, 2002 that IRSD received from the State announcing the change and providing the new, State-approved, bond forms, is attached hereto as Exhibit "9." The AIA performance bond form issued by RLI was not a state-designated bond form, and none was required at that time. The bond used did, however, expressly provide that if it

---

[7] Under Senate Bill 416, the Department of Administrative Services designated the bond forms; in 2005 the law was changed to make the Office of Management and Budget the designating agency. *See* 75 Delaware Laws 2005, chapter 88, § 16, eff. July 1, 2005. The same changes were made on the same dates in 2002 and 2005 to section 6962.

13

was issued to comply with a public procurement law, it would be deemed to conform to the statutory requirements. The bond expressly states in Paragraph 11:

> When this bond has been furnished to comply with statutory or other legal requirements in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirements shall be deemed incorporated herein, The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

Thus, whether as a matter of contract interpretation or statutory construction, any restriction not found in the Delaware Procurement Code must be deleted from the performance bond.

### E. RLI Offers No Opposition to Striking its Defense that the Construction Contract Required Seven Days' Notice to McDaniel Before Termination

In pages 19-20 of its opening Brief, IRSD argued that RLI's defense that the contract required a seven day notice of default to McDaniel should be stricken because the default termination provision had been modified to delete the notice requirement. RLI nowhere opposes, or even mentions this issue in its Brief. Accordingly, IRSD asks that the Court enter judgment in IRSD's favor on this issue, striking this defense and the applicable portions of paragraphs 14-18, 30 and 37(b) of the Complaint.

### F. RLI Consents to Judgment in Favor of IRSD on Counts II and II

RLI admits in its Brief that that judgment should be entered in favor of IRSD on Counts II and II of its Complaint (*see RLI Brief, pp. 2, 9 and 20*), and IRSD accordingly requests that the Court do so.

## II.   CONCLUSION

For the reasons set forth in its Motion, opening Brief and this Reply Brief, IRSD respectfully requests that the Court enter judgment:

(1) striking the allegations of Count I to the extent in that count RLI claims that it is discharged from its obligations under the performance bond by reason of IRSD's allegedly improper payments to McDaniel for work not performed and/or performed in a deficient manner. IRSD asks that the Court find that under the terms of the performance bond and contract, the Architect and the Construction Manager evaluated the progress and quality of McDaniel's work and certified the amounts to be paid on monthly payment applications, that IRSD was required to make payments to McDaniel in the amounts certified by the Architect and the Construction Manager, and that IRSD did so.  IRSD asks that the Court strike all defenses or claims asserted by RLI based on alleged improper payments, including paragraphs 20(e), 20(f), 20(g), 20(h), 20(m), 21, 22, 26 and 37(a), 37(g) and 37(j) and prohibit RLI from offering any evidence at trial in support of any such claim or defense;

(2) striking the allegations of Count I to the extent in that count that RLI claims that it is discharged from its obligations under the performance bond by reason of any failure by IRSD to notify RLI about the status of McDaniel's work, or to arrange a conference with RLI and McDaniel prior to making demand under the performance bond.  IRSD asks that the Court strike all defenses or claims asserted by RLI based on these allegations, including paragraphs 16, 20(e), 20(f), 20(g), 20(h), 20(m), 21, 22, 26, 37(a), 37(d), 37(g) 37(j) and prohibit RLI from offering any evidence at trial in support of any such claim or defense;

(3) striking the allegations of Count I to the extent in that count that RLI claims that it is discharged from its obligations under the performance bond by reason of

any failure by IRSD to provide a pre-termination notice of default to McDaniel. IRSD asks that the Court strike all defenses or claims asserted by RLI based on these allegations, including applicable portions of paragraphs 14-18, 30 and 37(b) and prohibit RLI from offering any evidence at trial in support of any such claim or defense; and

(4) entering judgment is entered in favor of IRSD and against RLI on counts II and III of RLI's complaint.

Respectfully Submitted,

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)
jgreen@svglaw.com
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600

Attorneys for Defendant and
Counterclaimant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322