## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **RLI INSURANCE COMPANY** : | |
| : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION** |
| **vs.** : | **NO. 05-858** |
| : | |
| **INDIAN RIVER SCHOOL DISTRICT,** : | |
| **EDiS COMPANY and** : | |
| **BECKER MORGAN GROUP, INC.** : | |
| : | |
| **Defendants.** : | |

### PROPOSED PRETRIAL ORDER

I.    STATEMENT OF THE NATURE OF THE ACTION

RLI Insurance Company (hereinafter "RLI") filed its Complaint on December 12, 2005 in

the United States District for the District of Delaware as Civil Action No. 05-858 to clarify its rights

and remedies under a Bond it issued as surety for the Indian River School District (hereinafter

"IRSD"), as obligee, and McDaniel Plumbing & Heating, Inc. (hereinafter "McDaniel" or "MPH"),

as principal, and to be granted declaratory relief from its obligations under the Bond.  Named in the

Complaint as Defendants are the school district, IRSD, the construction manager,  EDiS Company

(hereinafter "EDiS"), and the architect, Becker Morgan Group, Inc.  (hereinafter "Becker Morgan"

or "BMG").

The action arose out of RLI's denial of IRSD's performance bond claim asserted following

the termination of RLI's principal, McDaniel.  RLI's Complaint (D.I. 1) seeks a declaration from

the Court that it is discharged from fulfilling its obligations under the performance bond (Count I)

and asserts claims against IRSD for negligent misrepresentation (Count II), and breach of fiduciary

duty (Count III). RLI has agreed to the dismissal of Counts II and III against IRSD. The Complaint also includes tort claims for misrepresentations against EDiS and Becker Morgan. IRSD filed a counterclaim (D.I. 11) asserting that RLI failed to complete the work after the default of McDaniel, in violation of the terms of the performance bond.

## II.    BASIS OF FEDERAL JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there exists complete diversity of citizenship between Plaintiff RLI and all Defendants, and the amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

## III.    ADMITTED FACTS THAT REQUIRE NO PROOF

On or about August 28, 2002, RLI's principal, McDaniel, entered into a construction contract (hereinafter the "Contract") with IRSD, a public school district, for the performance of certain mechanical, plumbing and related work under Contract SC-B14 at Sussex Central High School located in Georgetown, Delaware (hereinafter the "Project"). The original contract sum was $4,335,500.00. The construction was publicly bid and awarded to several prime contractors, each performing the work of a separate trade. EDiS Company of Wilmington, Delaware was hired by IRSD to be the construction manager and Becker Morgan Group, Inc. of Dover, Delaware was hired by IRSD to be the Project architect.

On or about September 5, 2002, RLI, as surety, and McDaniel as principal, delivered a performance bond and a labor and material payment bond No SSB 365 837 to IRSD, as obligee, for McDaniel's work on the Project. McDaniel commenced work on the Project pursuant to drawings

and specifications prepared and issued by the Architect.  Other prime contractors, i.e., electrical and general, also proceeded in their own endeavors at or about the same time to construct the school building.

During the course of McDaniel's work, IRSD made periodic progress payments to McDaniel. On October 11, 2004, IRSD terminated McDaniel's employment under the Contract.  IRSD made a demand upon RLI, as surety, to complete and correct McDaniel's scope of work.  On November 12, 2004, RLI denied any liability under the performance bond.

IRSD paid McDaniel (either by check, direct deposit, or joint check with its subcontractors and suppliers) out of monies appropriated from the State of Delaware, the sum of $4,041,863.  The contract balance is $308,608, calculated as follows:

| | |
|---|---|
| Original Contract Sum | $4,335,500 |
| Change Orders | $    14,971 |
| Adjusted Contract Sum | $4,370,471 |
| Payments | ($4,041,863) |
| Contract Balance | $  308,608 |

## IV.    STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED

### A.    As contended by RLI:

During the course of the Project, the construction manager and architect certified certain of McDaniel's work as complete when it was not, and over valued pay application approvals for work that had not yet been performed, while its client was intending to terminate McDaniel.  In 2004, IRSD became aware that some of the payments being issued to McDaniel violated its contract documents and IRSD payment policies.  Despite this, IRSD continued to make these payments to McDaniel.

The improper payments to McDaniel inured to the financial detriment of the surety, RLI, when IRSD requested that RLI pay certain bond claims and its alleged damages. As a result of the overpayments by IRSD, RLI has incurred substantial loses under the bond, and its rights under the bond have been denied.

By failing to comply with payment provisions of the contract as set forth above, IRSD caused RLI to incur damages including, but not limited to, depriving it of its rights under the performance bond by impairing its collateral in knowingly and voluntarily making advanced payments to McDaniel. Such actions by IRSD prejudiced RLI, as RLI relied upon the good faith expectation that IRSD would perform its obligations under the contract documents when RLI issued the bond for the project.

EDiS and Becker Morgan, acting as providers of information, provided false and misleading information regarding percentages of completion in their certifications of pay applications and certifications that work conformed to the plans and specifications, all to the detriment of RLI.

By its failure to comply with its own contractual obligations, IRSD issued payments to McDaniel for more than $340,000.00 in excess of the value of the work performed by McDaniel (overpayments) or for work that was never performed (premature payments). IRSD also issued payments out of the contract funds for the project which were earmarked for McDaniel and its surety, RLI, to other contractors, in particular, Joseph M. Zimmer, Inc. (hereinafter "Zimmer"), who worked at the Sussex Central High School completing or performing work which had not been completed by McDaniel or which was redone by Zimmer.

None of the overpayments to McDaniel in excess of the value of the work performed and for work never performed were made with the knowledge and/or consent of RLI. Since IRSD misused

4

the contract funds it substantially impaired RLI 's rights in the collateral.  RLI was therefore deprived of its collateral and its right to use the contract balances to complete the project.  As a result, RLI is entitled to be discharged of all or certain obligations to perform under the bond.  In the event that RLI is determined not to be dismissed from its bond obligations, it is, at the least, entitled to set-offs and/or contribution from the defendants.

**B.**    **As contended by IRSD**:

IRSD contends that the issues of fact that remain to be litigated, should its pending motion for summary judgment be denied in whole or in part, are whether and to what extent:

- McDaniel failed to perform and complete its work in accordance with the terms of the construction contract.

- IRSD properly terminated McDaniel's employment under the construction contract.

- RLI breached its obligations under the performance bond and applicable law by denying liability under the performance bond and refusing to complete the work under the construction contract.

- IRSD suffered damages due to RLI's breach of the performance bond, including the cost of correcting defective work and completing the contract, additional legal, design professional and delay costs resulting from McDaniel's default and from RLI's refusal to complete, and actual damages caused by delayed performance of the contract, together with interest at the legal rate from November 12, 2004 and legal fees from through trial.

- IRSD complied with the terms of the performance bond and applicable law in its dealings with RLI.

- IRSD complied with the terms of the construction contract in making payments to McDaniel, which required IRSD to make monthly payments to McDaniel in the amount certified by the Architect, Becker Morgan, and the Construction Manager, EDiS, on a Certificate for Payment form.

- If IRSD materially deviated from the terms of the construction contract in making payments to McDaniel, RLI suffered no prejudice as the result of any such payment.

- All payments made by IRSD under the construction contract were in good faith and without fraud or collusion.

- RLI had prior knowledge of, and consented to, payments by IRSD to McDaniel or its subcontractors and suppliers for labor and materials furnished in connection with the performance of the construction contract.

- IRSD's actions to complete the work were in accordance with the construction contract, performance bond and applicable law.

- IRSD did not fail to mitigate its damages.

**C.**     **As Contended by EDiS**:

- Whether and to what extent EDiS made any misrepresentations or supplied false information.

6

- Whether and to what extent RLI reasonably relied on any such alleged misrepresentation by EDiS.

- Whether and to what extent EDiS made any representations with the intent that they be relied upon by RLI, or a group of entities of which RLI is a member.

- Whether and to what extent RLI suffered any pecuniary loss directly caused by reliance on misrepresentations by EDiS.

- Whether EDiS performed its obligations in accordance with the contract and the applicable standard of care.

- RLI had knowledge of, and consented to, payments by IRSD to McDaniel and its subcontractors and suppliers.

**D.**    **As contended by BMG**:

BMG contends that the issues of fact that remain to be litigated, should its pending motion for summary judgment be denied in whole or in part, are whether and to what extent:

- BMG complied with the terms of its contract with IRSD in performing its review of the quality and progress of MPH's work on the Project.

- BMG complied with the terms of its contract with IRSD in certifying Applications for Payment submitted by MPH.

- BMG conformed to the architectural standards of skill, care and competence which are adhered to by architects who are in good standing in the community and as it was required by its contract.

7

- BMG made any representations with the intent that they be relied upon by RLI, or a group of entities of which RLI is a member.

- BMG knew information it provided to IRSD regarding the progress and quality of work of MPH would be disseminated to RLI.

- BMG knew information it provided to IRSD regarding the progress and quality of work of MPH would be disseminated by IRSD with the intent on the part of IRSD to influence a transaction with RLI.

- RLI relied upon any representation made by BMG.

- RLI's reliance, if any, was justified or reasonable.

- RLI suffered any damages as a result of representations BMG made to IRSD concerning the progress and quality of MPH's work on the Project.

## V.    STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

### A.    As contended by RLI:

RLI contends that its obligations under the bond are ended pursuant to common law due to IRSD's material breach of the contract terms. *United States v. Reliance Ins. Co.*, 799 F2d 1382, 1385 (9th Cir 1986). RLI further contends that EDiS and Becker Morgan are liable to it for damages pursuant to the Restatement (Second) of Torts §552 due to their negligent or deliberate provision of false information in certifying some of McDaniel's pay applications, despite their knowledge that the work had not progressed as certified.

Plaintiff also seeks reimbursement of its payments made to payment bond claimants because it acted based on untrue and erroneous information it received from IRSD and its agents.

IRSD, EDiS and BMG have all denied liability to RLI on its claims.  The Defendants have not asserted any cross-claims against each other due to their entering into an agreement not to sue one another.  (Joint Defense Agreement).

**B.**    **As contended by IRSD:**

IRSD contends that the issues of law that remain to be litigated, should its pending motion for summary judgment be denied in whole or in part, are whether:

- As surety, RLI was bound by the terms of the construction contract. (***Authority:*** 29 Del. C., §6962(d)(9)(b) and 29 Del.C. §6927(e); Performance Bond, ¶1)

- Any payment by IRSD that comports with the construction contract cannot violate the performance bond. (***Authority:*** 29 Del. C., §6962(d)(9)(b) and 29 Del.C. §6927(e); Performance Bond, ¶1)

- Under the terms of the construction contract, the Architect and the Construction Manager evaluated the progress and quality of McDaniel's work and certified the amounts to be paid on monthly payment applications. (***Authority:*** Paragraphs 9.4.1, 9.4.2 and 9.4.3 of the General Conditions of the Contract)

- IRSD was required to make payments to McDaniel in the amounts certified by the Architect and the Construction Manager. (***Authority:*** Paragraph 5.1 of the Contract; Paragraphs 9.6.1 and 9.7.1 of the General Conditions of the Contract)

9

- By agreeing to bond this contract, RLI assumed all risk arising from the contract terms which clearly expressed that work was neither accepted nor necessarily acceptable just because payment for it was made. (***Authority:*** 29 <u>Del. C.</u>, §6962(d)(9)(b)  and 29 <u>Del.C.</u> §6927(e); Performance Bond, ¶1; Paragraphs 4.6.10, 9.4.3 and 9.6.6 of the General Conditions of the Contract)

- As surety, RLI has no performance bond defense for payments made, as required by the terms of the construction contract, upon certifications of the architect and construction manager. ***Authority***: *Balboa Insurance Company v. Fulton County*, 148 Ga.App. 328, 251 S.E.2d 123 (1978); *Phillips v. American Liability & Surety Co.*, 309 Pa. 1, 162 A.435 (1932); *American Fidelity Insurance Co. v. Pavia-Byrne Engineering*, 393 So.2d 830 (La.App. 1981); *National American Bank of New Orleans v. Southcoast Contractors, Inc.*, 276 So.2d 777 (La.App. 1973); *Continental Realty Corp. v. Andrew J. Crevolin Co.*, 380 F.Supp. 246 (D. WV 1974); *Argonaut Insurance Co v. Town of Cloverdale*, 699 F.2d 417 (7th  Cir. 1983); *Ruckman and Hansen, Inc. v. Contracting & Material Co.*, 328 F.2d 744 (7 Cir. 1964))

- In order to establish a *pro tanto* discharge of its obligations under the performance bond, RLI must prove  a material departure from the contract's payment terms, and that the surety suffered prejudice as a result of an improper payment. (***Authority***:  *United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1385 (9th Cir, 1986); *Ramada Dev. Co. v. U.S. Fidelity & Guaranty Co.*,  626  F.2d  517,  521-522  (6th  Cir.  1980);  *Mergentime  Corp.  v.*

10

*Washington Metropolitan Area Transit Auth.*, 775 F. Supp. 14, 19 (D.D.C. 1991); *North American Spec. Ins. Co. v. Chichester School District,* 2000 WL 1052055 (E.D. Pa.), p.13.)

- Payments by an owner that pay for labor, material or equipment used in the performance of the work do not prejudice the surety, and are no basis for a *pro tanto* discharge. (***Authority***: *North American Spec. Ins. Co. v. Chichester School District,* 2000 WL 1052055 (E.D. Pa.), p.13; *Ramada Dev. Co. v. U.S. Fidelity & Guaranty Co.*, 626 F.2d 517, 522 (6th Cir. 1980); *Balboa Insurance Company v . United States* , 775 F.2d 1158, 1165 (Fed. Cir. 1985))

- As a statutory bond issued by RLI to comply with Delaware's public bidding laws, the surety's liability must be assessed not only by the terms of the bond but by the terms of the governing Delaware statute. (***Authority***: Paragraph 11 of the Performance Bond; 29 <u>Del. C.</u> § 6962(d)(9)(b) & (f); 29 <u>Del.C.</u> §6927(d), (e) & (f); *Savery and Cooke, Inc. v. Fidelity and Deposit Company of Maryland*, 194 A.2d 858, 862 (De. 1963); *Christopher v. Planet Insurance Co.*, 321 A.2d 128, 135 (Del.Super. 1974); *Certain-Teed Products v. United Pacific Ins. Co.*, 389 A.2d 777, 779 (Del.Super. 1978))

- Under the governing statute, the surety must indemnify the owner from all costs, damages and expenses (including legal fees) growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract, and may not assert any

defense that the bond contains any restriction or limitation not contained in the governing statute. (***Authority***:  29 <u>Del. C.</u> § 6962(d)(9)(b) & (f); 29 <u>Del.C.</u> §6927(d), (e) & (f); *Delle Donne & Associates LLP v. Millar Elevator Service Company*, 840 A.2d 1244, 1255 (Del. 2004))

- Under the governing statute, the owner may confess judgment against the surety. (***Authority***:  29 <u>Del. C.</u> §6962(d)(9)(c); 29 <u>Del. C.</u> § 6962(d)(9)(b) & (f); 29 <u>Del.C.</u> §6927(d), (e) & (f); *Savery and Cooke, Inc. v. Fidelity and Deposit Company of Maryland,* 194 A.2d 858, 862 (De. 1963))

- RLI's defenses that the bond required IRSD to arrange a pre-termination conference, keep RLI informed of problems with McDaniel's performance, or make payments in any manner other than as required by the terms of the construction contract are barred by the governing statute. (***Authority***:  29 <u>Del. C.</u> §6962(d)(9)(c); 29 <u>Del. C.</u> § 6962(d)(9)(b) & (f); 29 <u>Del.C.</u> §6927(d), (e) & (f); *Savery and Cooke, Inc. v. Fidelity and Deposit Company of Maryland*, 194 A.2d 858, 862 (De. 1963))

- The construction contract did not require IRSD to give a pre-termination notice to McDaniel.  (***Authority***:  Supplementary Conditions Paragraph 14.2.2)

- Under the terms of the performance bond, RLI's conduct and stated position denying IRSD's demand constituted a waiver of the surety's rights under paragraphs 4.1, 4.2 and 4.3 to perform and complete, arrange for completion, or obtain a new contractor, and a denial of liability under paragraph 4.4.2.

12

RLI's denial of liability triggered IRSD's right under paragraph 5 of the bond to enforce any remedy available to IRSD without further notice. These remedies include, under paragraph 6 of the bond, the right to hold RLI liable for the cost of correcting defective work and completing the contract (paragraph 6.1), additional legal, design professional and delay costs resulting from the contractor's default and from the surety 's refusal to complete (paragraph 6.2), and actual damages caused by delayed performance of the contract (paragraph 6.3). (***Authority***: Performance Bond)

- The rule of mitigation of damages may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter. (***Authority***: *In re Kellett*, 186 F.2d 197, 198-199 (3d Cir. 1950); *S.J. Groves & Sons Co. v. Warner Company*, 576 F.2d 524, 529 (3d Cir. 1978)

- McDaniel had a duty under the construction contract, its indemnity agreement with RLI and applicable law to pay its subcontractors and suppliers out of the funds received from IRSD. (***Authority***: Paragraphs 9.3.3 and 9.6.2 of the General Conditions; AIA Application and Certificate for Payment Form (in which the Contractor certifies that "all amounts have been paid by the Contractor for Work for which previous Certificates of Payment

were issued and payments received from the Owner."); Article Fourth of the

Indemnity Agreement between RLI and McDaniel; 6 Del. C. §§ 3501-3505.)

- IRSD had a right under the contract to hire another contractor to supplement McDaniel 's work force in areas of the building where McDaniel was not properly and timely performing its work. (*Authority*: Paragraph 2.4.1 of the general conditions and Paragraph 2.4 of the supplementary general conditions)

- If it seeks to prove that any payments under the contract were in bad faith as the result of fraud or collusion, RLI must prove its allegations by clear and convincing evidence ( *Authority*: *Jones v. McCarnan*, 1993 WL 19675 ((Del.Super.) (employee's failed to come forward with sufficient evidence to defeat summary judgment in favor of local police department and numerous county officers and entities on employee's claim of conspiracy, in light of presumption of good faith in favor of public entities); *Phillips v. Board of Education of the Smyrna School District*, 330 A.2d 151 ((Del.Super.1974)( insufficient evidence to overcome presumption of good faith on claim that school refused to provide former employee with an unbiased and truly impartial due process hearing prior to termination); see also *Henderson v. Clark*, 40 Del. 441, 13 A.2d 445, 447 (Del. Super 1940); *Swinger v. Board of Education of Sussex County Vocational-Technical School District*, 1999 WL 167777 (Del.Super.); *Hudak v. Procek*, 806 A.2d 140, 147 (Del.Super. 2002) (under Delaware law, the burden of proof required to defeat a legal

presumption is clear and convincing evidence); *Am-Pro Protective Agency, Inc. v. U.S.*, 281 F.3d 1234 (C.A. Fed. 2002))

- Regardless of whether the owner has overpaid the contractor, as RLI contends, the surety remains fully liable under the payment bond. (***Authority***: *Delaware State College ex rel Savery and Cooke, Inc. v. Fidelity &Deposit Company of Maryland*, 57 Del 24, 194 A.2d 858, 861 (1963))

C. **As Contended by EDiS Company:**

- EDiS exercised reasonable care in performing its contractual obligations and is therefore not liable to RLI. Restatement (Second) of Torts §552.

- EDiS did not supply information for the guidance of RLI and is therefore not liable to RLI. Restatement (Second) of Torts §552.

- EDiS is not in the business of supplying information as required for RLI to maintain its negligent misrepresentation claim against EDiS. *Millsboro Fire Company v. Construction Management Services, Inc.*, 2006 WL 1867705 (Del. Super.), *Delaware Art Museum v. Ann Beha Architects, Inc.*, slip copy, 2007 WL 2601472 (D.Del.), and pending EDiS Company *Motion for Summary Judgment*.

- The economic loss doctrine precludes RLI's negligent misrepresentation claim against EDiS. *Id.*

15

- RLI's concurrent knowledge of the progress and quality of MPH's work on the project precludes RLI's claim that it relied upon the representations made by EDiS in relation to Pay Application requests. (*Authority*: Restatement (Second) of Torts Sec. 541; *Ward v. Hildebrand,* 1996 WL 422336 (Del. Ch.)).

- The EDiS/IRSD contract disclaimer of third-party action precludes RLI's claim against EDiS. *Treeline Garden City Plaza, LLC v. Berkley Arm, Inc.*, 2006 WL 1982532 (N.Y. Supp.), *Standard Elec. Service Corp. v. Gahanna-Jefferson Public Schools,* 1998 WL 542696 (Ohio App. 10 Dist.), *Badiee v. Brighton Area Schools*, 695 N.W.2d 521 (Mich. App. 2005), *VP Buildings, Inc. v. Norco Const., Inc.*, 2005 WL 2037548 (E.D. La.), *Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. 1990), *Insituform of North America, Inc. v. Chandler*, 534 A.2d 257, 268-9 (Del. Ch. 1987).

## D.    As Contended by BMG:

BMG contends that the issues of law that remain to be litigated, should its pending motion for summary judgment be denied in whole or in part, are whether:

- BMG, under its contract with IRSD, had the obligation to continuously and exhaustively inspect the work of MPH to ensure MPH's compliance with the construction contract documents. (*Authority*: Paragraph 2.6. *et seq.* and 2.6.9 *et seq.*;  AIA Document G702/CMa).

16

- RLI has proven a breach of the applicable standard on the part of BMG with sufficient specificity and the requisite expert testimony to prove that BMG was negligent in obtaining or transmitting information related to the Pay Application requests submitted by MPH. (***Authority***: *Seiler v. Levitz Furniture Co.,* Del. Supr., 367 A.2d 999, 1007 (1976); *Rose Heart, Inc. v. Ramesh C. Batta Associates, P.A.*,1995 WL 562116 (Del. Super. 1995)).

- The economic loss doctrine precludes RLI's negligent misrepresentation claim against BMG. (***Authority***: *Millsboro Fire Company v. Construction Management Services, Inc.,* 2006 WL 1867705 (Del. Super.), *Delaware Art Museum v. Ann Beha Architects, Inc.*, slip copy, 2007 WL 2601472 (D.Del.),

- An architect such as BMG, who is engaged to provide design and related services in furtherance of the construction of a building, can be held to be in the business of supplying information by virtue of approving Pay Application requests submitted by a contractor. (***Authority***: *Id.*)

- RLI's concurrent knowledge of the progress and quality of MPH's work on the project precludes RLI's claim that it relied upon the representations made by BMG in relation to Pay Application requests. (***Authority***: Restatement (Second) of Torts Sec. 541; *Ward v. Fox & Lazo*, 1996 Del. Ch. LEXIS 92 * 11(Del. Ch. Ct. July 8, 1996); *K&K Developers, Inc. v. McCann, Inc.* 1996 WL 769215 (Del. Super. 1996)).

- The disclaimer in the BMG/IRSD contract which states: "Nothing contained in this Agreement shall create a contractual relationship with or a cause of

action in favor of a third party against the Owner or Architect " forecloses RLI's ability, as a non-privity party, to prove justifiable reliance on BMG's performance under the contract.  (**Authority**: *Treeline Garden City Plaza, LLC v. Berkley Arm, Inc.*, 2006 WL 1982532 (N.Y. Supp.);  *Standard Elec. Service Corp. v. Gahanna- Jefferson Public Schools,* 1998 WL 542696 (Ohio App. 10 Dist.); *Badiee v. Brighton Area Schools*, 695 N.W.2d 521 (Mich. App. 2005); *VP Buildings, Inc. v. Norco Const., Inc.*, 2005 WL 2037548 (E.D. La.); *Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. 1990); *Insituform of North America, Inc. v. Chandler*, 534 A.2d 257, 268-9 (Del. Ch. 1987); *K&K Developers, Inc. v. McCann, Inc.* 1996 WL 769215 (Del. Super. 1996)).

- The disclaimer in the BMG/IRSD contract which states: "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against the Owner or Architect" forecloses RLI's ability, to prove that BMG intended to supply, or knew IRSD intended to transmit, the information to RLI for RLI's benefit or guidance. (**Authority**: *Id*.; Restatement (Second) of Torts Sec. 552(2)(a), comment h.

- RLI's claimed damages stemmed from a transaction which BMG intended, or knew that IRSD intended, to influence. (**Authority**: Restatement (Second) of Torts Sec. 552(2)(b), comment j.

- RLI's delay in performing its obligations under the Payment Bond and/or negligent investigation of MPH's work constitutes contributory negligence (*Authority*: Restatement (Second) of Torts Sec. 552A)

- RLI's claimed damages are causally connected to any representation made by BMG (**Authority**: Restatement (Second) of Torts Sec. 552B).

## VI.   EXHIBITS TO BE USED AT TRIAL

The parties reserve objections to the exhibits listed below based upon any rulings the Court may make on the pending motions, which are identified in Section XIV.

### A.   Plaintiff's Exhibits

| Exhibit No. | Description |
|---|---|
| 1 | Standard form of Agreement with general conditions, supplementary conditions, and plans and specifications between Indian River School District ("IRSD") and McDaniel Plumbing & Heating, Inc. ("McDaniel"), dated 08/28/02 |
| 2 | Payment and Performance Bonds dated 09/05/02 |
| 3 | Contract between IRSD and EDiS Company ("EDiS"), dated 01/07/02 |
| 4 | Planned Construction Schedule (Baldassarre Report Exhibit #19) |
| 5 | Contract between IRSD and Becker Morgan Group, Inc. ("Becker Morgan") |
| 6 | McDaniel approved pay application nos. 1 through 24 |
| 7 | EDiS 04/2003 Monthly Report to IRSD |
| 8 | Letter from EDiS to McDaniel, dated 05/05/03 |
| 9 | Letter from EDiS to McDaniel, dated 08/20/03 |
| 10 | Letter from EDiS to McDaniel, dated 04/30/04 |
| 11 | Letter from EDiS to McDaniel, dated 05/05/04 |
| 12 | Letter from EDiS to McDaniel, dated 05/17/04 |
| 13 | Letter from EDiS to McDaniel, dated 06/07/04 |
| 14 | Letter from EDiS to McDaniel, dated 06/15/04 |
| 15 | Letter from EDiS to McDaniel, dated 06/18/04 |
| 16 | Letter from EDiS to McDaniel, dated 06/25/04 |
| 17 | Letter from EDiS to McDaniel, dated 07/06/04 |
| 18 | Letter from EDiS to McDaniel, dated 07/14/04 |

19      Note to file by David S. Berry (RLI), dated 07/15/04

20      Letter from EDiS to McDaniel, dated 07/16/04

21      Note to file by David S. Berry, dated 07/16/04

22      Letter from David S. Berry to Paul DeVlieger, Esquire (counsel for RLI), dated 07/22/04

23      Letter from EDiS to McDaniel, dated 07/24/04

24      Letter from Harry R. Blackburn, Esquire to Edward Seglias, Esquire (counsel for McDaniel), dated 07/26/04

25      Letter from David Berry to Chris McCone (EDiS), dated 07/27/04

26      Letter from David Berry to McDaniel, dated 07/28/04

27      Letter from EDiS to McDaniel, dated 08/02/04

28      Letter from Paul DeVlieger, Esquire to Donald Logan, Esquire (counsel for IRSD and EDiS), dated 08/05/04

29      Facsimile transmission from EDiS to Paul DeVlieger, Esquire, dated 08/05/04

30      Letter from EDiS to McDaniel, dated 09/09/04

31      Letter from EDiS to McDaniel, dated 08/11/04

32      Letter from Harry R. Blackburn, Esquire to Donald Logan, Esquire, dated 08/17/04

33      Letter from EDiS to McDaniel, dated 08/27/04

34      Letter from McDaniel to RLI, dated 08/27/04

35      Letter from Lou Baldassarre (RLI consultant) to McDaniel, dated 09/02/04

36      Letter from Patrick Miller (Director of Business and Finance for IRSD) to Delaware Department of Finance, dated 09/02/04

37      Letter from Harry R. Blackburn, Esquire to Donald Logan, Esquire, dated 09/03/04

38      Letter from EDiS to McDaniel, dated 09/03/04

39      Letter from Greg Weer (IRSD Building and Grounds Supervisor) to RLI and McDaniel, dated 09/08/04

40      Letter from Donald Logan, Esquire, to Francine Wilensky, Esquire (RLI counsel), dated 09/14/04

41      Letter from Francine Wilensky, Esquire to Edward Seglias, Esquire, dated 09/14/04

42      Letter from EDiS to McDaniel, dated 09/16/04

43      Letter from Donald Logan, Esquire to Francine Wilensky, Esquire, dated 09/21/04

44      Letter from EDiS to McDaniel, dated 09/21/04

45      Letter from EDiS to McDaniel, dated 09/27/04

46      Letter from McDaniel to "George" (Greg) Weer, dated 09/23/04

47      Letter from EDiS to McDaniel, dated 09/29/04

48      Letter from EDiS to David Berry, dated 10/01/04

49      Letter from EDiS to David Berry, dated 10/06/04

| 50 | Letter from Donald Logan, Esquire to Harry R. Blackburn, Esquire, dated 10/07/04 |
|---|---|
| 51 | Letter from Greg Weer to McDaniel, dated 10/11/04 |
| 52 | Letter from Greg Weer to David Berry, dated 10/11/04 |
| 53 | Letter from EDiS to David Berry, dated 10/12/04 |
| 54 | Letter from David Berry to McDaniel, dated 10/13/04 |
| 55 | Letter from McDaniel to David Berry, dated 10/14/04 |
| 56 | Letter from EDiS to David Berry, dated 10/14/04 |
| 57 | Letter from EDiS to David Berry, dated 10/14/04 |
| 58 | Letter from David Berry to Greg Weer, dated 10/15/04 |
| 59 | Facsimile transmission from David Berry to McDaniel, dated 10/18/04 |
| 60 | Letter from McDaniel to Greg Weer, dated 10/19/04 |
| 61 | Letter from EDiS to David Berry, dated 10/21/04 |
| 62 | Letter from EDiS to David Berry, dated 10/21/04 |
| 63 | Memorandum from Patrick Miller to Lois Hobbs (Superintendent of IRSD), dated 10/25/04 |
| 64 | Journal of meeting notes re: Sussex Central High School, dated 10/25/04 |
| 65 | McDaniel Subcontract Accounting, undated |
| 66 | Letter from EDiS to David Berry, dated 10/28/04 |
| 67 | Letter from EDiS to David Berry, dated 10/29/04 |
| 68 | Letter from David Berry to EDiS, dated 11/01/04 |
| 69 | Letter from Francine Wilensky, Esquire to Donald Logan, Esquire, dated 11/09/04 |
| 70 | Letter from Lou Baldassarre to Harry R. Blackburn, Esquire, dated 11/12/04 |
| 71 | Letter from Harry R. Blackburn, Esquire to James D. Griffin, Esquire (counsel for IRSD), dated 11/12/04 |
| 72 | Letter from E. Andrew DiSabatino, Jr. (EDiS) to Jonathan E. Michael (RLI), dated 12/10/04, enclosing 12/01/04 letter from Theodore Dwyer (EDiS) to Lois Hobbs |
| 73 | Facsimile transmission from Francine Wilensky, Esquire to David Berry and Lou Baldassarre, dated 12/13/04, enclosing 12/13/04 letter from K. Gerard Amadio, Esquire (counsel for IRSD) to Harry R. Blackburn, Esquire and Francine Wilensky, Esquire |
| 74 | Letter from David Berry to Lois Hobbs, dated 12/16/04 |
| 75 | Letter from K. Gerard Amadio, Esquire to Harry R. Blackburn, Esquire and Francine Wilensky, Esquire, dated 02/28/05 |
| 76 | Email message from Sandra C. Carpenter (Becker Morgan) to Christian McCone, dated 11/08/02 |
| 77 | Memorandum from Janet Hapanowitz (Allen & Shariff) to Sandra C. Carpenter, dated 04/17/03 |

| | |
|---|---|
| 78 | Memorandum from Janet Hapanowitz to Sandra C. Carpenter, dated 05/21/03 |
| 79 | Memorandum from Janet Hapanowitz to Christian McCone, dated 08//21/03 |
| 80 | Memorandum from Alan Kamauff (Allen & Shariff) to Christian McCone, dated 09/16/03 |
| 81 | Memorandum from Janet Hapanowitz to Christian McCone, dated 01/10/04 |
| 82 | Memorandum from Alan Kamauff to Christian McCone, dated 01/20/04 |
| 83 | Memorandum from David C. Van der Vossen (Allen & Shariff) to Ted Dwyer, dated 02/22/04 |
| 84 | Memorandum from Janet Hapanowitz to Christian McCone, dated 04/02/04 |
| 85 | Memorandum from Janet Hapanowitz to Christian McCone, dated 04/02/04 |
| 86 | Memorandum from Janet Hapanowitz to Sandra Carpenter, dated 05/24/04 |
| 87 | Memorandum from David Van der Vossen to Sandra Carpenter, dated 08/26/04 |
| 88 | Memorandum from Janet Hapanowitz to Ted Dwyer, dated 08/31/04 |
| 89 | Letter from Greg Weer to Joseph M. Zimmer, Jr. (Joseph M. Zimmer, Inc. ("Zimmer")), dated 09/08/04 |
| 90 | Memorandum from David Van der Vossen to Ted Dwyer, dated 09/09/04 |
| 91 | Memorandum from David Van der Vossen  to Ted Dwyer, dated 09/23/04 |
| 92 | Email message from David Van der Vossen  to Sandra Carpenter, dated 11/18/04 |
| 93 | Memorandum from Donald R. Hocking (Allen & Shariff) to Sandra Carpenter, dated 12/17/04 |
| 94 | Email message from David Van der Vossen to Brad Hastings and Ted Dwyer, dated 01/28/05 |
| 95 | Copies of three (3) handwritten telephone messages from EDiS personnel to Zimmer, dated 08/18/04 through 08/27/04 |
| 96 | Letter from Greg Weer to Zimmer, dated 09/08/04 |
| 97 | Intentionally left blank |
| 98 | Intentionally left blank |
| 99 | Intentionally left blank |
| 100 | Letter from Zimmer to Greg Weer, dated 09/14/04 |
| 101 | Three (3) worksheets prepared by Zimmer, dated 08/24/04 through 08/29/04 |
| 102 | Letter from Christian McCone to Zimmer, dated 10/01/04 |
| 103 | Letter from Christian McCone to Zimmer, dated 10/18/04 |

22

| 104 | Letter from Zimmer to Ted Dwyer, dated 11/16/04 |
| 105 | Letter from Christian McCone to Zimmer, dated 12/08/04 |
| 106 | Letter from Zimmer to Christian McCone, dated 12/23/04 |
| 107 | Letter from Christian McCone to Zimmer, dated 12/23/04 |
| 108 | Letter from Christian McCone to Zimmer, dated 01/05/05 |
| 109 | Letter from Christian McCone to Zimmer, dated 01/05/05 |
| 110 | Letter from Zimmer to Christian McCone, dated 06/30/05 |
| 111 | Zimmer pay application nos. 1 though 7 |
| 112 | Tri-state Technologies, Inc. pay applications |
| 113 | Lou Baldassarre summary of approved McDaniel billing for Sussex Central High School as of termination 10/11/04 |
| 114 | Lou Baldassarre cost to complete versus Zimmer invoice analysis, dated 03/29/07 |
| 115 | McDaniel Report/RLI payment ledger, dated 12/15/04/updated 12/20/05 |
| 116 | RLI Ledger of Completion and Payment Bond Claim payments |
| 117 | Common Interest Legal Cooperation and Joint Litigation Agreement between IRSD, EDiS and Becker Morgan, dated 01/27/06 |

### B.    Defendants' Exhibits

Defendants' exhibits are listed below.  Defendants reserve objections to plaintiff's exhibit numbers 92, 94, 95, 113, 114 and 117 on Federal Rule of Evidence 402 and 403 grounds.

| *Exhibit No.* | | *Description* |
|---|---|---|
| 1 | 8/15/2002 | Contract between IRSD and McDaniel |
| 2 | | General Conditions of the Contract |
| 3 | 8/15/2002 | Supplementary Conditions of Contract between IRSD and McDaniel |
| 4 | 1/16/2003 | RLI's Bond Execution Report, Performance Bond, Payment Bond and Power of Attorney |
| 5 | 7/3/2001 | Letter from Peter King (King Surety Group) to Patrick Fitzgerald (Surety America) re: McDaniel Plumbing & Heating, Inc. |
| 6 | 8/23/2001 | Indemnity Agreement between McDaniel and RLI |
| 7 | 9/12/2001 | Fax from  Peter King (King Surety Group) to Patrick Fitzgerald (Surety America) re: declining the McDaniel bid |

| 8  | 9/17/2001  | Email from Patrick Fitzgerald (Surety America) to Bart Davis re: recommending approval of McDaniel based on lowered estimate |
| 9  | 9/17/2001  | Email from Patrick Fitzgerald (Surety America) to Peter King (King Surety Group) re: recommending approval of McDaniel |
| 10 | 9/21/2001  | Fax from Peter King (King Surety Group) to Bill McDaniel (McDaniel Plumbing & Heating) re: bid |
| 11 | 12/31/2001 | Personal Financial Statement of William H. McDaniel, II and Cindy S. McDaniel |
| 12 | 12/31/2001 | Scoresheet re: underwriting for McDaniel |
| 13 | 5/10/2002  | Letter from Louis Hobbs (IRSD) to P. Miller including EDiS Construction Manager Contract for Sussex Central High School project |
| 14 | 6/10/2002  | Important Limit of Authority from Surety America to King Surety Group re: McDaniel |
| 15 | 7/9/2002   | Specification Section 01305 - Construction Schedule & Bar Chart |
| 16 | 8/13/2002  | Email from Michael Page (RLI Insurance Co.) to Surety America re: bid bond authorization |
| 17 | 8/15/2002  | Bid Estimation Sheet from McDaniel |
| 18 | 8/15/2002  | Bid Form from McDaniel |
| 19 | 8/15/2002  | General Conditions of Contract between IRSD and McDaniel |
| 20 | 8/15/2002  | Bid Tabulations for Mechanical, Plumbing & Automated Temperature Control |
| 21 | 8/15/2002  | Bid Bond for McDaniel as Principal, RLI as Surety and School District (IRSD) as Obligee |
| 22 | 8/22/2002  | Agenda for 8/22/02 Meeting w/ list of attendees |
| 23 | 8/27/2002  | Email exchange between Patrick Fitzgerald (Surety America) and Christine King (RLI) re: McDaniel bid |
| 24 | 8/28/2002  | Contract between IRSD and McDaniel, Performance and Payment Bonds for McDaniel |
| 25 | 9/17/2002  | Construction Progress Meeting Minutes No. 2 |
| 26 | 10/1/2002  | Memo for the Record re: Preconstruction Conference held 10/1/02 |
| 27 | 10/29/2002 | Construction Progress Meeting Minutes No. 5 |

| 28 | 11/18/2002 | Memo from EDiS to All Contractors re: Updated Project Construction Schedule |
| 29 | 11/26/2002 | Construction Progress Meeting Minutes No. 7 |
| 30 | 12/2/2002 | McDaniel Activity Schedules - Areas A and C |
| 31 | 1/7/2003 | Construction Progress Meeting Minutes No. 10 |
| 32 | 1/18/2003 | McDaniel Activity Schedules - Areas D and E |
| 33 | 1/21/2003 | Construction Progress Meeting Minutes No. 11 |
| 34 | 1/22/2003 | McDaniel Daily Log |
| 35 | 1/24/2003 | McDaniel Activity Schedules - Areas B and F |
| 36 | 1/31/2003 | Email from Rick Albrecht to Christine King re: conditions to Surety America's approval |
| 37 | 2/1/2003 | Monthly Project Status Report |
| 38 | 4/15/2003 | Construction Progress Meeting Minutes No. 16 |
| 39 | 6/11/2003 | McDaniel Daily Log |
| 40 | 6/13/2003 | Letter from EDiS to McDaniel |
| 41 | 6/27/2003 | McDaniel Daily Log |
| 42 | 7/15/2003 | McDaniel Daily Log |
| 43 | 8/20/2003 | Letter from EDiS to McDaniel re: Returned Duct Work Shop Drawings |
| 44 | 8/20/2003 | Letter from EDiS to McDaniel re: construction schedule |
| 45 | 8/22/2003 | Master Schedule |
| 46 | 8/22/2003 | McDaniel Daily Log |
| 47 | 8/27/2003 | Letter from EDiS to McDaniel re: Insulation of Pipes in Chases |
| 48 | 9/16/2003 | Memo from Allen & Shariff to EDiS re: MEP Walk-Thru on 9/16/03 |
| 49 | 9/21/2003 | Aerial View of Site |
| 50 | 10/8/2003 | Letter from EDiS to McDaniel re: Late Duct Work Submittals |
| 51 | 10/28/2003 | Construction Progress Meeting Minutes No. 29 |
| 52 | 11/11/2003 | Construction Progress Meeting Minutes No. 30 |
| 53 | 11/20/2003 | Bond MGMTREVW |
| 54 | 11/24/2003 | Letter from EDiS to McDaniel re: Ductwork Shop Drawings for Area E |
| 55 | 12/11/2003 | Interior/Exterior Views of Project |
| 56 | 12/23/2003 | Construction Progress Meeting Minutes No. 33 |
| 57 | 1/5/2004 | Letter from EDiS to McDaniel re: Returned Duct Work Shop Drawings |
| 58 | 1/20/2004 | Construction Progress Meeting Minutes No. 35 |
| 59 | 2/5/2004 | Interior Views |

| 60 | 2/17/2004 | Construction Progress Meeting Minutes No. 37 |
| 61 | 2/22/2004 | Memo from David Van der Vossen (Allen & Shariff) to EDiS re: poor sheetmetal submittals by McDaniel |
| 62 | 3/2/2004 | Construction Progress Meeting Minutes No. 38 |
| 63 | 3/16/2004 | Letter from EDiS to Becker Morgan Group re: Memorandum of Meeting with McDaniel Plumbing & Heating, Inc. |
| 64 | 3/18/2004 | Letter from EDiS to McDaniel re: outstanding issues delaying work |
| 65 | 3/30/2004 | Construction Progress Meeting Minutes No. 40 |
| 66 | 4/6/2004 | Letter from EDiS to McDaniel re: outstanding issues delaying work 2nd notice |
| 67 | 4/6/2004 | Letter from EDiS to McDaniel re: outstanding issues delaying work 2nd notice (additional detail) |
| 68 | 4/20/2004 | Letter from EDiS to McDaniel re: Outstanding Issues Delaying Work 3rd Notice |
| 69 | 4/28/2004 | "Pencil Copy" of Application and Certificate for Payment No. 19 |
| 70 | 4/30/2004 | Letter from EDiS to McDaniel re: Outstanding Issues Delaying Work 3rd Notice |
| 71 | May-04 | IRSD Monthly Report for Sussex Central High School |
| 72 | 5/3/2004 | Letter from EDiS to McDaniel re: Partial Withholding of Payment Application #19 |
| 73 | 5/3/2004 | Email from EDiS to Becker Morgan Group re: Pay Application for McDaniel |
| 74 | 5/5/2004 | Letter from EDiS to All Attendees re: Memo of Meeting with McDaniel on 5/4/04 |
| 75 | 5/17/2004 | Letter from EDiS to McDaniel re: Notification of Work Delays - 4th notice |
| 76 | 5/25/2004 | Construction Progress Meeting Minutes No. 44 |
| 77 | 5/26/2004 | "Pencil Copy" of Application and Certificate for Payment No. 20 |
| 78 | 6/7/2004 | Letter from EDiS to McDaniel re: Penthouse Piping Inspection |
| 79 | 6/11/2004 | Letter from EDiS to Becker Morgan Group with Application and Certificate for Payment No. 20 attached |
| 80 | 6/14/2004 | Letter from McDaniel to EDiS re: progress |

| 81 | 6/15/2004 | Letter from EDiS to McDaniel re: Delays to Installation of Gym Floor |
| 82 | 6/16/2004 | McDaniel's Payment Application #20 |
| 83 | 6/18/2004 | Letter from EDiS to McDaniel re: Notification of Work Delays - 5th notice |
| 84 | 6/22/2004 | Construction Progress Meeting Minutes No. 46 |
| 85 | 6/24/2004 | Letter from McDaniel to Baltimore Aircoil Company |
| 86 | 6/25/2004 | "Pencil Copy" of Application and Certificate for Payment No. 21 |
| 87 | 6/25/2004 | Certified Application and Certificate for Payment No. 21 |
| 88 | 6/25/2004 | Letter from EDiS to McDaniel re: Missing Equipment |
| 89 | 6/25/2004 | Letter from EDiS to All Contractors re: Updated Project Construction Schedule |
| 90 | 7/1/2004 | RLI Status Inquiry / Release |
| 91 | 7/6/2004 | Letter from EDiS to McDaniel re: Area 'C' Above Ceiling Re-Inspection |
| 92 | 7/14/2004 | Letter from EDiS to McDaniel re: Area 'D' Above Ceiling Re-Inspection |
| 93 | 7/14/2004 | McDaniel's Payment Application #21 |
| 94 | 7/15/2004 | Note to File from Berry re: call from EDiS |
| 95 | 7/16/2004 | Letter from EDiS to McDaniel re: Subcontractor Payments and Missing Equipment |
| 96 | 7/16/2004 | Note to File from Berry re: call from EDiS |
| 97 | 7/22/2004 | Email from David Berry to William Downing  re: payment bond claim by Trane |
| 98 | 7/22/2004 | Letter from Berry (RLI) to DeVlieger re: engagement of firm |
| 99 | 7/23/2004 | Application for Payment No. 22 |
| 100 | 7/24/2004 | Letter from EDiS to McDaniel re: Areas 'A' and 'F' Above Ceiling Plumbing Follow-Up Inspection |

27

| 101 | 7/26/2004 | Letter from EDiS to Becker Morgan Group re: McDaniel's application for payment #22 |
| 102 | 7/26/2004 | Email exchange between Rick Albrecht, Christopher Gleason, David Sandoz and David Berry re: claims |
| 103 | 7/26/2004 | Letter from Blackburn to Seglias |
| 104 | 7/27/2004 | Construction Progress Meeting Minutes No. 50 |
| 105 | 7/27/2004 | Letter from RLI to EDiS |
| 106 | 7/27/2004 | Letter from Berry (RLI) to EDiS re: claims against payment bond and demand to not release funds |
| 107 | 7/28/2004 | Letter from Berry (RLI) to McDaniel re: books and records inspection |
| 108 | 7/30/2004 | Application for Payment No. 23R |
| 109 | 7/30/2004 | Surety's Account Line for McDaniel |
| 110 | 8/2/2004 | Letter from EDiS to McDaniel re: Areas C, D & E Final Punch Lists |
| 111 | 8/3/2004 | Construction Progress Meeting Minutes No. 51 |
| 112 | 8/3/2004 | Email from Chris Gleason (RLI) to Peter King (King Surety) re: claims |
| 113 | 8/5/2004 | Fax from EdiS to Harry R. Blackburn & Associates re: Payment Information on McDaniel |
| 114 | 8/5/2004 | Fax from EDiS to DeVlieger re: amount owed to subcontractors |
| 115 | 8/5/2004 | Letter from DeVlieger to Logan re: contract status and payments to subcontractors |
| 116 | 8/9/2004 | McDaniel AP Invoice Aging Report |
| 117 | 8/9/2004 | McDaniel Purchase Order List |
| 118 | 8/9/2004 | McDaniel Subcontract List |
| 119 | 8/9/2004 | McDaniel AR Invoice Aging |
| 120 | 8/9/2004 | McDaniel AP Invoice Aging |
| 121 | 8/9/2004 | Letter from EDiS to McDaniel re: Notification of Work Delays 6th Notice |
| 122 | 8/10/2004 | Construction Progress Meeting Minutes No. 52 |

28

| 123 | 8/10/2004 | McDaniel Job Cost Summary |
| 124 | 8/11/2004 | Letter from EDiS to McDaniel re: Boiler Inspections and Certifications |
| 125 | 8/11/2004 | Letter from EDiS to Becker Morgan Group re: McDaniel Payment Application #23R |
| 126 | 8/12/2004 | McDaniel's AP Invoice List |
| 127 | 8/12/2004 | List of McDaniel Subcontractors and Suppliers |
| 128 | 8/17/2004 | Construction Progress Meeting Minutes No. 53 |
| 129 | 8/17/2004 | Letter from Harry R. Blackburn & Associates to Tighe, Cottrell & Logan |
| 130 | 8/17/2004 | Letter from Blackburn to Logan re: trust / escrow account and joint checks |
| 131 | 8/20/2004 | Letter from EDiS to McDaniel re: Seven Day Notification |
| 132 | 8/25/2004 | Construction Progress Meeting Minutes No. 54 |
| 133 | 8/26/2004 | Memo from Allen & Shariff to Beck Morgan Group re: Mechanical System |
| 134 | 8/27/2004 | Letter from EDiS to McDaniel re: supplementing McDaniel's work force (after 7 day notice from 8/20/07) |
| 135 | 8/27/2004 | Letter from McDaniel to RLI re: Principal's Request for Financial Assistance |
| 136 | 8/31/2004 | Memo to EDiS from Allen & Shariff to EDiS re: meeting with Joseph M. Zimmer, Inc. |
| 137 | 9/2/2004 | Letter from EDiS to Becker Morgan Group with McDaniel Payment Application #24 |
| 138 | 9/2/2004 | Letter from Baldassarre to McDaniel re: trust account |
| 139 | 9/3/2004 | Letter from Blackburn to Logan re: completion of project and engagement of outside contractors |
| 141 | 9/6/2004 | Letter from EDiS to McDaniel re: Boiler Inspections and Certifications |

| | | |
|---|---|---|
| 142 | 9/7/2004 | List of Bonds re: Four McDaniel Projects in Delaware |
| 143 | 9/8/2004 | Letter from IRSD to Joseph M. Zimmer, Inc. re: Emergency Purchase Order - Notice to Proceed |
| 144 | 9/8/2004 | Letter from Weer (IRSD) to C. King (RLI) and McDaniel re: possibly declaring McDaniel in default |
| 145 | 9/9/2004 | Email from David Van der Vossen (Allen & Shariff) to EDiS re: meeting with Joseph M. Zimmer, Inc. and emergency items |
| 146 | 9/9/2004 | Faxed Letter from L. Baldassarre (Cashin Spinelli & Ferretti, LLC) to C. McCone (EDiS) re: trust account |
| 147 | 9/14/2004 | Letter from Zimmer to IRSD |
| 148 | 9/14/2004 | Letter from Joseph M. Zimmer, Inc. to IRSD re: Notice to Proceed |
| 149 | 9/14/2004 | Faxed Letter from Logan to Wilensky re: consent of obligee to assignment and McDaniel's obligations |
| 150 | 9/14/2004 | Letter from Wilensky to Seglias re: McDaniel's unwillingness to execute a mortgage in favor of RLI as additional security for financial assistance |
| 151 | 9/16/2004 | Letter from EDiS to McDaniel re: Seven Day Notification -- Area 'B' |
| 152 | 9/16/2004 | Letter from EDiS to McDaniel re: Seven Day Notification - Area 'B' |
| 153 | 9/16/2004 | Letter from EDiS to McDaniel re: Boiler Inspections and Certifications, 3rd Notice |
| 154 | 9/20/2004 | RLI Contract Surety Claim Review |
| 155 | 9/21/2004 | Letter from EDiS to McDaniel re: Unloading of Thermal Storage Units |
| 156 | 9/21/2004 | Letter from Logan to Wilensky re: meeting with Owner re: McDaniel |
| 157 | 9/21/2004 | Letter from EDiS to McDaniel re: Unloading of Thermal Storage Units |
| 158 | 9/22/2004 | RLI's Over 250K Report on McDaniel |
| 159 | 9/23/2004 | Fax from Allen & Shariff to EDiS re: Mechanical System Overview of work to be completed |

| 160 | 9/23/2004 | Memo from Allen & Shariff to EDiS re: 9/21/04 meeting at construction trailer and 9/22/04 executive meeting |
| 161 | 9/23/2004 | Letter from McDaniel to Weer (IRSD) re: meeting with Owner |
| 162 | 9/27/2004 | Letter from EDiS to McDaniel re: Updated Punchlist for Areas A, C, D, & E |
| 163 | 9/27/2004 | RLI Check ($150,000) to Baldassarre and Cashin, Spinelli & Ferretti LLC |
| 164 | 9/28/2004 | Ratification & Financing Agreement between McDaniel and RLI |
| 165 | 9/28/2004 | Open End Mortgage between McDaniel and RLI |
| 166 | 9/29/2004 | Letter from EDiS to Zimmer re: Notice to Proceed on Heating System |
| 167 | 9/29/2004 | Letter from EDiS to McDaniel re: Removal from Working on Heating System |
| 168 | 9/30/2004 | Demand Note -- McDaniel's promise to pay RLI |
| 169 | 10/1/2004 | Letter from EDiS to Zimmer re: Follow-Up on Notice to Proceed on Heating System |
| 170 | 10/1/2004 | Letter from EDiS to McDaniel re: Punch List for Water Treatment System |
| 171 | 10/1/2004 | Letter from EDiS to RLI re: Supplementing McDaniel |
| 172 | 10/6/2004 | Letter from EDiS to RLI re: Outstanding Work Items for McDaniel  with attachments |
| 173 | 10/6/2004 | Demand Note -- McDaniel's promise to pay RLI |
| 174 | 10/6/2004 | Letter from EDiS to Berry (RLI) re: documents showing work is not complete and items not corrected |
| 175 | 10/7/2004 | Letter from Logan to Blackburn re: meeting between Owner and McDaniel |
| 176 | 10/11/2004 | Letter from IRSD to McDaniel |
| 177 | 10/11/2004 | Letter from Becker Morgan Group to IRSD re: sufficient cause to justify termination of McDaniel |
| 178 | 10/11/2004 | Letter from Weer (IRSD) to Berry (RLI) re: termination of McDaniel and demand to RLI under the Performance Bond |

| 179 | 10/11/2004 | Letter from Weer (IRSD) to McDaniel re: termination of McDaniel's services |
| 180 | 10/12/2004 | Letter from EDiS to Berry (RLI) re: Broken Pump on Boiler No. 2 |
| 181 | 10/13/2004 | Letter from Berry (RLI) to McDaniel re: termination of McDaniel |
| 182 | 10/14/2004 | Letter from McDaniel to David Berry (RLI) re: response to termination |
| 183 | 10/14/2004 | Letter from EDiS to Berry (RLI) re: McDaniel still on site and plan to complete project |
| 184 | 10/14/2004 | Letter from EDiS to Berry (RLI) re: Mechanical, Plumbing and Fire Protection Punch List for Areas A & F |
| 185 | 10/15/2004 | Email with attachments from Baldassarre to Berry (RLI) re: McDaniel's budget for continuing work |
| 186 | 10/15/2004 | Letter from Berry (RLI) to Weer (IRSD) re: termination of McDaniel and requirements under the bond |
| 187 | 10/18/2004 | Fax from Berry (RLI) to McDaniel re: personnel still on site |
| 188 | 10/19/2004 | Fax from McDaniel to Berry (RLI) re: response to IRSD and termination |
| 189 | 10/20/2004 | Letter from EDiS to Berry (RLI) re: Water Damage in Head End Room |
| 190 | 10/21/2004 | Letter from EDiS to Berry (RLI) re: Water Treatment System |
| 191 | 10/21/2004 | Letter from EDiS to Berry (RLI) re: Repair of Broken Pump on Boiler No. 2 |
| 192 | 10/25/2004 | Memo from IRSD Director of Business to IRSD Superintendent, et al |
| 193 | 10/25/2004 | Sussex Central High School Journal - Notes from Meeting on 10/25/04 |
| 194 | 10/29/2004 | Letter from EDiS to Berry (RLI) re: Meeting Minutes of 10/27/04 |
| 195 | 11/7/2004 | Fax with attachment from McDaniel to Baldassarre re: Estimate to Complete |
| 196 | 11/9/2004 | Letter from Wilensky to Logan re: outstanding applications for payment |
| 197 | 11/10/2004 | Email with attachment from Baldassarre to David Berry (RLI) and Blackburn re: cost to complete |

| 198 | 11/12/2004 | Letter from Baldassarre to Blackburn with attachments re: review of remaining work |
| 199 | 11/12/2004 | Letter from Blackburn to James Griffin, Esq. rejecting demand to complete contract |
| 200 | 11/16/2004 | Faxed Letter from Zimmer to IRSD and EDiS re: mechanical work and list of items to be completed |
| 201 | 12/1/2004 | Letter from EDiS to Louis Hobbs (IRSD) re: response to RLI's denial of liability |
| 202 | 12/8/2004 | Letter from EDiS to Zimmer re: Notice to Proceed with Glycol in chilled water system |
| 203 | 12/10/2004 | Letter from DiSabatino (EDiS) to Jonathan Michael (RLI) re: surety bond |
| 204 | 12/13/2004 | Fax from Wilensky to Berry (RLI) and Baldassarre re: IRSD's request about monies owed to McDaniel's subcontractors |
| 205 | 12/15/2004 | McDaniel Plumbing & Heating Report |
| 206 | 12/16/2004 | Letter from Berry (RLI) to Hobbs(IRSD) re: cost-to-complete estimate and alleged overpayments |
| 207 | 12/23/2004 | Letter from EDiS to Zimmer re: Notice to Proceed with Auditorium Ductwork |
| 208 | 12/23/2004 | Letter from Zimmer to EDiS re: pricing for mechanical items to be completed |
| 209 | 1/5/2005 | Letter from EDiS to Zimmer re: Notice to Proceed with Punchlist |
| 210 | 1/5/2005 | Letter from EDiS to Zimmer re: Notice to Proceed with Pump House |
| 211 | 1/20/2005 | Contract between IRSD and Tri-State |
| 212 | 2/28/2005 | Letter from K. Amadio to Blackburn & Wilensky re: IRSD's performance bond claim |
| 213 | 4/26/2005 | Letter from IRSD to Ted Dwyer (EDiS) re: request for additional compensation |
| 214 | 6/30/2005 | Letter from Zimmer to EDiS re: cost to complete mechanical / penthouse work |
| 215 | 1/16/2006 | Letter from Baldassarre to RLI |
| 216 | 7/9/2006 | Job Status Report |
| 217 | 12/26/2006 | Letter from Baldassarre to M. Acosta (Blackburn & Assoc.) re: Answers to EDiS Interrogatories and overpayment issue |

| | | |
|---|---|---|
| 218 | 4/24/2007 | Summary of McDaniel D irect, Indirect and Office Overhead Costs |
| 219 | 8/17/2007 | Letter from Venzie, Phillips & Warshawer to Harry R. Blackburn & Associates, Logan & Associates, and Tighe & Cottrell |
| 220 | 1/7/2002 | Contract between IRSD and EDiS |
| 221 | 1/20/2004 | Memo from EDiS to Allen & Shariff re: Area "C" Above Ceiling Inspection and 1/19/04 site visit |
| 222 | 1/20/2004 | Fax to McDaniel re: Area "C" Above Ceiling Inspection |
| 223 | 5/11/2004 | Construction Progress Meeting Minutes No. 43 |
| 224 | 5/7/2004 | Letter from EDiS to McDaniel re: Mechanical Room Inspection |
| 225 | 7/6/2004 | Construction Progress Meeting Minutes No. 47 |
| 226 | 9/24/2004 | Memo from Allen & Shariff to EDiS re: Fuel Oil System |
| 227 | 9/3/2004 to 5/2/2005 | RLI - Completion Costs Paid By Surety |
| 228 | Aug. 2004? | Check Amounts and Dates / Amount Owed to Subcontractors |
| 229 | Undated | C.V. for B. Keith Hughes |
| 230 | Undated | Amount Owed to Subcontractors |
| 231 | Various | Payroll Reports for Weeks Ending 9/12/04, 9/19/04, 9/26/04, 10/3/04, 10/10/04 and 10/17/04 |
| 232 | Various | McDaniel Income Statements – 2003, 2004, 2005; SCHS Job Status Report |
| 233 | Various | Baldassarre's Handwritten Notes re: McDaniel |
| 234 | | IRSD Summary of Costs |
| 235 | | Comparison of McDaniel Payment Application Nos. 21 - 24 |
| 236 | | Excerpt from William H. McDaniel Deposition, Pages 270-281 |
| 237 | | Sussex Central High School Job Costs spreadsheet |
| 238 | | IRSD Summary of Costs - Updated |
| 239 | | IRSD Damages Summary |
| 240 | | McDaniel Contract Accounting Summary |
| 241 | | McDaniel Payment Certifications 1-24 |
| 242 | | McDaniel Payment Application No. 1 |
| 243 | | McDaniel Payment Application No. 2 |
| 244 | | McDaniel Payment Application No. 3 |
| 245 | | McDaniel Payment Application No. 4 |

| | | |
|---|---|---|
| 246 | | McDaniel Payment Application No. 5 |
| 247 | | McDaniel Payment Application No. 6 |
| 248 | | McDaniel Payment Application No. 7 |
| 249 | | McDaniel Payment Application No. 8 |
| 250 | | McDaniel Payment Application No. 9 |
| 251 | | McDaniel Payment Application No. 10 |
| 252 | | McDaniel Payment Application No. 11 |
| 253 | | McDaniel Payment Application No. 12 |
| 254 | | McDaniel Payment Application No. 13 |
| 255 | | McDaniel Payment Application No. 14 |
| 256 | | McDaniel Payment Application No. 15 |
| 257 | | McDaniel Payment Application No. 16 |
| 258 | | McDaniel Payment Application No. 17 |
| 259 | | McDaniel Payment Application No. 18 |
| 260 | | McDaniel Payment Application No. 19 |
| 261 | | McDaniel Payment Application No. 20 |
| 262 | | McDaniel Payment Application No. 21 |
| 263 | | McDaniel Payment Application No. 22 |
| 264 | | McDaniel Payment Application No. 23 |
| 265 | | McDaniel Payment Application No. 24 |
| 266 | | Zimmer Accounting Summary |
| 267 | 8/12/205 | EDIS letter to IRSD on Zimmer Costs of Completion and Correction |
| 268 | 1various | EDIS letters to Zimmer for additional work areas |
| 269 | various | Auditorium schedules |
| 270 | | Zimmer Payment Application 8 w/o backup |
| 271 | | Zimmer Payment Application 9 w/o backup |
| 272 | | Zimmer PO and Adjustments |
| 273 | | Zimmer Payment Applications 1-9 w/o T&M backup |
| 274 | | Zimmer Payment Application No 1 |
| 275 | | Zimmer Payment Application No 2 |
| 276 | | Zimmer Payment Application No 3 |
| 277 | | Zimmer Payment Application No 4 |
| 278 | | Zimmer Payment Application No 5 |
| 279 | | Zimmer Payment Application No 6 |
| 280 | | Zimmer Payment Application No 7 |
| 281 | | Zimmer Payment Application No 8 |
| 282 | | Zimmer Payment Application No 9 |
| 283 | | Tri-State Completion Costs |
| 284 | | Tri-State Contract |
| 285 | | Bid Spread tabulation |

35

| 286 | | Tri State Payment Certifications |
|---|---|---|
| 287 | | Tri-State Payment Applications |
| 288 | | Tri-State Change Orders |
| 289 | | Tri-State Change Order Documents |
| 290 | | Additional Completion Costs |
| 291 | | High Nitrate testing / Chlorine Addition Costs |
| 292 | | Costs incurred by other contractors |
| 293 | | Delay and Professional Costs |
| 294 | | Damages Due to Delayed Performance |
| 295 | | Interest |
| 296 | | Litigation Fees |
| 297 | | Project manual volume 1 |
| 298 | | Project manual vol 2 |
| 299 | 1/30/2006 | A&S Memo on testing and balancing costs |
| 300 | | Subs and Suppliers spreadsheet |
| 301 | 10/12/2004 | A&S Memo on punchlist |
| 302 | 8/31/2004 | A&S Memo on Zimmer review |
| 303 | 9/9/2004 | A& S Memo on emergency items |
| 304 | 9/22/2004 | A&S Memo on penthouse punchlist |
| 305 | 9/23/2004 | A& S Memo on Zimmer meeting |
| 306 | 10/1/2004 | A&S memo on mechanical room |
| 307 | 9/3/2004 | Letter from EDiS to McDaniel re: Incorrect Domestic Water Expansion Tank |
| 308 | 10/28/2004 | A&S Memo on mechanical walkthrough |
| 309 | 11/17/2004 | A&S Memo on pump house |
| 310 | | Punchlist |
| 311 | 3/23/2005 | A&S Memo on inspection |
| 312 | 4/1/2005 | A&S Memo on penthouses |
| 313 | 4/12/2004 | A&S shope drawing review area B |
| 314 | 1/25/2005 | MPH payables |
| 315 | 11/30/2004 | BMG letter to IRSD |
| 316 | 11/12/2004 | BMG memo re pump house |
| 317 | 11/8/2006 | MPH counsel letter to RLI counsel |
| 318 | 11/10/2006 | RLI counsel letter to MPH counsel |
| 319 | | Trust fund paragraph of indemnity agreement enlarged |
| 320 | | Delaware Trust Fund law |
| 321 | | Instructions to Bidders |
| 322 | 9/14/2004 | Zimmer letter to IRSD |
| 323 | 10/27/2004 | EDIS minutes of meeting with RLI |
| 324 | 9/22/2004 | EDIS letter to MPH re fuel oil lines |
| 325 | 9/16/2004 | EDIS letter to MPH re thermal storage units |

| 326 | 3/29/2007 | First two pages of CSF summary of Zimmer time tickets |
| 327 | 12/3/2004 | IRSD counsel letter to RLI counsel |
| 328 | | Intentionally Omitted |
| 329 | 8/1/2000 | IRSD Contract with Becker Morgan Group |
| 330 | | spec section 01305 |
| 331 | 12/11/2006 | Building and Grounds Minutes on TAB work |
| 332 | 1/7/2002 | EDIS/IRSD Contract |
| 333 | 5/23/2002 | Construction Drawings Titled "Bid Pack C" |
| 334 | 5/28/2002 | Construction Drawings Titled "Bid Pack A" |
| 335 | 7/10/2002 | Construction Drawings Titled "Bid Pack B" |
| 336 | 7/10/2002 | Project Manual |
| 337 | 10/7/2002 | Preconstruction Meeting Minutes |
| 338 | 9/3/2002 | Meeting Minutes No. 1 |
| 339 | 9/17/2002 | Meeting Minutes No. 2 |
| 340 | 11/26/2002 | Meeting Minutes No. 7 |
| 341 | 2/4/2003 | Meeting Minutes No. 12 |
| 342 | 3/4/2003 | Meeting Minutes No. 13 |
| 343 | 8/5/2003 | Meeting Minutes No. 23 |
| 344 | 9/16/2003 | Meeting Minutes No. 26 |
| 345 | 10/28/2003 | Meeting Minutes No. 29 |
| 346 | 11/11/2003 | Meeting Minutes No. 30 |
| 347 | 11/25/2003 | Meeting Minutes No. 31 |
| 348 | 12/23/2003 | Meeting Minutes No. 33 |
| 349 | 1/6/2004 | Meeting Minutes No. 34 |
| 350 | 2/3/2004 | Meeting Minutes No. 36 |
| 351 | 2/17/2004 | Meeting Minutes No. 37 |
| 352 | 3/2/2004 | Meeting Minutes No. 38 |
| 353 | 3/16/2004 | Meeting Minutes No. 39 |
| 354 | 3/30/2004 | Meeting Minutes No. 40 |
| 355 | 4/13/2004 | Meeting Minutes No. 41 |
| 356 | 5/12/2004 | Meeting Minutes No. 43 |
| 357 | 5/25/2004 | Meeting Minutes No. 44 |
| 358 | 6/8/2004 | Meeting Minutes No. 45 |
| 359 | 7/13/2004 | Meeting Minutes No. 48 |
| 360 | 8/3/2004 | Meeting Minutes No. 51 |
| 361 | 8/17/2004 | Meeting Minutes No. 53 |
| 362 | 8/25/2004 | Meeting Minutes No. 54 |
| 363 | 9/7/2004 | Meeting Minutes No. 56 |
| 364 | 9/21/2004 | Meeting Minutes No. 57 |
| 365 | April-04 | Monthly Report to IRSD |
| 366 | May-04 | Monthly Report to IRSD |

| | | |
|---|---|---|
| 367 | June-04 | Monthly Report to IRSD |
| 368 | July-04 | Monthly Report to IRSD |
| 369 | 5/21/2004 | MidAtlantic letter to EDiS re payment |
| 370 | 5/24/2004 | EDiS correspondence to MidAtlantic re bond |
| 371 | 8/19/2004 | Letter from Berry to McDaniel re: A.C Shultes claim |
| 372 | 8/16/2004 | Letter from Berry to McDaniel re: MidAtlantic claim |
| 373 | 8/24/2004 | Letter from Berry to McDaniel re: ECS claim |
| 374 | 9/7/2004 | Letter from Berry to McDaniel re: Lyon Conklin claim |
| 375 | 9/7/2004 | Letter from Berry to McDaniel re: Thoro-goods claim |
| 376 | 9/8/2004 | Letter from Berry to McDaniel re: Deacon Industrial claim |
| 377 | 9/8/2004 | Letter from Berry to McDaniel re: Elite Air Systems claim |
| 378 | 9/13/2004 | Letter from Berry to McDaniel re: A.C Shultes claim |
| 379 | 9/24/2004 | Letter from Berry to McDaniel re: Jay J. Surkin claim |
| 380 | 9/24/2004 | Letter from Berry to McDaniel re: Deacon Industrial claim |
| 381 | 9/29/2004 | Letter from Berry to McDaniel re: NECO claim |
| 382 | 9/29/2004 | Letter from Berry to McDaniel re: Tri-State claim |
| 383 | 9/29/2004 | Letter from Berry to McDaniel re: First State Crane claim |
| 384 | 10/8/2004 | Letter from Berry to McDaniel re: Elite Air Systems claim |
| 385 | 8/20/2003 | Letter from Chris McCone/EDiS to McDaniel re: construction schedule |
| 386 | 11/10/2003 | Letter from Chris McCone to McDaniel re expansion loops |
| 387 | 12/4/2003 | Area A ductwork shop drawing review |
| 388 | 12/8/2003 | Area E ductwork shop drawing review |
| 389 | 12/11/2003 | Letter from Chris McCone/EDIS to McDaniel re ductwork |
| 390 | 12/24/2003 | Fax from Chris McCone/EDiS to McDaniel re pay app |
| 391 | 1/10/2004 | A&S memorandum re: shop drawings |
| 392 | 1/12/2004 | Letter from Chris McCone/EDiS to McDaniel re submittals |
| 393 | 1/14/2004 | Letter from Chris McCone/EDiS to McDaniel re casework |
| 394 | 1/14/2004 | Letter from Chris McCone/EDiS to McDaniel re exp. Loop |
| 395 | 1/20/2004 | A&S memo re return fan storage (with 1/21 cover) |
| 396 | 1/20/2004 | A&S memo re outstanding shop drawings |
| 397 | 2/11/2004 | Letter from McCone to McDaniel re late submittals |
| 398 | 2/13/2004 | Letter from McCone to McDaniel re ductwork schedule |
| 399 | 3/11/2004 | Letter from McCone to McDaniel re shower |
| 400 | 4/2/2004 | A&S memo re above ceiling inspections (x2) |
| 401 | 4/5/2004 | Letter from McCone to McDaniel re above ceiling inspections (x2) |
| 402 | 4/7/2004 | Letter from McCone to McDaniel re above ceiling inspections |
| 403 | 4/23/2004 | Letter from McCone to McDaniel re above ceiling inspections |
| 404 | 5/3/2004 | Letter from McCone to McDaniel re shop drawings |
| 405 | 5/5/2004 | Letter from McCone to McDaniel re layout |

| | | |
|---|---|---|
| 405 | 5/7/2004 | Letter from McCone to McDaniel re mechanical room |
| 407 | 6/18/2004 | Letter from McCone to McDaniel re RFI response |
| 408 | 6/29/2004 | Letter from McCone to McDaniel re above ceiling inspections |
| 409 | 8/19/2004 | Letter from McCone to McDaniel re flow switches |
| 410 | 8/19/2004 | Letter from Logan to Blackburn |
| 411 | 9/23/2004 | Letter from McCone to McDaniel re backcharge |
| 412 | 3/18/2004 | Two letters from Chris McCone/EDiS to McDaniel re: shop drawings |
| 413 | 5/3/2004 | Letter from Chris McCone/EDiS to McDaniel re: area B shop drawings |
| 414 | 5/18/2004 | Note to File by Berry |
| 415 | 8/19/2004 | Letter from Chris McCone/EDiS to McDaniel re: AHU's offline |
| 416 | 9/3/2004 | Letter from Chris McCone/EDiS to McDaniel re: tank |
| 417 | 9/16/2004 | Letter from Chris McCone/EDiS to McDaniel re: payment to Baltimore Air Coil |
| 418 | 9/22/2004 | Email from Baldassarre to Berry |
| 419 | 10/12/2004 | Receipt acknowledgment by McDaniel of 10/11 letter |
| 420 | 10/22/2004 | Email from Baldassarre to McDaniel |
| 421 | | Ted Dwyer's notes from 7/21 to 10/25/04 |

Plaintiff reserves objections to Defendants' Exhibit Nos. 7, 8, 9, 10, 11, 12, 14, 16, 23, 36, 109, 112, 142, 165, 168, 173, and 229 on Federal Rule of Evidence 402 and 403 grounds, and to Exhibit Nos. 290, 291, 292, 293, 294, 295, and 296 on Rule 901 grounds.

## VII.    WITNESSES TO TESTIFY AT TRIAL

### A.    **Plaintiff's Witnesses**

1.    William McDaniel, McDaniel Plumbing & Heating, Inc.

2.    Timothy E. Winship, RLI Insurance Company

3.    Louis M. Baldassarre, Cashin Spinelli & Ferretti, LLC

4.    Damian Cassin, Progressive Construction Management, Inc.

5.    David Berry, RLI Insurance Company

6    Joseph M. Zimmer, Jr., Joseph M. Zimmer, Inc**.**

39

7.    Christian J. McCone, EDiS

8.    Bradley A. Hastings, AIA, Becker Morgan

9.    Gregory C. Weer, IRSD - Supervisor of Building & Grounds

10.    Theodore Dwyer, President of EDiS

11.    Patrick Miller, Director of Business for IRSD

12.    David Van Der Vossen, Allen and Shariff Engineers

13.    Lois Hobbs, IRSD

**B.**    **Defendants' Witnesses**

    **1.**    **IRSD' s Witnesses, In Addition to Those Listed by EDIS and BMG**

        a.    Lois Hobbs, former superintendent, IRSD

        b.    Gregory C. Weer, Supervisor of Building and Grounds, IRSD

        c.    Patrick Miller, Director of Business, IRSD

        d.    Harvey Walls, former board member, IRSD

        e.    Theodore Dwyer, President, EDiS

        f.    Christian McCone, EDiS (Mr. McCone may testify by deposition if

            unavailable for trial)

        g.    B. Keith Hughes, FTI / BKS

        h.    Bradley A. Hastings, AIA, Becker Morgan

        i.    Joseph M. Zimmer, Jr., Joseph M. Zimmer, Inc.

        j.    David Van der Vossen, Allen and Shariff Engineers

        k.    William McDaniel, McDaniel Plumbing & Heating, Inc.

        l.    Louis Baldassarre, Cashin Spinelli & Ferretti, LLC

m.    David Berry, RLI

n.    Barton Davis, RLI

o.    James D. Griffen, former solicitor, IRSD

p.    Donald L. Logan, Esquire, counsel for EDiS


2.    **EDiS Witnesses in Addition to Those Listed by IRSD:**

a.    Timothy E. Winship, RLI

b.     Ian Moore, Moore Construction Services, LLC

c.     James M. McKay, P.E., R.A., Hill International, Inc

3.    **BMG's Witnesses in Addition to Those Listed by IRSD and EDiS:**

a.    Robert M. Maffia, AIA

## VIII.  PROOF IN SUPPORT OF PLAINTIFF'S CLAIMS

RLI will prove that the actions of IRSD in providing overpayments and advanced payments to McDaniel in violation of the specific terms of the contract documents as well as IRSD's actions in hiring Joseph Zimmer and Sons to perform services within McDaniel's scope of work prior to the termination of McDaniel constituted a material breach of the terms of the Bond thereby rendering said Bond null and void.  In the alternative, RLI will prove that it is entitled to a setoff against IRSD's claim of damages in the amount of $340,000.00 representing the overpayments/advance payments to McDaniel in violation of the contract agreement.  In addition, RLI will prove that IRSD has failed to mitigate its own claimed damages in hiring Joseph Zimmer on a time and materials basis with little or no oversight.

IX.    **BRIEF STATEMENT OF WHAT DEFENDANTS INTEND TO PROVE AS DEFENSES**

A.    **As to IRSD:**

IRSD intends to prove as its defense to RLI's declaratory judgment that:

IRSD's payments under the construction contract were valid and proper. IRSD was required by contract to make payments to McDaniel in the amount approved and certified by two independent professionals, EDiS and Becker Morgan. These contract terms were incorporated by reference into the performance bond. As long as IRSD made payments in only the certified amounts, IRSD fully complied with both the contract and the bond. No one disputes that IRSD did just that: each of the payments it made to McDaniel was in the amount certified by its two professionals. RLI could not contractually refuse to make any payment certified by its construction manager, EDiS, and its architect, Becker Morgan.

Further, the contract documents expressly provided that no payment by IRSD, and no certification for payment by EDiS or Becker Morgan, would be deemed or construed as an acceptance of work not in conformance to the contract requirements. IRSD had the right to correct McDaniel's work through others, whether previously paid for or not, and under the bond RLI must pay for these costs.

RLI took no action to attempt to limit IRSD's payments to McDaniel until July 27, 2004, when it wrote to EDiS requesting that no further payments be made to McDaniel without RLI's consent. After receipt of that letter, the only payments made to McDaniel were either by joint check to McDaniel and its unpaid vendors and suppliers, or, in one instance, to McDaniel to meet its project payroll. Each of these payments was made with the full knowledge and consent of RLI and its representatives (including its attorneys, Mr. Blackburn and Mr. DeVlieger, and its consultant, Mr.

42

Baldassarre). RLI cannot complain about these payments, since they consented to them. But even if they had not, IRSD was well within its rights to make payments by joint check to unpaid subcontractors and suppliers and to McDaniel for its payroll in order to ensure that the work did not stop and that school could open on time. These payments did not "prejudice" RLI since they went to pay completion costs and payment obligations that RLI would otherwise be responsible for under its bonds.

**B.    As to EDiS:**

EDiS Company intends to prove as its defense to RLI's negligent misrepresentation claim that:

EDiS did not supply any information for the guidance of RLI, RLI did not rely on any information supplied by EDiS and RLI was not damaged by any information supplied by EDiS. Payments by IRSD to McDaniel and its subcontractors and suppliers were made with the knowledge and consent of RLI and its agents. The payments by IRSD under McDaniel's three final applications, which were certified by EDiS and the architect and which are at issue in this litigation, were made with the knowledge and consent of RLI and were used for materials and labor incorporated into the project. RLI was not damaged, nor prejudiced, by such payments because RLI was responsible for the cost of such labor and materials pursuant to the payment bond. EDiS acted in good faith and exercised reasonable care in performing its construction management obligations.

In addition, RLI was contributorily negligent for issuing the bonds on behalf of McDaniel for the Project. RLI performed, or should have performed, a detailed financial analysis of McDaniel prior to the formation of the McDaniel/IRSD contract. RLI knew, or should have known, that

McDaniel was a significant risk and that IRSD and EDiS would rely on RLI's issuance of the bonds as an implied statement of McDaniel's financial strength.

### C.    As to BMG:

In addition to the elements of proof submitted by EDiS above, BMG intends to prove as its defense to RLI's negligent misrepresentation claim that:

RLI had greater access to MPH's records and financial statements and was contributorily negligent in not insuring itself against the reality that MPH was not paying its vendors and suppliers even after RLI was first put on notice of Payment Bond Claims in 2003. Such contributory negligence reduces any damages RLI can claim to have suffered as a result of its performance under the Payment Bond and negates RLI's claim that it relied upon the approval of Pay Application requests by BMG.

## X.    PROOF IN SUPPORT OF DEFENDANTS' COUNTERCLAIMS AND/OR CROSSCLAIMS

### A.    IRSD's Counterclaim:

IRSD intends to prove in support of its counterclaim against RLI, including the details of the damages claimed and any other relief sought, as follows:

The Sussex Central High School is a new public school facility constructed in Georgetown, Delaware by the Indian River School District ("IRSD"). IRSD engaged two professionals to administer the construction: EDiS Company, to serve as the construction manager, and Becker Morgan Group, to serve as the architect. The construction was publicly bid and awarded to several prime contractors, each performing the work of a separate trade.

On July 15, 2002, IRSD received bids for the HVAC, plumbing and ATC work from four bidders. McDaniel Plumbing and Heating, Inc. ("McDaniel") was the low bidder and was awarded the contract.

The contract between IRSD and McDaniel was dated August 28, 2002 and required McDaniel to perform all of the HVAC, plumbing and ATC work for $4,355,500. As required by Delaware law, McDaniel, as principal, and RLI Insurance Company, as surety, executed, issued and delivered to IRSD, as obligee, a Performance Bond (Exhibit 4) and a separate Labor and Material Payment Bond, each in a penal sum equal to the contract price.

McDaniel commenced its work but was unable to successfully complete it. Starting in April, 2004, EDiS began to notify RLI that McDaniel was failing to meet the project schedule, failing to pay for labor and material, and had performed defective work that needed to be corrected. By letter dated September 8, 2004, IRSD gave notice to IRSD and McDaniel that IRSD was considering declaring McDaniel in default under its contract. By separate letters dated October 11, 2004 to McDaniel and RLI, IRSD terminated McDaniel's contract and made demand upon RLI under the performance bond for RLI to complete the work.

By letter dated November 12, 2004, RLI advised IRSD that it was denying the claim under the performance bond because EDiS and Becker Morgan had allegedly approved payments to McDaniel for work either not done or not done in accordance with the contract. By letter February 28, 2005, IRSD contested RLI's denial of the claim and asserted a claim for the costs of completing and correcting McDaniel's work in an amount in excess of $1.7 million.

The origins of McDaniel's default are found in RLI's poor decision to issue the bonds in the first place. RLI's internal memos admit that under its current standards, the bonds for McDaniel on

the Sussex Central project should never have been written.  At the time the Sussex Central project was bid, RLI had just approved (after initially declining) bonds for another project, the Caesar Rodney High School for another Delaware school district, that at the time was the largest project undertaken by McDaniel.  In light of the Caesar Rodney project, RLI decided on bonding limits of $2.5 million per project and total bonded work of $5 million for McDaniel.  The Sussex Central project exceeded both these limits, yet the RLI home office decided to issue the Sussex Central bonds anyway.  As the RLI bond manager concluded in September 2004 after RLI experienced losses on both the Caesar Rodney and Central Sussex bonds:

> Quite simply, in hindsight, our contractor did not have the experience
> to properly evaluate, bid and manage projects of this size, much less
> two at one time.

Not surprisingly, McDaniel ran into cash flow problems on both the Caesar Rodney and Sussex Central projects.  Both projects were "in claim" with RLI by the end of 2003.  On Sussex Central, RLI received its first payment bond claim in November, 2003.  In April 2004, EDiS began copying RLI on letters to McDaniel complaining of delays, unpaid suppliers and defective work.  EDiS also communicated directly with RLI, requesting that RLI take some action to improve McDaniel's performance.  McDaniel formally asked RLI for financial assistance.  By early August of 2004, McDaniel owed its Sussex Central suppliers and vendors almost $600,000, over $300,000 of which had been due for over ninety days.  McDaniel had a duty under the construction contract, its indemnity agreement with RLI and applicable law to pay its subcontractors and suppliers out of the funds received from IRSD, but failed to do so.

As time passed, McDaniel became less and less responsive as its financial problems increased. More schedule dates were missed and more defective work found as the mechanical engineer, Allen & Shariff (a sub-consultant to Becker Morgan), inspected areas in connection with determining substantial completion.

As required by its contract, IRSD consulted with EDiS about whether to declare McDaniel in default. IRSD also received a certification from its architect, Becker Morgan, that sufficient grounds existed for the termination. IRSD exercised its right to terminate McDaniel for default on October 11, 2004.

In RLI's November 12, 2004 letter, RLI announced its refusal to complete the contract and its denial of liability under the performance bond. As permitted by the contract with McDaniel, the performance bond, and applicable law, IRSD paid other contractors and McDaniel's subcontractors to complete McDaniel's work and charged such payments to McDaniel's account, all as the result of McDaniel's breaches of the contract and RLI's failure to satisfy its obligations under the performance bond.

Specifically, IRSD hired a Joseph M. Zimmer, Inc. on a time and material basis to complete McDaniel's work in certain mechanical penthouses and relating the heating system. IRSD hired Zimmer for this work on an emergency basis in order for the school and its students to safely occupy the building. Proceeding on a time and material basis was the only way to get the work done because of the exigent circumstances and the unknown scope of the corrective work needed. Later on, IRSD added to the scope of Zimmer's work in other areas, on a time and material basis with a guaranteed not to exceed price. Zimmer exceeded some of these guaranteed maximums and reduced his invoices accordingly. EDiS verified that time and material sheets submitted by Zimmer on a

47

daily basis, and the mechanical engineer verified that the work noted in each time and material slip was needed to correct McDaniel's work.

IRSD hired a second contractor, Tri-State, to complete McDaniel's work in the "B" wing of the building. Tri-State completed, rather than corrected, McDaniel's work. Lump sum competitive bidding was feasible for this work because the scope of work was relatively identifiable and its completion was not an emergency since IRSD delayed its occupancy of wing "B" until later in the school year.

RLI could have controlled the completion costs by arranging for completion itself with a reservation of rights, rather than walking away from its obligations under the performance bond. Having breached its duties under the bond and the governing statute, RLI may not second-guess IRSD's choice of completion options. While IRSD had a duty to mitigate damages, it fulfilled that duty by acting reasonably.

IRSD's damages (subject to minor adjustment at trial) are summarized in the following accounting:

| | | |
|---|---|---|
| Cost to Complete and Correct McDaniel's work | | $ 1,900,146 |
| Delay and Professional Costs | | $ 406,823 |
| Damages for Delayed Completion | | $ 45,731 |
| Subtotal | | $ 2,352,700 |
| | | |
| Less contract balance unpaid | | ($ 308,608) |
| Total | | $ 2,044,092 |
| Interest | - in excess of | $ 545,091 |
| Litigation Fees and Expenses | - in excess of | $ 221,291 |
| TOTAL DAMAGES | | $ 2,810,474 |

**XI.     BRIEF STATEMENT OF WHAT RLI INTENDS TO PROVE**
**        AS DEFENSES TO IRSD'S COUNTERCLAIM**

Without waiver, reservation or restriction of the claims set forth in its Complaint against the defendants, RLI intends to prove as its defenses to IRSD's counterclaim that:

IRSD failed to mitigate its damages by its failure to timely and/or properly provide notice under the terms and conditions of the bond to RLI that McDaniel's work on the IRSD project was not in accordance with project specifications and conditions.  IRSD also failed to mitigate its damages by hiring Zimmer on a time and materials basis after the termination of McDaniel.

RLI is entitled to set-offs against damages claimed by IRSD, as those damages are to be reduced accordingly as they were not incurred by IRSD through any acts or omissions of RLI, but as a result of IRSD's own acts or the acts of others.

The actions or inactions of EDiS and/or Becker Morgan contributed to the damages and/or losses incurred by IRSD on the project.

IRSD's own acts or failure to act caused or contributed to the losses it claims to have sustained.

IRSD's acts and omissions impaired the collateral of RLI, thereby entitling RLI to *pro tanto* set-off of IRSD's proven damages and losses.

IRSD's acts, directly, or through its authorized agents, failed to comply with the terms and conditions of the bond issued by RLI for the project.

IRSD, directly or through its authorized agents, breached the terms and conditions of the contract entered into between IRSD and McDaniel, the General Conditions of the contract and/or Supplementary Conditions of the contract.

RLI will prove that the damages sought by IRSD are not directly attributable to the work performed by McDaniel and that IRSD is seeking compensation for items to which it is not entitled to a recovery.

RLI will also prove that some damages sought by IRSD seeks to recoup losses incurred by IRSD after McDaniel's termination for work performed by McDaniel that was approved as satisfactory and done in accordance with contract terms and specifications.

RLI will also prove that IRSD is seeking to be compensated for work not within McDaniel's scope of work and, therefore, not covered under the terms and conditions of the bond issued by RLI.

## XII.    AMENDMENT OF THE PLEADINGS

The only amendments to the pleading will be through the Court's determination of the Motion for Summary Judgment filed by IRSD, et al.  IRSD is seeking partial summary judgment on Count I of RLI's Complaint and complete summary judgment on Counts II and III of Plaintiff's Complaint.  RLI does not oppose granting judgment in IRSD's favor in regard to Counts II and III of it Complaint, however, it has filed a response in opposition to partial judgment in IRSD's favor in regard to Count I.   RLI has also opposed the pending Motions for Summary Judgment filed by EDiS and Becker Morgan.

## XIII.    CERTIFICATION OF GOOD FAITH EFFORT TO SETTLEMENT

The parties hereby certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement.  In the Spring of 2007, all parties agreed to attempt to resolve the claims through mediation with Conflicts Solutions.  Mediation took place on June 14-15, 2007, however, the case was not resolved.  The possibility of further settlement discussions has been

50

left open for future negotiations as agreed by and between the parties.  Since the conclusion of the

mediation, the parties have not actively participated in settlement discussions.

**XIV.    ADDITIONAL MATTERS AND ISSUES**

At present, the following Motions are pending before the Court:

- Motion for Summary Judgment filed by EDiS on September 27, 2007;

- Motion for Summary Judgment filed by BMG on September 28, 2007;

- Motion for Partial Summary Judgment filed by IRSD on September 28, 2007; and

- Motion in Limine to Strike the Expert Report of Damian Cassin filed by IRSD on

  October 15, 2007, and joined in by BMG and EDiS.

Counsel acknowledge that this Order shall control the subsequent course of the action, unless

modified by the Court to prevent manifest injustice.


Respectfully submitted,

  /s/ Perry S. Goldlust
Perry F. Goldlust. Esquire
ABER, GOLDLUST, BAKER & OVER
702 King Street
P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900
pgoldlust@gablawde.com
*Counsel for Plaintiff RLI Insurance Company*


  /s/ John E. Shields, Jr.
Harry R. Blackburn, Esquire
John E. Shields, Jr., Esquire
HARRY R. BLACKBURN & ASSOCIATES, P.C.
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
HBlackburn@HRBlackburn.com
JShields@HRBlackburn.com

(215) 985-0123
*Pro Hac Vice Counsel for*
*Plaintiff RLI Insurance Company*

  /s/ Victoria K. Petrone
Donald L. Logan, Esquire
Victoria K. Petrone, Esquire
LOGAN & ASSOCIATES, LLC
One Customs House, Suite 100
704 N. King Street, P.O. Box 89
Wilmington, DE 19899
(302) 655-8000
Dlogan@loganllc.com
Vpetrone@loganllc.com
*Counsel for EDiS Company*

  /s/ James S. Green
James S. Green, Esquire

SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
*Counsel for Indian River School District*


  /s/ Kevin G. Amadio
Kevin G. Amadio, Esquire
VENZIE, PHILLIPS & WARSHAWER
2032 Chancellor Street
Philadelphia, PA   19103
(215) 567-3322
kamadio@venzie.com
*Pro Hac Vice Counsel for Indian River School District*


  /s/ Patrick M. McGrory
Paul Cottrell, Esquire
Patrick M. McGrory, Esquire
TIGHE & COTTRELL, P.A.
One Customs House, Suite 500
P.O. Box 1031
Wilmington, DE 19899
*Counsel for Becker Morgan Group, Inc.*


Q:\RLI Surety.729\McDaniel.004\Indian River\Joint Pretrial
Order.wpd