IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | C.A. No. 05-858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| INDIAN RIVER SCHOOL DISTRICT, | ) | |
| EDIS COMPANY, and | ) | |
| BECKER MORGAN GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S**
<u>**PROPOSED JURY INSTRUCTIONS**</u>

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)
jgreen@svglaw.com
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

**DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S
JOINT PROPOSED JURY INSTRUCTIONS**

Pursuant to Local Rule 51.1(a) Defendant Indian River School District submits its proposed jury instructions on the specific areas of disagreement, as follows:

**TABLE OF CONTENTS**

3.2    RLI'S CLAIMS                                    2

3.3    IRSD'S COUNTERCLAIM                             5

1

3.2 RLI'S CLAIMS

### a. RLI's Claims As to the District

(1)  Overpayment

In this case, RLI claims that the School District overpaid McDaniel by paying for work not completed or not completed properly and because of the overpayment RLI is not required to complete McDaniel's remaining construction work as required by the performance bond.

As surety, RLI was bound by the terms of the construction contract between the School District and McDaniel.[1] Any payment by the School District that complied with the construction contract did not violate the performance bond.[2] Under the terms of the construction contract, the Architect and the Construction Manager evaluated the progress and quality of McDaniel's work and certified the amounts to be paid on monthly payment applications.[3] The School District was required by the construction contract to make payments to McDaniel in the amounts certified by the Architect and the Construction Manager.[4] Under the clear terms of the construction contract, the contractor had to correct non-conforming work whenever such work was discovered, regardless of whether payment had been made, or the building had already been occupied.[5] The construction contract makes it clear that neither the Certificate for Payment nor the payment itself constitutes an acceptance of work not in accordance with the contract.[6] By agreeing to bond the construction contract, RLI assumed all risk arising from the contract terms which clearly expressed that payments would be made on the architect's and construction manager's

---

[1] 29 Del. C., §6962(d)(9)(b) and 29 Del.C. §6927(e); Performance Bond, ¶1
[2] 29 Del. C., §6962(d)(9)(b) and 29 Del.C. §6927(e); Performance Bond, ¶1
[3] Paragraphs 9.4.1, 9.4.2 and 9.4.3 of the General Conditions of the Contract
[4] Paragraph 5.1 of the Contract; Paragraphs 9.6.1 and 9.7.1 of the General Conditions of the Contract
[5] Paragraphs 4.6.10, 9.4.3 and 9.6.6 of the General Conditions of the Contract.
[6] General Conditions paragraph 9.6.6 states that: "A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents."

2

certifications, and that work was neither accepted nor necessarily acceptable just because payment for it was made.[7]

As surety, RLI has no performance bond defense for payments made, as required by the terms of the construction contract, upon certifications of the architect and construction manager.[8] If you find that the School District made payments as required by the terms of the construction contract, upon certifications of the architect and construction manager, then you must find for the School District on RLI's overpayment defense.

If you find that any payment made by the School District was not in accordance with the terms of the construction contract, then you must consider whether the payment actually caused the surety injury. RLI must prove by a preponderance of the evidence: (1) a material departure from the contract's payment terms, and (2) that the surety suffered prejudice as a result of an improper payment.[9] If the overpayments were used by the contractor to pay for labor or material on the project then the surety has not been prejudiced, or injured.[10] In addition, to the extent that the surety consented to the overpayments, it was not prejudiced. If you find that any payment by the School District, although not in accordance with the terms of the construction contract, was actually used to pay for labor and material used on the project or was consented to by the surety, then you must find for the School District on RLI's overpayment defense. If you find that the School District made payments (1) not in accordance with the terms of the construction contract,

---

[7] 29 Del. C., §6962(d)(9)(b) and 29 Del.C. §6927(e); Performance Bond, ¶1; Paragraphs 4.6.10, 9.4.3 and 9.6.6 of the General Conditions of the Contract.
[8] Balboa Insurance Company v. Fulton County, 148 Ga.App. 328, 251 S.E.2d 123 (1978); Phillips v. American Liability & Surety Co., 309 Pa. 1, 162 A.435 (1932); American Fidelity Insurance Co. v. Pavia-Byrne Engineering, 393 So.2d 830 (La.App. 1981); National American Bank of New Orleans v. Southcoast Contractors, Inc., 276 So.2d 777 (La.App. 1973); Continental Realty Corp. v. Andrew J. Crevolin Co., 380 F.Supp. 246 (D. WV 1974); Argonaut Insurance Co v. Town of Cloverdale, 699 F.2d 417 (7th Cir. 1983); Ruckman and Hansen, Inc. v. Contracting & Material Co., 328 F.2d 744 (7th Cir. 1964)
[9] Argonaut Ins. Co. v. Town of Cloverdale, 699 F.2d 417 (7th Cir. 1983); National Surety Corp. v. U.S., 118 F.3d 1542 (Fed. Cir. 1997).
[10] Id.

and (2) that these payments prejudiced the surety, then RLI is entitled to a setoff reducing its liability to the School District only in the amount that the payments prejudiced the surety.

(2)     Other Bond Defenses

RLI raises other defenses about whether the School District arranged meetings, gave notices, or impaired collateral as allegedly required by the performance bond. These defenses are not permitted under Delaware law.[11] The State Procurement Law specifically prohibits a surety asserting as a defense that the performance bond contains a "limitation or restriction" not provided for in the State Procurement Law. The State Procurement Law requires the surety to indemnify the school district from all costs, damages and expenses growing out of or by reason of the contractor's failure to comply and perform the work, and complete the contract, in accordance with the contract. The State Procurement Law makes the surety's liability co-extensive with, that is, equal to, the contractor's liability under the construction contract. The surety may only assert defenses that arise from the terms of the construction contract. Any provision of the performance bond that would "limit or restrict" that liability is prohibited. You must find for the School District on these defenses.

(3)     Supplementing McDaniel's workforce with Zimmer

RLI claims that because the School District hired another contractor, Zimmer, prior to terminating McDaniel's employment, IRSD deprived it of its rights under the bond to remedy McDaniel's defaults before the School District terminated McDaniel's employment. Therefore, RLI claims, it is excused from completing McDaniel's remaining construction work.

The contract affords the School District the right, if McDaniel has failed to carry out the work in accordance with the contract, to supplement and / or correct the work without

---

[11] 29 Del. C. §6962(d)(9)(c); 29 Del. C. § 6962(d)(9)(b) & (f); 29 Del.C. §6927(d), (e) & (f); Savery and Cooke, Inc. v. Fidelity and Deposit Company of Maryland, 194 A.2d 858, 862 (De. 1963).

4

terminating McDaniel's employment and to deduct the cost associated with doing so from the contract price.[12] Therefore, you must find, as a matter of law, that RLI is not excused from completing McDaniel's remaining work on the basis that IRSD employed Zimmer prior to terminating McDaniel's employment.

### 3.3 THE SCHOOL DISTRICT'S COUNTERCLAIM

(1)  IRSD's Counterclaim

The School District claims that McDaniel breached the construction contract and because RLI issued the performance bond, RLI had a duty to complete and correct McDaniel's remaining construction work. The School District also claims that because RLI refused to complete and correct the work, the School District is entitled to recover monetary damages in the amount of $2,044,092, plus interest, attorney's fees and costs which continue to accrue until the time a judgment is entered, to compensate it for all the costs it incurred as a result of McDaniel's breach.

Delaware law requires that when a contractor enters into a contract with a public entity that it provide the public owner with a performance bond.[13] The contractor selects the surety and contracts with the surety to provide the bond. Under the terms of the bond, the surety agrees to guarantee the contractor's performance of all obligations under the contract.[14]

In order for RLI to be liable on the performance bond, RLI must have breached its duties under the performance bond and applicable law. The term breach is defined as a failure, without legal excuse, to perform any promise that forms a whole or a part of the performance bond.[15] If RLI breached the bond and IRSD sustained damages, IRSD is entitled to be compensated in the

---

[12] General Conditions of the Contract, ¶ 2.4.1 and Supplementary Conditions of the Contract, ¶ 2.4.1.
[13] 29 Del. C., §6962(d)(9)(b) and 29 Del.C. §6927(e)
[14] Id.
[15] Am Jur 2d., Contracts § 699.

5

amount which will place it in the same position it would have been in if RLI had properly performed all its duties under the performance bond and applicable law.[16]

If you find by a preponderance of the evidence that RLI breached its duties under the performance bond and applicable law, then you must find for the School District on its counterclaim, and you must determine the amount of damages sustained by the School District..

For breach of the performance bond, RLI is liable for (1) the cost of correcting defective work and completing the contract; (2) additional legal, design professional and delay costs resulting from the contractor's default and from the surety's refusal to complete; and (3) actual damages caused by delayed performance of the contract.[17] Also, the bond in this case expressly provided that if its provisions were in conflict with the governing law, those provisions would be deleted from the bond and replaced with provisions that conforms with the law.[18] Under the governing law, the surety is required to complete every remaining obligation under the contract and indemnify and hold the public owner harmless for all costs, damages and expenses it may incur as a result of the contractor's failure to properly perform under the contract.[19]

Under the guarantee of indemnity, the surety promises to protect the public owner from liability for the contractor's failure to honor its contractual obligations or to pay the debt a public owner incurs as a result of the contractor's default.[20] When a party is contractually entitled to be indemnified and held harmless, that party is entitled to recover the legal costs and attorney's fees it incurred to enforce the contractual indemnity provision.[21]

---

[16] Del. P.J.I. §22.24; American General Corp. v. Continental Airlines, 622 A.2d 1, 8, (Del.Ch. 1992), aff'd at 620 A.2d 856.
[17] Performance Bond, ¶ 6, ¶ 6.1 through ¶ 6.3.
[18] Performance Bond, ¶ 11.
[19] Id.
[20] Am Jur. 2d., Indemnity, § 4
[21] Delle Donne & Associates, LLP v. Millar Elevator Service Co., 840 A.2d 1244 (Del. 2004).

Interest is due on any amount awarded to the School District at the applicable legal rate of eight percent per annum, from the date RLI refused to perform its obligations under the bond, November 12, 2004, until the date of your verdict.[22]

You must find for the School District for all damages proved by a preponderance of the evidence, including interest at the rate of 8% per year from November 12, 2004 to the date of your verdict and the legal fees and expenses the School District incurred in this action.

(2)   Mitigation of Damages

RLI claims that the School District's hiring of Zimmer on a time and material basis to correct a portion of McDaniel's remaining work was more expensive than it would have been had the School District obtained competitive bids or firm price proposals from other contractors. As a result, RLI claims that the School District is not entitled to recover all costs it incurred in completing McDaniel's work.

When one party breaches a contract, the non-breaching party is entitled to recover only those damages he could not avoid by a reasonable effort.[23] The test is reasonableness and reasonableness is to be determined from all facts and circumstances and must be judged in the light of one viewing the situation at the time the problem was presented.[24] This principle of law is known as mitigation of damages.

The rule of mitigation of damages does not allow the contract breaker to critically analyze the conduct of the injured party or to complain that the injured person might have taken

---

[22] 6 Del. C. § 2301; Rollins Environmental Services, Inc. v. WSMW Industries, Inc., 426 A.2d 1363 (Del.Super. 1980)
[23] S.J. Groves & Sons Co. v. Warner Company, 576 F.2d 524, 529 (C.A. Pa. 1978); Delaware Coca-Cola Bottling Co., Inc. v. General Teamsters Local Union 326, 474 F.Supp. 777, 787 (D. De. 1979).
[24] S. J. Groves at 529; In Re Kellet, 186 F.2d 197 (3rd Cir. 1951); Tenneco Automotive, Inc. v. El Paso Corp., 2007 WL 2752938, *7 (Del. Ch.).

7

steps which seemed wiser or would have been more advantageous to the contract breaker.[25] The injured party is not required to hold the interests of the contract breaker in a higher position than his own interests or to his own further injury.[26] Where a choice is required between two reasonable courses, the person whose wrong forced the choice cannot complain that one rather than the other was chosen.[27] Where both parties have an equal opportunity to reduce the damages by the same act and it is equally reasonable to expect the contract breaker to minimize the damages, then he is in no position to contend that non-breaching party failed to mitigate.[28] Nor will the damage award be reduced on account of damages that the contract breaker could have avoided as easily as he.[29]

There is no dispute that the School District made demand upon RLI upon terminating McDaniel's employment and that RLI refused to hire a contractor to complete the remaining work, thereby giving up its right to control over the cost of completing the work. Therefore, if you find that RLI had an equal opportunity to control the costs of completing the remaining work then, as a matter of law, RLI is not entitled to invoke the doctrine of mitigation of damages. If you find that RLI did not have an equal opportunity to control the costs, then you must determine if IRSD's conduct in hiring Zimmer was reasonable. The fact that there were other courses the School District might have taken does not render the School District's course unreasonable. Reasonableness must be considered in light of (1) RLI's failure to complete the work; (2) the time constraints the School District was facing for occupying the school; (3) the time constraints the School District was under to coordinating McDaniel's work with that of the

---

[25] In Re Kellet at 198
[26] Id.
[27] Id.
[28] S.J. Groves at 530.
[29] Id.

8

other contractors; and (4) the difficulty in assessing the scope of the incomplete and incorrect work, all of which must be judged at the time that McDaniel's employment was terminated.

If you find that the School District's conduct was reasonable, then RLI, as a matter of law, may not assert the defense of failure to mitigate damages. If you find that the School District did not act reasonably to mitigate its damages, then RLI is entitled to a setoff reducing its liability to the School District only in the amount that would have been saved had the School District acted reasonably to mitigate its damages.

                    Respectfully Submitted,

                    SEITZ, VAN OGTROP & GREEN, P.A.

                    /s/ James S. Green
                    JAMES S. GREEN, ESQ. (DE0481)
                    jgreen@svglaw.com
                    222 Delaware Avenue, Suite 1500
                    P. O. Box 68
                    Wilmington, DE 19899
                    (302) 888-0600

                    Attorneys for Defendant and Counterclaimant
                    Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

9