IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RLI INSURANCE COMPANY                 :
                                      :
            Plaintiff,                :
                                      :
      v.                              :  Civil Action No. 05-858-JJF
                                      :
INDIAN RIVER SCHOOL DISTRICT,         :
EDIS COMPANY, and BECKER MORGAN       :
GROUP                                 :
                                      :
            Defendants.               :

Perry F. Goldlust, Esquire of ABER, GOLDLUST, BAKER, & OVER,
Wilmington, Delaware.
<u>Of Counsel</u>: Harry R. Blackburn, Esquire, Francine D. Wilensky,
Esquire, and John Hilser, Esquire of HARRY R. BLACKBURN &
ASSOCIATES, P.C., Philadelphia, Pennsylvania.
Attorneys for Plaintiff.

James S. Green, Esquire of SEITZ, VAN OGTROP, & GREEN, P.A.,
Wilmington, Delaware.
<u>Of Counsel</u>: Kevin Gerard Amadio, Esquire of VENZIE, PHILLIPS, &
WARSHAWER, Philadelphia, Pennsylvania.
Attorneys for Defendant Indian River School District.

Donald L. Logan, Esquire of TIGHE, COTTRELL, & LOGAN, P.A.,
Wilmington, Delaware.
Attorney for Defendant EDiS Company.

Paul Cottrell, Esquire of TIGHE, COTTRELL, & LOGAN, P.A.,
Wilmington, Delaware.
Attorney for Defendant Becker Morgan Group, Inc.

**MEMORANDUM OPINION**

December 4, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendants' Motion in Limine to Strike Plaintiff's Expert Report and Exclude Testimony. (D.I. 92.) For the reasons discussed, the Motion will be granted.

I. **BACKGROUND**

On October 15, 2007, Defendant Indian River School District ("Indian River" or "School District") filed a Motion in Limine to Strike RLI's Expert Report prepared by Progressive Construction Management, and to exclude RLI's expert, Damian Cassin, President of Progressive Construction Management, ("Mr. Cassin") from testifying at trial. (D.I. 92.) Co-defendants, EDiS Company ("EDiS"), and Becker Morgan Group ("BMG"), filed motions to join Indian River's motion on October 26, 2007 (D.I. 99, D.I. 100).

Indian River contends that RLI's expert report should be stricken and Mr. Cassin's testimony excluded from trial because: (i) RLI failed to include information required by Fed. R. Civ. P. 26(a)(2) ("Rule 26(a)(2)") with the report; (ii) the report presents a claim for damages allegedly suffered by McDaniel Plumbing and Heating, Inc. ("McDaniel"), which is not a party to this litigation and has not asserted this claim; and (iii) the report does not meet the requirements of Fed. R. Evid. 702, and the standards set forth in Daubert.

In response, RLI contends (i) it has not violated Rule 26(a)(2) since the Rule's required disclosures must be made

1

within 90-days of trial, and trial date has not been set but is likely more than 90-days away; and "when read as a whole," the expert report satisfies the requirements since it identifies the data and information considered by Mr. Cassin; (ii) the "damage claim by McDaniel" relates to damage sustained by RLI and is necessary to defend against Indian River's counterclaims; and (iii) the report meets Fed. R. Evid. 702 requirements, as well as Daubert standards.

## II.  STATE OF THE PROCEEDING

Pursuant to the parties' Second Amended Stipulation to Amend the Rule 16 Scheduling Order, fact discovery ended on June 6, 2007; expert reports were due from RLI on July 31, 2007, and from Indian River, EDiS and BMG on August 31, 2007; and opening briefs for dispositive motions were to be filed by September 28, 2007. On September 27, 2007, EDiS filed a motion for summary judgment, and on September 28, 2007, Indian River and BMG filed a motion for summary judgment. These motions were fully briefed on October 29, 2007.  A Pretrial Conference is scheduled for December 6, 2007.

In a letter to counsel dated November 9, 2007, RLI supplemented its disclosures pursuant to Rule 26(a)(2), and provided copies of Mr. Cassin's curriculum vitae, and page 75 of Mr. Cassin's report, bearing his signature.

In a letter to counsel dated November 16, 2007, RLI

2

supplemented its disclosures further, and provided information regarding Progressive Construction Management's compensation for services in this matter.

**III.   DISCUSSION**

1.  <u>RLI's Failure to Include Information Required by Rule 26(a)(2) with its Expert Report</u>

The expert report submitted by RLI on July 31, 2007 (the "Report"): (i) does not identify the author; (ii) is not signed; (iii) fails to identify the data and information the expert relied upon in forming his opinions; (iv) does not depict the expert's qualifications, publications authored in the last ten years, or other cases where the expert has testified in the last four years; and (v) does not disclose compensation paid to the expert for his report and testimony.

Indian River contends that it has been materially prejudiced by the omissions because Indian River's expert did not know the information RLI's expert relied upon, which may have altered Indian River's expert's analysis and conclusions. By way of example, Indian River points to the "calculations" contained within electronic scheduling information, which were considered by RLI's expert and were not identified to Indian River's expert, making it impossible for Indian River's expert "to review the underlying logic, critical path or float values of the PCM schedules." (D.I. at 4.) Indian River contends further that it is not required to take Mr. Cassin's deposition to obtain the

3

information RLI failed to disclose in its Report, and, even if were to depose Mr. Cassin to obtain the missing information, it would not have the opportunity to supplement its expert's rebuttal report. Finally, Indian River contends that allowing RLI to prepare its case on its own timetable is "inequitable to the other parties."

In response, RLI contends that it has not violated Rule 26 since information must be produced within ninety days of trial, and a trial date has not yet been set. Further, RLI contends that the cover letter enclosing the Report identified Mr. Cassin, and the Report identifies the data and information considered by Mr. Cassin in reaching his conclusions, which was data and information produced by Defendants during Discovery. RLI contends that Indian River has not been prejudiced or harmed in any way by RLI's failure to provide Rule 26(a)(2) information contemporaneously, since Indian River could have deposed Mr. Cassin to determine documents and information he relied upon. RLI contends that Indian River's Motion to Strike is excessive, and suggests that a more appropriate "sanction" for its failure to provide this information would be to require RLI "to produce the necessary information required under Rule 26 within a certain number of days." (D.I. 98 at 6.)

4

In relevant part, Rule 26(a)(2) states:

(2) Disclosure of Expert Testimony.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The **report shall contain** a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) **These disclosures shall be made at the times and in the sequence directed by the court**. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

(emphasis added.)

Rule 26 makes clear that the requisite information should be contained in the report, and made "at the times and in the sequence directed by the court." The ninety-day before trial date does not apply here, where the Court, pursuant to the modified scheduling order (D.I. 83), set July 31, 2007 as the due

5

date for RLI's expert reports. Thus, the Report does not comply with Rule 26. See, e.g., Ullman v. Auto-Owners Mut. Ins. Co., No. 2:05-cv-1000, 2007 WL 1057397 at *2 (S.D. Ohio, Apr. 5, 2007) ("Rule 26(a)(2)(B) mandates that the disclosing party *contemporaneously* disclose an expert written report, which must contain a complete statement of the expert's opinions, the basis for such opinions, the information relied upon in forming the opinions, any summarizing or supporting exhibits, the expert's qualifications, the expert's publications from the preceding ten years, the expert's compensation, and a list of all cases in which the witness testified as an expert in the preceding four years. Rule 26(a)(2)(c) sets forth default deadlines for these disclosures, *but also specifically provides that "[t]hese disclosures shall be made at the times and in the sequence directed by the court."*)(emphasis added).

Under Fed. R. Civ. P. 37(c)(1), a party that fails to disclose information required by Rule 26(a) cannot use that evidence unless the party had "substantial justification" or the failure was harmless. In addition to, or "in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions" such as payment of expenses, including attorney and/or expert fees caused by the failure. Fed. R. Civ. P. 37(c)(1).

(a)  *Whether RLI Proffers a Substantial Justification*

Beyond its contention that Rule 26 information isn't due until ninety-days before trial, RLI has not offered any other justification for its failure to provide Rule 26 information, much less a "substantial justification."

(b)  *Whether RLI's Failure to Comply is Harmless*

Indian River contends RLI's failure to identify all information Mr. Cassin relied upon resulted in Indian River rendering a rebuttal expert report based on incomplete information. (D.I. 105 at 3.)  Mr. Cassin's report states initially that it "relies upon the schedule incorporated in the contract documents," and "reflect[s] upon dates and sequences afforded in numerous subsequent schedule updates." (Cassin Report 3). The report references documents Mr. Cassin reviewed,[1] but many of his references are vague and muddled.  These references may be less opaque to Defendants, who are hopefully familiar with

---

[1] For example, in his report, Cassin references, among other documents, notes and minutes resulting from project progress meetings, and schedules attached thereto, Schedule Updates, project status reports, "marked up steel drawings" (Cassin Report 9), contract documents, McDaniel's daily reporting notes, reports from EDiS, School Superintendent meeting notes, McDaniel's daily reports, EDiS's Monthly Reports, McDaniel's "basis of impact and notice of claims" in April 2003 (Cassin Report 24), a May 5, 2003 "confirmation" from EDiS in response to McDaniel's notice (Cassin Report 24-25), McDaniel's May 8, 2003 follow-up to its initial notice of impact (Cassin Report 25), McDaniel's May 7, 2003 response to EDiS's request for information (Cassin Report 27), a "Superintendent report" (Cassin Report 28), an August 13, 2003 EDiS/McCone letter, and Building and Ground Meeting Minutes.

7

the documents at issue, but the Report certainly does not "provide specific detail of the dates, times and identity of the documents upon which Mr. Cassin relied," as RLI contends. (D.I. 98 at 5.)

Indian River's expert is entitled to a straight-forward accounting of what Mr. Cassin did and (perhaps more importantly) did not consider when he reached his conclusions. Since RLI has made no efforts to catalog this information, Defendants are required to parse through the Report, page by page, to make this determination.[2] Obviously, this is not the most efficient or thorough way to determine what Mr. Cassin reviewed, and begs the question: if a document isn't referenced in his report, can Indian River then assume that Mr. Cassin did NOT consider this information? A brief review of the Report makes clear that he considered a substantial amount of information, information that RLI ostensibly provided him. Further, it is not terribly onerous for RLI to generate a list of the information and data they provided to Mr. Cassin to assist him in rendering his opinion. Thus, the Court concludes that RLI shall provide this information to the Defendants.

---

[2]Defendant's expert report states: "We believe that we were able to locate most of the documents that [the Report] refers to although there are several that have not yet been found." (Hughes Report 25.)

8

2.  The Report's Calculations of McDaniel's Estimated Damages

Indian River contends that Mr. Cassin's Report does not comply with Fed. R. Evid. 702 because the Report does not contain information that will assist the trier of fact in determining or understanding the issues in this case. Indian River contends that the Report is not relevant to RLI's allegations, since the Report is about delays to the Project and how those delays affected McDaniel, who is not a party to the case.

In response, RLI contends that the Report is relevant to damages it sustained as a result of Indian River, BMG and EDiS. RLI also contends that the Report is relevant to claims raised by Indian River in its counterclaims.

> Fed. R. Evid. 702 requires that the expert's testimony must assist the trier of fact. As [the Third Circuit] put it in Downing, admissibility depends in part on "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." Downing, 753 F.2d at 1237. See Daubert, 509 U.S. 579 - ----, 113 S.Ct. at 2795-96 (explicitly adopting the "fit" requirement of Downing).

In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 743 (3d Cir., 1994). The bases for RLI's damages claims are: costs of investigation of Indian River's performance bond and inspection of McDaniel's work, funds advanced to McDaniel to complete the project prior to termination, overpayments and advance payments made by Indian River to McDaniel, and the remaining contract balance. The damages calculations in the Report set forth

9

"estimates of material and labor overruns arising from the impacts and subsequent acceleration noted in [the] narrative." The crux of RLI's argument is that Indian River overpaid McDaniel, thus impairing RLI's collateral. The Report's damages calculations suggest that McDaniel was entitled to *more* money, and thus have minimal probative value.

RLI contends in its brief that if RLI's claim for declaratory relief against Indian River "were the entirety of the case, Plaintiff would concede Defendant Indian River's point [that the Report asserts claims not at issue in this litigation]; however, once [Indian River] asserted a monetary counterclaim seeking its financial losses from RLI, the issue of financial loss came to the forefront." (D.I. 98 at 7.) Accordingly, RLI contends that the McDaniels calculations are relevant to RLI's set-off of any of Indian River alleged losses, since "[c]learly, RLI would not be responsible for losses attributable to other parties or non-parties to this litigation," but only "for [Indian River]'s losses for claims directly attributed to [RLI's] principal, McDaniel." (Id.) However, a "surety may not plead the principal's independent cause of action as a defense against the creditor, nor in most instances, may the surety set off the claims of the principal against the creditor, where the principal is not joined in the action." Richard A. Lord, 23 Williston on Contracts § 61:14 (4th ed.) (citing Tidewater Coal Exchange v.

10

New Amsterdam Casualty Co., 20 F.2d 951 (D. Del. 1927)).[3]

As presented, the Court concludes the Report is lacking the "proffered connection" between the damages calculations depicted by Mr. Cassin and the facts at issue in the case, and therefore the calculations are largely irrelevant to the claims at issue.

3.  Reliability of the Report's Methodology

Indian River contends that, because the Report concludes that McDaniel was entitled to an extension of time and monetary damages, RLI must prove that the critical path was delayed by identifying the critical path, and demonstrating the causal link between a critical path delay and resulting modifications to the work.[4] Indian River contends: (1) the Report does not reliably

---

[3] The Restatement (Third) of Suretyship and Guaranty, Section 35, sets forth four instances, none of which RLI has claimed is present here, where the surety may use a claim of the principal to reduce its liability under the surety agreement:(1) to the extent that the set-off is uncontested by the creditor, or there is no genuine issue as to the creditor's liability to the principal; (2) the principal consents to the use of its claim by the surety;(3) the principal is made a party to the creditor's action to enforce the surety agreement;(4) the principal is charged with notice of the surety agreement, and the surety gives the principal reasonable notice of the creditor's action and of the surety's intent to assert the claim and an opportunity to join its assertion, unless the court, based on considerations of the appropriate administration of justice, rules that it would be inappropriate to litigate the claim in that court.

[4] The critical path method is:
> [A]n efficient way of organizing and scheduling a complex project which consists of numerous interrelated separate small projects. Each subproject is identified and classified as to the duration and precedence of the work. (E.g., one could not carpet an area until the flooring is down

11

identify the critical path at the time of the first delay, and thus the entire Report is unreliable; (2) the foundation of the Report's critical path, the milestone schedule contained in the project specifications, lacks sufficient data to properly define the critical path; (3) because Mr. Cassin states in the Report that either concrete or steel was the critical path activity, he has not identified the critical path, and his analysis is therefore unreliable; (4) the milestone schedule does not contain sufficient logic for it to constitute a complete critical path

---

and the flooring cannot be completed until the underlying electrical and telephone conduits are installed.) The data is then analyzed, usually by computer, to determine the most efficient schedule for the entire project. Many subprojects may be performed at any time within a given period without any effect on the completion of the entire project. However, some items of work are given no leeway and must be performed on schedule; otherwise, the entire project will be delayed. These latter items of work are on the "critical path." A delay, or acceleration, of work along the critical path will affect the entire project. ...Courts often use CPM to resolve disputes over excusable-delay claims. CPM provides a useful, well-developed nomenclature and analytic framework for expert testimony. While CPM has generated a technical terminology, the legal requirement that it is used to analyze is general and commonsensical: a contractor must prove that a delay affected not just an isolated part of a project, but its overall completion. Courts often do not use formal CPM terminology, but simply an informal, CPM-like analysis to determine whether a contractor has met its burden of proof on that general requirement.
Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1233 (C.A.10, 1999) (internal citations omitted).

methodology and was manipulated by Mr. Cassin after the fact; and (5) the Report does not contain an apportionment of Indian River-caused delays versus non-Indian River-caused delays.

In response, RLI first contends that Indian River's motion is premature, and that the Court cannot determine whether Mr. Cassin is an expert because Defendants have not yet taken his deposition, and RLI had not, at the time Indian River's Motion in Limine (D.I. 92) was filed, proffered his qualifications. Second, RLI contends that the Report specifically sets forth the documents and procedures followed to ascertain the time delay and economic impact, and, based on this information, the Court should find the Report methodology reliable. Finally, RLI contends that Mr. Cassin's report will assist the trier of fact because the Report is intended to prove that the Defendants "acted improperly in terminating McDaniel and/or issuing overpayments and advance payments." (D.I. 98 at 11.) According to RLI, the Report's critical path analysis clearly shows that Mr. Cassin "considered the actual performance of work along the critical path through Defendants' own documents," and "Mr. Cassin continually updated the critical path and work schedule based on documents generated contemporaneously with the activities being performed on the project." (Id. at 12.)

Rule 702 has two major requirements: (1) a witness proffered to testify to specialized knowledge must be an expert; and (2)

13

the expert must testify to scientific, technical or other specialized knowledge that will assist the trier of fact. In Re Paoli, 35 F.3d at 741-742. Indian River has not contested Mr. Cassin's qualification as an expert. Thus, this analysis will focus on the second requirement. In Daubert, the Supreme Court held that an expert's testimony is "admissible so long as the process or technique the expert used in formulating the opinion is reliable." Paoli, 35 F.3d at 742. "[A] judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' i.e., if it is based on the methods and procedures of science." Id. at 744. Under Daubert, "the focus ... must be solely on principles and methodology, not on the conclusions they generate." Id.

As stated *supra*, RLI contends that the purpose of the Report is to prove that the defendants acted improperly in terminating McDaniel, and in issuing overpayments and advance payments, and the Report does tend to prove that McDaniel was substantially behind schedule in progress as a result of delays beyond his control. However, if these delays were not on the critical path, they should not have affected McDaniel's progress. Mr. Cassin's Report does discuss "critical delays," "critical impact," "critical steps," and the "project critical path." The Report begins with an analysis of the baseline schedule (Cassin Report 3-5) and states "this report relies upon the schedule

14

incorporated in the contract documents, and though we reflect upon the dates and sequences afforded in numerous subsequent schedule updates[,] we believe that McDaniel has the right to expect and rely upon the performance, sequencing and durations incorporated in the aforementioned schedule." The Report reflects changes to the baseline schedule as the Project progresses.

However, the overarching methodology used by Mr. Cassin in his Report is hardly apparent. The bulk of the report is a poorly-organized time line of the project events, with analysis scattered throughout. Since RLI contends that Mr. Cassin applied critical path methodology, Mr. Cassin should more clearly identify the critical path at the start of the Project in his discussion of the initial schedule, and throughout his entire analysis.

4.   Sanctioning: Pell v. E.I. Dupont De Nemours & Co., Inc.

In Pell v. E.I. Dupont De Nemours & Co., Inc., 231 F.R.D. 186, 193-194 (D.Del. 2005), the court held that the expert report at issue did not satisfy Rule 26 since it failed to identify the expert's qualifications, or the data and other information he considered in forming his opinions.  The report also did not contain a complete statement of all opinions to be expressed, or the basis for the opinions, and did not satisfy Daubert standards for admissibility. The court allowed the proponent of the report three weeks to remedy the deficiencies in the report before it

15

would be stricken, but allowed the opposing party to recover reasonable expenses incurred as result of the proponent's failure to comply with Rule 26(a), including time spent in preparing for and deposing the expert, and in preparing a subsequent motion to strike, if the proponent was unable to remedy the deficiencies.

A similar remedy is appropriate here. Should RLI choose not to remedy the deficiencies in Mr. Cassin's Report and proposed testimony, the Court will grant Defendant's Motion in Limine to Strike Plaintiff's Expert Report and Exclude Testimony (D.I. 92) for the reasons discussed. However, should RLI choose to remedy the deficiencies of Mr. Cassin's Report, RLI is required to provide Defendants with a straight-forward statement of the data or other information considered by Mr. Cassin in forming his opinions, as well as any exhibits to be used as a summary of or in support of his opinions. Further, RLI is required to address the Report's substantive failings by redacting the McDaniel's damages calculations, and by identifying with greater clarity and precision the analysis methodology.

If RLI chooses to remedy the deficiencies in its Report, Defendant will be allowed an opportunity to depose Mr. Cassin to determine whether his report satisfies Fed. R. Civ. P. Rule 26(a)(2)(B), as well as Fed. R. Evid. 702. Expenses incurred by the Defendants as a result of RLI's failure to comply with Rule 26(a)(2)(B) and Fed. R. Evid. 702 will be paid by RLI, including

16

any time spent in preparing for and deposing Mr. Cassin, and in preparing a subsequent motion to strike, if RLI is unable to remedy the Report's deficiencies.

### IV. CONCLUSION

For the reasons discussed, RLI must notify the Court and opposing counsel within 15 days of this Order whether it will remedy the deficiencies in Mr. Cassin's report. Should RLI choose not to remedy the deficiencies, Defendant's Motion in Limine to Strike Plaintiff's Expert Report and Exclude Testimony (D.I. 92) will be granted.

An Order consistent with this Memorandum will be entered.