# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **vs.** | : | **NO. 05-858** |
| | : | |
| **INDIAN RIVER SCHOOL DISTRICT** | : | |
| **and** | : | |
| **EDiS COMPANY** | : | **JURY TRIAL DEMAND** |
| **and** | : | |
| **BECKER MORGAN GROUP, INC.** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF RLI INSURANCE COMPANY'S
## ANSWERING BRIEF IN SUPPORT OF ITS RESPONSE
## TO DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S
## RENEWED MOTION IN LIMINE TO STRIKE PLAINTIFF'S
## <u>EXPERT REPORT AND EXCLUDE EXPERT TESTIMONY</u>

**ABER, GOLDLUST, BAKER & OVER**

/s/Perry F. Goldlust
PERRY F. GOLDLUST (DSB #770)
702 King Street, P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900
pgoldlust@gablawde.com
*Attorneys for Plaintiff RLI Insurance Company*

DATE: March 14, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................... ii

I.    NATURE AND STATUS OF THE PROCEEDINGS ..................................... 1

II.   SUMMARY OF COUNTER ARGUMENTS ............................... 5

III.  CONCISE STATEMENT OF FACTS ...................................... 5

IV.   COUNTER-ARGUMENTS ..................................................... 6

    A.    PCM's Revised Expert Report complies with the directives of the
       Court's December 4, 2007 Order and should not to be stricken ............................ 6

    B.    PCM's Revised Expert Report corrects the defects contained
       within its initial report and complies with the Court's December
       4, 2007 Order and Memorandum Opinion ........................................... 16

    C.    Neither IRSD nor any other defendant is entitled to recover its fees
       from RLI in moving to strike PCM's Revised Expert Report. ........................... 21

V.    CONCLUSION ................................................................ 22

    EXHIBITS:

    A  -    Progressive Construction Management, Inc.'s Revised Report
        dated February 4, 2008.

    B  -    Progressive Construction Management's Index Exhibits for Reference and
        Reliance Upon in Forming it's Opinions and Conclusions.

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aircraft Gear Corp. v. Kaman Aerospace Corp.*,
1995 U.S. Dist. LEXIS 13962, 1995 WL 571431 (N.D. Ill. Sept. 25, 1995)............................9

*Beller v. U.S.*, 221 F.R.D. 696 (D. NM 2003)............................................................................9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)........................................13

*Haney v. United States*, 230 Ct. Cl. 148, 167-68, 676 F.2d 584 (1982)..................................19

*Hoffman Construction Company v. U.S.*, 40 Fed.Cl. 184 (1998)............................................14

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741-42 (3d Cir.1994)........................................13

*Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244 (6th Cir. 2001)..............................................9

*Pell v. E.I. Dupont De Nemours & Co.*, Inc., 231 F.R.D. 186, 193-194 (D.Del. 2005).............10

*U.S. v. Velasquez*, 64 F.3d 844, 849 (3d Cir.1995)..................................................................13

*Weaver-Bailey Contractors v. U.S.*, 19 Cl. Ct. 474 (1990).......................................................19


**FEDERAL RULES**

Fed. R. Civ. P. Rule
26(a)(2)(B)................................................................................................................................. 21


Fed. R. Evidence 702.................................................................................................................13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RLI INSURANCE COMPANY | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION |
| | : | NO. 05-858 |
| INDIAN RIVER SCHOOL DISTRICT | : | |
| and | : | |
| EDiS COMPANY | : | JURY TRIAL DEMAND |
| and | : | |
| BECKER MORGAN GROUP, INC. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF RLI INSURANCE COMPANY'S
ANSWERING BRIEF IN SUPPORT OF ITS RESPONSE TO
DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S RENEWED
MOTION IN LIMINE TO STRIKE PLAINTIFF'S EXPERT
REPORT AND EXCLUDE TESTIMONY**

I.    NATURE AND STATUS OF THE PROCEEDINGS

Plaintiff RLI Insurance Company ("RLI") filed a Complaint against Indian River School

District ("IRSD"), EDiS Company ("EDiS"), and Becker Morgan Group, Inc. ("Becker Morgan").

In the Complaint, RLI sought declaratory relief against IRSD (Count I) and alleged breach of

fiduciary duty (Count II), and negligent misrepresentation (Count III) against IRSD.  On September

28, 2007, IRSD filed a Motion for Summary Judgment against RLI.  On October 18, 2007, Plaintiff

RLI filed its response to IRSD's Motion for Summary Judgment.  Plaintiff did not object in its

response to the dismissal of Counts II and III of Plaintiff's Complaint against IRSD and opposed

only partial summary judgment on Count I of its Complaint. Becker Morgan and EDiS Company have also filed Motions for Summary Judgment. A second mediation has been scheduled for April 4, 2008. In the event this matter does not amicably resolve, trial has been scheduled to commence in July 2008.

As stated, Count I of Plaintiff's Complaint seeks declaratory relief against IRSD for overpayments and/or advance payments approved by EDiS and Becker Morgan with IRSD's knowledge and consent in violation of the terms and conditions of the performance bond issued by Plaintiff RLI. As a result of the overpayments and advance payments made by IRSD in violation of the express terms of the contract for construction and the surety bond, RLI has incurred substantial losses under the bond. IRSD's actions, in conjunction with the acts and omissions of EDiS and Becker Morgan, resulted in RLI's incurring significant monetary damages, including, but not limited to, being deprived of its rights under the performance bond by impairing its collateral, because of IRSD knowingly and voluntarily making the advance payments to McDaniel Plumbing & Heating ("McDaniel"). Such actions by IRSD prejudiced RLI, as RLI relied upon the good faith expectation that IRSD would perform its obligations under the contract documents in deciding to issue the performance bond for this project.

After the Complaint was filed, IRSD answered Plaintiff's Complaint and asserted a counterclaim against RLI in an amount in excess of $1,800,000.00 alleging "defective work and delayed completion" of the IRSD project. This claim appears to arise primarily from the time and material work of Joseph M. Zimmer, Inc. ("Zimmer"), a plumbing and heating contractor hired by IRSD under a no-bid contract and who was paid, in part, with funds earmarked for McDaniel.

2

As a result of IRSD's acts and omissions, in conjunction with the acts and/or omissions of EDiS and Becker Morgan, RLI seeks to be discharged from its bond obligations. In the alternative, in the event that the factfinder determines that RLI is liable under the bond, RLI asserts defenses against IRSD's financial claims in regard to its entitlement to certain setoffs that resulted from IRSD's own actions or the actions of its authorized agents and representatives, EDiS and Becker Morgan Group.

On or about July 31, 2007, RLI served an expert report prepared by PCM/Damian Cassin upon the defendants. On October 15, 2007, Defendant IRSD filed its Motion in Limine to Strike the Report of PCM and to preclude the testimony of Damian Cassin at trial. Defendants BMG and EDiS joined IRSD's motion. Thereafter, RLI filed a timely response to IRSD's motion. On December 4, 2007, this Court issued an Order with Memorandum Opinion provisionally granting IRSD's motion, unless RLI chose to prepare and serve a revised PCM report containing information, analysis and methodology as directed by the Court in its Opinion and Order. RLI advised the Court and opposing counsel that it elected to follow the Court's directives and serve a revised report.

The revised PCM report, titled "Analysis of Impacts on the Performance of McDaniel Plumbing & Heating, Inc. on Construction of the Sussex Central High School," was served by way of electronic mail to all counsel on February 4, 2008, along with several electronic files which contained information and data generated by PCM in preparing the revised report. A copy of PCM's revised report is attached as Exhibit "A." The supporting exhibits which PCM utilized in its analysis and considered in reaching its conclusions were provided via parcel shipment to all counsel given their voluminous nature shortly thereafter. A copy of the Index to Exhibits is attached as Exhibit "B."

The Progressive Construction Management ("PCM") revised report and testimony which IRSD seeks to exclude/preclude addresses the issues of delays impacting the project schedule and the effect that those delays had upon the work of McDaniel Plumbing and Heating, who RLI bonded for this project. The original report addressed the same issues, however, it also contained elements of financial damages incurred by McDaniel. These last items have been redacted.

Although the Court serves as a gatekeeper to the admission of expert evidence at trial, the Court must simply assess whether or not the expert's testimony rests on reliable foundation and is relevant to resolution of the facts and claims. In this case, PCM's Revised Report shows that the critical path was delayed by forces beyond McDaniel's control. Delays to the critical path in turn resulted in delays to McDaniel's ability to perform the work under the contract documents and schedules. These conclusions contradict the defendants' position that McDaniel was behind schedule as a result of its own doing. PCM bases its conclusion and opinions that the critical path was delayed upon an analysis of the documents and records produced by Defendants through discovery, in particular, the initial schedule made part of the contract documents and subsequently issued schedule updates through the time McDaniel was terminated. It is for the trier of fact to determine whether or not the expert's opinion is credible as opposed to reliable, as the latter determination is solely within the Court's province.

Plaintiff RLI respectfully requests that this Court deny IRSD's Renewed Motion in Limine for the reasons set forth below.

II.    **SUMMARY OF COUNTER ARGUMENTS**

    A.     PCM's Revised Expert Report complies with the directives of the Court's December 4, 2007 Order and should not be stricken.

    B.     PCM's Revised Expert Report corrects the defects contained within its initial report and complies with the Court's December 4, 2007 Order and Memorandum Opinion.

    C.     Neither RLI nor any other defendant is entitled to recover its fees from RLI in moving to strike PCM's Revised Expert Report.

III.    **CONCISE STATEMENT OF FACTS**

For purposes of this instant motion, the facts are simple. The Court imposed an expert report submission deadline of July 31, 2007. On that date, the Report of Damian Cassin of PCM was produced to all counsel via electronic mail. On October 15, 2007, Defendant IRSD filed its Motion in Limine to Strike the Report of PCM and to preclude the testimony of Damian Cassin at trial. After consideration of IRSD's motion and RLI's response, the Court, on December 4, 2007 entered its decision on the issue and permitted RLI, in its discretion, to resubmit PCM's expert report.

The Court's Opinion stated, in pertinent part, that RLI may:

...remedy the deficiencies of Mr. Cassin's Report, RLI is required to provide Defendants with a straight-forward statement of the data or other information considered by Mr. Cassin in forming his opinions, as well as any exhibits to be used as a summary of or in support of his opinions. Further, RLI is required to address the Report's substantive failings by redacting the McDaniel's damages calculations, and by identifying with greater clarity and precision the analysis methodology. If RLI chooses to remedy the deficiencies in its Report, Defendant will be allowed an opportunity to depose Mr. Cassin to determine whether his report satisfies Fed. R. Civ. P. Rule 26(a) (2) (B), as well as Fed. R. Evid. 702. Expenses incurred by the Defendants as a result of RLI's failure to comply with Rule 26(a) (2) (B) and Fed. R. Evid. 702 will be paid by RLI, including any time spent in preparing for and deposing

5

Mr. Cassin, and in preparing a subsequent motion to strike, if RLI is unable to remedy the Report's deficiencies.
*See* Memorandum Opinion, pages 16-17.

## IV. COUNTER ARGUMENTS

### A. PCM's Revised Expert Report complies with the directives of the Court's December 4, 2007 Order and should not be stricken.

IRSD contends that the revised PCM report must be stricken as it contains a 'new analysis' that is significantly different from its initial report and does not clarify the original analysis performed by PCM. To the contrary, the revised PCM report sets forth a clarification and detailed analysis of the method and principles used by PCM in reaching its conclusions. RLI respectfully reminds the Court that the initial PCM report was intended to detail the delays on the project and the effects those delays had on McDaniel's ability to work. This was acknowledged by the Court in its Memorandum Opinion, which states:

> ...RLI contends that the purpose of the Report is to prove that the defendants acted improperly in terminating McDaniel, and in issuing overpayments and advance payments, *and the Report does tend to prove that McDaniel was substantially behind schedule in progress as a result of delays beyond his control.* However, if these delays were not on the critical path, they should not have affected McDaniel's progress. Mr. Cassin's Report does discuss "critical delays," "critical impact," "critical steps," and the "project critical path." The Report begins with an analysis of the baseline schedule (Cassin Report 3-5) and states "this report relies upon the schedule incorporated in the contract documents, and though we reflect upon the dates and sequences afforded in numerous subsequent schedule updates[,] we believe that McDaniel has the right to expect and rely upon the performance, sequencing and durations incorporated in the aforementioned schedule." The Report reflects changes to the baseline schedule as the Project progresses. However, the overarching methodology used by Mr. Cassin in his Report is hardly apparent. The bulk of the report is a poorly-organized time line of the project events, with analysis scattered throughout. Since RLI contends that Mr. Cassin applied critical path methodology, Mr. Cassin should more clearly identify the critical path at the start of the Project in his discussion of the initial schedule, and throughout his entire analysis.

6

*See* Memorandum Opinion, pages 14-15.

The revised PCM report does maintain the position that the critical path is based upon the original schedule in the contract documents, however, it places more emphasis on the November 18, 2002, that the defendants maintain is the controlling schedule, stating:

> We continue to insist upon McDaniel's right to rely upon the performance dates incorporated in the contract documents, but to afford further understanding of the methodology employed in compiling the impacts and quantifying the delays I feel we can, in this supplement use the Rev 18 November 2002 schedule and still demonstrate the majority of impacts to the project as indicated as follows...
> *See* revised PCM report, page 81.
>
> It remains my opinion that McDaniel had the right to expect and rely upon the performance, sequencing and durations incorporated in the contract schedule generated from the milestone dates in McDaniel's contract documents, but to explain the impacts in more detail and forward the analysis of the project, we also include the November 19th, 2002 as planned schedule for updating, comparison and analysis.
> *See* revised PCM report, page 81.

The defendants claimed that the initial PCM analysis was incorrect since it relied upon an inapplicable schedule per their experts, yet, when PCM only considers what the defendants maintain is the 'right' schedule as a part of its revised analysis, they fault this as well. The defendants want to have their cake and eat it too in regard to this issue.

In essence, IRSD's first argument against the revised PCM report can be described in a nutshell - PCM must comply with the Court's Order and identify "with greater clarity and precision the analysis methodology"used, but any attempt for PCM to do just that will be objected to since there is additional language in the report and, hence that equates to a 'new analysis'.

This position, as well as IRSD's other positions cannot be further from the truth. The revised PCM report sets forth a detailed clarification of the factors considered by PCM in maintaining its position that McDaniel had the right to rely upon the initial schedule dates as contained in the

contract documents.  PCM did consider the revised schedule dated November 18, 2002 in its initial report (see PCM revised report, page 85), however, further emphasis and consideration of the latter report is actually beneficial to defendants and detrimental to RLI as it changed the completion date to an earlier date than first opined in the initial PCM report.  The original PCM report has the project finishing nearly two months later than the dates set forth in the revised report. If this one small aspect of the revised report is determined to be a 'new analysis', given the fact that it benefits the defendants, it has to be considered harmless.  Keep in mind, however, that the issue is the extent and degree of McDaniel's delays at the time of its termination, which is prior to either of the end dates set forth in the prior or subsequent PCM reports and, as such is wholly irrelevant to the actual issues at hand.

Given the fact that the original report considered the impact of the November 2002 schedule and the revised report expanded upon its impact on the project in more detail and clarity, the revisions do not change PCM's ultimate conclusion that the project was delayed and those delays impacted McDaniel's work. McDaniel was still behind schedule as of the date of its termination as a result of delays caused by others.

RLI is not, as IRSD maintains, attempting to have a second chance to meet the methodological requirements of F.R.E. 702, not is it providing a supplemental analysis after the expert discovery deadlines.  RLI, through PCM's revised report, is simply clarifying and identifying the critical path at the start of the project in his discussion of the initial schedule, and throughout his entire analysis.  This analysis, once again, takes into account the schedule updates that were issued on a regular basis by EDiS.  It is a refinement of the initial analysis as ordered by the Court.  The conclusions set forth in the revised report in no way prejudices any of the defendants, nor does it sandbag them by

changing any of the theories of the case. The only thing changed in the conclusion section is a more detailed explanation clarifying the extent of delays not related to McDaniel. The report does not change its ultimate conclusion as stated in the first report that had McDaniel's schedule been equitably adjusted given the delays beyond its control, it would have allowed McDaniel the contractually mandated time to complete its work. Granted, the report does address several other issues, all of which point toward the conclusion set forth in the revised report. PCM clarified its conclusions related to the project delays based upon the methods and principles implemented and explained in precise detail within the body of its revised report. It mentions the overpayment issue since it is relevant to the case, but does not set forth any opinions as to that issue, nor does it set forth opinions as to RLI's other claims. It simply quantifies non-McDaniel related delays.

The intent of Rule 26 is to ensure that deposition testimony can proceed with parties already armed with the expert's report, so as to be able to evaluate the opinions to be offered. *Beller v. U.S.*, 221 F.R.D. 696 at 700 (D. NM 2003), citing *Aircraft Gear Corp. v. Kaman Aerospace Corp.*, 1995 U.S. Dist. LEXIS 13962, 1995 WL 571431 (N.D. Ill. Sept. 25, 1995). In this case, the defendants have elected twice to object to the reports prepared by PCM by filing motions in limine to strike the reports and preclude testimony without first electing to take Mr. Cassin's deposition.

Indian River's claim that PCM's analysis is not admissible at this stage of the litigation fails to consider one important fact - that the detailing of PCM's analysis and explanation of the methods and principles used by PCM in revising its report was ordered by this Court. The cases relied upon by IRSD to support its position can be easily distinguished by that fact alone. In *Beller*, supra., the Court granted defendant's motion to preclude due to the plaintiff's failure to obtain the Court's permission to supplement its expert report and, further, produced the second report after the expert

had already been deposed. In ***Nelson v. Tenn. Gas Pipeline, Co.***, 243 F.3d 244 (6th Cir. 2001), the court denied plaintiff's motion to amend its expert report after the report had been excluded and summary judgment had been entered in defendant's favor. The Court determined that "fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under ***Daubert,*** be afforded a second chance to marshal other expert opinions and shore up his case before the court may consider a defendant's motion for summary judgment." ***Nelson,*** at 250.

In this case, RLI did not marshal other expert opinions to shore up its case for trial. PCM merely explained its position in further detail. It was a Court-granted second chance to clarify its initial report in accordance with ***Pell v. E.I. Dupont De Nemours & Co.***, Inc., 231 F.R.D. 186, 193-194 (D.Del. 2005). This is what PCM in fact did. Therefore, this revised report is not a new analysis that "unabashedly" attempts to remedy deficiencies in the report as IRSD implies, it revised its report with the Court's consent and permission. For defendants to now claim that the PCM report violates Rule 26 and 16, along with the applicable case law, flies in the face of the December 4, 2007 Order and Opinion of this Court.

The revised PCM analysis as set forth in pages 80 through 115 painstakingly details the schedules issued throughout the project and examines with general construction management principles the effects the work, or the lack thereof, had of the overall project. The analysis also sets forth other factors, i.e., weather delays and excusable delays, in order to refine exactly the delays that are attributable to and had an effect upon the project's critical path through the time of McDaniel's termination in late 2004.

Further difficulty with setting forth certain aspects related to the schedules is created by the fact that EDiS failed to keep this data in an electronic format at the start of the project and for a

significant period of time into the project.  As a result, there are no criteria upon which to base what

is and is not on the project's critical path.  PCM's analysis addresses this immediately in its analysis

section, stating:

> **ANALYSIS OF THE CRITICAL PATH AT THE IRSD PROJECT BASED UPON THE FOREGOING FACTUAL AND SCHEDULING TIMELINES**
>
> To properly compile or analyze a schedule it is necessary to have a product that is detailed and logical. In either case, the integrity of the schedule's activity descriptions, outline structure (Break out of the work by area, scope, contractor, etc.) and logic relationships, govern how effectively the schedule outlines issues of progress.
>
> In the immediate case of EDiS' scheduling at the Sussex Central High School, none of these elements existed to such a level as to afford a reliable schedule for immediate review.
>
> As a result, only after investigation of various schedules and their planned sequences, and development of actual performance dates throughout the performance period, could comparisons be made.
>
> The initial report dealt with EDiS' various schedules which contained questionable, or in many cases no logic ties. This difficult scheduling review effort was further exacerbated by erratic updating and continual logic, activity and duration revisions by EDiS throughout the project.
>
> That the schedule was unavailable in an electronic format, from EDiS or IRSD, during discovery, and noting that the schedule was incorporated into a minimum of twenty four Monthly Reports, and untold interim progress meetings, further complicated the review. See revised PCM report, page 80.

Therefore there exists a dispute between the experts as to the items on or off of the critical

path.  Such issues should be decided by the fact finder.  PCM maintains that McDaniel had the right

to rely upon the original schedule in the contract.  That opinion did not change from the first report.

Whether McDaniel's reliance or expectation was valid is for the fact finder to determine.

Furthermore, the Report does not fail to identify the data or information considered by the

expert in forming his opinions.  To the contrary, the Report prepared by PCM specifically identifies

the data and information considered by Mr. Cassin in reaching his conclusions that the delay in the

project was caused by the actions of others and not by McDaniel. For the most part, the materials

11

relied upon were the contract documents, schedules, project meetings and meeting minutes. The schedules and documents which PCM relied upon are set forth in the analysis section of the revised reports and are broken down and listed as straight-forward statements of the data and other information considered by Mr. Cassin in forming his opinions, as well as any exhibits to be used as a summary of or in support of his opinions that the work was behind schedule. This opinion is based upon an ongoing analysis of the critical path scheduling performed by EDiS. When read as a whole, PCM's revised report satisfies the necessary requirements to be deemed an admissible expert opinion.

The Court must consider three factors in determining admissibility of an expert witness: 1) the expert's qualifications; 2) reliability of the testimony; and, 3) whether the testimony assists the trier of fact. Fed. R. E. 702. The defendants have not questioned Mr. Cassin's qualifications to serve as an expert, so only the two (2) remaining issues must be decided by the Court.

Federal Rule of Evidence 702 provides:

> " ... if scientific technical or other specialized knowledge will assist the trier of fact to understand or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Rule 702 has been interpreted by the Courts to include three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *U.S. v. Velasquez*, 64 F.3d 844, 849 (3d Cir.1995); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741-42 (3d Cir.1994).

12

This Court must assess whether the process or technique used by PCM in preparing its revised report is reliable. *See* ***In re Paoli***, 35 F.3d at 742 (*citing* ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 589 (1993)). As set forth in ***Daubert***, the Court should consider several factors in evaluating whether a particular methodology is reliable: (1) the testability of the expert's hypothesis; (2) whether the methodology has been subjected to peer review and publication; (3) the frequency with which the methodology leads to erroneous results; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the methodology has been generally accepted in the scientific community. ***Daubert***, 509 U.S. at 593-94).

In this case, the revised PCM report sets forth the methodology considered in calculating the number of days of delay caused by the defendants in failing to adhere to the continually changing schedules. The revised report specifically refers to the documents relied upon and which set forth the basis for establishing the IRSD project delays. Additionally, PCM's revisions clarify the procedures followed in ascertaining the extent of the delays and the effect the delays had on the project and on McDaniel's work. The Court should find no reason to conclude that the PCM methodology is unreliable. The revised report details the manner in which the critical path method was applied in the instant case.

Applying ***Daubert's*** considerations, the methodology used by PCM in preparing the revised report is reliable. Whether the testimony is credible is within the purview of the fact finder. The defendants will have the opportunity to cross-examine Mr. Cassin on the issues surrounding his Report in order to attempt to debunk his theories and refute his conclusions. IRSD has not set forth a valid basis for this Court to conclude that the methodology employed by PCM is not generally accepted in the construction management community.

13

Lastly, this Court must conclude whether Mr. Cassin's testimony and Report would assist the trier of fact. This third admissibility requirement is clearly met in this case. In determining the extent, nature and reasons for the delays, the assistance of a construction manager is not only helpful but essential; therefore, PCM's testimony will assist the trier of fact in making a determination as to the reasons for the delays and who was responsible for the same. Without this assistance, a layperson would not be able to make such a determination. Accordingly, the third Rule 702 requirement is satisfied as PCM's revised report will assist the trier of fact in explaining the reasons for the delays and the results thereof.

The revised report is intended to prove Plaintiff's claims that IRSD and the other defendants herein acted improperly in terminating McDaniel based upon their oft stated position that McDaniel was behind schedule, all to RLI's detriment. If the reason for termination of McDaniel was the scheduling issue as asserted by defendants and the fact finder determines that this was not as such, then RLI is entitled to be relieved of some or all of its obligations under the bond. In order to determine this, it must be proven that the critical path was delayed. *Hoffman Construction Company v. U.S.*, 40 Fed.Cl. 184 (1998). PCM's revised report shows that the delays on the work along the critical path affected the ability of McDaniel to perform its work. As a result of McDaniel's inability to perform through no fault of its own, McDaniel was held in default, and therefore, the bond provisions required RLI, as the surety to McDaniel, to step in. The report shows that many of the delays on the project were through no fault of McDaniel and, therefore, RLI is not responsible for certain claims as asserted by IRSD on its counterclaim. Therefore, the critical path analysis performed by Mr. Cassin on this project is reliable testimony that the trier of fact can consider in determining all of the claims presented.

14

The critical path analysis performed by Mr. Cassin clearly shows that he considered the actual performance of the work along the critical path through Defendants' own documents which, in turn, demonstrate why particular events occurred and pushed the project behind schedule. Clearly, Mr. Cassin considered the entire project record from the bid stage through the time of McDaniel's termination several years later. This analysis clearly conforms with the requirements of the cases relied upon by IRSD in its brief. This analysis is clearly within F.R.E. 702 and **_Daubert_**.

Initially, IRSD attempted in its first motion in limine to discredit Mr. Cassin's analysis based upon the fact that he initially analyzed the project schedule using the "milestone schedule" contained in the project specifications. IRSD claimed this schedule should not have been used because there were "so few activities on the milestone schedule" and the original PCM report failed to take into account the November 18, 2002 schedule update. This allegation was not accurate, as the revised PCM report did, in fact consider the November 2002 update, as Mr. Cassin continually updated the critical path and work schedule based upon the documents generated contemporaneously with the activities being performed on the project. Given the defendants' position that Mr. Cassin originally used an incorrect analysis in his revised report,  Mr. Cassin takes into account the numerous schedule changes developed throughout the course of the project, which in turn produced sufficient data for him to properly define the critical path and broke down the impact of the November 18, 2002 schedule in further detail. Considering that the first report and the revised report took into account the same information, a 'new' analysis was not performed. To the contrary, the evidence was revisited, the defendants' position considered and commentary was made on that issue. PCM performed the same analysis as it did originally and does not waiver in its conclusion that McDaniel was entitled to rely upon the first schedule produced. PCM's analysis has remained consistent.

15

**B.    PCM's Revised Expert Report corrects the defects contained within its initial report and complies with the Court's December 4, 2007 Order and Memorandum Opinion**

IRSD claims that the revised PCM report fails in all four (4) directives issued by the Court in its Memorandum Opinion. To the contrary, the revised report clearly provides what was required by the Court and satisfies those directives.

Initially, IRSD claims that the revised report fails to provide the defendants with a straightforward statement of the data or other information relied upon by Mr. Cassin. The difference is what he references in his report compared to what he relied upon in forming his opinions. Mr. Cassin refers to numerous documents throughout the first 79 pages of the revised report in order to support his factual background. The majority of these documents are noted to reference certain dates and times on order to prepare the timeline of events. Any documents that he relied upon to support his opinions and conclusions are set forth in the analysis section beginning on page 80 of the revised reports. The *relied upon* documents are clearly identified in each section heading followed by the analysis (impact) that the referenced documents had upon the project schedule. Furthermore, PCM provided electronic files of its work for defendants review. These files are to be considered a part of the PCM report and contain the methodology and analysis used by and incorporated into the revised report. The items used as a summary of Mr. Cassin's conclusions or used in support of the same are fully detailed and described within the body of the report and have been produced as exhibits.

Secondly, PCM identified with greater clarity and precision the methodology applied in reaching its opinions and conclusions. The revised report provides a detailed analysis of each aspect

16

of the schedule and its updates and the effect that these updates had upon project completion dates and the resultant delays. Keep in mind that many of these dates were difficult to ascertain due to EDiS' failure to maintain electronic files containing exact dates of many portions of the work, so the timeline had to be constructed through an interpretation of the meeting minutes, project notes and schedule updates.

As noted, many of the exact dates are not contained within the documents and, unfortunately, the deposition of the project manager, Chris McCone from EDiS has not been taken due to the defendants' refusal to produce him. That issue is the subject of another motion before this Court. Clearly, Mr. McCone would be able to provide further insight into the manner of calendar schedule and work progress had he been produced for sworn testimony. Without Mr. McCone's testimony and the lack of early electronic project data, PCM was required to extrapolate many schedule items through a reconstructed timeline of events. PCM provides a detailed, extensive timeline for nearly 76 pages within the revised report.

Once the timeline was reconstructed, PCM entered the reference information and project schedule dates into computer programs regularly used in the construction industry. For this analysis, it used Timelines and Primavera to determine the critical path. These programs were used by PCM in the original analysis as well. The use of these programs is part of the methodology as the methodology is contained within the programs, therefore, the analysis of the data inputted into the programs is subject to review.

From page 80 through 115, PCM details the reasons and purpose of entering information to determine the critical path and other scheduling issues. These analyses take into account each schedule from the initial schedule provided McDaniel through its termination. The data relied upon

17

considers work started, work completed, work extended, change orders and other matters that arose during the course of the project. Due to the lack of detailed information kept by EDiS during the project, the data and information are subject to interpretation. PCM makes this clear at the beginning of its analysis:

### ANALYSIS OF THE CRITICAL PATH AT THE IRSD PROJECT BASED UPON THE FOREGOING FACTUAL AND SCHEDULING TIMELINES

To properly compile or analyze a schedule it is necessary to have a product that is detailed and logical. In either case, the integrity of the schedule's activity descriptions, outline structure (Break out of the work by area, scope, contractor, etc.) and logic relationships, govern how effectively the schedule outlines issues of progress.

In the immediate case of EDiS' scheduling at the Sussex Central High School, none of these elements existed to such a level as to afford a reliable schedule for immediate review.

As a result, only after investigation of various schedules and their planned sequences, and development of actual performance dates throughout the performance period, could comparisons be made.

The initial report dealt with EDiS' various schedules which contained questionable, or in many cases no logic ties. This difficult scheduling review effort was further exacerbated by erratic updating and continual logic, activity and duration revisions by EDiS throughout the project.

That the schedule was unavailable in an electronic format, from EDiS or IRSD, during discovery, and noting that the schedule was incorporated into a minimum of twenty four Monthly Reports, and untold interim progress meetings, further complicated the review.

But more so the methods utilized by EDiS in updating the schedules, wherein activities were not statused to the purported data date, but were allowed to exist months or weeks earlier, but with no actual commencement and often were shown with no actual start, but still months prior to the data date, defied basic scheduling convention and resulted in a schedule that is not a CPM, nor a bar chart, and generally results in the dissemination of flawed data to the various primes.
*See* revised PCM report, page 80.

Given the difficulty in discerning the data, PCM explains that:

My analysis throughout has implemented the updated schedules issued by EDiS in order to keep track of the project and determine the status of the project through application of the data and information provided by EDiS in their project reports and reports to IRSD.
*See* revised PCM report, page 87.

Given the data as provided, what must be considered as a part of the methodology is the logic as determined through the analysis of the schedules. The logic implemented by PCM is specifically detailed in each subsection of it analysis of the timeline. As IRSD states in its brief "it must be remembered that a computer-generated analysis is not better than the data which is entered into the computer," citing **Weaver-Bailey Contractors v. U.S.**, 19 Cl. Ct. 474 (1990). If the logic used is supported by factual information, then the data entered into the computer has sufficient evidentiary support. In **Haney v. United States**, 230 Ct. Cl. 148, 167-68, 676 F.2d 584 (1982), the Court stated:

> Essentially, the critical path method is an efficient way of organizing and scheduling a complex project which consists of numerous interrelated separate small projects. Each subproject is identified and classified as to the duration and precedence of the work. (E.g., one could not carpet an area until the flooring is down and the flooring cannot be completed until the underlying electrical and telephone conduits are installed.) The data is then analyzed, usually by computer, to determine the most efficient schedule for the entire project. Many subprojects may be performed at any time within a given period without any effect on the completion of the entire project. However, some items of work are given no leeway and must be performed on schedule; otherwise, the entire project will be delayed. These latter items of work are on the "critical path." A delay, or acceleration, of work along the critical path will affect the entire project.

The revised CPM analysis performed by PCM sets forth the project's delays. PCM took into account and gave appropriate credit for all of the delays which were alleged to have occurred, including the results of the schedule updates, weather delays and other factors, in order to determine their effect upon the critical path. These factors were gleaned from the schedules themselves, as well other relied upon documents. The logic used in preparing the revised report can be referenced by PCM to support its inputted data into the Cpm programs and can also be used by the defendants in their attempt to undermine PCM's analysis and conclusions.

19

Furthermore, it is denied that "112 of the 247" exhibits were not produced by RLI.  It is admitted that certain exhibits were not produced, however, these several exhibits were not relied upon by PCM as a summary of or in support of his opinions.  Additionally, IRSD's claims are exaggerated, as the revised PCM report identifies as exhibits reference points within the body of the report that refer back to a previously identified and produced exhibit.  For example:

| 68. | Ref: 3/03 - EDiS - IRSD monthly project report (EX. 64) | 22 |
| 69. | 3/4/03 - 13th Progress meeting - Minutes | 22 |
| 70. | 3/18/03 - EDiS Progress meeting notes | 22 |
| 71. | Ref: NDK - footings and pieces (EX 70) | 22 |

In the above example, the reference to Exhibit 68 refers ("Ref.") to Exhibit 64.  Exhibit 71 references the March 18, 2003 EDiS Progress meeting notes (Exhibit 70).  Referenced items were not reproduced in the accompanying exhibits as a matter of common sense and economy. Additionally, several of the exhibits were produced contemporaneously with the report in electronic format, both in their native format used by Mr. Cassin and in Adobe (.pdf) format for counsels' reference.

C.    **Neither RLI nor any other defendant is entitled to recover its fees from RLI in moving to strike PCM's Revised Expert Report.**

The key language of the Order states that if RLI chooses to remedy the deficiencies in its Report, Defendant will be allowed an opportunity to depose Mr. Cassin to determine whether his report satisfies Fed. R. Civ. P. Rule 26(a) (2) (B), as well as Fed. R. Evid. 702. Expenses incurred by the Defendants as a result of RLI's failure to comply with Rule 26(a) (2) (B) and Fed. R. Evid. 702

will be paid by RLI, *including any time spent in preparing for and deposing Mr. Cassin, and in preparing a subsequent motion to strike*, if RLI is unable to remedy the Report's deficiencies.

The Court's Order sets forth the order of events as (1) revision of the PCM report; (2) the deposition of Mr. Cassin and (3) expenses incurred by the defendants will be paid by RLI for any time spent in preparing for and deposing Mr. Cassin *and* in preparing a subsequent motion to strike.

Since the Court's Order sets the appropriate time-line to be followed by all parties, and the entitlement to fees and expenses are not mutually exclusive events, i.e., deposing of Mr. Cassin ***and*** in preparing a subsequent motion to strike, IRSD's option to file its motion at this time and *before* deposing Mr. Cassin to determine if his report satisfies Rule 26 and F.R.E. 702 precludes it from seeking these expenses from RLI.   The language of the Court's December 4, 2007 Opinion is clear and unambiguous and should be enforced accordingly.

Had the Court intended to permit the defendants to file the instant motion prior to deposing Mr. Cassin and entitling them to their expenses, the Court's language would be "If RLI chooses to remedy the deficiencies in its Report, Defendant will be allowed an opportunity to depose Mr. Cassin. ...  Expenses incurred by the Defendants as a result of RLI's failure to comply ... will be paid by RLI, including any time spent in preparing for and deposing Mr. Cassin, ***or*** in preparing a subsequent motion to strike, if RLI is unable to remedy the Report's deficiencies."

Therefore, in the event the Court grants defendants' respective motions, RLI respectfully requests this Court to determine that the defendants are not entitled to submit their request for expenses for the preparation of their respective motions, as they have failed to meet the Court imposed requirements for an application for such expenses.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff RLI Insurance Company respectfully requests that this Honorable Court deny Defendant Indian River School District's Renewed Motion in Limine to strike the expert report of Progressive Construction Management, Inc. and to preclude the testimony of its author, Damian Cassin.

Should the Court grant the defendants' respective motions and order that PCM's expert report be stricken and Damian Cassin be precluded from testifying at trial, RLI requests that this Court order that defendants are not entitled to reimbursement from RLI for their expenses incurred in preparing this renewed motion and/or notices of joinder.

Respectfully submitted:

**ABER, GOLDLUST, BAKER & OVER**

/s/Perry F. Goldlust
PERRY F. GOLDLUST (DSB #770)
702 King Street, P.O. Box 1675
Wilmington, DE 19899-1675
(302) 472-4900
pgoldlust@gablawde.com
*Attorneys for Plaintiff RLI Insurance Company*

DATE: March 14, 2008

**Of Counsel**:
HARRY R. BLACKBURN, ESQUIRE
JOHN E. SHIELDS, JR., ESQUIRE
**HARRY R. BLACKBURN & ASSOCIATES, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 985-0123

Client/Blackburn/RLI/3-14-08 Filing/Brief in Support

22