IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | C.A. No. 05-858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| INDIAN RIVER SCHOOL DISTRICT, | ) | |
| EDIS COMPANY, and | ) | |
| BECKER MORGAN GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S
REPLY BRIEF IN SUPPORT OF RENEWED MOTION *IN LIMINE*
TO STRIKE PLAINTIFF'S EXPERT REPORT AND EXCLUDE TESTIMONY

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)
jgreen@svglaw.com
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

# Table of Contents

I. ARGUMENT IN REPLY ... 1

    A. The Revised Expert Report Constitutes New Opinions with New Basis and New Reasoning ... 1

    B. Rule 16 Authorizes Preclusion of the Revised PCM Report ... 5

    C. The Court did NOT Grant RLI Leave to Submit New Opinions or Basis and Reasons Therefore ... 9

    D. The Revised Report Fails to Comply with the December 4 Order ... 10

    E. IRSD is Entitled to Fees Incurred in Making a Renewed Motion to Strike ... 13

II. CONCLUSION ... 14

# TABLE OF AUTHORITIES

**CASES**

| | |
|---|---|
| Akeva v. Mizuno Corp., 212 F.R.D. 306 (M.D. NC 2002). | 2, 8 |
| Beller v. U.S., 221 F.R.D. 696 (D. NM 2003). | 7 |
| Coles v. Perry, 217 F.R.D. 1 (D. DC 2003). | 2 |
| Keener v. U.S., 181 F.R.D. 639 (D. MT 1998). | 2 |
| Luke v. Emergency Rooms, P.S., 2008 WL 410672 (W.D. WA). | 2 |
| Minebea Co., Ltd. V. Papst, 231 F.R.D. 3 (D. DC 2005). | 3 |
| Meyers v. Pennypack Woods Home Ownership Assoc., 559 F.2d 894 (3rd Cir. 1977). | 6 |
| Sandata Technologies, Inc. v Infocrossing, Inc., 2007 WL 4157163 (S.D. NY) | 2, 8 |
| Tolerico v. Home Depot, 205 F.R.D. 169 (M.D. PA 2002). | 10 |

**RULES**

| | |
|---|---|
| FRCP 16(b)(4) | 5 |
| FRCP 16(f) | 6 |
| FRCP 37 (c) | 6 |
| FRCP 26(a)(2)(B) | 1 |
| FRCP 26(e) | 2 |

In further support of its Renewed Motion *in Limine* to strike RLI's expert report, defendant Indian River School District offers this argument in reply:

## I. ARGUMENT IN REPLY

### A. The Revised Expert Report Constitutes New Opinions with New Basis and New Reasoning

RLI argues throughout its answering brief that the revised PCM Report offers no new analysis. This argument implicitly concedes that RLI is not permitted under applicable law or the December 4 Order to offer a new expert analysis. RLI knows full well that to prevail on this motion RLI must convince the Court that its expert's analysis is not new.

While RLI argues repeatedly that its expert's analysis is not new, it fails to support that argument. RLI states that the original and the revised report both offer the same conclusion: that McDaniel's work was delayed by factors other than McDaniel. To RLI, as long as both reports reach the same conclusion, that the project was subject to delay, the analysis cannot be new. This is a non sequitor. Many different analyses could lead to the same conclusion. That the conclusions are the same is simply irrelevant to the issue of whether the two reports set forth the same analysis.

Under Rule 26(a)(2)(B), the expert report must contain a "complete statement of all opinions to be expressed and the basis and reasons therefore."

> The interests served by requiring the disclosure of expert opinion is self evident. It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross-examination. By "locking-in" the expert witness into what Fed. R. Civ. P. 26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the reasons and basis therefore," the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and to prepare for cross examination and rebuttal. When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified."

1

Sandata Technologies, Inc. v Infocrossing, Inc., 2007 WL 4157163 (S.D. NY) citing Coles v. Perry, 217 F.R.D. 1 (D. DC 2003). When the expert issues his report, it must reflect his full knowledge and complete opinions on the subject for which his opinion has been sought, and may not be changed unless, in accordance with Rule 26(e), he later learns the opinions were incorrect or he obtains new information which was not available at the time his report was due. Sandata, *supra*. Responses made to the opposing party's rebuttal report are not the type of "corrective" information allowed by Rule 26(e). Id.; Akeva v. Mizuno Corp., 212 F.R.D. 306, 310-312 (M.D. NC 2002).

> Allowing such a procedure would lead to an absurd scenario for which Rule 26(e)(1) provides no foundation-each party could claim the right to continually "supplement" its expert reports in response to the last expert report its adversary had submitted...Rule 26(e) cannot be expanded to permit a constant stream of new information that was available at the time of the initial report, but not included because of lack of due diligence.

Sandata, *supra*.

After the expert report cutoff, continued investigation and analysis of information available at the time of the original report and/or providing additional detail or background on issues addressed in the initial report is nothing more than an attempt to improve upon and bolster prior reports, which is a clear violation of the requirements of Rule 26(a)(2)(B) and Rule 16, which provides the court's authority to issue the Case Management Order. Id. The same is true of expanding upon the opinions to be offered. Keener v. U.S., 181 F.R.D. 639, (D. MT 1998); Luke v. Emergency Rooms, P.S., 2008 WL 410672 (W.D. WA). Substantial "refinement" of an original report containing different material and supported by additional information must be excluded under Rule 26(a)(2) when it affects the opposing party's rebuttal. Minebea Co., Ltd. V. Papst, 231 F.R.D. 3, 6 (D. DC 2005).

Once an expert signs his report, he can explain his opinion, its basis and his reasoning, but he cannot change it. An expert is precluded from offering testimony of revised opinions, or from supporting his opinions with a different basis or different reasons. The Court should preclude RLI's effort to circumvent this standard, as this is exactly what it has attempted to do through the supplemental section of its revised report. In its own words, RLI states the following regarding the supplemental section:

> It is a ***refinement*** of the initial analysis.
> Answering Brief, D.I. 133, p. 11.
>
> Given the fact that the original report considered the impact of the November 2002 schedule and the revised report ***expanded upon*** its impact on the project ***in more detail*** and clarity the revisions do not change PCM's original opinion. Answering Brief, D.I. 133, p. 12.
>
> Given the defendants' position that Mr. Cassin originally used an incorrect analysis in his revised [sic] report, Mr. Cassin takes into account the numerous schedule changes developed throughout the course of the project, ***which in turn produced sufficient data for him to properly define the critical path***...Considering the first report and the revised report took into account the same information, a 'new' analysis was not performed. To the contrary, ***the evidence was revisited, the defendants' position considered*** and commentary was made on the issue.

Answering Brief, D.I. 133, p. 18. RLI's argument that the supplement is "the same analysis" simply is not supported by the facts.

The analysis in both the original and the revised report begins with the selection of a baseline schedule. The two reports, though, choose two different baseline schedules, and from this fundamental difference flow, of necessity, two fundamentally different analyses. PCM, in both analyses, calculated a critical path from the selected baseline schedule. It then measured progress at various intervals and compared that actual progress to the progress required by the baseline schedule. That comparison would, if performed with reliable methodology, identify how much, if any, the critical path activities were delayed. The fundamental component of the

3

critical path analysis is the baseline schedule. The baseline sets the sequence of activities and the activities' anticipated progress, from which the critical path is determined and from which actual progress is measured to determine delay. PCM's revised report is based upon a different baseline schedule. Therefore, the basis and reasons for the opinion regarding delay are completely different. The basis and reasons for the opinion in the revised report starts with a completely different sequence of activities, a different critical path, different anticipated progress, all from which delay will be determined. The basis for Mr. Cassin's opinion has changed, and his reasoning has changed. Indeed, as IRSD pointed out in its opening brief, his specific conclusion about the length of the delay has changed.

RLI refuses to even discuss the significant differences between the bases and reasoning supporting the two analyses, such as (1) the choice of different baselines, (2) the different critical paths (3) the different sequence of activities from which the critical paths are calculated, and (4) the different amount of delay calculated by the two analyses. It rests on the argument that both analyses prove delay.

While RLI is certainly entitled to prove delay, the law requires that it be proved by a reliable critical path analysis (as later concede by RLI on page 14 of its brief). In the absence thereof, RLI has failed to meet its burden. RLI may use any label to describe the subject for which PCM was engaged, but that label does not overcome the legal requirement that delay be proven by a critical path analysis. RLI has now offered its opinion regarding delay based and reasoned upon a different baseline schedule and a different critical path.

RLI again attacks IRSD's decision not to depose Mr. Cassin prior to making a Renewed Motion to Strike. Answering Brief, D.I. 133, p. 12. Such a deposition would have solved nothing, and would merely have wasted IRSD's counsel's time and RLI's money. None of the

4

bases upon which this motion to strike has been filed could have been overcome by any evidence that Mr. Cassin could have offered. The new basis and reasoning in the revised report would still be new; the new analysis would still be fundamentally flawed, as pointed out in IRSD's opening brief; and the original analysis carried over from the initial report would still lack the clarifications and information required by the Courts' December 4 Order. These facts could not be changed by any testimony Mr. Cassin might offer. [1]

### B. Rule 16 Authorizes Preclusion of the Revised PCM Report

Preclusion is generally an appropriate remedy when a party attempts to bolster incomplete opinions and basis and reasons therefore to strengthen its position after the expert report cutoff. Pursuant to Rule 16(b)(4), a court may allow a party to disregard a cutoff date in the scheduling order only for good cause. RLI has not claimed, nor shown, any good cause for its failure to prepare a report which contained a complete statement of all MR. Cassin's opinions and his basis and reasons therefore in accordance with the timing set forth by the case management order. It shows no good cause for offering new opinions supported by new basis and reasons for its opinions more than six months after the cutoff set by the case management order.

Therefore, under Rule 16(f), sanctions as provided in Rule 37 (c) are appropriate. Rule 37 (c)(1) provides that a party who fails to disclose the information required by Rule 26(a), unless the failure is harmless, is not permitted to use the evidence at trial unless the non-

---

[1] On the subject of depositions, RLI also argues that because of IRSD's refusal to produce EDiS's Chris McCone for a deposition, PCM does not have the necessary data to perform a complete analysis and had to "extrapolate" certain schedule items. RLI's claim that IRSD is responsible for it having incomplete data is not credible. First, the Motion to Compel makes no mention of the fact that RLI need information from this witness to prepare its expert report nor did it ever make this claim prior to this answering brief. Second, the Motion to Compel the Deposition of Chris McCone was filed on February 19, 2008, six months after RLI's expert report cutoff. If RLI / PCM truly needed information from Chris McCone to prepare its expert report it would not have waited nearly 6 months after the expert cutoff to move to obtain it and it would not have prepared two expert reports, neither of which raise the issue of incomplete information that might be obtained from this witness.

5

producing party can show (1) substantial justification for the non-disclosure and (2) that the failure was harmless. Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. PA 2002). RLI has certainly not carried it burden in this regard so sanctions under Rule 37 are appropriate. In the Third Circuit, a court must consider the following factors before precluding evidence. (1) The prejudice or surprise in fact to the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in court; and (4) bad faith or willfulness in failing to comply with the district court's order. The importance of the excluded testimony must also be considered. Meyers v. Pennypack Woods Home Ownership Assoc., 559 F.2d 894, 905 (3rd Cir. 1977).

*Prejudice to RLI*

PCM uses the new baseline schedule in the Revised Report, as it admits, in response to IRSD's criticism that the Milestone Schedule is inadequate as a baseline. Answering Brief, D. I. 133, p. 10, 18. However, RLI / PCM have only taken that position after the expert report cutoff and after IRSD has made two motions to strike PCM's report, identifying all the reasons why the PCM Reports are unreliable. IRSD has shown its hand and RLI now wants an opportunity to make a second play. Allowing RLI this second chance gives it the opportunity to exhaust IRSD's criticisms, in which case IRSD would lose the advantage of having a significant basis upon which to rebut PCM's opinions.[2] The prejudice to IRSD in losing a basis upon which to rebut Mr. Cassin's testimony cannot be cured.

---

[2] RLI also makes the argument that IRSD criticized PCM's use of the Milestone Schedule as the baseline and then when it used the November 18, 2002 schedule as the baseline, which IRSD's expert argues is controlling, IRSD claims the analysis is flawed. Answering Brief, D.I. 133, p. 10, Answering Motion, D.I. 132, ¶ 4. According to RLI, IRSD cannot have it both ways. Id. RLI's argument is irrelevant because it may not plot a new critical path at this stage of the litigation. However, even if RLI were permitted to offer new opinions and reasons therefore, the use of a new baseline schedule does not automatically render an analysis reliable. Selection of the baseline is but one step of the required methodology necessary to perform a critical path analysis. For all the reasons set

6

Further, should the court, without good cause shown, allow parties to respond to the criticisms made by opponents after the expert report cutoff, where would it end, as pointed out by Beller v. U.S., 221 F.R.D. 696, 701 (D. NM 2003) where the court foresaw round after round of a battle of the experts should it allow parties to revise reports after rebuttals were submitted. If the court established the precedent that RLI can simply perform and submit a new analysis after IRSD criticizes its expert's analysis, what is to prevent RLI from submitting a third report in response to the criticisms made by IRSD in the Renewed Motion to Strike? This process could continue until RLI exhausted every criticism raised by RLI's expert, leaving it with no basis upon which to offer a rebuttal.

Also important is the fact that since the new opinions are based upon a different critical path, IRSD's rebuttal report is useless in response to the analysis based upon the November 18, 2002 baseline schedule. IRSD, a public school district, has already expended *$39,500 on the original rebuttal report*, as disclosed in its report in compliance with F. R. C. P. 26(a)(2)(B)(vi). That amount does not consider the attorneys' fees incurred in engaging and assisting in developing the rebuttal. If the court does not strike the supplemental analysis, this expenditure on IRSD's part, undertaken solely in rebuttal to PCM's original report, will have been an utter waste of time and money and IRSD may be required to make further expenditures on a new rebuttal report, simply because RLI and PCM failed to comply with the clearly enunciated standards

---

forth in IRSD's opening brief, which are completely ignored by RLI, PCM's analysis based upon the November 18, 2002 baseline schedule is still unreliable.

In addition, RLI attempts to convince the court that there is no question regarding reliability of its new opinions and reasons therefore. Rather, according to RLI, the issue of the credibility of PCM's analysis is an issue for the jury. Answering Brief, D.I. 133, p. 16. However, this argument is no more than a smokescreen, an attempt to divert the court from the methodological failures identified by IRSD, which remain *completely unaddressed by RLI*. RLI asserts several times in its answer that there is no question regarding the reliability of its analyses, as it employed "generally accepted methods and procedures of construction management, through the implementation of computer based data used to determine the project's critical path." Answering Motion, D.I. 132, ¶ 4. It never identifies what those "generally accepted methods" are or identifies where in the Revised PCM Report Mr. Cassin explains how he applied them.

7

required by Daubert and F.R.E. 702. The additional costs relating to responding to RLI's untimely report constitute prejudice. Akeva at 311; Sandata at 8.

*Case Management Considerations*

Docket control alone in itself is enough to justify the exclusion of an untimely disclosed expert report. Akeva at 311. "The disruption caused by the proliferation of untimely expert testimony is real and attorneys must know such will not be permitted." Akeva at 311. Allowing RLI to offer new opinions, basis and reasoning at this point will likely delay trial. Fundamental fairness requires that if RLI's additional information is admissible, that IRSD have an opportunity to prepare a rebuttal report in response to the new report. That will entail a new round of consultation with its expert and preparation of a report, which will take time.

The court should also find willingness in RLI's failure to comply with its duties to disclose the Rule 26(a) information in accordance with the scheduling order. This is the second motion IRSD was required to make with respect to RLI's conduct on this issue. Initially, RLI refused to provide the expert's qualifications, the statement of the expert's compensation and his prior testimony. RLI also refused to identify the specific documents that the expert considered in reaching his opinion, all of which is basic information required by Rule 26(a). Now, after raising those issues, as well as the other deficiencies associated with PCM's original report, RLI submits new opinions and bases and reasons therefore all based on information it had available prior to the expert report cutoff. There is no claim on RLI's part that IRSD failed to produce information necessary to PCM's analysis, other than the less than credible assertion regarding the deposition of Chris McCone which was raised for the first time after IRSD moved to strike RLI's second expert report. There is no claim that IRSD withheld information or acted in some other dilatory fashion. All the information RLI relies upon was available at the time it provided its original

report. This need for a second report is solely a result of RLI's lack of diligence in the first instance.

Additionally, it fails again to produce a substantial number of the documents associated with the original and now the revised report. While preclusion is a harsh remedy, IRSD is not requesting that Mr. Cassin be precluded from all testimony based solely on the untimeliness of the submission. It only seeks to preclude him from testifying to the new opinions and the basis and reasons therefore due to untimeliness.

### C. The Court did NOT Grant RLI Leave to Submit New Opinions or Basis and Reasons Therefore

In the December 4 Memorandum the Court ordered "Since RLI contends that Mr. Cassin applied critical path methodology, Mr. Cassin should more clearly identify the critical path at the start of the Project in his discussion of the *initial schedule*, and throughout his entire analysis" (emphasis added). D.I. 119, p. 16. The initial schedule the court refers to is the Milestone Schedule contained in the Contract Documents and which PCM used as its baseline. PCM refers to this schedule as "the initial schedule" throughout its original report.[3] The court clearly directed RLI / PCM to identify the critical path at the beginning of the Project, a component absent from the original report, and to explain the methodology employed in plotting the critical path based upon the Milestone Schedule (also referred to as the initial schedule). The Court's order is not in any way confusing and only grants RLI leave to set forth the critical path at the beginning of the Project and more fully explain the methodology it used in arriving at the critical path based upon the initial Milestone Schedule. The December 4 Order certainly did not direct

---

[3] As set forth in IRSD's opening brief, the content of the Original PCM Report has been reproduced, almost without modification in the Revised PCM Report, pages 4 through78. Discussion of the "initial schedule" begins on page 5 thereof.

9

or authorize RLI to perform a new critical path analysis and submit new opinions and basis and reasons therefore.

Assuming that the court disagrees with IRSD and refuses to strike the PCM analysis based upon the November 18, 2002 baseline schedule because it was untimely, the methodological deficiencies remain and the court should strike it on that ground. IRSD pointed out four fundamental deficiencies in PCM's application of critical path methodology, showing that the analysis based on the November 18, 2002 baseline (1) fails to contain the appropriate logic; (2) PCM's summary of its delay conclusions are not based on critical path delays, but on exceeded durations, and fails to consider or account for McDaniel's exceeded durations; (3) fails to identify the critical path and fails to identify it at the time of the first delay; and (4) fails to use a consistent method to conduct the delay analysis.

RLI has failed to make any response to these facts other than to state that "if the logic used is supported by factual information then the data entered into the computer has sufficient evidentiary support." <u>Answering brief, D.I. 133, p. 22.</u> However, RLI fails to cite to the factual information that supports its logic that the interior CMU partitions, cutainwall, windows and slab on metal deck can complete on the project's finish date without causing delay.

**D. <u>The Revised Report Fails to Comply with the December 4 Order</u>**

RLI failed to comply with the December 4 Order directing it to (1) clarify the methodology employed in the original analysis (2) identify the information PCM considered in performing the analysis and (3) providing IRSD with all the exhibits used in support of PCM's opinions.

<u>Methodology</u>

As set forth in IRSD's opening brief, PCM made absolutely no revisions to or further explanation about the critical path calculated from the Milestone Schedule and discussed in the original report. The opinions contained therein, and the reasons and bases therefore, remain just as vague. PCM simply performed a second critical path analysis in response to the December 4 order. Performing a second critical path analysis does not comply with the court's directive to "identify the critical path at the start of the Project in his discussions of the *initial schedule*, and throughout his entire analysis."

<u>Information Considered by PCM</u>

RLI again makes much of the information "relied" upon by PCM in performing its analysis. However, the court instructed RLI / PCM to identify the information "considered" by PCM. As aptly pointed out by the court in the December 4 Order,

> IRSD is entitled to a straight forward accounting of what Mr. Cassin did and (perhaps more importantly) did not consider when he reached his conclusions…and …if a document is not referenced in his report can Indian River then assume that Mr. Cassin did NOT consider this information?...Further, it is not terribly onerous for RLI to generate a list of the information and data they provided to Mr. Cassin to assist him in rendering his opinion. Thus, the Court concludes that RLI shall provide this information to Defendants.

<u>D.I. 119, p. 9.</u>  RLI has not provided IRSD with a list of information and data it provided to PCM.

RLI argues that Mr. Cassin identified the information he relied upon in reaching his conclusions as the information produced in discovery by the parties. <u>Answering Motion, D.I. 132,¶ 3</u>. This description does not give IRSD an adequate description of the information PCM had available to consider. IRSD still cannot determine if a document is not referenced in PCM's report is it because PCM ignored it or was not aware of its existence.

11

RLI / PCM still have not produced the electronic data supporting the critical path plotted from the Milestone Schedule. As shown in the section of IRSD's opening brief discussing the logic of the November 18, 2002 baseline schedule, this electronic data is necessary to determine if the requisite interdependence of activities exists, among other things, a fundamental question of reliability.

Exhibits

The court ordered RLI to provide IRSD with "any exhibits to be used as a summary of or in support of his [Mr. Cassin's] opinions." <u>D.I. 119, p. 17</u> and RLI has failed to comply. Initially, it is necessary to unravel the unorthodox exhibit numbering system employed by PCM. Apparently, Mr. Cassin used multiple exhibit numbers for the same document but did not explain that in the report, contrary to RLI's argument in its answering motion and brief. The report simply makes an assertion, followed by an exhibit number, with no other identifying information pertinent to the exhibit. The report itself in no way identifies the use of multiple exhibit numbers. The information cannot be determined from the actual exhibit either, since PCM simply failed to include documents as exhibits in the later portion of the report if they had been given an exhibit number previously. One can only ascertain this information from a careful examination of the Appendix accompanying the exhibits, which were delivered nearly two weeks after the report was served. So, while IRSD did in fact over count the number of exhibits RLI/PCM failed to produce, this mistake was only as a result of the unusual and confusing exhibit numbering system employed by PCM.

RLI claims IRSD exaggerated, and states "certain" exhibits were not produced, but it does not identify how many exhibits are missing. After correcting for the multiple exhibit numbering, ***RLI has still failed to produce 75 exhibits***. It also attempts to discredit IRSD's

claim by inferring that IRSD did not give it credit for the electronic information produced when counting the missing exhibits. As set forth in the Revised PCM's Report, the electronic information was not included within the 247 exhibits referenced in the report. See Revised PCM Report, p. 82, 84.

RLI argues that "these several exhibits were not relied upon by PCM as a summary of or in support of his opinions." <u>Answering Brief, D.I. 133 at 23</u>. This argument is simply not true. Page three of the Revised PCM Report expressly states "in preparing this report, I have reviewed documents produced through discovery by the parties hereto on several occasions throughout the preparation of this report." "*The documents that I have relied upon in reaching my conclusions are attached as Exhibits to my report*..." RLI has failed to produce 75 exhibits supporting PCM's report, in direct violation of the December 4 Order.

### E. <u>IRSD is Entitled to Fees Incurred in Making a Renewed Motion to Strike</u>

The court's December 4 Order did not make IRSD's recovery of fees in preparing a Renewed Motion to Strike contingent upon IRSD taking Mr. Cassin's deposition, as argued by RLI. The order allows IRSD to recover its fees if RLI fails to correct the deficiencies in its report and IRSD is required to make a Renewed Motion to Strike. Since RLI failed to correct the report as required by the December 4 Order and IRSD was required to make a subsequent motion to strike, it is entitled to recover its fees.

The December 4 Order provides:

> If RLI chooses to remedy the deficiencies in its report, Defendant will be allowed the *opportunity* to depose Mr. Cassin to determine whether his report satisfies Fed. R. Civ. P. Rule 26 (a) (2) (B), as well as Fed. R. Evid. 702. Expenses incurred by the Defendants as a result of RLI's failure to comply with Rule 26 (a) (2) (B) and Fed. R. Evid. 702 will be paid for by RLI, including, *any time* spent in preparing for and deposing Mr. Cassin, and in preparing a subsequent motion to strike, if RLI is unable to remedy the Report's deficiencies.

13

Emphasis added. D.I. 119, p. 18. First, the court granted IRSD an "opportunity" to depose Mr. Cassin. An opportunity to depose him is not a directive to do so. Second, the court indicated that any time spent preparing for and taking a deposition would be recoverable. The use of the phrase "any time" indicates that there may be no time spent preparing for and deposing Mr. Cassin. Finally, the commas separate the activities for which IRSD is entitled to recover fees and are not used in a manner which makes the activities contingent upon one another, as argued by RLI. The proper interpretation is that "expenses incurred by the Defendants as a result of RLI's failure…will be paid for by RLI, including, [1] any time spent in preparing for and deposing Mr. Cassin, and [2] in preparing a subsequent motion to strike…" According to RLI's argument, IRSD is required to run up the bill by deposing Mr. Cassin, at RLI's cost, before it may recover fees for the Renewed Motion to Strike.

Further, RLI argues that if the court were not making the recovery of fees contingent upon IRSD deposing Mr. Cassin it would have written the order as "including any time spent in preparing for and deposing Mr. Cassin, *or* in preparing a subsequent motion to strike." Under RLI's interpretation, IRSD would be entitled to recover fees for only one of those activities, the deposition *or* the subsequent motion. This interpretation is inconsistent with its own argument that IRSD is entitled to recover fees for the deposition and the renewed motion, so long as both activities are undertaken.

## II.   CONCLUSION

RLI may not offer an expert report with new opinions, bases and reasoning at this point in the litigation. RLI's Revised PCM Report fails to remedy the deficiencies in the original analysis as required by the Court's December 4, 2007 Order. As a result, PCM's Revised Report

should be stricken, Mr. Cassin precluded from testifying at trial, and IRSD should be awarded its attorneys fees and expenses in preparing this motion.

                                  Respectfully Submitted,

                                  **SEITZ, VAN OGTROP & GREEN, P.A.**

                                  /s/ James S. Green
                                  **JAMES S. GREEN, ESQ. (DE0481)**
                                  jgreen@svglaw.com
                                  **222 Delaware Ave., Suite 1500**
                                  **P.O. Box 68**
                                  **Wilmington, DE 19899**
                                  **(302) 888-0600**
                                  **Attorneys for Defendant**
                                  **Indian River School District**

Of Counsel:

K. Gerard Amadio, Esq.
Venzie, Phillips & Warshawer
2032 Chancellor St.
Philadelphia, PA 19103
(215) 567-3322

## CERTIFICATE OF SERVICE

I, James S. Green, Esquire, hereby certify that on March 24, 2008, I electronically filed the foregoing documents with the Clerk of Court using CM/ECF which will send notification of such filing to all counsel of record.

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)