# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | C.A. No. 05-858 JJF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| INDIAN RIVER SCHOOL DISTRICT, | ) | |
| EDIS COMPANY, and | ) | |
| BECKER MORGAN GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S OPENING BRIEF
IN SUPPORT OF ITS MOTION IN LIMINE TO
PRECLUDE THE TRIAL TESTIMONY OF DAMIAN CASSIN</u>**

**SEITZ, VAN OGTROP & GREEN, P.A.**

**/s/ James S. Green, Sr.**
**JAMES S. GREEN, SR., ESQ. (DE0481)**
**jgreen@svglaw.com**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600

Attorneys for Defendant and Counterclaimant
Indian River School District

Dated:  June 2, 2008

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

i

# Table of Contents

|    |    | PAGE |
|----|----|------|
| I.   | NATURE AND STAGE OF PROCEEDINGS | 1 |
| II.  | SUMMARY OF ARGUMENT | 1 |
| III. | CONCISE STATEMENT OF FACTS | 2 |
| IV.  | ARGUMENT | 3 |
| V.   | CONCLUSION | 6 |

Case 1:05-cv-00858-JJF    Document 142    Filed 06/02/2008    Page 2 of 10

## **TABLE OF AUTHORITIES**

| **CASES** | PAGE |
|---|---|
| George Sollitt Const. Co. v. U.S., 64 Fed. Cl. 229 (2005). | 4 |
| McDonnell Douglas Corporation v. U.S., 76 Fed. Cl. 385 (2007). | 4 |
| Southern Comfort Builders v. U.S., 67 Fed. Cl. 124 (2005). | 5 |
| Wilner v. U. S., 26 Cl. Ct. 260 (1992). | 5 |

I. **NATURE AND STAGE OF PROCEEDINGS**

This action arises out of a school district's performance bond claim against the surety for a prime contractor terminated for default during the construction of the new Sussex Central public high school in Georgetown, Delaware. A Pretrial Conference was held on December 6, 2007, resulting in an order which required the filing of all Motions *in Limine* no later than June 2, 2008. (D. I. 121). The order also scheduled a final Pretrial conference for June 5, 2008 and a July 21, 2008 trial date.

II. **SUMMARY OF ARGUMENT**

Damian Cassin should be precluded from testifying at trial based upon the Court's two prior orders concerning his original and revised expert reports and the irrelevancy of his testimony under the relevant construction contract terms. First, pursuant to the Court's May 12 Order, Mr. Cassin is precluded from testifying about the critical path analysis calculated from the November 18, 2002 Project Schedule. Second, the Court's December 4 Order provided that Mr. Cassin's critical path analysis developed from the Pre-Bid Construction Schedule is substantively insufficient and this analysis has not been modified in his revised report. Since it is insufficient, Mr. Cassin should be precluded from testifying thereto. Third, in addition to the court's finding that this analysis is deficient, it is irrelevant to the claims in the case. The Contract between IRSD and McDaniel provided the procedures for developing the approved "Project Construction Schedule," also known as the Baseline Schedule. The Project Construction Schedule or Baseline Schedule, as defined by the contract, is not the Pre-Bid Construction Schedule. Because the contract defined what the Baseline Schedule would be, Mr. Cassin's analysis on a different schedule is irrelevant to the claims at issue and fails to meet the requirements of Rule 702 of the Rules of Evidence.

1

### III. CONCISE STATEMENT OF FACTS

On July 31, 2007, Plaintiff RLI served its expert report ("July 31 Report") prepared by Damian Cassin ("Mr. Cassin"). A copy of the July 31 Report is found at D.I. 127-2. The subject of the July 31 Report was a critical path analysis using the Pre-Bid Construction Schedule (also previously referred to as the Milestone Schedule) as the Baseline Schedule. On October 15, 2007, Defendant Indian River School District ("IRSD") filed a Motion in Limine to Strike Mr. Cassin's July 31 Report. D. I. 92-93. By Order dated December 4, 2007, the court ruled that the July 31 Report, as drafted, was substantively insufficient to meet the requirements of Rule 702 of the Federal Rules of Evidence and the Daubert standards ("December 4 Order). D. I. 119. The December 4 Order specifically stated that:

> …the overarching methodology used by Mr. Cassin in his Report is hardly apparent. The bulk of the Report is a poorly-organized time line of project events, with the analysis scattered throughout. Since RLI contends that Mr. Cassin applied critical path methodology, Mr. Cassin should more clearly identify the critical path at the start of the project in his discussion of the initial schedule, and throughout his entire analysis. (D. I. 119 at 16)
>
> …RLI is required to address the Report's substantive failings by …identifying with greater clarity and precision the analysis methodology. (D. I. 119 at 17).

RLI was provided the opportunity to correct the deficiencies pointed out in the December 4 Order.

In answer to the December 4 Order, RLI served Mr. Cassin's supplemental report dated February 4, 2008 (February 4 Report). A copy of the February 4 Report is found at D.I. 127-3 The February 4 Report failed to address the methodological issues raised in the December 4 Order and instead contained a new analysis calculated from a different Baseline, the November 18, 2002 Project schedule. In response, on February 29, 2008, IRSD filed a Motion in Limine to strike the February 4 Report and to Strike Mr. Cassin's testimony thereon. (D. I. 126-127). The

court entered an order dated May 12, 2008 striking the portion of the February 4 Report pertinent to the critical path analysis using the November 18, 2002 Project schedule as the Baseline. (D. I. 138).

## IV. ARGUMENT

Mr. Cassin should be precluded from testifying at trial because: (1) he is precluded from testifying to the analysis based on the November 18, 2002 Project schedule; (2) his analysis based on the Pre-Bid Construction Schedule is substantively insufficient according to the court and (3) is irrelevant to the issues in this case.

PRECLUSION RESULTING FROM THE COURT'S ORDERS

Pursuant to the May 12 Order, Mr. Cassin is precluded from testifying to the critical path analysis developed from the November 18, 2002 Project schedule. Mr. Cassin's February 4 Report was merely (1) the original critical path analysis based on the Pre-Bid Construction Schedule contained in the July 31 Report (2) with a new section added on relating to the November 18, 2002 schedule (which was struck by the court in the May 12 Order). The May 12 Order left intact only the portion of the February 4 Report relating to the Pre-Bid Construction Schedule analysis. The Pre-Bid Construction Schedule analysis contained in the February 4 Report is substantively the same as in the July 31 Report. In its December 4 Order, the court already held this analysis insufficient. Since the methodological insufficiencies of the July 31 Report remain unchanged in the February 4 Report, Mr. Cassin should be precluded from testifying to the critical path analysis developed from the Pre-Bid Construction Schedule.

Since Mr. Cassin is precluded from testifying at trial about either of these critical path analyses, no information remains upon which Mr. Cassin can provide any relevant testimony and therefore he should be precluded from testifying at trial.

PRECLUSION BASED ON IRRELEVANT TESTIMONY

Even if Mr. Cassin were not precluded by order from testifying about the critical path analysis based on the Pre-Bid Construction Schedule, such testimony would be irrelevant. The Contract between IRSD and McDaniel defined the Baseline Schedule and provided the procedures for developing it. The Project Baseline Schedule is not the Pre-Bid Construction Schedule. Because the contract defined the Baseline Schedule, an analysis based on any other schedule is irrelevant to the claims at issue.

Project progress and/or delay are calculated by measuring actual progress against the planned sequence of construction activities and their durations. The planned sequence of construction activities and their durations is the "Baseline Schedule." Once the Baseline Schedule is developed it must be periodically updated to ascertain progress. Generally, the contract between the owner and the contractor provides the terms under which the Baseline Schedule shall be developed, approved, distributed and then updated. [1] In this case, Section 01305 of the Project specifications, attached as Exhibit "A," governs development of the Project Baseline Schedule.

---

[1] For example, see McDonnell Douglas Corporation v. U.S., 76 Fed. Cl. 385, 392 (2007) where the following clause was pertinent to development of the project baseline schedule and the Contractor's delay Claim.

> *Master Program Schedule*. The Contractor shall prepare a Master Schedule for the ATA Project. This Schedule shall include all critical activities necessary to complete the work required by the contract. Critical paths shall be highlighted and sensitive to changes in the schedule or resource availability identified. Required government activities shall be included in the schedule, and any critical actions identified. Following Joint Program Office and Contractor review and concurrence, this schedule shall become the Master Schedule, and will become the baseline schedule against which project progress will be measured.

Typically, the Baseline Schedule must incorporate the milestones that are provided to bidders prior to development of the Baseline Schedule, as in McDonnell Douglas.

For another example, the Contractor in George Sollitt Const. Co. v. U.S., 64 Fed. Cl. 229, 248 (2005) was also contractually required to deliver a Baseline Schedule to the Navy within 15 days of award of the contract.

An examination of these specifications demonstrates that the approved Project Construction Schedule discussed in paragraph 2.1-2.2 is the Baseline Schedule. The Pre-Bid Construction Schedule discussed in paragraphs 1.1-1.2 of the specifications is a separate schedule which is not the Project Baseline Schedule.

First, paragraphs 1.1 and 2.1 of this specification section indicate that the Pre-Bid Construction Schedule is to be used only until the contract is awarded or the Notice to Proceed is issued. Afterward the approved Project Construction Schedule was to be used.

Second, according to paragraph 2.1, the Pre-Bid Construction Schedule was merely an outline of the information that would be contained in the approved Project Construction Schedule. Its very name indicates that it is to be used by bidders in developing their bids but would be superseded by the approved Project Construction Schedule once contracts were awarded and the work begun. This paragraph directs the Contractors to review the Pre-Bid Construction Schedule and the overall plan for construction with the Construction Manager and then provide the Construction Manager with its Work Schedule, including its work activities and durations. Once the Construction Manager received this information from each Contractor, it would incorporate all of that information into a Project Construction Schedule. Therefore, according to the specifications, the Pre-Bid Schedule alone is incomplete and cannot be considered as the Project Construction Schedule or the "Baseline."

Third, the approved Project Construction schedule is the schedule, according to paragraph 2.4 of the specifications, which would be updated to assess progress. Since the Pre-Bid Construction schedule would never be updated, or even used after award of the contracts and issuance of the Notices to Proceed, progress could never be measured using it. A baseline schedule must be updated if it is to be used for a critical path analysis. <u>Southern Comfort</u>

Builders v. U.S., 67 Fed. Cl. 124, 144 (2005); Wilner v. U. S., 26 Cl. Ct. 260, 262 (1992). Since the Pre-Bid Construction Schedule could not be updated, it cannot be the Baseline Schedule.

The procedures contained in specification section 01305 were substantially followed and the approved Project Construction Schedule, dated November 18, 2002, was issued to all Contractors on or about that date. See Exhibit "B". RLI seeks to use the Pre-Bid Construction Schedule as the Baseline Schedule for the time period both after award of the Contract and Notice to Proceed, which is precluded by the Contract Documents.

As a result, Damian Cassin's testimony regarding critical path based upon the Pre-Bid Construction Schedule should be precluded as it is not based upon the November 18, 2002 Baseline Schedule. Any analysis other than one based on the November 18, 2002 schedule is irrelevant because it is not calculated from the actual sequence of construction activities and durations used on this Project. It is based on some other sequence of activities and durations than those actually used to begin construction. Since Mr. Cassin cannot testify about the November 18, 2002 Project schedule, his testimony is not relevant under Rule 402 of the Rules of Evidence. In addition, Mr. Cassin's opinions cannot (1) be based upon sufficient facts or data (2) be the product of reliable principles and (3) be based upon principles and methods applied reliably to the facts of this case, all as required by Rule 702 since the critical path has not been derived from the actual sequence of activities or time allotted therefore.

V. **CONCLUSION**

Since the court's May 12, 2008 order precluded Mr. Cassin's testimony with respect to the November 11, 2002 Project schedule and the court's December 4, 2008 order found the analysis based upon the Pre-Bid Construction Schedule substantively insufficient, there is no

remaining relevant information for Mr. Cassin to testify to. Therefore, his testimony should be precluded at trial.

                        **SEITZ, VAN OGTROP & GREEN, P.A.**

                        **/s/ James S. Green, Sr.**
                        **JAMES S. GREEN, SR., ESQ. (DE0481)**
                        **jgreen@svglaw.com**
                        222 Delaware Avenue, Suite 1500
                        P. O. Box 68
                        Wilmington, DE 19899
                        (302) 888-0600

                        Attorneys for Defendant and Counterclaimant
                        Indian River School District

Dated: June 2, 2008

Of Counsel:

K. Gerard Amadio, Esquire
Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322