IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RLI INSURANCE COMPANY          :
                              :

         Plaintiff,        :
                              :

    v.                   :  Civil Action No. 05-858-JJF
                              :

INDIAN RIVER SCHOOL DISTRICT,   :
EDIS COMPANY, and BECKER MORGAN  :
GROUP                      :
                              :

         Defendants.      :

---

Harry R. Blackburn, Esquire, Francine D. Wilensky, Esquire, and John Hilser, Esquire of HARRY R. BLACKBURN & ASSOCIATES, P.C., Philadelphia, Pennsylvania.
Perry F. Goldlust, Esquire of ABER, GOLDLUST, BAKER, & OVER, Wilmington, Delaware.

Attorneys for Plaintiff.

Kevin Gerard Amadio, Esquire of VENZIE, PHILLIPS, & WARSHAWER, Philadelphia, Pennsylvania.
James S. Green, Esquire of SEITZ, VAN OGTROP, & GREEN, P.A., Wilmington, Delaware.

Attorneys for Defendant Indian River School District.

Donald L. Logan, Esquire and Victoria K. Petrone, Esquire of LOGAN & ASSOCIATES, LLC, Wilmington, Delaware.

Attorney for Defendant EDiS Company.

Paul Cottrell, Esquire and Patrick McGrory, Esquire of TIGHE & COTTRELL, P.A., Wilmington, Delaware.

Attorney for Defendant Becker Morgan Group, Inc.

---

**MEMORANDUM OPINION**

June 3, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are Motions for Summary Judgment, filed by each of the Defendants in this action, EDiS Company ("EDiS") (D.I. 88), Becker Morgan Group, Inc ("Becker Morgan") (D.I. 91) and Indian River School District ("Indian River")(D.I. 89). For the reasons discussed, the Court will grant the Defendants' motions.

**I.    BACKGROUND**

**A.    Factual Background**

This action arises out of performance and payment bonds issued by Plaintiff, RLI Insurance Company ("RLI Insurance"), on behalf of McDaniel Plumbing and Heating, Inc. ("McDaniel") in conjunction with McDaniel's contract with Indian River for mechanical, plumbing and automatic temperature control construction on a construction project designated as New Sussex Central High School in Georgetown, Delaware ("the Project"), which was entered on or about August 28, 2002. Because Indian River is a public school district, the Project was governed by Delaware's State Procurement Act, 29 Del. C. § 6962, which required the execution of a performance bond for McDaniel's work on the Project. Accordingly, on or about September 5, 2002, RLI Insurance, as surety, issued performance and payment bonds (hereinafter, "the Bond") for the Project to McDaniel, for the benefit of Indian River. By reference, the Bond incorporated the

1

terms of the construction contract between McDaniel and Indian River.

Indian River engaged Becker Morgan as project architect, and EDiS as construction manager. As architect, Becker Morgan provided Indian River with schematic design documents, design development documents, construction documents and bidding phase and construction administration phase services. (D.I. 91 at Exh. A, Art. 2.) As construction manager, EDiS provided administrative, management and related services to coordinate scheduled activities and responsibilities of the project contractors with each other and with EDiS, Becker Morgan and Indian River to manage the Project. More specifically, EDiS scheduled and conducted meetings, coordinated the sequence of construction, maintained accounting records for the Project, reviewed payment applications, recorded Project progress, and oversaw Project contractors' performances. (See D.I. 88 at Exh. A.)

Pursuant to the contract governing the relationship between Indian River and McDaniel, the "Standard Form of Agreement Between Owner and Contractor" (hereinafter, "the Contract"), EDiS and Becker Morgan were required to provide Indian River with information regarding Project work progress, and Project contractors' entitlement to payment. After reviewing a contractor's application for payment, EDiS and Becker Morgan

2

would issue an Application and Certificate for Payment to Indian

River.  The Contract states:

> The issuance of a separate Certificate of Payment or
> Project Certificate for Payment will constitute
> representations made separately by the Construction
> Manager and Architect to the Owner, based on their
> individual observations at the site and the date
> comprising the Application for Payment submitted by the
> Contractor, that the Work has progressed to the point
> indicated and that to the best of their knowledge,
> information and belief, the quality of the Work is in
> accordance with the Contract Documents.

(D.I. 95 at Exh. A, Art. 9.4.3.)

McDaniel began work on the Project on or about August 29,

2002.  Over the next two years, Indian River made periodic

progress payments to McDaniel based on EDiS's and Becker Morgan's

certifications.  During the course of the Project, McDaniel fell

behind on its scope of work.  However, EDiS and Becker Morgan

continued to issue certifications for payment, and Indian River

continued to issue payments to McDaniel, in reliance upon EDiS's

and Becker Morgan's certification.  RLI Insurance was notified

in April 2004, by EDiS that McDaniel's performance under the

Contract was unsatisfactory, and that McDaniel had fallen behind

schedule.  (D.I. 95 at Exh. B.)  By letter dated July 25, 2004,

RLI Insurance instructed Christian McCone, the project manager

for EDiS ("Mr. McCone"), to cease issuance of any further

payments to McDaniel without RLI Insurance's consent.  (D.I. 95

at Exh. C.)  RLI Insurance's letter was copied to Indian River.

(Id.)  However, EDiS and Becker Morgan authorized additional

3

payments to McDaniel.  According to Indian River, this payment
was made by joint check to McDaniel and one of its unpaid
subscribers, who refused to ship equipment to the Project until
they were paid, and that RLI Insurance expressly consented to
this joint payment on August 17, 2004, by letter stating that
"notwithstanding [RLI Insurance's] previous directive to hold
distribution of any funds, we agree with the issuance of the
joint checks at this point and authorize their release."  (D.I.
100 at Exh. 4.)

On October 11, 2004, Indian River terminated McDaniel's
employment under the Contract for non-performance, and failure to
pay subcontractors or suppliers.  Indian River submitted a claim
under the Bond for the completion of the Project.  RLI Insurance
denied the Bond, contending that Indian River had not complied
with its contractual obligations by issuing payments to McDaniel
in excess of the value of the work actually performed, or for
work that was never performed, and filed this action for
declaratory judgment, breach of fiduciary duty and negligent
misrepresentation.  RLI Insurance also asserted negligent
misrepresentation claims against EDiS and Becker Morgan.  Indian
River filed a counterclaim against RLI Insurance for costs to
correct and complete McDaniel's scope of work.

Pursuant to Indian River's motion for summary judgment, RLI
Insurance consented to the entry of judgment in Indian River's

4

favor as to Counts II and III of its complaint, RLI Insurance's claims against Indian River for breach of fiduciary duty, and negligent misrepresentation.

## II.  LEGAL STANDARD

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).

However, a court should not make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested

5

witnesses." Id. at 151 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

**III. ANALYSIS**

Because the arguments made by EDiS and Becker Morgan in support of their motions are similar, the Court will consider these motions together.

**A.   EDiS and Becker Morgan's Motion for Summary Judgment**

*1.   Parties' Contentions*

Defendants EDiS and Becker Morgan have filed for summary judgment on RLI Insurance's claims against them for negligent misrepresentation.  Both EDiS and Becker Morgan contend that the

6

economic loss doctrine precludes a plaintiff who has suffered
only economic losses from recovering in tort, and, since RLI
Insurance has suffered only economic losses, RLI Insurance is
barred from bringing a negligent misrepresentation claim against
them.

RLI Insurance contends that its negligent misrepresentation
claims against EDiS and Becker Morgan were brought under the
exception stated in Section 552 of the Restatement (Second) of
Torts, which allows tort claims against defendants (1) who have
supplied information to the plaintiff for use in business
transactions with third parties, and (2) who are in the business
of supplying information. Christiana Marine Serv. Corp. v.
Texaco Fuel Marine Marketing, C.A. No. 98C-02-217WCC, 2002 WL
1335363, at *5 (Del. Super. June 13, 2002). EDiS and Becker
Morgan contend that this exception to the economic loss doctrine
does not apply, since EDiS and Becker Morgan are not in the
"business of supplying information," and any information
exchanged was ancillary to the construction of a tangible
product.

EDiS contends that, as the Project construction manager, its
responsibilities were limited to "administrative, management and
related services," and that any information transmitted by EDiS
was incidental to the management services required by the
Construction Manager Contract. (D.I. 88 at 7.) EDiS also

7

contends that RLI Insurance's claim is barred by EDiS's contract with Indian River, which states, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either Owner or Construction Manager." (D.I. 88 at Exh. A, ¶10.7.)

Becker Morgan contends that as the supplier of drawings, plans and specifications for the Project, any information it supplied was ancillary to the purposes for which Indian River engaged Becker Morgan: the construction of a tangible building. Becker Morgan also contends that the language governing the contractual relationship between the parties makes obvious that Becker Morgan owed no duty to RLI Insurance or McDaniel, and that Becker Morgan did not intend that information it provided to Indian River be relied upon by RLI Insurance. Becker Morgan points to Section 9.7 of the contract between Becker Morgan and Indian River which states, "Nothing in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against the Owner or Architect." (DI 91 at Exh. A.) Becker Morgan contends "it would be antithetical for RLI Insurance to claim damages due to its reliance upon Becker Morgan's proper performance under a contract which expressly disclaims any cause of action for that very reliance." (D.I. 91 at 8.)

In response to both parties' contentions, RLI Insurance contends that EDiS and Becker Morgan were engaged to provide a number of services, at least one of which was "purely the provision of information." (D.I. 95 at 9.) RLI Insurance contends that its negligent misrepresentation claims are based entirely on those aspects of EDiS's and Becker Morgan's work limited to providing information. RLI Insurance admits that, EDiS's and Becker Morgan's primary roles on the Project may not have been the supply of information. However, RLI Insurance contends that because its claims against EDiS and Becker Morgan are based solely and exclusively on their roles as information providers, the Court should broadly construe Section 552, and hold that a defendant need not be exclusively an information supplier where the claim arises solely from that aspect of its work limited to producing information. RLI Insurance also contends that its claims against EDiS and Becker Morgan are not barred by their respective contracts with Indian River because RLI Insurance is not claiming third-party beneficiary status under these contracts, but instead asserting claims based upon the Section 552 exception.

    2.   *Discussion*

"The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other

9

property) and the only losses suffered are economic in nature."
Danforth v. Acorn Structures, Inc., 608 A.2d 1194, 1195 (Del.
1992).  The parties do not dispute that RLI Insurance seeks to
recover only economic losses.  Thus, RLI Insurance's claim must
fall within the negligent misrepresentation exception to the
economic loss rule to avoid summary judgment.

     The Restatement of Torts provides an exception to the
economic loss rule, which has been adopted by the Delaware state
courts.  Guardian Constr. Co. v. Tetra Tech Richardson, Inc., 583
A.2d 1378 (Del. Super. 1990).  The Restatement provides:

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he has
> a pecuniary interest, supplies false information for
> the guidance of others in their business transactions,
> is subject to liability for pecuniary loss caused to
> them by their justifiable reliance upon the
> information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the
> information.

Restatement (Second) of Torts § 552.

     In order to sustain a claim under Section 552, a plaintiff
must show: (1) the defendant gave false information to the
plaintiff for use in business transactions with third parties;
(2) the plaintiff justifiably relied upon the false information;
(3) the defendant failed to exercise reasonable care in obtaining
or relaying the information; and (4) the defendant intended that
the plaintiff rely upon the information.  Rose Heart, Inc. v.
Ramesh C. Batta Assocs., P.A., C.A. No. 92C-10-138, 1995 Del.

Super. LEXIS 370, at *9 (Del. Super. Aug. 15, 1995).

Additionally, a plaintiff must show that "the defendant is in the business of supplying information." <u>Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg., Inc.</u>, C.A. No. 98C-02-217, 2002 Del. Super. LEXIS 305, at *23-25 (Del. Super. June 13, 2002) (citing <u>Danforth v. Acorn Structures, Inc.</u>, C.A. No. 90C-JV-30, 1991 WL 269956, at *3 (Del. Super. Nov. 22, 1991)).

To determine whether a defendant is in the business of supplying information, a court must conduct a case-specific inquiry, looking to the nature of the information and its relationship to the kind of business conducted. <u>Christiana Marine</u>, 2002 Del. Super. LEXIS 305, at *26-27 (citing <u>Rankow v. First Chicago Corp.</u>, 870 F.2d 356, 360 (7th Cir. 1989)). "[W]here the information supplied is merely ancillary to the sale of a product or service in connection with the sale, defendant will not be found to be in the business of supplying information for the guidance of others in their business dealings." <u>Christiana Marine</u>, 2002 Del. Super. LEXIS 305, at *29 (quoting <u>Tolan & Son Inc. v. KLLM Architects, Inc.</u>, 308 Ill. App. 3d 18 (Ill. App. 1999)).

As stated in <u>Danforth v. Acorn Structures</u>:

> Obviously, a great many businesses involve an exchange of information as well as of tangible products--manufacturers provide operating or assembly instructions, and sellers provide warranty information of various kinds. But if we ask what the product is in each of these cases, it becomes clear

11

> that the product (a building, precipitator, roofing
> material, computer or software) is not itself
> information, and that information provided is merely
> incidental.

C.A. No. 90C-JN-30, 1991 WL 269956, at *3 (Del. Super. Nov. 22,

1991)(quoting Rankow v. First Chicago, 870 F.2d 356, 364 (7th

Cir. 1989).   Accordingly, Delaware courts have found the

potential for liability when information is the "end and aim"

product of a defendant's work.   Delaware Art Museum, v. Ann Beha

Architects, No. 06-481-GMS, 2007 WL 2601472, at *2 (D. Del. Sept.

11, 2007) (citing Guardian Constr., 583 A.2d at 1386, and

Millsboro Fire Co. v. Constr. Mgmt. Serv., C.A. No. 05C-06-

137MMJ, 2006 WL 1867705, at *3 (Del. Super. June 7, 2006), which

lists surveyors, accountants, financial advisors and title

searchers as examples of defendants who are pure information

providers).

     While EDiS and Becker Morgan did provide information to

Indian River, information upon which Indian River relied in

issuing payment to McDaniel, the Court finds that the

Applications and Certificates for Payment were not the "end and

aim" of the work Indian River hired EDiS and Becker Morgan to

provide.   Instead, the "end and aim" was the construction of the

Project.   The Court further finds that any information provided

by EDiS and Becker Morgan within the Applications and

Certificates for Payment was provided in connection with

achieving completion of the Project, or, as stated by the court

                                                          12

in <u>Millsboro</u>, was information "more aptly categorized as
information incidentally supplied . . . as part of the
construction" of the Project.  2006 WL 1867705, at *3.
Accordingly, having found that RLI Insurance's claims against
EDiS and Becker Morgan do not fall within the negligent
misrepresentation to the economic loss doctrine, the Court will
grant EDiS's and Becker Morgan's motions for summary judgment,

**B.    Indian River's Motion for Summary Judgment**

    *1.    Parties' Contentions*

    Indian River contends that summary judgment is appropriate
with respect to defenses asserted by RLI Insurance in its request
for declaratory judgment.  Specifically, Indian River contends
that RLI Insurance's defenses based on Indian River's allegedly
improper payments to McDaniel should be stricken.  Indian River
admits that the parties disagree as to whether and to what extent
overpayments were made, but contends that the applicable law and
contract afford RLI Insurance no defense regardless, since Indian
River was bound by the contract to make payments to McDaniel upon
certification by EDiS and Becker Morgan.  Indian River contends
that if an owner is required to make payment pursuant to a
contract based on certifications by a third-party, the owner's
overpayments do not excuse the surety from its obligations under
the performance bond, and cites case law in support of this
contention.  Indian River further contends that by undertaking to

13

become McDaniel's surety, RLI Insurance assumed the inherent risk
that work was neither accepted nor necessarily acceptable simply
because payment was made.  Indian River contends that RLI
Insurance cannot assert defenses based on the notice provisions
of the Bond since RLI Insurance's defenses are limited to those
set forth in the State Procurement Act.  Finally, RLI Insurance
contends that the relevant contract documents do not require
Indian River to provide seven days notice.

     RLI Insurance responds that there are material fact issues
concerning when Indian River knew about overpayments and/or
advance payments made to McDaniel in contradiction of the
Contract, and in violation of the Bond's provisions.  RLI
Insurance distinguishes the case law cited by Indian River,
noting the owners in those cases acted in good faith, whereas
here, RLI Insurance contends, Indian River acted improperly and
in collusion with EDiS and Becker Morgan.  RLI Insurance further
contends that Indian River's overpayments were a departure from
the terms and conditions of the Contract, and that RLI Insurance
was prejudiced because Indian River's actions impaired RLI
Insurance's collateral.  RLI Insurance contends that it was
prevented from exercising its rights under the Bond by Indian
River's failure to allow RLI Insurance to mitigate its exposure.
RLI Insurance further responds that Delaware's State Procurement
Act does not prohibit RLI Insurance's claims and defenses against

14

Indian River since the statute does not exclude or extinguish any rights that RLI Insurance has asserted in Count I of its Complaint.

In response, Indian River asserts that RLI Insurance has not presented any evidence that Indian River did not act in good faith, or that RLI Insurance suffered some prejudice as a result of any alleged overpayment. Indian River contends that RLI Insurance offers no opposition to Indian River's argument to strike RLI Insurance's defense that the contract required a seven day notice of default to McDaniel, and requests the Court enter judgment in its favor.

　　2.　*Discussion*

　　　　a.　<u>Overpayments</u>

Neither party cites Delaware authority on this issue, and therefore the Court will consider relevant case law from other jurisdictions.

A surety on a construction project provides assurance to the owner that a construction job will be completed. <u>In re Modular Structures, Inc</u>., 27 F.3d 72, 74 n.1 (3d Cir. 1994). "If the contractor principal defaults, the surety under a performance bond performs the work, mitigates loss by its performance, and under a payment bond pays the subcontractors and suppliers." <u>N. American Specialty Ins. Co. v. Chichester School District</u>, No. 99-2394, 2000 WL 1052055, at *6 (E.D. Pa. Jul. 20, 2000) (quoting

15

In re Modular Structures, Inc., 27 F.3d at 74 n.1.)  Older cases
held that sureties should be granted a total discharge from their
obligations in the event of overpayment.  Chichester School
District, 2000 WL 1052055, at *12.  However, the modern rule
regarding premature or unauthorized payments holds that, "where
there has been a material departure from contractual provisions
relating to payments and the security of retained funds, a
compensated surety is discharged from its obligations on the
performance bond to the extent that such unauthorized payments
result in prejudice or injury."  Id.  The justification for this
rule is that "the material departure from the terms of the
contract deprives the surety of the inducement to perform which
the contractor would otherwise have, and destroys, diminishes, or
impairs the value of the securities taken."  Nat'l Union Indem.
Co. v. G. E. Bass & Co., 369 F.2d 75, 77 (5th Cir. 1966).

    However, courts have held that this defense does not apply
when the owner has in good faith relied upon the certifications
of its architects or engineers.  See, e.g., Argonaut Ins. Co. v.
Town of Cloverdale, 699 F.2d 417 (7th Cir. 1983); Balboa Ins. Co.
v. Fulton Co., 251 Ga. App. 328 (Ga. Ct. App. 1978); Continental
Casualty Co. v. Public Building Authority of City of Scottsboro,
318 F.2d 10 (5th Cir. 1967)("It may be laid down as a general
rule that payments made by the Owner to a construction contractor
in accordance with the terms of the contract do not release the

surety on the contractor's bond from liability to the owner.";
<u>Payments or Advancements to Building Contractor by Obligee as</u>
<u>Affecting rights as Between Obligee and Surety on Contractor's</u>
<u>Bond</u>, 127 A.L.R. 10 ("The rule seems to be settled that where a
construction contract requires, as a condition of payments to the
contractor, a certificate or estimate of an architect, engineer,
or other person designated in the contract, showing the amounts
due, the owner is not responsible, as against the surety on the
contractor's bond, for the mistakes of the architect or engineer,
and the surety is not discharged from liability to the owner by
reason of payments made in good faith in accordance with
overestimates or erroneous certificates, although such payments
exceed, in fact, the sums due under the contract.")  RLI
Insurance contends that this exception does not apply because
Indian River's payments were not made in "good faith reliance,"
but instead in collusion with EDiS and Becker Morgan.  However,
as noted previously, RLI Insurance has adduced no evidence in
support of this contention.  Accordingly, the Court declines to
discharge RLI Insurance from liability under the Bond for Indian
River's payments made in accordance with the terms of the
Contract.[1]

---

[1]The Court is persuaded that RLI Insurance's reliance on the
case of <u>Chichester School District</u>, 2000 WL 1052055, is
misplaced. In <u>Chichester</u>, the overpayments at issue were a result
of the school district's negligence in double paying on two
applications for payment that had already been approved for
payment, not payments made in good faith reliance upon an

17

Additionally, even if RLI Insurance had adduced evidence of bad faith on the part of Indian River, the Court concludes that RLI Insurance cannot establish that it was prejudiced by the alleged overpayments.  The only evidence argued by RLI Insurance in support of its contention that even suggests the overpayments were made knowingly and willfully concerns Indian River's 24th payment.  (See, e.g., D.I. 94 at Exhs. B, C, and D.)  However, RLI Insurance's August 17, 2004 letter explicitly allowed for the release of these funds, since the 24th payment was a joint payment to unpaid McDaniel suppliers, and the remainder of the payment was held while the parties determined to whom to make payment. (D.I. 100 at Exh. 4.)  This payment ultimately furthered RLI Insurance's interest in paying suppliers for materials necessary to complete the Contract, and the Court finds that the evidence RLI Insurance has argued is insufficient to establish prejudice.  See Ramada Development Co. v. U.S. Fid. & Guaranty Co., 626 F.2d 517, 522 (6th Cir. 1980) (surety was not discharged where payments made in advance were made to further completion of the contract and therefore benefitted the surety).  Accordingly, the Court concludes that RLI Insurance is not discharged from liability under the Bond by Indian River's allegedly improper payments to McDaniel, and therefore the Court will grant Indian River's motion for summary judgment on this issue.

_____

application for payment.  2000 WL 1052055, at *13.

18

b.   <u>Bond Provisions</u>

Pursuant to Delaware's State Procurement Act, Indian River required McDaniel to execute a performance bond for its benefit. <u>See</u> 19 Del. C. § 6962(e) and 19 Del. C. § 6927(d).   The Performance Bond between McDaniel and RLI Insurance states:

> When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law Bond.

(D.I. 90 at Exh. D.)[2]  Pursuant to the Procurement Act, a surety is prohibited, in an action brought on a bond required by the Act, from asserting as a defense that the bond given pursuant to this section contained a limitation or restriction not provided for by this Section.   Because RLI Insurance's Bond was issued to comply with Delaware's statutory requirements, RLI Insurance

---

[2]Since the execution of the Bond at issue in this action, Section 6927(d)(9)(e) has been amended.  The Section now requires that a performance bond must "be in the standard form issued by the Office of Management and Budget for this purpose."  RLI Insurance contends that, because the bond form that was approved for use on the Project was the Bond issued to Indian River by RLI Insurance, the Bond was in "the standard bond form" as required by the statute.  Accordingly, RLI Insurance contends, "the Court must look to the provisions of the bond itself...to determine any limitations on claims or defenses."  (D.I. 94 at 18.)  The Court finds RLI Insurance's argument unpersuasive in light of the legislative history of the statute, which makes clear that this "standard form" provision did not exist in August 2002, when the Project was bid, and therefore the Bond issued by RLI Insurance was not a state-designated bond form.

19

cannot rely on defenses based on the Bond's terms and conditions
that are inconsistent with these statutory requirements.

By its Complaint, RLI Insurance contends that, pursuant to
paragraph 3.1 of the Bond, Indian River was required to arrange a
pre-default conference with RLI Insurance and McDaniel.[3]  In State
Board of Trustees of Delaware State College Savery and Cooke,
Inc. v. Fidelity and Deposit Company of Maryland, the Delaware
Supreme Court considered whether a 90-day notice requirement of a
performance bond contravened the requirements and purposes of
Delaware's statute. 57 Del. 24, 31-32 (1963).  After defining a
"statutory bond" as one taken "pursuant to a requirement of a
public statute," the court found the notice provision of the bond
inconsistent with protections intended by the statutory
requirements. Id. at 34.  Having reviewed the relevant Sections
invoked here, the Court concludes that the Procurement Act does
not require a pre-default conference, and any defense asserted by
RLI Insurance on this basis is inconsistent with the purpose of
Delaware's statutory requirements, to "indemnify and hold

---

[3]RLI Insurance also alleges in its Complaint that Indian
River had a duty to notify RLI Insurance about problems with the
Project, and to withhold payments to McDaniel that might impair
RLI Insurance's collateral.  These duties are not expressed by
the Bond's terms, and the Court construes RLI Insurance's view of
Indian River's duties to be implied.  The Court finds these
implied duties to be inconsistent with the terms of the
Procurement Act, and will strike RLI Insurance's allegations that
it is discharged from liability under the Bond by Indian River's
failure to notify RLI Insurance about problems with the Project,
and to withhold payments to McDaniel that might impair RLI
Insurance's collateral

harmless the State and the agency from all costs, damages and
expenses growing out of or by reason of the successful bidder's
failure to comply and perform the work and complete the contract
in accordance with the contract." 19 Del. C. § 6927(e). <u>See
also</u> 19 Del. C. § 6962(d)(9)(b). Accordingly, the Court will
grant Indian River's motion for summary judgment on RLI
Insurance's defense that pursuant to the Bond, Indian River was
required to arrange a pre-default conference with RLI Insurance
and McDaniel.

         c.    <u>Seven Day Notice of Default to McDaniel</u>

     RLI Insurance offers no opposition in response to Indian
River's argument that the Contract does not require a seven day
notice of default to McDaniel, and the evidence in the record
before the Court is unchallenged that the contractual provision
RLI Insurance relies upon in support of its assertion that the
Contract required seven days notice before termination was
modified to eliminate this provision. (D.I. 90 at Exhs. A, B and
C.) Accordingly, the Court will strike the allegations of Count
I to the extent that RLI Insurance claims it is discharged from
its obligations under the performance bond by Indian River's
failure to provide pre-termination notice of default to McDaniel
as required by the Contract.

21

**IV.  CONCLUSIONS**

For the reasons discussed, the Court will grant EDiS's Motion for Summary Judgement and Becker Morgan's Motion for Summary Judgment.  The Court will grant Indian River's Motion for Summary Judgment against RLI Insurance, and will strike (1) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's alleged improper payments to McDaniel, (2) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's failure to arrange a pre-default conference with RLI Insurance and McDaniel, (3) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's failure to provide seven days notice pursuant to the Contract; and (4) RLI Insurance's allegations that it is discharged from liability under the Bond by Indian River's failure to notify RLI Insurance about problems with the Project, and to withhold payments to McDaniel that might impair RLI Insurance's collateral.

An appropriate Order will be entered.