IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| vs. | : | NO. 05-858-JFF |
| | : | |
| **INDIAN RIVER SCHOOL DISTRICT,** | : | |
| **EDiS COMPANY and BECKER** | : | JURY TRIAL DEMAND |
| **BECKER MORGAN GROUP, INC.** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF RLI INSURANCE COMPANY'S BRIEF IN SUPPORT OF
ITS MOTION FOR LIMITED REARGUMENT OF THE COURT'S
MEMORANDUM OPINION DATED JUNE 3, 2008 GRANTING SUMMARY
JUDGMENT TO DEFENDANT INDIAN RIVER SCHOOL DISTRICT ON
COUNT I OF PLAINTIFF'S COMPLAINT**

LAW OFFICES OF PERRY F. GOLDLUST, P.A.

 /s/ Perry F. Goldlust
Perry F. Goldlust, Esquire (DSB #770)
1426 North Clayton Street
Wilmington, DE 19806
Tel: (302) 483-2000
Fax: (302) 792-7484
EM: pgoldlust@tlclaw.net
*Attorneys for Plaintiff RLI Insurance Company*

Date:  June 13, 2008

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| | TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | iii |
| I. | NATURE AND STATUS OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| II. | SUMMARY OF LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| III. | CONCISE STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| IV. | LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | A.   Applicable Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | B.   The Granting of Summary Judgment in IRSD's Favor Indicates the Court Misunderstood RLI's Counter-Argument to IRSD's Motion for Summary Judgment or Made an Error of Apprehension Thereby Warranting Reargument of the Issue Related to IRSD's Liability Under the Bond Due to IRSD Knowingly Making Improper Payments to McDaniel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| V. | CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |

**TABLE OF AUTHORITIES**

**CASES**                                                                  **PAGE**

Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1241 (D. Del. 1990) . . . . . . . . . . . . 3

Carter v. Brady, 2004 WL 724953 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chichester School District, 2000 WL 1052055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Dentsply Int'l, Inc. v. Kerr Mfg. Co., 42 F.Supp.2d 385, 419 (D. Del. 1999) . . . . . . . . . 3

Dickens v. Dover City Police Dept., 2007 WL 3024093, . . . . . . . . . . . . . . . . . . . . . . . 3
    at 1 (D. Del. Oct. 12, 2007)

Karr v. Castle, 768 F. Supp. 1087, 1093 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 4

Smith v. Massachusetts, 543 U.S. 462, 475 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL RULES**

F.R.C.P. 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATE RULES**

D. Del. L.R. 7.1.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      **NATURE AND STATUS OF THE PROCEEDINGS**

For purposes of this Motion for Reargument, the history is relatively brief. On September 27, 2007, EDiS filed its Motion for Summary Judgment. (D.I. 88). The following day, IRSD and BMG filed their respective Motions for Summary Judgment. (D.I. 89 and 91). On October 18, 2007, RLI filed its Answering Motion and Supporting Briefs. (D.I. 94 and 95). Thereafter, IRSD, EDiS and BMG filed Reply Briefs. (D.I. 101 - 103).

On June 3, 2008, the Court granted summary judgment in favor of EDiS and Becker Morgan, thereby dismissing them from the litigation. IRSD was also granted partial Summary Judgment in its favor on RLI's claims. (D.I. 144). IRSD also has a counterclaim pending against RLI. (D.I. 11). No defendants asserted cross claims against one another. A Pre-Trial Conference had been scheduled for June 5, 2008, however, given the granting of the Summary Judgment motions, the Court cancelled the conference and ordered the parties to submit a statement of remaining issues for trial. (D.I. entry 06/03/08).   Trial is set for July 21, 2008.

II.     **SUMMARY OF LEGAL ARGUMENT**

The Court may have misunderstood RLI's counter-argument to IRSD's Motion for Summary Judgment or, in the alternative, may have overlooked or misapprehended the significance of IRSD's knowledge of the overpayments made to McDaniel based upon false and misleading Certificates for Payment prepared and certified by EDiS and BMG. IRSD's issuing payments to McDaniel despite knowing that it had not completed the work set forth on the Payment Certifications caused harm to RLI. For this reason, RLI respectfully requests this Court to grant this Motion and permit reargument of this limited issue.

1

**III.     CONCISE STATEMENT OF FACTS**

On June 3, 2008, this Court issued a Memorandum Opinion granting summary judgment to all defendants.  RLI does not seek reargument of the entry of judgment in favor of EDiS and BMG, nor does it request reargument on the Court's decision to enter judgment as to three of the four reasons the Court determined that IRSD was entitled to summary relief.  RLI only requests reargument of one (1) determination made by the Court and the analysis which the Court employed in reaching its conclusion.

This Court's Memorandum Opinion states:

> For the reasons discussed, the Court will grant EDiS's Motion for Summary Judgment and Becker Morgan's Motion for Summary Judgment. The Court will grant Indian River's Motion for Summary Judgment against RLI Insurance, and will strike ***(1) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's alleged improper payments to McDaniel***, (2) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's failure to arrange a pre-default conference with RLI Insurance and McDaniel, (3) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's failure to provide seven days notice pursuant to the Contract; and (4) RLI Insurance's allegations that it is discharged from liability under the Bond by Indian River's failure to notify RLI Insurance about problems with the Project, and to withhold payments to McDaniel that might impair RLI Insurance's collateral.

(D.I. 144, page 22).

RLI seeks reargument of only that portion of the Court's Opinion which held "RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's alleged improper payments to McDaniel."

2

### IV. LEGAL ARGUMENT

#### A. Applicable Legal Standard

Delaware Local Rule 7.1.5 provides: "Motions for reargument shall be sparingly granted. If a party chooses to file a motion for reargument, said motion shall be filed within 10 days after the Court issues its opinion or decision. The motion shall briefly and distinctly state the grounds therefore. Within 10 days after filing of such motion, the opposing party may file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted.." *See* D. Del. L.R. 7.1.5.

A Court may grant a motion for reargument if one of three circumstances applies:

> (1) the Court patently misunderstood a party;
> (2) the Court made an error of apprehension, not reasoning; or,
> (3) the Court made a decision outside the scope of the issues presented by the parties to the Court.

<u>Dickens v. Dover City Police Dept.</u>, 2007 WL 3024093, at 1 (D. Del. Oct. 12, 2007); <u>Brambles USA, Inc. v. Blocker</u>, 735 F. Supp. 1239, 1241 (D. Del. 1990). It is within the Court's discretion whether to grant or deny a motion for reargument. <u>Dentsply Int'l, Inc.</u> v. <u>Kerr Mfg. Co.</u>, 42 F.Supp.2d 385, 419 (D. Del. 1999).

A district court has inherent power to reconsider and modify interlocutory orders. <u>Smith v. Massachusetts</u>, 543 U.S. 462, 475 (2005). Federal Rule of Civil Procedure 54(b) also implicitly recognizes the Court's inherent power, since "any order or other form of decision ... is subject to revision at any time before entry of judgment...."

A Court "should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct clear error." <u>Brambles</u>, 735 F. Supp. at 1241. A court "should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result."

*Carter v. Brady,* 2004 WL 724953 (D. Del. 2004) (citing *Karr v. Castle,* 768 F. Supp. 1087, 1093 (D. Del. 1991)).

> **B. The Granting of Summary Judgment in IRSD's Favor Reveals the Court Misunderstood RLI's Counter-Argument to IRSD's Motion for Summary Judgment or Made an Error of Apprehension Thereby Warranting Reargument of the Issue Related to IRSD's Liability Under the Bond Due to IRSD Knowingly Making Improper Payments to McDaniel.**

RLI believes that the Court may have misunderstood RLI's argument for denying IRSD's Motion for Summary Judgment or, in the alternative, that it may have overlooked or misapprehended the significance of IRSD's knowledge of the overpayments made to McDaniel based upon false and misleading Certificates for Payment prepared and certified by EDiS and BMG. IRSD's issuing payments to McDaniel despite knowing that McDaniel had not completed the work set forth on the Payment Certifications caused harm to RLI.

RLI's belief is supported by the Court's Memorandum Opinion of June 3, 2003 in which it states:

> ... However, courts have held that this defense does not apply ***when the owner has in good faith relied*** upon the certifications of its architects or engineers. [Citations omitted] (D.I. 144, at page 16). ...
>
> The rule seems to be settled that where a construction contract requires, as a condition of payments to the contractor, a certificate or estimate of an architect, engineer, or other person designated in the contract, showing the amounts due, the owner is not responsible, as against the surety on the contractor's bond, for the mistakes of the architect or engineer, and the surety is not discharged from liability to the owner by reason of payments ***made in good faith*** in accordance with overestimates or erroneous certificates, although such payments exceed, in fact, the sums due under the contract." RLI Insurance contends that

> this exception does not apply because Indian River's payments were not made in "good faith reliance," but instead in collusion with EDiS and Becker Morgan. However, as noted previously, RLI Insurance has adduced *no evidence* in support of this contention. Accordingly, the Court declines to discharge RLI Insurance from liability under the Bond for Indian River's payments made in accordance with the terms of the Contract. (D.I. 144, at page 17). ...
>
> The Court is persuaded that RLI Insurance's reliance on the case of *Chichester School District*, 2000 WL 1052055, is misplaced. In *Chichester*, the overpayments at issue were a result of the school district's *negligence* in double paying on two applications for payment that had already been approved for payment, not payments made *in good faith reliance* upon an application for payment. [Citations omitted] (D.I. 144, at page 17, footnote 1). [Emphasis added.]

RLI's initial arguments focused on the position that the case law addressing the issues determined that if the owner acted in good faith upon representations of others, then their actions may be excused. However, when there exists evidence of a lack of good faith, as is the case at bar, due to the owner's own acts in issuing payments based upon knowingly inaccurate certificates for payment, then the case holdings do not apply. The Court, while acknowledging the 'good faith' requirement, has failed to fully apprehend the extent of the evidence of what IRSD actually knew at the time it authorized payment. Had it recognized this initially, RLI does not believe that the Court would reward IRSD for such intentional conduct.

The Court's apprehension may be related to the Court's determination that RLI "has adduced no evidence in support of this contention." With all due respect to the Court, RLI disagrees with this statement, as it provided the Court with evidence through deposition testimony attached as Exhibits to its initial filing. (D.I. 94).

5

The deposition testimony reveal that falsely prepared Certificates for Payment were generated by EDiS and BMG with IRSD's knowledge. Despite evidence that IRSD knew of the misrepresentations contained therein, IRSD nevertheless issued payments to McDaniel.

Theodore H. Dwyer, Jr., an employee of Crystal Holdings, parent corporation of EdiS, and EDiS' Operations Manager on the Project, stated under oath at his deposition taken on May 30, 2007:

> Page 188
> ...
> 11 Q. And in column G it states 100%
> 12     of every work description from
> 13     from that column B has been completed. The
> 14     certification on the front page states that:
> 15     "In accordance with the contract documents,
> 16     based upon on-site observations and the data
> 17     comprising this application, the construction
> 18     manager and architect certify to the owner
> 19     that to the best of their knowledge,
> 20     information and belief the work has
> 21     progressed as indicated, the quality of the
> 22     work is in accordance with the contract
> 23     documents and the contractor is entitled to
> 24     payment of the amount certified."
>
> Page 189
>
> 1      Had 100% of every item on the
> 2      first continuation page been supplied,
> 3      installed and in conformance with the
> 4      contract documents 8S of the date of this pay
> 5      application?
> 6  A.  **No.**
> 7  Q.  Did **you** know that when this pay
> 8      application was submitted?
> 9  A.  **Yes**.
> 10 Q.  Did **Mr. McCone** know that when this
> 11     pay application was submitted?
> 12 A.  **Yes.**

Further, Brad A. Hastings, an architect and principal of BMG, was deposed on May 2, 2007.

Mr. Hastings testified:

Page 118

2  Q.  The fixtures were not 100% complete
3       as of August 31st, 2004?
4. A.   Were not 100%, that is correct.
...
11. Q.  HVAC equipment, was that 100%
12.     complete as of August 31st, 2004?
13. A.  I would say no.

Page 119

1. Q.   Of the work, of the HVAC work that
2.      had been completed as of August 31st, 2004,
3.      was all of it correctly done in conformance
4.      with the contract requirments?
5. A.   I would say no.

Page 127

21. Q.  Was the McDaniel scope of work
22.     98.05% complete as of August 31st 2004?
23. A.  I'd say no.

Page 128

9. Q.   Of that total work that had been
10.     completed, was all of it properly performed
11.     in conformance with the contract
12.     requirements?
13. A.  No.
...
19. Q.  Why did you certify this payment
20.     application?
21. A.  As I previously mentioned, that
22.     there was a subcontractor or supplier and I
23.     don't recall which on this, that had to get
24.     payment in order to complete their portion

7

Page 129

1. and they had not been paid before, so it was
2. discussed and agreed that in order to get him
3. paid that these adjustments would be paid
4. here to allow that payment to be made.
...
15. Q. And when you say this had been
16. discussed, who, who participates in the
17. discussions you're referring to?
18. A. Chris McCone, either myself or Sandy
19. Carpenter; **I believe Greg Weer was there**.
20. These were discussions after progress
21. meetings and the like.

Most importantly, Gregory C. Weer, IRSD's Supervisor of Buildings and Grounds, was deposed on March 20, 2007. Mr. Weer, whose deposition excerpts were attached as Exhibit D to RLI's Answer to IRSD's Motion for Summary Judgment, has stated:

Page 69

16. Q. What caused you to seek out the
17. termination information in the contract in
18. April or May of 2004?

19. A. Mr. McDaniel was falling a little
20. further behind in the schedule and we were
21. getting inquiries from his vendors requesting
22. payment for materials. He also informed us
23. in some instances that he could not get
24. materials because he couldn't pay for them.

Page 70

1. Q. Do you recall approximately when you
2. first became aware of inquiries from
3. McDaniel's suppliers concerning status of
4. their payments?

5. A. I believe the first one would have

8

6.    been April or May of '04.

Page 71

11. Q.  Did you, during May -- April, May,
12    of 2004, did you discuss the problems that
13    had arisen to that point with McDaniel with
14    Mr. McCone outside of the project meetings?
15 A.  We may have discussed it after a
16    meeting.
17 Q.  Your decision to look at the
18    contract to determine what was necessary to
19    terminate the contractor, was that something
20    you undertook on your own initiative?
21 A.  Only after the question had been, or
22    the -- excuse me -- only after the
23    possibility had been raised by EDiS.

Page 73

10 Q.  So one of the meetings in late
11    April, a general progress meeting took place?
12 A.  Yes.
13 Q.  And is it your recollection that
14    after that you and the EDiS and Becker Morgan
15    representatives talked about the schedule and
16    the problems that you saw?
17 A.  Yes.
18 Q.  Would that have been Mr. McCone or
19    his site superintendent?
20 A.  Well, it would have been both.
21 Q.  So both gentlemen it's your
22    recollection were there when you had that
23    first, the first discussion on that topic?
24 A.  Yes.

Page 110

14 Q.  Okay. McDaniel was still working on
15    the project as of the end of August of 2004,
16    correct?
17 A.  Yes.
18 Q.  In your estimation, what percentage
19    of their overall scope of work had been

```
20    completed by that time, by the end of August,
21    just before school was supposed to open?
22    MR. AMADIO: Objection to
23    form.
24    BY MR. SHIELDS:
```

Page 111

```
1 Q.   You can answer. You can answer the
2      question.
3 A.   There was virtually no work done in
4      B-wing. We still had issues in the rest of
5      the building. Maybe, I'm going to say maybe
6      70 to 75%.
```

Page 132

```
2 Q.   Were the -- back to [Exhibit] 11 -- were the
3      boilers installed as of the end of August?
4 A.   Yes.
5 Q.   Were they operating properly?
6      MR. AMADIO: Objection to
7      form.
8 A.   No.
9      BY MR. SHIELDS:
10 Q.  What was wrong with them?
11 A.  They were not adjusted properly.
12 Q.  Was that known at that time?
13 A.  I don't recall.
```

Page 178

```
13    I'd like to go back to [Exhibit] Weer-11
14    and 11A just for a moment. I'm going to show
15    you the last page first.
16    Now, this, again, just for the
17    record, this is Application 24. I understand
18    that you have indicated to me that you're not
19    sure whether you've seen this one before
20    since this copy does not bear your stamp or
21    your initials.
22    Notwithstanding that
23    information, would you agree with me that on
24    the second page it indicates that the level
```

Page 179

```
1      of completion of the McDaniel contract
2      overall is 98.05%.
3      Do you see that?
4 A.   That's what it says.
5 Q.   In August, the end of August of
6      2004, and I'm asking you for your
7      recollection back then, what percentage of
8      the building, of the McDaniel contract do you
9      think was complete or did you think was
10     complete at that time?
11     MR. AMADIO: Objection to
12     form.
13     A. Well, I would say it would be less
14     than 100%. At that time versus what I know
15     now would change my response.
```

The above quoted testimony raises a substantial issue of fact as to when IRSD became aware that the payments being issued to McDaniel were advanced payments, which contradicted the IRSD payment policies. When it became aware is at issue and should be resolved by the fact finder. IRSD continued to make these payments to McDaniel based upon applications known to be inaccurate, under the apparent belief that these overpayments were necessary to keep McDaniel progressing in its work and to pay its suppliers and subcontractors.

By overlooking the significance of this testimony, the Court's Opinion, in essence, excuses fraudulent behavior, as RLI had the reasonable expectation that the individuals responsible for these activities would act in a truthful, fair and responsible manner under the contracts, when in reality, they squandered monies with the hope that it would balance out in the end, all to RLI's detriment, thereby increasing its exposure under the bond.

As a result of IRSD's issuance of payments despite knowing that the payment provisions of the contract had been violated in a deliberate manner, RLI incurred damages including, but not

limited to, being deprived of its rights under the performance bond by impairing its collateral by knowingly and voluntarily making the unearned payments to McDaniel.

Such actions by IRSD prejudiced RLI, as RLI relied upon the good faith expectation that IRSD would perform its obligations under the contract documents honestly and fairly in deciding to issue the bonds for the project.

Because of IRSD's intentional failure to comply with its own contractual obligations, IRSD issued payments to McDaniel for more than $340,000.00 in excess of the value of the work performed by McDaniel (overpayments) or for work that was never performed (premature payments).

While a portion of the advanced funds were intended to pay for labor and materials provided by subcontractors to McDaniel for time and/or materials, with the intention of avoiding further project delay, there is no allowance for such concessions under the contract documents and, therefore, these acts resulted in a significant reduction of RLI's collateral, as the clandestine manner in which the defendants handled the situation had a direct and adverse impact upon RLI's ability to perform under the bond and minimize its exposure and risk of loss, which as the bond issuer, it has a right to do in order to perform under the bond.

In light of all of the foregoing, RLI should be entitled to reargument of this limited issue.

### V. CONCLUSION

For the foregoing reasons, Plaintiff RLI Insurance Company respectfully requests that this Honorable Court grant its Motion for Limited Reargument on the issue of IRSD's knowledge of improper payments made to McDaniel based upon misrepresentations contained in the Certificates for Payment. As a result of the intentional acts of IRSD, RLI should be granted total discharge

under the Bond, as opposed to a limited discharge, since such a position would be required only upon a party's good faith reliance or honest mistake. In this case, IRSD acted in an intentional manner and should not be rewarded for its actions.

                                                Respectfully submitted:

                                                **LAW OFFICES OF PERRY F. GOLDLUST, P.A.**
/s/   Perry F. Goldlust
PERRY F. GOLDLUST (DSB #770)
1426 North Clayton Street
Wilmington, DE 19806
Tel: (302) 483-2000; Fax: (302) 792-7484
EM: pgoldlust@tlclaw.net
*Attorneys for Plaintiff RLI Insurance Company*

Date: June 13, 2008

**Of Counsel**:
HARRY R. BLACKBURN, ESQUIRE
JOHN E. SHIELDS, JR., ESQUIRE
**BLACKBURN, DeCLEMENT & ASSOCIATES, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 985-0123