**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RLI INSURANCE COMPANY, ) | |
| ) | C.A. No. 05-858 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| INDIAN RIVER SCHOOL DISTRICT, ) | |
| EDIS COMPANY, and ) | |
| BECKER MORGAN GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT INDIAN RIVER SCHOOL DISTRICT'S BRIEF ANSWER**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR LIMITED REARGUMENT**

Pursuant to Local Rule 7.1.5, defendant Indian River School District ("IRSD"), through its undersigned attorneys, files its brief answer opposing Plaintiff RLI Insurance Company's Motion for Limited Reargument of the Court's Memorandum Opinion Dated June 3, 2008 Granting Summary Judgment to Defendant Indian River School District (D.I. 149) for the reasons that follow:

1.      In its motion, RLI seeks reargument of that part of the Court's Memorandum Opinion dated June 3, 2008 that struck from the pleadings "RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's alleged improper payments to McDaniel." *See* RLI's Brief, page 2 (D.I. 150).

2.      The grounds for RLI's motion are that the Court "misunderstood RLI's argument" and "overlooked or misapprehended the significance of IRSD's knowledge of the overpayments made to McDaniel based upon false and misleading Certificates for Payment prepared and certified by EDIS and BMG." *See* paragraphs 8 and 20 of RLI's Motion (D.I. 149).

1

3.  Under Local Rule 7.1.5, reargument is "sparingly granted." The party opposing a motion for reargument may file a "brief answer to each ground asserted in the motion."

4.  In seeking reargument, RLI simply repeats the argument it advanced in its brief in opposition to the summary judgment motion that IRSD acted in bad faith and colluded with the other defendants by *knowingly* making payments for work that was not completed or not properly completed and that such payments prejudiced the surety. A motion for reargument, however, should not be used to rehash arguments that have already been briefed by the parties and considered and decided by the Court. ***Karr v. Castle***, 768 F.Supp. 1087, 1090 (D.Del.1991); ***Brambles USA, Inc. v. Blocker***, 735 F.Supp. 1239, 1240 (D.Del.1990).

5.  The Court found that in opposing the motion for summary judgment, RLI failed to present any **facts** from which a reasonable jury could conclude that any such bad faith, collusion or knowingly improper payments occurred, or that RLI suffered any prejudice from such payments. No genuine issue of fact existed, and the Court properly entered summary judgment.

6.  RLI now rehashes the same deposition testimony excerpts that it presented with its opposition to the summary judgment motion. When presented at that time, RLI failed to cite to any single line of testimony from any of these excerpts, and relied instead on broad and inaccurate generalizations about what the witnesses said, without any page or line references, or even providing the context for the testimony or the exhibits being discussed. Unsupported statements in a Brief are not evidence; nor are excerpts from testimony that lack any context from which the testimony may be correctly understood. RLI evidently expected the Court to sift through the excerpted testimony to glean some understandable testimony that might support RLI's factual allegations. RLI wholly failed to meet its burden of establishing and presenting any genuine issue of fact.

7.  In its reply brief supporting the summary judgment motion, IRSD parsed these deposition excerpts and demonstrated why they failed to support RLI's theory. Quoting from IRSD's Reply Brief (D.I. 102) at pages 3-7:

"When one undertakes the task of reviewing the excerpted testimony to determine whether it supports RLI's broad statements of what it hopes to prove, one comes away with the realization that RLI's claims are wholly unsupported. In context, the excerpted deposition testimony in no way creates a genuine issue of material fact.

RLI's exhibits B and C excerpt the deposition testimony of Theodore Dwyer, the president of the construction manager, EDIS, and Brad Hastings, the principal-in-charge for the architect, Becker Morgan Group, respectively. RLI offers these excerpts to show that the architect and construction manager knowingly approved overpayments or advance payments to McDaniel. The excerpts submitted by RLI do not show the context for the testimony or the exhibit being discussed. However, the preceding pages of testimony make it clear that both deponents were discussing deposition exhibits Weer 11 and 11A, which comprise McDaniel's application for payment no. 24. Copies of the preceding testimony identifying the exhibits are attached as Exhibits "1" (the Dwyer transcript, see page 182, lines 21 and 22) and exhibit "2" (the Hastings transcript, see page 107, lines 3-4). A copy of Weer 11 and 11A is attached as Exhibit "3." As shown on exhibit "3", the construction manager and the architect certified a payment of $106,400 on this payment application in mid-September 2004.

Even assuming, for argument's sake, that EDIS and Becker Morgan knew that the percentages of completion shown on this application for payment were inaccurate, the

excerpted testimony does not establish any genuine issue of fact for trial, for several reasons:

- The excerpted testimony concerns only one payment, and one certificate for payment of one payment application, made at one specific time (September 2004). None of the other twenty-three payments to McDaniel are in any way addressed in the excerpted testimony. No testimony is offered to prove that any of the other payment applications were improperly certified, much less knowingly so.

- The Dwyer excerpt reveals that this 24th payment was made by joint check to McDaniel and one of its unpaid suppliers, Baltimore Air Coil, who refused to ship an ice storage system to the jobsite unless and until they were paid. ***See Dwyer excerpt, Exhibit B to RLI Brief, at p. 187, lines 10-24.*** As RLI itself acknowledges, establishing entitlement to a *pro tanto* discharge of its obligations under the performance bond requires not only proof of a material departure from the contract's payment terms, but also proof that the surety suffered prejudice as a result of an improper payment. ***See RLI Brief, pp. 13-14***. A payment such as this one, that goes to a supplier actually furnishing equipment needed to complete the bonded contract, in no way prejudiced RLI. ***See North American Spec. Ins. Co. v. Chichester School District,*** 2000 WL 1052055 (E.D. Pa.), p.13, ***quoted in RLI's Brief, p. 14***. By paying a supplier for equipment necessary to complete the contract, this payment furthered the surety's interest in two ways: (1) it furthered the surety's interest in getting the contract completed, which is its obligation under the performance bond; and (2) it furthered the surety's interest in paying

4

suppliers who furnish labor or material used to further the contract's completion, which is its obligation under its labor and material payment bond. Payments like this one that further the surety's interests benefit, rather than prejudice, the surety. *See Ramada Dev. Co. v. U.S. Fidelity & Guaranty Co.*, 626 F.2d 517, 522 (6th Cir. 1980), ***cited in RLI's Brief, p. 14.***

- Prior to this payment, RLI expressly consented to IRSD making such a joint payment to unpaid McDaniel suppliers. On August 17, 2004, RLI's attorney wrote to counsel for EDIS that such joint payments were acceptable to RLI, stating that "notwithstanding my client's previous directive to hold distribution of any funds, we agree with the issuance of the joint checks at this point and authorize their release." A copy of this letter, along with pages 137-138 of the deposition testimony of David Berry, RLI's senior bond claim analyst, in which he acknowledges that the attorney was authorized to make that statement on RLI's behalf (page 138, lines 16-19), is attached hereto as Exhibit "4." On September 9, 2004, RLI confirmed by letter to EDIS its understanding that a payment would be made by joint check to Baltimore Air Coil. A copy of this letter, from RLI's consultant, Louis Baldassare of Cashin, Spinelli & Ferretti, along with pages 150-151 of his deposition testimony, in which he acknowledges the joint check payment (page 151, lines 6-18), is attached hereto as Exhibit "5."[1] Thus, in addition to suffering no prejudice because the payment went to an unpaid suppler for needed equipment, RLI cannot complain about this payment because RLI knew it was being made and consented to it.

---

[1] As Mr. Baldassare notes (page 151, lines 19-23), only part of the amount certified went to Baltimore Air Coil. After paying the joint check amount, there was a balance of $10,400 that was never paid to anyone. See footnote 1 to paragraph 5 of the Miller Declaration.

5

RLI's exhibit "D" excerpts the deposition testimony of Greg Weer, the supervisor of buildings and grounds for IRSD.[2] RLI acknowledges that this testimony shows only that "in 'hindsight' he knew many things were not done by McDaniel." *See RLI Brief, p. 8*. The excerpted testimony is irrelevant to this motion because there is nothing offered that correlates Mr. Weer's knowledge of "things not done by McDaniel" with the appropriateness of the payments made to McDaniel. For example, the excerpt from pages 68 to 70 of the transcript shows that in the first half of 2004, McDaniel sometimes worked out of sequence and sometimes did not pay suppliers on time. Nothing is offered, however, to show that the payments to McDaniel were inappropriate based upon this knowledge. The only testimony about payments to McDaniel appears on the last five pages of exhibit "D," which are pages 178 to 183 of the deposition transcript. This testimony concerns **only** McDaniel payment application no. 24, the same one discussed in the Dwyer and Hastings excerpts. Mr. Weer makes it clear that his state of mind back at the time of that payment was only that the percentage of work that McDaniel had completed was "less than 100%." *See page 179, lines 13-15 of RLI's Exhibit "D."* Mr. Weer further testified that today, "knowing what I know since August 31st of 2004, there was definitely less than 80% done." *See pages 179 lines 21-24 and page 180, lines 1-2 of RLI's Exhibit "D."* Neither of these statements establish in any way that IRSD knowingly consented to overpayments to McDaniel. What Mr. Weer knows today is not probative of what he knew then. Moreover, regardless of what Mr. Weer knew when this 24th payment application was processed, this 24th payment (as discussed above) went to

---

[2] In fairness to Mr. Weer, it should be noted that he reserved his right to read and correct his transcript, and in doing so made some corrections to the transcript, including some that correct the excerpted transcript included in RLI's exhibit "D." RLI should have presented the corrected testimony. Mr. Weer's corrections are attached as Exhibit "6" to this Brief.

one of McDaniel's unpaid suppliers to obtain needed equipment, with RLI's consent, and in no way prejudiced RLI."

8.     Based on the record presented to the Court, the Court quite properly concluded that RLI had "adduced no evidence in support" of its contention that "Indian River's payments were not made 'in good faith reliance,' but instead in collusion with EDiS and Becker Morgan." Memorandum Opinion, page 17.

9.     RLI's sole basis for seeking reargument is that the Court should have found sufficient evidence of bad faith to justify trial on the issue. However, the Court also found that even if such evidence had been adduced, RLI still could not prevail on its defense because it suffered no prejudice due to overpayment. RLI offers nothing now to challenge this alternative basis for the Court's decision.

10.    The Court's alternative basis for its holding is stated by the Court at page 18 of its Memorandum Opinion:

"Additionally, even if RLI Insurance had adduced evidence of bad faith on the part of Indian River, the Court concludes that RLI Insurance cannot establish that it was prejudiced by the alleged overpayments. The only evidence argued by RLI Insurance in support of its contention that even suggests the overpayments were made knowingly and willfully concerns Indian River's 24th payment. (See, e.g., D.I. 94 at Exhs. B, C, and D.) However, RLI Insurance's August 17, 2004 letter explicitly allowed for the release of these funds, since the 24th payment was a joint payment to unpaid McDaniel suppliers, and the remainder of the payment was held while the parties determined to whom to make payment. (D.I. 100 at Exh. 4.) This payment ultimately furthered RLI Insurance's interest in paying suppliers for materials necessary to complete the Contract, and the Court finds that the evidence RLI Insurance has argued is insufficient to establish prejudice. See Ramada Development Co. v.

7

U.S. Fid. & Guaranty Co., 626 F.2d 517, 522 (6th Cir. 1980) (surety was not discharged where payments made in advance were made to further completion of the contract and therefore benefitted the surety). Accordingly, the Court concludes that RLI Insurance is not discharged from liability under the Bond by Indian River's allegedly improper payments to McDaniel, and therefore the Court will grant Indian River's motion for summary judgment on this issue."

11.    Reargument is "appropriate only where: (1) the court has patently misunderstood a party, (2) the court has made an error not of reasoning but of apprehension, and (3) the court has made a decision outside the scope of the issues presented to the court by the parties." ***Corning inc. v. SRU Biosystems***, 2006 WL 155255 (D. Del.) (Farnan, J.) ***See also Brambles USA, Inc. v. Blocker***, 735 F.Supp 1239, 1241 (D.Del. 1990). None of these three grounds are present here. The motion should be, accordingly, denied.

WHEREFORE, defendant Indian River School District respectfully requests that the Court deny the motion for reargument.

Respectfully Submitted,

**SEITZ, VAN OGTROP & GREEN, P.A.**

**/s/ James S. Green**
**JAMES S. GREEN, ESQ. (DE0481)**
**jgreen@svglaw.com**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
Attorneys for Defendant
Indian River School District

Of Counsel:

K. Gerard Amadio, Esquire

8

Venzie, Phillips & Warshawer
2032 Chancellor Street
Philadelphia, Pennsylvania 19103
(215) 567-3322

9

**CERTIFICATE OF SERVICE**

  I, James S. Green, Esquire, hereby certify that on June 30, 2008, I electronically filed the foregoing documents with the Clerk of Court using CM/ECF which will send notification of such filing to all counsel of record.

            **/s/ James S. Green**
            **JAMES S. GREEN, ESQ. (DE0481)**